United States District Court
Southern District of Texas
**ENTERED**
March 31, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THE TEXAS GENERAL LAND OFFICE; and GEORGE P. BUSH, in his official capacity as Commissioner of the Texas General Land Office, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | |
| JOSEPH R. BIDEN, in his official capacity as President of the United States of America; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the United States Department of Homeland Security, | § § § § § § § § § | CIVIL ACTION NO. 7:21-cv-00272 |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "Plaintiffs' Motion to Challenge the Administrative Record,"[1] "Defendants' Opposition to Plaintiffs' Motion Challenging the Administrative Record,"[2] and "Plaintiffs' Reply in Support of Motion to Challenge the Administrative Record."[3] After considering the motion, record, and relevant authorities, the Court **DENIES** Plaintiffs' motion.[4]

### I.   BACKGROUND AND PROCEDURAL HISTORY

This case was originally brought to challenge the federal executive branch's southwest border policy for alleged violation of the constitutional separation of powers and certain express

---

[1] Dkt. No. 68.
[2] Dkt. No. 70.
[3] Dkt. No. 71.
[4] Dkt. No. 68.

constitutional provision, statutory violations of appropriations and other related statutes, and violation of the Administrative Procedure Act (APA).[5] It was later consolidated with Civil Action 7:21-cv-420, brought by Texas and Missouri alleging similar claims.[6] On August 3, 2022, this Court granted in part Defendants' motion to dismiss, retaining only Plaintiffs' APA claims and dismissing Texas and Missouri from the lawsuit.[7] Texas and Missouri have appealed that decision.[8]

In the parties' joint discovery/case management plan, Plaintiffs sought discovery on the merits and outside the administrative record even though only APA claims remain.[9] They argued that in the scheduling order, the Court should "adopt the [proposed] schedule, without entering an order that discovery be limited to jurisdiction" because at least one ground for allowing expanded discovery is present here.[10] Defendants pointed out that judicial review of agency action is typically limited to the administrative record.[11] They argued that if "Plaintiffs seek to challenge the contents of the administrative record," they can do so "by way of motion after Defendants file the administrative record."[12]

The Court agreed with Defendants' arguments on this point by stating that "Plaintiffs cannot point to problems with the administrative record because the record has not yet been produced."[13] Thus, the Court declined Plaintiffs' request to enter a scheduling order allowing discovery outside of the administrative record.[14]

---

[5] Dkt. No. 34.
[6] Dkt. No. 23.
[7] Dkt. No. 57.
[8] Dkt. No. 58.
[9] Dkt. No. 62 at 7.
[10] *Id.*
[11] *Id.* at 8.
[12] *Id.*
[13] Dkt. No. 65.
[14] *Id.* at 3.

The administrative record has now been filed with the Court[15] and Plaintiffs have filed a motion to challenge the administrative record.[16] The Court now turns to that motion.

## II. DISCUSSION

### a. Legal Standard

In an APA challenge to agency action, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."[17] To be sure, the court may authorize discovery outside the administrative record, but this is an "unusual step."[18]

Discovery beyond the administrative record comes in two flavors: completion and supplementation. "A motion to 'complete' the record seeks to add evidence that the agency actually considered but failed to include[, while a] motion to 'supplement the record seeks the admission of evidence outside the record that the agency did not consider."[19] When courts list circumstances in which expansion may be allowed, they often conflate and combine completion and supplementation.[20]

As to expansion of the record, the Fifth Circuit has adopted the D.C. Circuit's *Am. Wildlands* three-circumstance test. Under that test, expansion may be permitted where:

(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review.[21]

---

[15] Dkt. No. 66.
[16] Dkt. No. 68.
[17] *Camp v. Pitts*, 411 U.S. 138, 142 (1973).
[18] *See DOC v. New York*, 139 S. Ct. 2551, 2564 (2019).
[19] Robert L. Glicksman and Richard E. Levy, ADMINISTRATIVE LAW: AGENCY ACTION IN LEGAL CONTEXT, at 196 (3rd ed.).
[20] As noted by Judge Tagle in *La Union del Pueblo Entrero v. FEMA*, 141 F. Supp. 3d 681, 694 (S.D.Tex. 2015).
[21] *Medina Cnty. Env't. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir.) (citing *Am. Wildlands,* 530 F.3d at 1002) (cleaned up and emphasis added).

While the Court refers to this test for supplementation, these circumstances also fit completion.

