IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and GEORGE P. BUSH, in his official capacity as Commissioner of the Texas General Land Office,<br><br>            Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>            Defendants. | No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>            Plaintiffs,<br><br>   v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>            Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |

**DEFENDANTS' MEMORANDUM ADDRESSING THE TIMELINE FOR THE
APPROPRIATIONS PROCESS AT ISSUE IN THESE CASES**

      In accordance with the Court's instructions during the status conference held on August 16, 2023, Defendants hereby submit the following memorandum addressing the timeline for the appropriations process at issue in the above-captioned cases.

      The lawsuits in these cases focus on three statutes appropriating funds to the Department of Homeland Security (DHS) for border barrier system construction. Texas and Missouri base

their challenge on the appropriations in fiscal years 2020 and 2021. *See* Pls.' Motion for Preliminary Injunction, No. 7:21-cv-420, ECF No. 19. In each of those years, Congress appropriated $1.375 billion "for the construction of barrier system along the southwest border." DHS Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2511; DHS Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456–57. The Texas General Land Office (GLO) focuses its challenge primarily on the fiscal year 2019 appropriation, which provided $1.375 billion "for the construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector." DHS Appropriations Act, 2019, Pub. L. No. 116-6, div. A § 230, 133 Stat. 13, 28; *see* GLO First Amended Complaint ¶ 114, No. 7:21-cv-00272.

"The two basic authorities conferred by an appropriation law are the authority to incur obligations and the authority to make expenditures." Government Accountability Office, Principles of Federal Appropriations Law at 5-3 (4th ed., 2016 rev.). An obligation is a commitment by a federal agency, such as entering into a contract, "that creates a legal liability of the government for the payment of goods and services ordered or received . . . . " *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1319 (2020) (internal quotations and citation omitted). "An expenditure is the disbursement of funds to pay the obligation." Government Accountability Office, Principles of Federal Appropriations Law at 5-3 (4th ed., 2016 rev.).

The imposition of time limits on appropriations is one of the primary ways Congress exercises control over its Appropriations Clause power. A time-limited appropriation is available to incur an obligation only during the period of time designated by Congress. *See* 31 U.S.C. § 1502(a) (stating that "the balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of availability"). For the border barrier appropriations at issue in these cases, Congress gave DHS five years to obligate the funds. The fiscal year 2019 funds are available for obligation until

September 30, 2023.[1]  *See* DHS Appropriations Act, 2019, Pub. L. No. 116-6, Div. A, Title II, 133 Stat. at 18.  The fiscal year 2020 funds are available for obligation until September 30, 2024.  DHS Appropriations Act, 2020, Pub L. No. 116-93, Div. D, 133 Stat. at 2506.  The fiscal year 2021 funds are available for obligation until September 30, 2025.  DHS Appropriations Act, 2021, Pub L. No. 116-260, Div. F, 134 Stat. at 1452.

With respect to the disbursement of obligated funds, time-limited appropriations remain available for an additional five fiscal years beyond their obligation period "for recording, adjusting, and liquidating obligations properly chargeable" to the appropriation.  31 U.S.C. § 1553; *see* 31 U.S.C. § 1552 ("On September 30th of the 5th fiscal year after the period of availability for obligation of a fixed appropriation account ends, the account shall be closed and any remaining balance (whether obligated or unobligated) in the account shall be canceled and thereafter shall not be available for obligation or expenditure for any purpose").  Once funds are obligated, these statutes provide DHS with five additional years to expend its barrier appropriation funds on expenses chargeable to contracts awarded before the applicable statutory obligation period expires.

During the status conference on August 16, 2023, the Court inquired about the "drop dead date" for the appropriations at issue in these cases.  Applying the above principles to the border barrier spending context, DHS must incur obligations on its remaining available unobligated funds prior to the expiration deadlines imposed by the fiscal year 2019, 2020, and 2021 appropriations statutes.  As noted above, those dates are September 30, 2023 for fiscal year 2019 funds, September 30, 2024 for fiscal year 2020 funds, and September 30, 2025 for fiscal year 2021 funds.  The typical way in which DHS incurs obligations for its border barrier appropriations is by awarding contracts for work associated with a specific project.

The advance planning and preparation time needed to award a contract for a border wall construction project depends on a variety of factors and circumstances that are highly specific to

---

[1] The "fiscal year" in government appropriations runs from October 1 of the prior year to September 30 of the current year.  For example, fiscal year 2019 funds became available for obligation on October 1, 2018.

that project. The following is a non-exhaustive list of actions DHS typically undertakes prior to contract award:

- Researches and reviews land ownership interests near the proposed barrier;
- Obtains rights of entry for pre-construction land surveys;
- Obtains necessary real estate interests in the land where the barrier will be built, either through negotiated sales with landowners or judicial actions (*e.g.*, Declarations of Taking);
- Conducts environmental and real estate surveys of the proposed barrier construction area;
- Consultations, including those required by statute, with parties potentially impacted by proposed construction, such as other federal agencies, States, local governments, Indian tribes, and private property owners;
- Prepares any required environmental assessments for the proposed construction project, such as compliance with any applicable provisions of the National Environmental Policy Act and the Endangered Species Act;[2]
- Undertakes necessary pre-contract award planning actions, such as preparing proposed scope of work plans, requests for contract proposals, and procurement documents; conducting site visits with potential contractors; reviewing contractor bids and ensuring compliance with applicable procurement laws.

