**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and GEORGE P. BUSH, in his official capacity as Commissioner of the Texas General Land Office, <br><br>         Plaintiffs, <br><br>    v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, <br><br>         Defendants. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, <br><br>         Plaintiffs, <br><br>    v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.* <br><br>         Defendants. | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants respectfully submit this sur-reply to new factual assertions made by Plaintiffs in their supplemental brief in support of a preliminary injunction about the farm in Starr County, Texas, managed by the General Land Office of the State of Texas ("GLO").  *See* States' Supp. Brief at 8–10 (ECF No. 101); Declaration of Brian Carter (ECF No. 101-1).

Plaintiffs contend that immigrants are "overrunning the GLO's farm" because of an incomplete federal border wall segment that allegedly funnels migrants onto the GLO farm through "a border wall gap."  *See* States' Supp. Brief at 24; Carter Decl. ¶¶ 5–6.  That contention is factually unsupported.  Plaintiffs fail to inform the Court that the federal border barrier that was previously proposed and partially constructed, and the barrier built by the State of Texas on the GLO farm, lie *north* of where migrants cross and are apprehended on the GLO farm.  The border barriers, which bisect the farm two miles north of the river, do not divert this activity onto the GLO farm.  As a result, Plaintiffs incorrectly tie the impact of border barrier construction to the apprehension of migrants.  GLO's alleged injuries therefore will not be redressed by "resumption of the cancelled construction contracts" for the federal border wall project that was originally planned in the area near the GLO farm.  *See* States' Supp. Brief at 59.  The Court should accordingly deny the States' request for preliminary injunctive relief.

## ARGUMENT

The GLO farm's geography and the location of the nearby barriers undercut the States' assertions about the cause of migration on the farm.  In July 2020, DHS began construction of a border barrier project known as Rio Grande Valley (RGV)-09.  *See* Fourth Declaration of Paul Enriquez ¶ 6 (attached as Exhibit 1).  The design plan for the RGV-09 project called for construction of approximately 22 miles of new barrier system fencing and associated infrastructure in Starr and Hidalgo Counties in Texas.  *Id.*  The project was divided into two non-contiguous segments, each roughly 11 miles in length, located between Rio Grande City and La Grulla (segment 1), and La Grulla and Penitas (segment 2).  *Id.*  A map showing the proposed design alignment and location of the RGV-09 project is below.

2



The pink lines represent constructed segments of the RGV-09 project, while the blue lines represent proposed segments of the RGV-09 project. The GLO farm is outlined in yellow. *See id.*, Exhibit A at 1 (DHS #1216).

As this map shows, the planned path for the first segment of the RGV-09 project called for barrier system construction through the middle of the GLO farm, about two miles north of the Rio Grande River. *Id.* ¶ 7. The proposed design would have bisected the farm with approximately 2,184 acres of the GLO farm south of the barrier, and the remaining farm property north of the barrier. *Id.* The first segment of the RGV-09 project design ended at the eastern edge of the GLO farm, with an unfenced gap of approximately 5.5 miles between the end of the farm property and the start of the second RGV-09 segment on the east side of La Grulla, Texas.[1] *Id.* A map showing the proposed alignment for the RGV-09 project near the GLO farm is below. *See id.*, Exhibit A at 2 (DHS #1217).

---

[1] As explained in Defendants' supplemental brief, on June 30, 2023, DHS announced plans to construct of up to 20 miles of new border barrier system in Starr County, Texas. *See* ECF No. 96 at



In August 2020, DHS initiated negotiations to acquire approximately 41 acres of the GLO farm for construction of approximately two linear miles of the RGV-09 project. *Id.* ¶ 10.  Negotiations ended after President Biden issued Proclamation 10142, *Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to Border Wall Construction* (Jan. 20, 2021), and the Army Corps of Engineers terminated the contract for the RGV-09 project in February 2022. *Id.*  Before terminating the contract, approximately 1.4 miles of barrier had been built in the first segment and about 0.5 miles in the second segment.  *Id.*

After the federal government stopped work on the RGV-09 project, the State of Texas announced that it would build its own State-funded border wall across the GLO farm.  *See* Governor Abbott Debuts Texas Border Wall in Rio Grande City (Dec. 18, 2021), at https://perma.cc/7U9B-

---

11.  As part of that project, CBP is planning to construct new border barrier system in the area east of the GLO Farm, with the location and alignment currently in development.  *See* Fourth Enriquez Decl. ¶ 7.

