# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>    Defendants. | No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>    Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

On day one, this Administration announced, "building a massive wall that spans the entire southern border" is a "waste of taxpayer resources" and stopped construction. No. 21-470, ECF 1-4, at 1. Stopping construction of the border wall violates the Administrative Procedure Act, the Impoundment Control Act, and the Constitution. Defendants' refusal to follow Congress's instruction has led to the illegal entry of more than 245,000 persons in the last Fiscal Year in the Rio Grande Valley Sector as of early August 2023. *See* U.S. Dep't of Homeland Security, *Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended*, 88 Fed. Reg. 69214 (Oct. 5, 2023).

Since Plaintiffs' September 12 filing, Defendants confirmed that "[t]here is presently an acute and immediate need to construct physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States…." *Id.* Despite this admission that border walls (physical barriers), rather than cameras (system attributes), prevent unlawful entry, Defendant Mayorkas explains that "There is no new Administration policy with respect to border walls. From day one, this Administration has made clear that a border wall is not the answer. That remains our position and our position has never wavered." DHS, *Statement from Secretary Mayorkas on Recent News Reports* (Oct. 5, 2023). And Defendants continue to tell this Court that it will be spending hundreds of millions on "barrier system attributes" to "add[] cameras, roads, and detection technology" to existing barriers—anything but border wall. Fifth Enriquez Decl. ¶ 12; *id.* ¶ 13 ("anti-climb features on existing physical barriers."). And in new construction—Defendants will merely replace existing border fence under an unchallenged appropriation and now claim that they will "construct approximately 17 miles of new border barrier system in Starr County," *id.* ¶¶ 8, 9, where the GLO Farm is located, instead of securing the entire 1,954 miles of the United States-

1

Mexico border. This only confirms the arbitrariness of Defendants' decision to stop construction of the border wall and illegally spend border wall funds on "system attributes" incapable of preventing unlawful entry.

Defendants also confirm that before 2021 (the Proclamation issued January 20, 2021), Border Patrol "had relatively few encounters with migrants in Zone 5, including the GLO farm," but experienced "a significant increase" to more than 2,000 individuals per month. Gonzalez Decl. ¶ 6. They also agree that border walls, such as the Texas Wall, confer "a tactical advantage in apprehending migrants who attempt to evade apprehension." *Id.* ¶ 7. That is why apprehensions, touted by Defendants in their Sur-Reply, are largely confined to south of the Texas Wall. *See* Gonzalez Decl. Exhibits C–E. As apprehensions only count those individuals that are caught or surrender, they are inconclusive evidence of actual immigration.

Defendants' attempt to misdirect the Court by implying that Plaintiffs' omission of the Texas Wall somehow affects the evaluation of Plaintiffs' injuries or Defendants' fault for them. Sur-Reply 6–7. Not so. *First*, Texas's common sense border wall (what DHS used to agree was good policy) is no secret. The Texas Wall provides more operational control necessary to increase apprehensions. *Second*, it further illustrates what DHS has repeatedly conceded—gaps in border wall are funnels for illegal immigration. It is undisputed that there are gaps on either side of the Texas Wall and that the GLO Farm has been harmed from increased illegal immigration. Defendants' maps and declarations confirm what the Plaintiffs' photos show—uncontrolled immigration across the GLO Farm.[1] Defendants' actions to stop border wall construction created these gaps that encourage illegal immigration harming Plaintiffs' lands and their sovereign interests.

---

[1] The GLO Farm is just but one of many Public School Fund (PSF) Lands managed by GLO within 25 Miles of the Texas Border with Mexico. Supp. App.

I. **<u>The Wall Texas Built.</u>**

Because Defendants abandoned their obligations to build a border wall, Texas built a wall where it could—across Texas-owned land. According to the Governor:

> Texas is taking what truly is unprecedented action by any state ever for a state to build a wall on our border to secure and safeguard the sovereignty of the United States as well as our own state. And this unprecedented action is needed for one single reason, and that's because the Biden Administration has failed to do its job, as required by the Constitution, as required by laws passed by Congress, to enforce the immigration laws of the United States of America.