### b.  Analysis

Although Plaintiffs use the term supplementation almost exclusively, they substantively request the Court to order completion as well as supplementation of the record. The crux of Plaintiffs' argument appears to be that if Defendants had engaged in notice-and-comment rulemaking, "the universe of documents that make up the administrative record should be easy to identify."[22] Because formal rulemaking did not occur, "[t]he Court must, thus, presume that the agency's action is not fully explained in the record before the Court."[23]

Defendants respond by first asserting the strong presumption against record supplementation and then by arguing that "there is no basis for GLO's critique that the administrative record in this case is unreliable because it was not compiled through a formal rulemaking process after public notice and comment."[24]

The Court will summarize the additional materials Plaintiffs argue should be included in the record as well as Defendants' response to those specific arguments.

### 1.  *Documents Reflecting the Prior Administration's Decision to Construct Border Barriers*

Plaintiffs argue that Defendants should provide documents reflecting and supporting the prior administration's decision to authorize barrier construction along the southern border that was subsequently halted by the Biden Administration.[25] Plaintiffs assert that Defendants should include administrative records prepared for other cases challenging the prior Administration's border

---

[22] Dkt. No. 68 at 5.
[23] *Id.*
[24] Dkt. No. 70 at 16.
[25] Dkt. No. 68 at 7.

barrier construction projects. Additionally, Plaintiffs argue that their amended complaint "identifies several documents that reflect and support the prior administration's policies that were reversed by the policies challenged in this case. Among others, these include DHS publications titled *'Walls Work,' 'The Border Wall System is Deployed, Effective, and Disrupting Criminals and Smugglers,'* and *'DHS and CBP Celebrate 400 Miles of New Border Wall System.'*"[26] Plaintiffs assert that "[t]hese categories of documents and others explaining the need for and benefits of border walls, as well as the information relied upon in their preparation, are necessary for this Court's assessment of whether Defendants' reversal of policy is the product of appropriately reasoned decision making and is supported by an appropriately reasoned explanation."[27]

Defendants argue that this amounts to a "merits argument dressed up as a request to supplement the administrative record."[28] Additionally, Defendants argue that "the administrative record here is sufficiently detailed to permit judicial review of GLO's APA claims . . ."[29] as it "includes, *inter alia*, detailed memoranda, policy guidance, and factual data about the conditions at various construction sites that are more than enough for the Court to discern the 'agency's path.'"[30] Further, Defendants argue that Plaintiffs' "request for information about the prior Administration's border wall construction projects also glosses over the bedrock principle that an administrative record includes only documents and evidence considered by the agency in the matter at issue. It does not include documents that the agency may have had in its possession but were not considered by or submitted to the decisionmaker, even if those documents arguably could

---

[26] *Id.* at 8-9.
[27] *Id.* at 9.
[28] Dkt. No. 70 at 20 (citing *Conservation Force v. Salazar,* No. 1:10-CV-1262 BJR, 42012 WL 11947683, at *7 (D.D.C. Feb. 6, 2012) ("If Plaintiffs believe that the administrative record fails to substantiate the agency's decision . . . , they need to raise the issue in a motion on the merits, not a discovery motion.")).
[29] *Id.*
[30] *Id.*

have been informative."[31] Additionally, Defendants argue that "an administrative record for one proceeding does not need to include material collected in earlier, related proceedings involving the same or similar subjects."[32] Finally, Defendants argue that Plaintiffs are incorrect to assert that Defendants should include administrative records prepared for other cases challenging the prior Administration's border barrier construction because those cases involved the Department of Defense who is not a party to this cause. To that end, Defendants note that "DHS did not compile any administrative records in litigation concerning border wall construction projects undertaken during the prior administration."[33]

The Court agrees with Defendants that this argument is a merits issue not a discovery issue. As noted by Plaintiffs, the record appropriately contains documents the agency actually considered in the matter at issue. The record does not need to contain every possible trace of documentation related to the matter at hand.

> 2. *Documents Concerning the Magnitude of the Problem of Illegal Border Crossings and the Effectiveness of Border Barriers*

Plaintiffs argue that Defendants should provide documents concerning the magnitude of the problem of illegal border crossings and the effectiveness or anticipated effectiveness of border barriers in reducing illegal border crossings.[34] Plaintiffs cite 5th Circuit precedent that states that "[s]upplementation of the administrative record is proper when the 'agency deliberately or negligently excluded documents that may have been adverse to its decision' or when the district court needs to supplement the record with 'background information' in order to determine whether

---

[31] *Id.* at 21.