The time required to complete each of these actions is dependent on variables that are difficult to quantify in the abstract. The size and scope of the proposed barrier project impacts the time generally required for pre-contract planning activities. The location of the project is a key factor in the planning process. Project planning needs may change depending on whether construction will take place in an urban or rural setting, and on whether the project area has sensitive environmental features that must be accounted for in assessing the project's engineering and design (*e.g.*, uneven terrain, mountains, flood risks). The extent of any private land acquisition is also an important consideration. DHS must identify landowners affected by the barrier

---

[2] Section 102(c)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, provides that the "Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *See* REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I § 102, 119 Stat. 231, 302, 306 (May 11, 2005) (codified at 8 U.S.C. § 1103 note). Even in circumstances where the Secretary has waived environmental or other laws, DHS still performs appropriate environmental planning for its projects. *See, e.g.*, *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092, 1123–25 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019); *Cnty. of El Paso v. Chertoff*, No. EP-08-CA-196-FM, 2008 WL 4372693, at *11 (W.D. Tex. Aug. 29, 2008) (citation omitted).

construction, obtain rights to access their property for surveys, and conclude the acquisition process through a negotiated purchase or condemnation proceedings. Although in some instances a contract for construction of barrier can be awarded prior to all of the necessary land being acquired, that approach creates risk for the government, as it may incur delay costs if the contractor is unable to access land required for the project.

In light of the many variables that impact the lead time required before awarding a barrier construction contract, there is no uniform "drop dead date" by which DHS must start its planning activities in order to obligate funds before they expire. For projects that require a substantial amount of land acquisition, DHS has advised that, under an aggressive timeline, it would need approximately 14–16 months of planning time before awarding a contract. For a smaller project that does not require a substantial amount of land acquisition, DHS has advised that planning can potentially be compressed to approximately 12 months before awarding a contract, depending on the scope and extent of environmental planning for the project.

For the fiscal year 2020 and 2021 appropriations at issue in this case, the Third Declaration of Paul Enriquez (ECF No. 96-2) explains that DHS has obligated over one billion dollars, and plans are in place to continue obligating the remaining funds on lawful barrier system projects before the funds expire on September 30, 2024 and 2025, respectively. For the fiscal year 2019 funds, which are not at issue in pending motion for preliminary injunction, DHS has obligated approximately one billion dollars as of the date of this filing. Additionally, DHS is working toward awarding a contract worth approximately $250 million using fiscal year 2019 funds for construction of up to approximately 20 miles of new barrier and system attributes in Starr County, Texas, before the funds expire on September 30, 2023. *See* CBP Moves Forward on RGV Barrier and Yuma Andrade and El Centro Calexico Fence Replacement Projects to Mitigate Immediate Life, Safety and Operational Risks (June 30, 2023), at www.cbp.gov/newsroom/local-media-release/cbp-moves-forward-rgv-barrier-and-yuma-andrade-and-el-centro-calexico. DHS plans to hold any remaining unobligated fiscal year 2019 funds in reserve to cover the costs of upward price adjustments and to avoid potential violations of the Anti-Deficiency Act, 31 U.S.C.

5

§ 1341(a).³ *See Matter of: Dep't of Com.-Application of the Impoundment Control Act to Appropriations Enacted in Fiscal Years 2018 & 2019*, B-331298, 2020 WL 7641195, at *4 (Comp. Gen. Dec. 23, 2020).

Recognizing that the scope of any preliminary injunctive relief the Court may award Plaintiffs is uncertain, if the Court were to order DHS to stop or modify its ongoing funding actions and require DHS to obligate and expend its fiscal year 2020 and 2021 funds in a different manner, DHS has advised that the amount of time that would be required to wind down existing project work, institute appropriate contracting actions (*e.g.*, suspension, modification, or termination), and start the planning process associated with obligating any remaining funds to new Court-ordered projects would vary based on the status of the ongoing actions. For recently-awarded contracts that are in the early stages of contract execution, DHS estimates that such contracts could be wound down in 30 to 60 days. By contrast, for those contracts that already have a substantial amount of work that is being executed, DHS estimates that it could take 6 to 9 months to wind down contract activities. DHS also has advised that other factors could impact time to unwind the contracts, such as amenability of contractors to reasonable and expeditious settlement or resolution. The time required to complete the planning process prior to obligating funds in accordance with any Court order would then depend upon the nature and scope of relief ordered by the Court as well as the fact-specific considerations referenced-above for project planning and execution.

---

³ The amounts identified above are approximate and subject to change. As work is executed and contracts are administered, awarded, or closed out, funds may be obligated or de-obligated in accordance with the actual costs of on-going or planned projects.

Date: August 25, 2023  Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

 /s/ *Andrew I. Warden*[4]
ANDREW I. WARDEN (IN Bar #23840-49)
Senior Trial Counsel
MICHAEL J. GERARDI
(D.C. Bar #1017949)
Trial Attorney / Attorney-in-Charge
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, No. 7506
Washington, D.C. 20005
Tel: (202) 616-5084
Fax: (202) 616-8470
E-mail: Andrew.Warden@usdoj.gov

*Counsel for Federal Defendants*

---

[4] Signed with permission of the attorney-in-charge in accordance with Local Rule 11.3.

## CERTIFICATE OF SERVICE

    I hereby certify that on August 25, 2023, I electronically filed a copy of the foregoing memorandum.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

                                      */s/ Andrew I. Warden*
                                      ANDREW I. WARDEN