ZNKU.  Governor Abbott stated that the wall on the GLO farm would use the same materials and design concepts as the federal border barrier.  *See* Watch Live: Debuting Texas Border Wall Construction in Rio Grande City, at www.facebook.com/TexasGovernor/videos/watch-live-debuting-texas-border-wall-constructionin-rio-grande-city/217216753807578 (video of press conference).  Texas awarded a contract for up to $162 million to the same contractor that had been building the RGV-09 project.  *See* Texas Border Wall Construction Status, at www.tfc.texas.gov/wall. In July 2022, Texas announced that its own barrier project had been completed.  *See id.*  The Texas barrier follows a similar course as the proposed RGV-09 project design and stretches across the middle of the GLO farm for approximately 1.8 miles, approximately 2 miles north of the Rio Grande River. *See* Fourth Enriquez Decl. ¶ 11.  A map comparing the actual path of Texas's barrier on the GLO farm to the proposed RGV-09 path is below.  *Id.*  The Texas barrier is represented with a white line.



The States fail to mention Texas's border wall in their supplemental brief and the map they submitted likewise omits its very existence.  *See* States' Supp. App. 0011.  The States, however, cannot ignore the fact that Texas has spent tens of millions of dollars to build essentially the same wall on the GLO farm that Texas wanted DHS to build, yet they assert the GLO farm remains "a superhighway of illegal activity."  *See* States' Supp. Brief at 24.  The States incorrectly point the finger at DHS's barrier construction policies as the cause of this problem, contending that incomplete construction of the RGV-09 project is funneling migrants onto the GLO farm.  *See* States' Supp. Brief at 59; Carter Decl. ¶ 6.  That is incorrect.  Although persons who cross the border at the Rio Grande River—which is south of the GLO farm—may then cross the GLO farm, that has nothing to do with the planned RGV-09 barrier system nor with the decision to stop construction of that barrier.  The RGV-09 barrier segments are two miles *north* of the river and are therefore not forcing migrants onto the GLO's property.  The RGV-09 project is thus neither the cause of, nor the remedy to, the migration patterns occurring on the GLO farm.

As explained in the attached declaration of Jorge Gonzalez, the Border Patrol Agent In Charge of the Rio Grande City Border Patrol Station, the federal border barrier located to the west of the GLO farm is not funneling or diverting migrants onto the GLO farm.  *See* Gonzalez Decl. ¶ 11 (attached as Exhibit 2).  The migrants that Border Patrol agents encounter on the GLO farm first congregate across the border in San Francisco, Mexico, a developed area immediately south of the Rio Grande River near the southwest corner of the GLO farm.  *Id.* ¶ 8.  The Rio Grande River at this location is narrow and relatively shallow.  *Id.*  Once migrants have crossed the border, there are large open areas where they alert Border Patrol to their presence and voluntarily turn themselves in for processing under federal immigration laws.  *Id.* ¶ 7–8.

Recent migrant apprehensions are concentrated on the southern portion of the GLO farm near the Rio Grande River, *south* of the barriers built by CBP and the State of Texas.  *Id.* ¶ 9.  A map showing the locus of apprehensions on the GLO farm in fiscal year 2023 (up to January 2023) is below.  *See id.*, Exhibit E (DHS #1215). The bullseye on the map indicates the location of the apprehensions, which occur near the GLO farm headquarters.  *Id.* ¶¶ 9–10.  Both Border Patrol agents

and Texas National Guard personnel are stationed at the farm's headquarters south of wall and migrants walk to that location to alert law enforcement personnel to their presence.  *Id.* ¶ 10.  This evidence shows that the federal border wall is irrelevant to the injuries asserted by GLO, as it is not causing migrants to enter the GLO's property near the Rio Grande River.



Nothing in the States' photos or supplemental evidence demonstrate how the federal border wall located two miles north of the river is diverting or funneling these migrants onto the GLO farm. Indeed, the operational situation on the ground belies the States' assertion that the federal wall is responsible for observed increases in migration on the GLO farm at the time the complaint was filed in 2021.  *See* Gonzalez Decl. ¶¶ 7-13.  To the extent that an increase in migrant apprehensions at the

GLO farm is impacting Texas's activities at the farm, *see* States' Supp. Brief. at 24, 59, the States have not established a causal connection between those apprehensions and the presence (or absence) of border barrier infrastructure, which is and would have been *north* of the area where migrants cross the river and enter GLO's property. *See, e.g., California v. Texas*, 141 S. Ct. 2104, 2116–19 (2021); *E.T. v. Paxton*, 41 F. 4th 709, 718–20 (5th Cir. 2002). Nor have the States shown how an injunction forcing the federal government and non-party private contractors to "resum[e] the cancelled construction contract[]" for the RGV-09 project would stop this activity, even setting aside the legal obstacles to such extraordinary relief. States' Supp. Brief. at 59; *see* Defs.' Supp Brief at 63–64.