*See* Watch Live: Debuting Texas Border Wall Construction in Rio Grande City, at www.facebook.com/TexasGovernor/videos/watch-livedebuting-texas-border-wall-constructionin-rio-grande-city/217216753807578 (video of press conference at 1:56–2:34). The previous Texas Land Commissioner noted that as to the GLO Farm:

> this year alone, [the tenant] has seen, on average, a hundred illegal immigrants, on average, every single day come across [the GLO Farm], destroying his crops and destroying his business.

*Id.* (video of press conference at 15:42–15:53). In other words, the Proclamation's end to border wall construction caused harm to Texas on the GLO Farm (and several other revenue producing lands) to such a degree that Texas took unprecedented, remedial efforts.

It is well-known that Texas expended its funds and used its land to help secure the southern border in the wake of the Proclamation. GLO produced documents to Defendants regarding Texas's wall. Supp. App. 108–129 (GLO000249–GLO000262, GLO000375, GLO000882–GLO000888).

No matter how tall the Texas Wall stands, it cannot make up for Defendants' gaps on either end. Supp. App. 132–134 (GLO000376–GLO000378) (showing gap between completed Texas Wall and unfinished federal wall on west side of GLO Farm). As a result, the GLO Farm's north-south roads for farming operations, ECF

No. 107 at 24, ¶ 10, become convenient routes for those seeking to avoid apprehension and find their way to gaps in the southern border wall.

## II.  The Proclamation has caused ongoing harms to Plaintiffs.

Defendants' arguments about causation or the effectiveness of border walls (as opposed to "barrier system attributes") are meritless. The week after the Sur-Reply, Defendant Mayorkas agreed that in Starr County, "[t]here is presently an acute and immediate need to construct physical barriers and roads …in order to prevent unlawful entries into the United States." 88 Fed. Reg. 69214. He did not say DHS just needs cameras to continue observing a quarter of million people flood across Texans' land. That is because Defendants have conceded that connected border wall segments prevent illegal entry.

Defendants wish the Court to ignore what Plaintiffs' limited sample of photographs show—an uncontrolled humanitarian crisis of Defendants' design. But their own affiant confirms that Border Patrol's number of encounters skyrocketed after the Proclamation ended construction. Gonzalez Decl. ¶ 6. Of course, this is what Plaintiffs have said all along: "This new, constant border surge began on the GLO Farm in the middle of January 2021, at approximately the time of the Proclamation, and has continued in the months since." ECF No. 101-1 at 12, ¶ 10 (Supp. App. 10). No factual dispute exists here.

Defendants argue that (1) federal border wall a few miles north of the Rio Grande would not stop migrants from congregating on the southern part of the GLO Farm, (2) the Texas Wall is not a gap in the border wall that funnels migrants onto the GLO Farm, (3) the numerous illegal immigrants choose to migrate onto GLO Farm to voluntarily surrender in a civil process, and (4) Texas bears responsibility for harms to the GLO Farm. Sur-Reply 6–8. These contentions lack merit.

Defendants' first two claims must be rejected on the undisputed evidence. As an initial matter, Plaintiffs have never argued that the Texas Wall helps funnel

4

immigrants onto the GLO Farm or that there is no border wall on the GLO Farm. Remarkably, Defendants argue that "***the federal border wall*** located two miles north of the river" cannot divert immigrants onto the GLO Farm. Sur-Reply 7 (emphasis added). Of course, existing wall segments do not funnel immigrants—the absence of federal wall border wall "become funnel points for illicit cross border activity." ECF No. 107 at 10. Plaintiffs have argued that the Proclamation ending construction signaled that the Southern Border was open for illegal immigration and there has been a surge through gaps in the border wall surrounding the GLO Farm. No one disputes that there are gaps where the Texas Wall ends. *See* Sur-Reply 3 (map of proposed RGV-09 project). The Southwest corner of the GLO Farm is near a "is narrow and relatively shallow" part of the Rio Grande River. Sur-Reply 6. And as explained above, illegal immigrants cross in the vicinity of known border wall gaps to progress further inland. But as Defendants have conceded, connected border wall segments prevent illegal entry and direct illegal immigration to "areas where Customs and Border Protection is better prepared to intercept them, thus reducing illegal immigration." *Gen. Land Off. v. Biden*, 71 F.4th 264, 275 (5th Cir. 2023). It follows that connected federal border wall segments surrounding the GLO Farm would prevent and reduce illegal immigration.