[32] *Id.* (citing *City of Dania Beach v. FAA,* 628 F.3d 581, 590-91 (D.C. Cir. 2010) (holding that the administrative record did not need to include materials compiled by the agency in connection with earlier proceedings; *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009)).

[33] *Id*. at 22.

[34] *Id.* at 9.

the agency considered all of the relevant factors."[35] Thus, Plaintiffs argue that the Court should order Defendants to supplement with records on the magnitude of illegal border crossings as well as "documents from GLO establishing the size of the problem of illegal border crossings on the southern U.S. border, including property managed by GLO."[36]

Defendants argue that this would amount to a "massive, resource-intensive effort to compile data and information dating back to 1998 about nationwide border crossings for the Court to assess the legality of the DHS Border Wall Plan under the APA."[37] Defendants assert that "GLO cites no case adopting such an expansive view of the contents of an administrative record, and any such rule, if applied generally, would impose crushing burdens on Executive Branch agencies, even beyond those of ordinary civil discovery, which is not contemplated in APA cases."[38] Further, Defendants argue that "GLO has not shown that this voluminous background information is needed 'in order to determine whether the agency considered all of the relevant factors[.]"[39] Defendants assert that DHS has fully explained the challenged agency action by including in the record, "clear explanations and factual data to support the decision in the DHS Border Wall Plan to focus its barrier system appropriations on remediating site conditions and installing system attributes on existing border barriers."[40] Additionally, Defendants argue that "in the leading case that adopted the 'background information' exception to the record rule, the court justified supplementation because of the 'highly technical nature of the subject matter' and the need for such information 'to aid the court in its understanding' of the challenged action."[41] Defendants

---

[35] Dkt. No. 68 at 9 (citing *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.,* 602 F.3d 687, 706 (5th Cir. 2010).
[36] *Id.* at 10.
[37] Dkt. No. 70 at 23.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 24.
[41] *Id.*

assert that this case "does not present similar technical or scientific information that would require such a dramatic expansion of the administrative record solely for background purposes to aid the court's understanding of DHS's actions."[42] To that end, Defendants state that the record provides the "relevant background information that led to the DHS Border Wall Plan, including President Biden's Proclamation terminating President Trump's declaration of a national emergency at the southern border and detail factual information about the status of the border wall construction sites across the country."[43]

Moreover, Defendants contend that Plaintiffs' position that this category of information is necessary so "the Court may assess evidence arising after the agency action to show whether the Defendants' decision was correct or not" is mistaken because "[s]upplementing the record for purposes of evaluating 'the evidence to determine the correctness or wisdom of the agency's decision is not permitted.'"[44]

With one exception, Plaintiffs do not point to any specific documentation. Rather, they argue generally for supplementation with "government records," "statistics from Customs and Border Protection" and "any other documents" in Defendants' possession.[45] Even if such information may have some relevance, there is no requirement that every conceivably relevant document be brought forth. Absent "unusual circumstances justifying a departure,"[46] the Court will not order such expansive supplementation. Here, there has been no showing that Defendants "deliberately or negligently excluded" any documents showing the magnitude of the problem.[47]

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] Dkt. No. 68 at 10.
[46] *Medina, 602 F.3d* at 706 (citing *Am. Wildlands*, 530 F.3d at 1002).
[47] Dkt. No. 68 at 9.

Furthermore, the Court does not find that the sought-after documentation is necessary as "background" information.[48]

### 3. *Documents Concerning the Estimated and Actual Costs Incurred Due to the Defendants' Cessation of Border Wall Construction*

Plaintiffs argue that Defendant should provide documents concerning the estimated and actual costs incurred due to the Defendants' cessation of Border Wall Construction.[49] Plaintiffs maintain that the administrative record contains documents that show that the government did a cost analysis but have failed to include the underlying documentation.[50] Thus, Plaintiffs claim that those documents should be included so that the Court may assess whether Defendants failed to engage in reasoned decision-making.[51]

Defendants contend that "[t]he record here contains the cost estimate data that DHS considered in issuing the DHS Border Wall Plan and GLO has not established a basis to compel the agency to add additional data underlying those cost estimates to the administrative record."[52]

As with the previous arguments, the Court again agrees with Defendants. Other than the conclusory claim that the underlying date may assist the Court, Plaintiffs do not provide any reasoned argument to support this claim for supplementation.