If anything, the State of Texas bears responsibility for the loss of GLO's property value. The States assert that the farmer who leases the GLO farm requested a $12,000 per month rent reduction, but the States fail to provide the Court with the complete rationale for the renter's demand. *See* States' Supp. Brief. at 8, 32. That demand is attached to this brief as Exhibit 3. The principal reasons for the rent reduction were the "loss of farmland usage due to construction" of the Texas border wall and "permanent acres lost to border wall." *Id.* In addition to lost opportunities for farming the land because of Texas's border wall project, the tenant cited the following "additional reasons" for rent reduction:

1. Loss of normal use. Having to drive around the wall to the east or west during gate construction.

2. Excessive traffic, construction crews and National Guard, and an intensified number of illegal trespassing by immigrants.

3. Complaints being filed by the National Guard to the Texas Agriculture Department for the use of chemical treatment. These complaints have shut down farming operations until the investigation is complete.

4. Temporary loss of water during wall construction.

*Id.* Only one of the four given reasons mentions trespassing by migrants, and, as explained, construction of the border barrier would have no impact on this form of trespassing because it occurs two miles south of the border wall. Rather, Plaintiffs' own documentary evidence demonstrates that the request for a rent reduction was based primarily on the State of Texas's construction and National

Guard activity interfering with the farm's operations.

September 28, 2023                    Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney General

                                      ALEXANDER K. HAAS
                                      Director, Federal Programs Branch

                                       /s/ *Andrew I. Warden*
                                      ANDREW I. WARDEN (IN Bar #23840-49)
                                      Senior Trial Counsel
                                      MICHAEL J. GERARDI
                                      (D.C. Bar #1017949)
                                      Senior Trial Counsel / Attorney-in-Charge
                                      U.S. Department of Justice
                                      Civil Division, Federal Programs Branch
                                      1100 L St. NW, No. 7506
                                      Washington, D.C. 20005
                                      Tel: (202) 616-5084
                                      Fax: (202) 616-8470
                                      E-mail: Andrew.Warden@usdoj.gov

                                      *Counsel for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, I electronically filed the foregoing proposed sur-reply with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Andrew I. Warden*
ANDREW I. WARDEN

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and GEORGE P. BUSH, in his official capacity as Commissioner of the Texas General Land Office, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, <br><br> Defendants. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.* <br><br> Defendants. | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

## DECLARATION OF PAUL ENRIQUEZ

I, Paul Enriquez, declare as follows:

1.      I am the Director, Infrastructure Portfolio, U.S. Border Patrol Program Management Office

Directorate ("PMOD"), U.S. Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS"). I have held this position since January 2023 and support the planning and execution of border infrastructure projects from construction to maintenance. From May 2021 to December 2022, I served as the Deputy Director for the Infrastructure Portfolio and from August 2018 to May 2021, I served as the Real Estate and Environmental Director for the Infrastructure Portfolio. From 2013 to August 2018, I was the Real Estate and Environmental Branch Chief for the Border Patrol and Air and Marine Program Management Office ("BPAM"), Facilities Management and Engineering, Office of Facilities and Asset Management. From 2011 to 2013, I was employed as an Environmental Protection Specialist in the BPAM office. In that role, I performed environmental analyses for various border infrastructure projects. From 2008 to 2011, I was a contractor assigned to the BPAM office and provided environmental support on various border infrastructure projects.

2.     CBP is the DHS component with primary responsibility for border security. CBP constructs, operates, and maintains border infrastructure necessary to deter and prevent illegal entry on the southern border.

3.     Within CBP, PMOD has expertise in managing and executing border infrastructure projects. PMOD is tasked with managing the schedule, finances, real estate acquisition, environmental planning, and construction of the border infrastructure system along the U.S. border.

4.     Based upon my current and past job duties, I am familiar with the CBP's border barrier infrastructure, the project known "Rio Grande Valley (RGV)-09," and the barrier constructed by the State of Texas in Starr County on farmland owned by the Texas General Land Office (GLO).

5.     This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

### RGV-09 Project & Texas Border Wall on GLO Farm

6.     The design plan for the RGV-09 project called for construction of approximately 22 miles of new barrier system fencing and associated infrastructure in Starr and Hidalgo Counties in Texas.