The Supplemental Appendix and Defendant Mayorka's declaration of an "acute and immediate need" for border wall debunks Border Patrol's fantasy of orderly surrender on the GLO Farm. Defendants' evidence tells the Court that the Texas Wall has given Border Patrol greater operational control on the GLO Farm because apprehensions in 2023 are confined to the area near the Rio Grande River. *Compare* Gonzalez Decl. Exhibit C, *with* Gonzalez Decl. Exhibit E. Defendants do not explain the difference between Defendant Mayorkas's 245,000 illegal entries in the Rio Grande Valley and Border Patrol's 24,000 encounters in Zone 5 for the same period. Though confirming group apprehensions (and thus their presence on the GLO

5

Farm) Agent Gonzalez does not tell the Court how many have (or have not) been apprehended. And Agent Gonzalez is silent on the many pages of photos of illegal immigrants seen traipsing across the GLO Farm at all hours.

Finally, Defendants acknowledge that the GLO Farm tenant has witnessed "an intensified number of illegal trespassing by immigrants" since the Proclamation. ECF No. 107 at 37 (GLO000268).

> The tenant of the GLO Farm has a house located on-site and has reported being disturbed by those crossing the border and trespassing on the GLO Farm. Moreover, the law enforcement presence at and around the GLO Farm is now constant, with agents located on the GLO Farm almost 24/7 and helicopters regularly flying overhead. At any given time, government vehicles are typically present patrolling the area. Groups of people are frequently apprehended on the GLO Farm, where nearby buses are regularly stationed to haul them away by the busload. Farming operations on the GLO Farm have been impacted in several ways, including restricting the time frames that certain farming operations are or are not performed and the manner, method, and timing in which certain operations, such as the spraying of chemicals, are being conducted on the GLO Farm. Essential farm activities such as the sorting of crops can no longer be carried on at night due to security concerns.

ECF No. 101-1 at 11–12 ¶9 (Supp. App. 009–010).

The Supplemental Appendix confirms these testimonial accounts. *See* ECF Nos. 101-1 & 101-2. These photographs, taken on the GLO Farm over prolonged periods of time following the Proclamation, confirm the existence of a constant border surge since the Proclamation, including trespassing on and damage to the GLO Farm by migrants. They confirm the constant presence of government vehicles, including a constant supply of buses to haul migrants away, all because of the ongoing border crisis. *See* ECF No. 101-1 at 26–27 (Supp. App. 024–025), 53 (Supp. App. 051); ECF No. 101-2 at 6 (Supp. App. 075), 36–38 (Supp. App. 105–107).[2] These photographs

---

[2] The photographs placed into evidence in Plaintiffs' Supplemental Appendix provide a mere sampling of the photographs collected in this matter. Plaintiffs possess, and have produced in discovery, countless other photographs of government vehicles, buses, and trespassing at all hours of

6

also confirm constant trespassing at night, which affects farming on the GLO Farm. *See* ECF No. 101-1 at 17–19 (Supp. App. 015–017), 28–52 (Supp. App. 026–050), 54–65 (Supp. App. 052–063), 68–73 (Supp. App. 066–071); ECF No. 101-2 at 3 (Supp. App. 072), 7–19 (Supp. App. 076–088), 23 (Supp. App. 092), 26 (Supp. App. 095). And when operating farm equipment, the tenant of the GLO Farm must take care to avoid hitting trespassing migrants and law enforcement. Supp. App. 130 (GLO000339 – "Video – starr co.mov").

Contrary to Defendants' suggestion, Sur-Reply 8, all four reasons the GLO Farm tenant requested a rent reduction relate to illegal trespassing. Defendants would have this Court believe that Texas having to construct a wall does not relate to illegal immigration caused by Defendants' decision to stop border wall construction. The National Guard's presence, and resulting effects, was to manage the illegal immigration surge targeting unsecure sections of the border. Though Plaintiffs have never represented that illegal immigration is the sole reason for the rent reductions, all the reasons relate to the problem illegal immigration and the Proclamation caused.