### 4. *Comments From Members of the Public Received by DHS*

Plaintiffs argue that Defendants should provide comments from members of the public received by DHS.[53] Plaintiffs contend that Defendants received public comments and thus must

---

[48] *Id.*
[49] Dkt. No. 68 at 11.
[50] *Id.* at 12.
[51] *Id.*
[52] Dkt. No. 70 at 26.
[53] Dkt. No. 68 at 13.

be part of the administrative record.[54] Plaintiffs assert that failure to include those comments amounts to a "fail[ure] to explain administrative action to frustrate judicial review."[55]

Defendants contend that "GLO suggests that DHS received public comments during the development of the DHS Border Wall Plan because of a reference in the plan to consultations with stakeholders.[56] But that statement says nothing about public input during the agency's development of the plan. Rather, the statement appears in a section of the plan describing the steps DHS will take *in the future* as part of its replanning process before undertaking 'further construction.'"[57] However, Defendants state that in order "to avoid further litigation disputes about this category of documents, DHS will agree to undertake a supplemental search for any public comments DHS received about the development of the DHS Border Wall Plan."[58]

Accordingly, the Court finds that this issue is now moot and **ORDERS** DHS to supplement the record with any such public comments identified during this search.

### 5.  *Documents Referenced in the Administrative Record.*

Plaintiffs argue that Defendants should provide documents referenced in the administrative record.[59] Plaintiffs state that "[t]hroughout the administrative record produced by Defendants, one can see multiple references to other documents that are relevant and identified as part of the agency's decision-making process, yet not included in the administrative record."[60] Those references include memoranda discussing each construction project along the border, interagency efforts, stakeholder communications, eminent domain actions, environmental planning, and the Rio Grande Valley Access Gates Project.

---

[54] *Id.*
[55] *Id.* at 14.
[56] Dkt. No. 70 at 28.
[57] *Id.*
[58] *Id.*
[59] Dkt. No. 68 at 14.
[60] *Id.*

Defendants argue that "DHS is not required to consider documents that were not before the agency, and mere references to other documents in the administrative record is not clear evidence that the documents were considered by the agency in forming its decision."[61]

The Court agrees that Defendants are not required to include documents merely referenced in the administrative record but not considered by the agency. For each of Plaintiffs' specific arguments here, Defendants allege that they have sufficiently explained the matter without including every single document referenced in each of the documents provided.[62] Plaintiffs fail to show that this is untrue.

### 6. *Privilege Log*

Plaintiffs also argue that the Court should require Defendants to produce a privilege log for the documents in the record designated as "privileged."[63] Plaintiffs again contend that because "the government did not follow APA guidelines about notice-and-comment rulemaking, improper behavior exists."[64]

Defendants contend that "[c]onsistent with the limited scope of review in APA cases, courts have long held that the administrative record does not include privileged materials, including agency deliberations and other pre-decisional documents."[65]

---

[61] Dkt. No. 70 at 29.

[62] *Id.* at 29-34.

[63] Dkt. No. 68 at 17.

[64] *Id.* at 19.

[65] Dkt. No. 70 at 34 (citing *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (en banc) (refusing to supplement the record to consider transcripts of deliberative agency proceedings); *In re U.S. Dep't of Def. & U.S. Envtl. Prot. Agency Final Rule, No. 15-3751*, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) ("Deliberative process materials are generally exempted from inclusion in the record in order to protect the quality of agency decisions by ensuring open and candid communications."); *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1455- 58 (1st Cir. 1992) (upholding omission of documents on attorney-client and deliberative process privilege grounds). As one district court in this circuit explained, "deliberative materials are generally excluded from the administrative record as considered by the court." *See United States v. Colliot*, No. AU-16-CA-01281-SS, 2017 WL 6348129, at *3 n.4 (W.D. Tex. Dec. 15, 2017) (quoting *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794–95 (E.D. Va. 2008) ("A complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney client privilege, and work product privilege.")).

The Court agrees with Defendants on this matter and find that privileged materials are not proper for inclusion in the administrative record and thus Defendants are not required to produce a privilege log.

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court finds that Plaintiffs' motion should be and is hereby **DENIED**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 31st day of March 2023.

_____
Micaela Alvarez
United States District Judge