The project was divided into two non-contiguous segments, each roughly 11 miles in length located between Rio Grande City and La Grulla (segment 1), and La Grulla and Penitas (segment 2). A map showing the proposed design alignment and location of the RGV-09 project is attached as Exhibit A. CBP started construction of RGV-09 in July 2020.

7.     The proposed alignment path for the first segment of the RGV-09 project called for barrier system construction through the middle of farmland owned by the Texas General Land Office, approximately two miles distance north of the Rio Grande River. The proposed design would have bisected the GLO farm, with approximately 2,184 acres of land between the Rio Grande River and the barrier, and the remaining farm property north of the wall. The first segment of the RGV-09 project design ended at the eastern edge of the GLO farm, with an unfenced gap of approximately 5.5 miles between the end of the farm property and the start of the second RGV-09 segment on the east side of La Grulla, Texas. As detailed in my prior declaration, on June 30, 2023, DHS announced that it had authorized CBP to move forward with planning and execution of up to 20 miles of new border barrier system in Starr County, Texas, within the United States Border Patrol Rio Grande Valley Sector. As part of that project, CBP is planning to construct new border barrier system east of the GLO Farm, with the precise location and alignment still in development.

8.     To pay for the RGV-09 project, DHS allocated funding from its fiscal year 2019 border barrier appropriation.

9.     The design plan for the RGV-09 project called for construction on land owned by individuals and entities other than the federal government. Consequently, CBP was required to acquire the necessary real estate interests in the land before construction could begin, either through negotiated sale or condemnation.

10.     In August 2020, CBP initiated negotiations to acquire approximately 41 acres of the GLO farm for construction of approximately two linear miles of the RGV-09 project. Negotiations ended after President Biden issued Proclamation 10142, *Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to Border Wall Construction* (Jan. 20, 2021). Work on the RGV-09 project stopped in January 2021 following

the President's Proclamation.  At that time approximately 1.4 miles of barrier had been built in the first segment and about 0.5 miles in the second segment.  *See* Exhibit A.  The Army Corps of Engineers terminated the contract for the RGV-09 project in February 2022.

11.     The barrier built by the State of Texas on the GLO farm follows a similar alignment path as the proposed RGV-09 project design.  The Texas barrier stretches across the middle of the GLO farm for approximately 1.8 miles and is located approximately two miles north of the Rio Grande River.  A map showing the actual alignment path of the Texas barrier on the GLO farm is attached as Exhibit A, page 3.

This declaration is made pursuant to 28 U.S.C. § 1746.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27ᵗʰ day of September, 2023.

Paul Enriquez
Infrastructure Portfolio Director
Program Management Office Directorate
U.S. Border Patrol

# FOURTH ENRIQUEZ DECLARATION

# EXHIBIT A



RGV 09 Projects

**LEGEND**

- Ports of Entry
- Constructed RGV 09 Barrier
- Proposed RGV 09 Barrier
- Texas Government Land Office Farm

10.70 miles

0.52 miles

0.92 miles

0.57 miles

11.10 miles

*"if sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:118,991                    1:118,991

AREA ENLARGED

**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001216

Fourth Enriquez Declaration, Exhibit A.  Page 1 of 3

Map Request 844

February 1, 2023



RGV 09 Projects

**LEGEND**

Constructed RGV 09 Barrier
Proposed RGV 09 Barrier
Texas Government Land Office Farm

0.31 miles
0.21 miles
0.11 miles

*If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:25,334    1:25,334

RIO GRANDE CITY STATION

☐ AREA ENLARGED

**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 844v2

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001217

Fourth Enriquez Declaration, Exhibit A. Page 2 of 3

February 3, 2023



RGV 09 Projects

LEGEND

- Constructed RGV 09 Barrier
- State of Texas Constructed Barrier
- Proposed RGV 09 Barrier
- Texas Government Land Office Farm

0.31 miles
0.05 miles
0.21 miles
0.11 miles
1.80 miles

*If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:25,334          1:25,334

AREA ENLARGED

WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 844v3

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001218

Fourth Enriquez Declaration, Exhibit A. Page 3 of 3

February 3, 2023

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

THE GENERAL LAND OFFICE OF THE STATE OF
TEXAS, and GEORGE P. BUSH, in his official
capacity as Commissioner of the Texas General Land
Office,

               Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; and ALEJANDRO MAYORKAS, in his
official capacity as Secretary of the Department of
Homeland Security,

               Defendants.