## CONCLUSION

Nothing in Defendants' Sur-Reply alters the evidence showing that the GLO Farm remains a superhighway of illegal activity, and their own evidence showing a high number of apprehensions confirms that fact. Nor have they demonstrated a causation issue, as the undisputed facts and concessions lead to the conclusion that these harms would be avoided by connected federal border wall segments and caused by Defendants' arbitrary decision to stop construction. Plaintiffs are likely to succeed on the merits as the Proclamation is contrary to congressional appropriations, as well as arbitrary and capricious.

---

the day and night.

The equities justify injunctive relief because the ongoing harms—beyond and including daily trespassing—far outweigh Defendants' refusal to secure the border. And for those migrants that avoid apprehension and make their way inland through the gaps in the southern border wall, the harms suffered by Texas, Missouri, and other sovereigns outweigh Defendants' rationale behind the Proclamation—as Secretary Mayorkas has recognized in declaring "an acute and immediate need" for border wall construction.

The costs to Plaintiffs are non-compensable and thus irreparable and outweigh Defendants' non-existent interest in acting unlawfully. Furthermore, an injunction requiring Defendants to stop enforcing the Proclamation serves the public interest in ensuring that the government follows the law.

For the reasons stated in their motion and this reply, Plaintiffs respectfully request that the Court grant their motion for preliminary-injunctive relief.

RESPECTFULLY SUBMITTED this 31st day of October 2023.

> */s/ Austin R. Nimocks*
> AUSTIN R. NIMOCKS
> *Attorney-in-Charge*
> Texas Bar No. 24002695
> S.D. Tex. Bar No. 2972032
> Email: austin@peelenimocks.com
>
> CHRISTOPHER L. PEELE
> Of Counsel
> Texas Bar No. 24013308
> S.D. Tex. Bar No. 31519
> Email: chris@peelenimocks.com
>
> PEELE | NIMOCKS LAW FIRM
> 6836 Bee Caves Rd., Bldg. 3, Ste. 201
> Austin, TX 78746
> Phone: (512) 522-4893
>
> *Counsel for Plaintiffs Texas General Land Office and Commissioner Dawn Buckingham, M.D.*

| | |
|---|---|
| ANDREW BAILEY<br>Attorney General of Missouri | KEN PAXTON<br>Attorney General of Texas |
| JOSHUA M. DIVINE, #69875MO*<br>Solicitor General | BRENT WEBSTER<br>First Assistant Attorney General |
| /s/ *Jeff P. Johnson*<br>JEFF P. JOHNSON,<br>*Attorney-in-Charge*<br>Dist. of Columbia Bar No. #102921<br>Southern Dist. of Texas Fed. ID No. 3849778<br>Deputy Solicitor General | GRANT DORFMAN<br>Deputy First Assistant Attorney General |
| | RALPH MOLINA<br>Deputy Attorney General for Legal Strategy |
| SAMUEL FREEDLUND, #73707MO*<br>Deputy Solicitor General | /s/ *Ryan D. Walters*<br>RYAN D. WALTERS<br>*Attorney-in-Charge*<br>Chief, Special Litigation Division<br>Texas Bar No. 24105085<br>Southern Dist. of Texas Bar No. 3369185 |
| OFFICE OF THE ATTORNEY GENERAL<br>Supreme Court Building<br>207 West High Street<br>P.O. Box 899<br>Jefferson City, Missouri 65102<br>Tel. (573) 751-1800<br>Fax (573) 751-0774<br>josh.divine@ago.mo.gov<br>jeff.johnson@ago.mo.gov<br>samuel.freedlund@ago.mo.gov | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1414<br>Fax: (512) 936-0545<br>ryan.walters@oag.texas.gov |
| *Counsel for Plaintiff<br>State of Missouri* | *Counsel for Plaintiff State of Texas* |

*Admitted *pro hac vice*

9

**CERTIFICATE OF SERVICE**

I certify that on October 31, 2023, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ <u>*Austin R. Nimocks*</u><br>Counsel for Plaintiffs