Civil Action No. 7:21-cv-00272

THE STATE OF MISSOURI; THE STATE OF
TEXAS,

               Plaintiffs,

        v.

JOSEPH R. BIDEN, in his official capacity as
President of the United States, *et al.*

               Defendants.

Civil Action No. 7:21-cv-00420
(formerly No. 6:21-cv-00052)

## DECLARATION OF JORGE GONZALEZ

I, Jorge Gonzalez, declare as follows:

1.      I am the Patrol Agent In Charge (PAIC) of the United States Border Patrol Rio Grande

City Border Patrol Station. I have held this position since March 28, 2021. I have been employed by the U.S. Customs and Border Protection (CBP) as part of the United States Border Patrol (USBP) since April 3, 2000. CBP is the Department of Homeland Security component with primary responsibility for border security. Within CBP, USBP is responsible for border security between the ports of entry.

2.       As the PAIC of the Rio Grande City Border Patrol Station, I direct operations for one of the most complex border environments along the U.S./Mexico border. I lead and direct intricate and strategic operations, overseeing 468 Border Patrol Agents and 5 professional staff. I manage 5 border zones totaling 68 miles of border with border security technology deployments valued in the tens of millions of dollars. I directly supervise 5 GS-14 field leaders and managers.

3.       Based upon my current and past job duties, I am familiar with the USBP's border security operations and activities in and around the area of Rio Grande City, Texas, including the farmland in Starr County owned by the Texas General Land Office (GLO).

4.       This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

5.       USBP organizes its border security operations into various geographic sectors and stations along the southern border. USBP's Rio Grande Valley Sector covers more than 34,000 square miles of Southeast Texas. Agents in the Rio Grande Valley Sector patrol over 320 river miles, 250 coastal miles, and 19 counties. The Rio Grande Valley Sector is divided into nine Border Patrol stations with defined areas of geographic responsibility. The Rio Grande City Border Patrol Station's area of responsibility encompasses 68 river miles of international border from the Starr/Hidalgo County line to the Starr/Zapata County line. This area of responsibility is further divided into five "border zones," beginning with Zone 1 near the Starr/Zapata County Line and ending with Zone 5 near the Starr/Hidalgo County line. The farm owned by the Texas General Land Office is located in Zone 5. A map showing the Rio Grande City Border Patrol Station's border zones, including the location of the GLO farm (which the Station frequently refers to as Starr Co. Farms), is attached as Exhibit A (DHS #001208).

6.      Prior to 2021, Border Patrol agents assigned to the Rio Grande City Station had relatively few encounters with migrants in Zone 5, including on the GLO farm. Beginning in approximately March 2021, there was a significant increase in the number of migrant encounters in Zone 5, including on the GLO farm. In fiscal year 2022, RGC Station encountered approximately 2,500 individuals per month in Zone 5. In fiscal year 2023, RGC Station encountered approximately 2,000 individuals per month in Zone 5.

7.      I understand that the Plaintiffs have asserted that incomplete barrier construction and a gap in the border wall is responsible for the increased migration on the GLO Farm. That is incorrect. The border barrier system gives Border Patrol agents a tactical advantage in apprehending migrants who attempt to evade apprehension. However, the large-group encounters with migrants on the GLO Farm do not involve individuals attempting to evade apprehension. Instead, migrants cross the border through the Rio Grande River and then voluntarily turn themselves in to Border Patrol agents for processing under federal immigration laws. As such, and as set out in more detail below, the overwhelming majority of encounters on the GLO Farm actually occur south of border barriers constructed by CBP and the State of Texas.

8.      The map that is attached as Exhibit B (DHS #001209) focuses on the area within Zone 5 where the GLO farm is situated. The migrants that Border Patrol agents encounter on the GLO farm first congregate across the border in San Francisco, Mexico. On the Exhibit B map, San Francisco, Mexico, is the developed area immediately south of the Rio Grande River near the southwest corner of the GLO farm. The Rio Grande River at this location is narrow and relatively shallow, and once migrants have crossed the border there are large open areas where they can alert Border Patrol to their presence.

9.      For migrants that cross at this location, the overwhelming majority of the encounters with Border Patrol occur on the GLO Farm. Maps showing the location of apprehensions in fiscal years 2021, 2022, and 2023 (up to early January 2023) using location data from USBP's TSM database

are attached as Exhibits C-E (DHS #1213-1215).[1] As shown on the maps, recent apprehensions are concentrated on the southern portion of the GLO farm near the Rio Grande River, south of the federal barrier and the barrier built by the State of Texas.

10.     Generally speaking, after migrants cross the Rio Grande River, they walk east to the GLO farm headquarters. The farm headquarters is shown on the Exhibit B map. It is labeled as "Starr CO HQ" and is situated in the southeast corner of the GLO farm approximately two miles south of the barrier constructed by the State of Texas. Once the migrants arrive at the farm headquarters, the state officials alert Border Patrol to their presence or Texas National Guard officials stationed at the farm headquarters alert Border Patrol to their presence. The photos labeled Supp. App. 0019, 0107 that are attached to plaintiffs' supplemental brief show migrants being picked-up by Border Patrol at the farm headquarters. On occasion, migrants will walk north on Starr Co Main, a road that runs north – south on the GLO farm, where they are voluntarily picked up by Border Patrol near the location of the barrier constructed by the State of Texas. The photos labeled Supp. App. 0024 and 0025 that are attached to plaintiffs' supplemental brief show migrants being picked-up by Border Patrol near the location of Texas-constructed barrier. After they are voluntarily picked-up by Border Patrol, the migrants are transported to CBP or USBP locations for processing.

11.     Based on my experience supervising Border Patrol operations near the GLO farm, the federal border barrier located to the west of the GLO farm is not funneling or diverting migrants onto the GLO farm.

---

[1] The Rio Grande City Station collects data about encounters with migrants using the Intelligent Computer Assisted Detection Tracking, Sign-Cutting and Modeling Database (TSM). This database contains information collected from encounters Border Patrol agents have with migrants, including geographic coordinates where the encounter occurred.

This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of September 2023.

Jorge Gonzalez
Patrol Agent In Charge
Rio Grande City Station
Rio Grande Valley Sector
U.S. Border Patrol

# GONZALEZ DECLARATION

# EXHIBIT A



UNCLASSIFIED / APPROVED FOR PUBLIC RELEASE

UNCLASSIFIED//SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

PROTECTED INFORMATION - CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**RIO GRANDE CITY BORDER PATROL STATION**
AREA OF OPERATION

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001208

UNCLASSIFIED//SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

# GONZALEZ DECLARATION

# EXHIBIT B



Legend
Apprehensions
U.S. Fish & Wildlife
Land Parcels
Starr Co. Farms
DHS/CBP Infrastructure
State of Texas Infrastructure

STATE OF TEXAS

Starr Co. Farms

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001209

# GONZALEZ DECLARATION

# EXHIBIT C



UNCLASSIFIED / APPROVED FOR PUBLIC RELEASE

# GONZALEZ DECLARATION

# EXHIBIT D



UNCLASSIFIED / APPROVED FOR PUBLIC RELEASE

PROTECTED ENFORCEMENT CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

STATE OF TEXAS

**Legend**

Apprehensions

U.S. Fish & Wildlife

Land Parcels

Starr Co. Farms

DHS/CBP Infrastructure

State of Texas Infrastructure

Fiscal Year 2022

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001214

# GONZALEZ DECLARATION
# EXHIBIT E



UNCLASSIFIED / APPROVED FOR PUBLIC RELEASE

### Legend

- Apprehensions
- U.S. Fish & Wildlife
- Land Parcels
- Starr Co. Farms
- DHS/CBP Infrastructure
- State of Texas Infrastructure

STATE OF TEXAS

Fiscal Year 2023

GLO v. DHS, 7:21-cv-00272 (S.D. Tex.)
DHS #001215

# EXHIBIT 3

# <u>Starr County Farm</u>

2022 Rent Reduction Request:

2021/22  Loss of farmland usage due to construction (approx. 134 acres)

2021/22  Permanent acres lost to border wall (approx. 30 acres)

In addition to lost acreage, █████ has asked that we consider the following factors as additional reasons to lower his 2022 rental payment and reduce his permanent rent moving forward, through the end of his lease term

1. Loss of normal use.  Having to drive around the wall to the east or west during gate construction.
2. Excessive traffic, construction crews and National Guard, and an intensified number of illegal trespassing by immigrants.
3. Complaints being filed by the National Guard to the Texas Agriculture Department for the use of chemical treatment.  These complaints have shut down farming operations until the investigation is complete.
4. Temporary loss of water during wall construction.

█████ has requested that his November 2022 rental payment be reduced from $150,000.00 to $140,000.00 and that his annual rental payments moving forward, through the end of his lease term be reduced from $150,000.00 to  $138,000.00.

If approved, total reduction through the end of the lease term (2026) would be $46,000.00.