## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>        Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>        Defendants. | No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>        Plaintiffs,<br><br>   v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>        Defendants. | No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

## PLAINTIFFS' SUPPLEMENTAL APPENDIX VOLUME III

## TABLE OF CONTENTS

**Vol. I**

Declaration of Alan McWilliams ................................................ Supp. App. 0001

Declaration of Brian Carter ....................................................... Supp. App. 0006

Photos from GLO Farm 2021 to present ................................... Supp. App. 0015

**Vol. II**

Photos from GLO Farm 2021 to present ................................... Supp. App. 0072

**Vol. III**

Documents Regarding Texas's Wall ........................................ Supp. App. 0108

Video of GLO Farm Tenant Farming Amidst
Trespassing Migrants and Law Enforcement ......................... Supp. App. 0130

Public School Fund (PSF) Lands within
25 Miles of the Texas Border with Mexico ............................ Supp. App. 0131

Pictures showing gap between Texas wall
and federal wall on west side of GLO Farm .......................... Supp. App. 0132

# The State of Texas



Austin, Texas

## MISCELLANEOUS EASEMENT

## ME20220011

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF STARR | § | |

This Miscellaneous Easement, ME20220011 (the "Agreement"), is granted by virtue of the authority granted in Section 51.291, et seq., TEX. NAT. RES. CODE, 31 TEX. ADMIN. CODE §13.12, et seq., and all other applicable statutes and rules, as the same may be amended from time to time and is subject to all applicable regulations promulgated from time to time.

## ARTICLE I.  PARTIES

1.01.   In consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the STATE OF TEXAS, acting by and through the Commissioner of the General Land Office, on behalf of the Permanent School Fund, (the "STATE"), hereby grants to the STATE OF TEXAS, acting by and through the Texas Facilities Commission, an agency of the State of Texas, whose address is 1711 San Jacinto, Austin, TX 78701 (the "Grantee"), a perpetual and non-exclusive easement for the purposes identified in Article V.

## ARTICLE II.  PREMISES

2.01.   The easement is located across Permanent School Fund land in Starr County, Texas, described as follows:

> Being a part or portion of Los Fresnos Banco No. 145 and a part or portion of Porcion Nos. 90, 91, 92, 93 and a part or portion of Porcion No. 94, Ancient Jurisdiction of Camargo, Mexico now Starr County, Texas; GLO School File No. 155409, and the easement is a right-of-way approximately 8,880 feet long and 200 feet wide, being 50 feet north and 150 feet south of the TBI bollard wall centerline formed by the Improvements (as hereinafter defined), as constructed and encompassing approximately 42 acres (the "Premises").

The Premises are further described or depicted on the Vicinity Map attached hereto as Exhibit A and the Survey Map/Plat attached hereto as Exhibit B, collectively incorporated by reference for all purposes.

2.02.   Grantee acknowledges and agrees that when the Improvements (as hereinafter defined) are placed on the Premises, the location of such Improvements within the easement shall thereby become fixed at such location and shall not be changed except by an amendment to this Agreement signed by both parties hereto and subject to any approval by any other governmental agency with jurisdiction over same.

2.03.   **GRANTEE HAS INSPECTED THE PHYSICAL AND TOPOGRAPHIC CONDITION OF THE PREMISES AND ACCEPTS THE SAME "AS IS", IN ITS EXISTING PHYSICAL AND TOPOGRAPHIC**

GLO000249

CONDITION.   THE STATE DISCLAIMS ANY AND ALL WARRANTIES OF HABITABILITY, MERCHANTABILITY, SUITABILITY, FITNESS FOR ANY PURPOSE, AND ANY OTHER WARRANTY WHATSOEVER NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE STATE AND GRANTEE HEREBY AGREE AND ACKNOWLEDGE THAT THE USE OF THE TERM "GRANT" IN NO WAY IMPLIES THAT THIS EASEMENT IS FREE OF LIENS, ENCUMBRANCES AND/OR PRIOR RIGHTS. NOTICE IS HEREBY GIVEN TO GRANTEE THAT ANY PRIOR GRANT AND/OR ENCUMBRANCE MAY BE OF RECORD AND GRANTEE IS ADVISED TO EXAMINE THE RECORDS IN THE ARCHIVES AND RECORDS DIVISION OF THE GENERAL LAND OFFICE, 1700 NORTH CONGRESS AVENUE, AUSTIN, TEXAS 78701-1495, AND ALL OTHER LAND TITLE RECORDS OF THE COUNTY IN WHICH THE PREMISES ARE LOCATED.

<center>ARTICLE III.  TERM</center>

3.01.   This Agreement is in perpetuity, beginning on November 1, 2021 ("Effective Date"), unless abandoned or sooner terminated as authorized by law or as set forth herein.

3.02.   In the event Grantee has not begun construction of the Improvements on or before one (1) calendar year from the Effective date, this Agreement shall automatically terminate. Further, in the event Grantee has not completed construction of the Improvements on or before two (2) calendar years from the Effective date, this Agreement shall automatically terminate; provided, however, in the event of litigation involving construction of the Improvements, the STATE may agree in writing to forego the automatic termination for any duration the STATE deems necessary.

<center>ARTICLE IV.  CONSIDERATION AND TAXES</center>

4.01.   A.  As consideration ("Consideration") for the granting of this easement, Grantee agrees to pay the STATE (payable to the Commissioner of the General Land Office at Austin, Texas) the sum of **ONE HUNDRED, TWENTY-FIVE THOUSAND AND 00/100 DOLLARS** (USD $125,000.00) due and payable upon the execution of this Agreement.

B.   Past due Consideration and other past due payments shall bear interest as provided in TEX. NAT. RES. CODE Section 51.301, as amended from time to time. Failure of Grantee to make a payment on or before the date the same becomes due shall, at the STATE's option, make all payments due and payable immediately.

4.02.   In addition to the above, if applicable, Grantee shall pay and discharge any and all taxes, general and special assessments, and other charges which during the term of this Agreement may be levied on or assessed against the Premises or the Improvements constructed thereon, provided such taxes result from Grantee's use of this easement. Grantee shall pay such taxes, charges, and assessments not less than five (5) days prior to the date of delinquency thereof directly to the authority or official charged with the collection thereof.  Grantee shall have the right in good faith at its sole cost and expense to contest any such taxes, charges, and assessments, and shall be obligated to pay the contested amount only if and when finally determined to be owed.

<center>ARTICLE V.  USE OF THE PREMISES</center>

5.01.   Grantee and Grantee's employees, contractors, and agents shall have the right to use the Premises for a right-of-way to construct, maintain, operate, inspect, and repair border wall infrastructure, including but not limited to related and supporting infrastructure, buildings, utilities, access roads for maintenance and patrols, gates, infrastructure for monitoring equipment and communications, and lighting (the "Improvements"). Grantee shall not use the Premises for any other purpose without first obtaining written consent of the STATE, which consent may be granted or withheld in the STATE's sole discretion.

5.02.   A.  The STATE and Grantee hereby acknowledge and agree that each shall have reciprocal rights of ingress and egress to and from the Premises across contiguous or adjacent Permanent School Fund land or land owned by Grantee, provided in the exercise of this right the STATE and Grantee agree not to unreasonably interfere with the other party's

<center>2</center>

GLO000250

(or that party's agents, assignees, or designees) use of its property.  Grantee shall have the right of ingress and egress for the purposes of constructing, maintaining, operating, inspecting, and repairing the Improvements and such right is not granted for any other purpose.  Grantee and the STATE mutually agree to use contiguous or adjacent Permanent School Fund land or land owned by Grantee, respectively, only to the extent and for the length of time necessary to provide access to and from the Premises.  Notwithstanding any other provisions to the contrary, no easement is created by this Section 5.02; instead, a license is granted to the parties and their respective officers, employees, agents and contractors for the limited purposes set forth herein.

B.  Grantee acknowledges and agrees that the STATE's right of ingress and egress described in Section 5.02.A. of this Agreement shall be and remain in effect as long as the Improvements and any other structure placed on the Premises by Grantee remain on the Premises and/or as necessary for the STATE to confirm the removal (in whole or in part) of the Improvements.  Such right of ingress and egress shall survive the expiration or earlier termination of this Agreement.

5.03.   Grantee shall be fully liable and responsible for any damage, of any nature, arising or resulting from any act or omission of Grantee or Grantee's officers, employees, agents, contractors and invitees, which are related to the exercise of the rights granted in this Article V.

5.04.   A.  Grantee's use of the Premises is subject to and contingent upon compliance with the following covenants, obligations and conditions (the "Special Conditions"):

1.   Grantee expressly agrees, at their sole cost and expense, to construct, operate and maintain two (2) forty (40) foot slide gates (the "*Gates*") in the Improvements located on the Premises in order to facilitate access to and from either side of the STATE's remaining property by the STATE, their lessees, agents, or assigns. Grantee shall provide the STATE with reasonable means to open, cross and access the Gates at all reasonable hours of the day. The location of the Gates is more particularly described in Exhibit "A" and any deviation from those locations requires the prior express written consent of the STATE.

2.   Grantee expressly agrees to relocate the existing 12" - 14" irrigation supply lines and 5-6 valves in order to properly accommodate the STATE's land south of the Improvements. The route for the relocated irrigation lines shall be approved by the STATE prior to relocation and in no event shall water to said irrigation lines be shut off for more than six (6) hours.

3.   Prior to initial construction of the Improvements, Grantee shall provide the STATE's lessee with twenty-four (24) hour advance notice.

4.   The STATE, their lessees, agents, and assigns shall be permitted to access and use all maintenance roads constructed on the Premises by Grantee.

B.  Prior to any construction, installation or other activities on the Premises, Grantee shall provide written notice of all Special Conditions, if any, to any contractor and/or agent involved in such activities.  Grantee shall send a copy of such notice to the General Land Office, ATTN: Leasing Operations, 1700 North Congress Avenue, Austin, Texas 78701-1495.

5.05.   The STATE, its agents, representatives and employees shall have the right to enter upon the Premises at any reasonable time (or any time in case of emergency) for purposes of inspection, repair and any other purpose necessary to protect the STATE's interests therein.  Further, the STATE shall have the right to use or to permit the use of any or all of the Premises for any purpose deemed, in the STATE's sole discretion, to be consistent with Grantee's easement grant; provided, however, neither the STATE nor any of the STATE's lessees, agents, or assigns may construct any structures or permanent improvements on the Premises.

GLO000251

5.06.   Grantee shall not use, or permit the use of the Premises for any illegal purpose.  Grantee shall comply, and will cause its officers, employees, agents, contractors and invitees to comply, with all applicable laws, ordinances, rules, and regulations of governing agencies concerning use of the Premises.

5.07.   Failure by Grantee to construct, maintain and operate the Improvements in accordance with this Article V shall render such Improvements "unauthorized structures" under TEX. NAT. RES. CODE §51.302.

## ARTICLE VI.  ASSIGNMENTS

6.01.   Grantee shall not assign the Premises or the rights granted herein, in whole or part, to any third party for any purpose without the prior written consent of the STATE, which may be granted or denied in the STATE'S sole discretion.  Any unauthorized assignment shall be void and of no effect, and such assignment shall not relieve grantee of any liability for any obligation, covenant, or condition of this agreement.  This provision, and the prohibition against assignment contained herein, shall survive expiration or earlier termination of this agreement.  For purposes of this agreement, an assignment is any transfer, including by operation of law, to another of all or part of the property, interest or rights herein granted.

## ARTICLE VII.  PROTECTION OF NATURAL AND HISTORICAL RESOURCES

7.01.   Grantee shall use the highest degree of care and all appropriate safeguards to: (i) prevent pollution of air, ground, and water in and around the Premises, and (ii) to protect and preserve natural resources and wildlife habitat.  Grantee shall comply with all applicable rules and regulations of the General Land Office, the School Land Board, and other governmental agencies responsible for the protection and preservation of public lands and waters.  In the event of pollution or an incident that may result in pollution of the Premises or adjacent property which is the result of Grantee's (or Grantee's employees, contractors, and agents) acts or omissions, Grantee shall immediately notify the STATE, use all means reasonably available to recapture any pollutants which have escaped or may escape, and mitigate for any and all natural resources damages caused thereby.

**7.02.   GRANTEE IS HEREBY EXPRESSLY NOTIFIED OF THE NATIONAL HISTORIC PRESERVATION ACT OF 1966, (PB-89-66, 80 STATUTE 915, 16 U.S.C.A. SECTION 470, ET.SEQ.) AND THE TEXAS ANTIQUITIES CODE [TITLE 9, CHAPTER 191, TEX. NAT. RES. CODE].  IN CONFORMANCE WITH THESE LAWS, IN THE EVENT THAT ANY SITE, FOUNDATION, BUILDING, STRUCTURE, LOCATION, OBJECT, ARTIFACT, ITEM OR OTHER FEATURE OF ARCHEOLOGICAL, SCIENTIFIC, EDUCATIONAL, CULTURAL, OR HISTORIC INTEREST IS ENCOUNTERED DURING THE ACTIVITIES AUTHORIZED BY THIS AGREEMENT, GRANTEE SHALL IMMEDIATELY CEASE ANY AND ALL ACTIVITIES, AND NOTIFY THE COMMISSIONER OF THE GENERAL LAND OFFICE AND THE TEXAS HISTORICAL COMMISSION, P.O. BOX 12276, AUSTIN, TEXAS 78711, SO THAT APPROPRIATE ACTION MAY BE TAKEN. IN THE EVENT THAT GRANTEE IS REQUIRED TO CEASE ACTIVITIES, THE STATE SHALL NOT BE LIABLE FOR ANY COSTS OF GRANTEE, GRANTEE'S AGENTS, EMPLOYEES, CONTRACTORS, SUBCONTRACTORS, OR ANY OTHER PERSON OR ENTITY AS A RESULT OF ANY INTERRUPTION OF GRANTEE'S ACTIVITIES OR INABILITY TO USE THE PREMISES AS HEREIN CONTEMPLATED.**

## ARTICLE VIII.  INDEMNITY AND INSURANCE

**8.01.   TO THE EXTENT ALLOWED BY LAW, GRANTEE SHALL BE FULLY LIABLE AND RESPONSIBLE FOR ANY DAMAGE, OF ANY NATURE, ARISING OR RESULTING FROM ITS OWN ACTS OR OMISSIONS RELATED TO ITS EXERCISE OF THE RIGHTS GRANTED HEREIN.  GRANTEE AGREES TO AND SHALL INDEMNIFY AND HOLD THE STATE, THE STATE'S OFFICERS, AGENTS, AND EMPLOYEES, HARMLESS FROM AND AGAINST CLAIMS, SUIT, COSTS, LIABILITY OR DAMAGES OF ANY KIND, INCLUDING STRICT LIABILITY CLAIMS, WITHOUT LIMIT AND WITHOUT REGARD TO CAUSE OF THE DAMAGES OR THE NEGLIGENCE OF ANY PARTY, EXCEPT**

GLO000252

**FOR THE CONSEQUENCES OF THE NEGLIGENT ACTS OR WILLFUL MISCONDUCT OF THE STATE, THE STATE'S OFFICERS, AGENTS, EMPLOYEES, OR INVITEES, ARISING DIRECTLY OR INDIRECTLY FROM GRANTEE'S USE OF THE PREMISES (OR ANY ADJACENT OR CONTIGUOUS PSF LAND) OR FROM ANY BREACH BY GRANTEE OF THE TERMS, COVENANTS OR CONDITIONS CONTAINED HEREIN.**

8.02.   A.   Grantee is an agency of the State of Texas and is self-insured. Grantee agrees to require all contractors, subcontractors, or agents that enter onto the Premises to either (i) purchase and maintain a Required Policy (as hereinafter defined) of insurance coverage, or (ii) provide Financial Documentation (as hereinafter defined) to the STATE.   Grantee agrees to deliver or cause to be delivered to the STATE and/or the STATE's designee either, as applicable: (i) a certificate of insurance for any Required Policy or (ii) Financial Documentation, within thirty (30) days of execution of this Agreement.   At all times during the term of this Agreement, Grantee shall cause the required evidence of insurance coverage or financial capacity to be deposited with the STATE.   If Grantee fails to do so, such failure may be treated by the STATE as a default by Grantee under this Agreement.

        B.   The phrase "Required Policy" shall mean the policy of insurance in an amount customarily carried for similar projects and use.   Such Required Policy shall insure against any and all loss or damage as may be required by rule (including, without limitation, coverage for bodily injury, death, property damage, premises and operations, products liability, contractual liability, and/or strict liability).   Any Required Policy shall name the STATE (and any of its successors and assigns designated by the STATE) as an additional insured.

        C.   The phrase "Financial Documentation" shall mean a financial statement and/or other evidence of financial responsibility or capacity which is determined to be satisfactory to the STATE.

## ARTICLE IX.   DEFAULT, TERMINATION AND EXPIRATION

9.01.   If, following 30 days prior written notice from the STATE specifying a default or breach, Grantee fails to pay any money due hereunder or is in breach of any term or condition of this Agreement, the STATE shall have the right, at its option and its sole discretion, to terminate this Agreement and all rights inuring to Grantee herein by sending written notice of such termination to Grantee in accordance with Article XI of this Agreement.   Upon sending of such written notice, this Agreement shall automatically terminate and all rights granted herein to Grantee shall revert to the STATE.   Such termination shall not prejudice the rights of the STATE to collect any money due or to seek recovery on any claim arising hereunder.

9.02.   Grantee shall, within one hundred twenty (120) days from the date of termination of this Agreement, remove all personal property, structures, and the Improvements, and shall restore the Premises (and any other property affected by such removal activities) to the same condition that existed before Grantee entered thereon.   Such removal and restoration activities shall be conducted in accordance with General Land Office guidelines in effect at the time of removal/restoration which may include, without limitation, specific removal techniques required for protection of natural resources, and mitigation or payment in lieu of mitigation for any and all damages resulting from removal activities. Grantee shall notify the STATE at least ten (10) days before commencing removal/restoration activities so that a field inspector may be present.

## ARTICLE X.   HOLDOVER

10.01. If Grantee holds over and continues in possession of the Premises after the termination of this Agreement, Grantee will be deemed to be occupying the Premises on the basis of a month-to-month tenancy subject to all of the terms and conditions of this Agreement, except that as liquidated damages by reason of such holding over, the amounts payable by Grantee under this Agreement shall be increased such that the Consideration payable under Section 4.01 of this Agreement and any other sums payable hereunder shall be two hundred percent (200%) of the amount payable to the STATE by Grantee for each month of the holdover period.   Grantee acknowledges that in the event it holds over, the STATE's actual damages will be difficult, if not impossible, to ascertain, and the liquidated damages herein agreed

to be paid are reasonable in amount and are payable in lieu of actual damages and are not a penalty. Grantee further acknowledges that acceptance of hold over Consideration does not imply STATE consent to hold over.

10.02. The tenancy from month-to-month described in Section 10.01 of this Agreement may be terminated by either party upon thirty (30) days written notice to the other.

10.03. The Consideration due after notice of termination has been given is to be calculated according to Section 10.01 hereinabove on a pro rata basis. If upon notice of termination by the STATE, Grantee pays Consideration in excess of the amount due and payable and the STATE accepts such payment, the acceptance of such payment will not operate as a waiver by the STATE of the notice of termination unless such waiver is in writing and signed by the STATE. Any such excess amounts paid by Grantee and accepted by the STATE shall be promptly refunded by the STATE after deducting therefrom any amounts owed to the STATE.

## ARTICLE XI.  NOTICE

11.01.  Any notice which may or shall be given under the terms of this Agreement shall be in writing and shall be either delivered by hand or by United States first class mail, adequate postage prepaid, if for the STATE to the Deputy Director of Leasing Operations, addressed to 1700 North Congress Avenue, Austin, Texas 78701-1495, FAX: (512) 463-5098, and if for Grantee, to it at 1711 San Jacinto, Austin, TX 7870, with a copy to Legal Division, Texas Facilities Commission, P.O. Box 13047, Austin, TX 78711-3047. Any party's address may be changed from time to time by such party by giving notice as provided above, except that the Premises may not be used by Grantee as the sole notice address. No change of address of either party shall be binding on the other party until notice of such change of address is given as herein provided. Electronic mail is not acceptable form of notice.

11.02. For purposes of the calculation of various time periods referred to in this Agreement, notice delivered by hand shall be deemed received when delivered to the place for giving notice to a party referred to above. Notice mailed in the manner provided above shall be deemed completed upon the earlier to occur of (i) actual receipt as indicated on the signed return receipt, or (ii) three (3) days after posting as herein provided.

## ARTICLE XII.  INFORMATIONAL REQUIREMENTS

12.01. A. Grantee shall submit to the STATE, within one hundred eighty (180) days following installation or construction of the Improvements authorized in this Agreement, an "as-built" survey and field notes prepared by a surveyor duly licensed by the State of Texas. The as-built survey shall be conducted in accordance with the STATE's survey requirements attached hereto as Exhibit C. Failure or refusal by Grantee to timely provide the as-built survey when due hereunder and the continuance of such failure for thirty (30) consecutive days after the receipt of the STATE's written notice to Grantee specifying such failure may be treated as a default by Grantee hereunder and the STATE may, in addition to any other remedy and in the STATE's sole discretion, terminate this Agreement and require removal of any personal property and the Improvements located on the Premises in accordance with Section 9.02 of this Agreement.

B.  Upon receipt of the as-built survey, prepared in accordance with this Section 12.01, the STATE shall compare the as-built survey with the proposed location of the Improvements, as represented by Grantee's application to the STATE and set forth in Section 2.01 hereof. If there are any changes or discrepancies in the location of the Improvements authorized by this Agreement, the STATE may, in its sole discretion, replace Exhibit "B" attached hereto with a substitute corrected exhibit denoted "Exhibit B-1". The substitute shall be the as-built survey, signed by both parties, and, upon attachment hereto, Exhibit "B" shall be void and of no further effect.

12.02. If all or any part of the Improvements are buried, Grantee shall submit to the STATE, one hundred eighty (180) days following installation or construction of the Improvements, a "burial survey" prepared by a surveyor duly licensed by the State of Texas. The burial survey shall be conducted in accordance with the STATE's survey requirements attached hereto as Exhibit C. Failure or refusal by Grantee to timely provide the burial survey when due hereunder and the continuance of such failure for thirty (30) consecutive days after the receipt of the STATE's written notice to Grantee specifying such failure may be treated as a default by Grantee hereunder and the STATE may, in addition to any other

GLO000254

remedy and in the STATE's sole discretion, terminate this Agreement and require removal of any personal property and the Improvements located on the Premises in accordance with Section 9.02 of this Agreement.

12.03. Grantee shall provide written notice to the STATE of any change in Grantee's name, address, corporate structure, legal status or any other information relevant to this Agreement.

12.04. Grantee shall provide to the STATE any other information reasonably requested by the STATE in writing within fifteen (15) days following such request or such other time period approved by the STATE (such approval not to be unreasonably withheld).

12.05. Except with regard to initial construction/installation of the Improvements and emergencies, prior to conducting any activities at the Premises which may materially impact natural resources in or around the Premises, Grantee shall provide written notice to the STATE describing the proposed activities in detail and any procedures which will be used to protect natural resources. Such notice shall be provided by Grantee to the STATE at least sixty (60) days prior to conducting re-burial activities, and at least thirty (30) days prior to conducting major repairs, modification, or other activities. Grantee acknowledges and agrees that the STATE shall have at least twenty (20) days following receipt of the notice to review the proposed activities and to impose specific conditions for conducting such activities which, in the STATE's sole determination, are necessary to protect natural resources or to mitigate for actual damages to natural resources. If the STATE has not provided notice to Grantee within twenty (20) days following receipt of Grantee's notice, the STATE is deemed to have approved, subject to the terms of this Agreement, the proposed activities to be conducted at the Premises. In case of emergencies, Grantee may undertake all actions necessary to prevent imminent injury or damage to public health, safety or welfare, and/or to protect natural resources. Within twenty-four (24) hours following such emergency actions, Grantee shall provide notice to the STATE of such actions as hereinabove provided. (If not during normal business hours, call 1-800-832-8224).

12.06. Grantee hereby acknowledges that late submission by Grantee to the STATE of information (including, without limitation, as-built and/or burial surveys) required under this Agreement will cause the STATE to incur various expenses not contemplated by this Agreement, the exact amount of which are presently difficult to ascertain. Accordingly, if any information required to be submitted within a certain time under the terms of this Agreement shall not be received by the STATE on or before five (5) days after the date when due, then, Grantee shall pay to the STATE a "Late Charge" equal to one hundred dollars ($100.00) for each day so past due. The STATE and Grantee agree that such Late Charge represents a fair and reasonable estimate of the expenses that the STATE will incur by reason of such late submission of information by Grantee. Acceptance of such Late Charge by the STATE shall not constitute a waiver of Grantee's default with respect to any such past due information, nor prevent the STATE from exercising any other rights and remedies granted under this Agreement, at law, or in equity.

### ARTICLE XIII.  MISCELLANEOUS PROVISIONS

13.01. With respect to terminology in this Agreement, each number (singular or plural) shall include all numbers, and each gender (male, female or neuter) shall include all genders. If any provision of this Agreement shall ever be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions of the Agreement, but such other provisions shall continue in full force and effect.

13.02. The titles of the Articles in this Agreement shall have no effect and shall neither limit nor amplify the provisions of the Agreement itself. This Agreement shall be binding upon and shall accrue to the benefit of the STATE, its successors and assigns, Grantee, Grantee's successors and assigns (or heirs, executors, administrators and assigns, as the case may be); however, this clause does not constitute a consent by the STATE to any assignment by Grantee, but instead refers only to those instances in which an assignment is hereafter made in strict compliance with Article VI above, or in the case of a deceased natural person grantee, refers to the instances previously referred to in this sentence and also circumstances in which title to Grantee's interest under this Agreement passes, after the demise of Grantee, pursuant to Grantee's will or the laws of intestate succession. The words "hereof," "herein," "hereunder," "hereinafter"

GLO000255

and the like refer to this entire agreement, not just to the specific article, section or paragraph in which such words appear.

13.03. Neither acceptance of Consideration (or any portion thereof) or any other sums payable by Grantee hereunder (or any portion thereof) to the STATE nor failure by the STATE to complain of any action, non-action or default of Grantee shall constitute a waiver as to any breach of any covenant or condition of Grantee contained herein nor a waiver of any of the STATE's rights hereunder.  Waiver by the STATE of any right for any default of Grantee shall not constitute a waiver of any right for either a prior or subsequent default of the same obligation or for any prior or subsequent default of any other obligation.  No right or remedy of the STATE hereunder or covenant, duty or obligation of Grantee hereunder shall be deemed waived by the STATE unless such waiver be in writing, signed by a duly authorized representative of the STATE.

13.04. No provision of this Agreement shall be construed in such a way as to constitute the STATE and Grantee joint venturers or co-partners or to make Grantee the agent of the STATE or make the STATE liable for the debts of Grantee.

13.05. In all instances where Grantee is required hereunder to pay any sum or do any act at a particular indicated time or within an indicated period, it is understood that time is of the essence.

13.06. Under no circumstances whatsoever shall the STATE ever be liable hereunder for consequential damages or special damages.  The terms of this Agreement shall only be binding on the STATE during the period of its ownership of the Premises, and in the event of the transfer of such ownership interest, the STATE shall thereupon be released and discharged from all covenants and obligations thereafter accruing, but such covenants and obligations shall be binding during the Agreement term upon each new owner for the duration of such owner's ownership.

13.07. All monetary obligations of the STATE and Grantee (including, without limitation, any monetary obligation for damages for any breach of the respective covenants, duties or obligations of either party hereunder) are performable exclusively in Austin, Travis County, Texas.

13.08. The obligation of Grantee to pay all Consideration and other sums hereunder provided to be paid by Grantee and the obligation of Grantee to perform Grantee's other covenants and duties under this Agreement constitute independent, unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is expressly provided for in this Agreement and not otherwise.  Grantee waives and relinquishes all rights which Grantee might have to claim any nature of lien against, or withhold or deduct from or offset against, any Consideration or other sums provided hereunder to be paid to the STATE by Grantee.  Grantee waives and relinquishes any right to assert, either as a claim or as a defense, that the STATE is bound to perform or is liable for the nonperformance of any implied covenant or implied duty of the STATE not expressly set forth in this Agreement.

ARTICLE XIV.  FILING

14.01. Grantee shall, at its sole cost and expense, record this Agreement in the «Txtcounty» County Real Property Records and provide a file marked copy to the STATE within 60 days after this Agreement is executed by all parties.

ARTICLE XV.  ENTIRE AGREEMENT

15.01. This Agreement, including exhibits, constitutes the entire agreement between the STATE and Grantee and no prior written or prior or contemporaneous oral promises, warranties or representations shall be binding.  This Agreement shall not be amended, changed, altered, assigned or extended except by written instrument signed by all parties hereto.

15.02. This Agreement shall become effective only upon execution by all parties hereto and delivery of a fully executed counterpart to each party.

[Remainder of the page left intentionally blank]

8

GLO000256

IN TESTIMONY WHEREOF, witness my hand and Seal of Office.

**GRANTOR:   THE STATE OF TEXAS**

By: _____

George P. Bush
Commissioner, Texas General Land Office

Date: _____

**APPROVED:**

Contents: _____

Legal: _____

Deputy:

GC: _____

Executive: _____

Supp. App. 0116                                        GLO000257

**GRANTEE:** THE STATE OF TEXAS, acting by and
through the Texas Facilities Commission

By: _____

Name: Mike Novak
Title: Executive Director

Date: 11-2-2021

### ACKNOWLEDGMENT FOR GRANTEE

STATE OF TEXAS. §
§
COUNTY OF TRAVIS §

This instrument was acknowledged before me on the 2ND day of NOVEMBER, 2021,

by MIKE NOVAK.
*(Grantee representative signing this document)*

_____
*(Notary Signature)*

Notary Public, State of TEXAS.

My commission expires: MARCH 1, 2023

*Notary Stamp*
KIMBERLY G FRENCH
Notary ID #131913919
My Commission Expires
March 1, 2023

10
Supp. App. 0117

GLO000258

**Exhibit "A"**

GLO000259



EXHIBIT "A"

TBI EASMENT ACREAGE ~ 42 ac
GLO ACREAGE NORTH OF TBI ~ 1007 ac
GLO ACREAGE SOUTH OF TBI ~ 1875 ac

HORIZ. SCALE IN FEET

35% DRAFT - NOT FOR CONSTRUCTION

GLO000260



EXHIBIT "B"

GLO000261

DRAFT - NOT FOR CONSTRUCTION



Exhibit "B"

GLO000262

SHEET ID

GI002

DRAFT - NOT FOR CONSTRUCTION



GATE

West End of Wall

STARR

GATE

East End of Wall

# GLO Land/Lease Mapping Viewer



Please review all copyright and disclaimer information from our webpage here. https://www.glo.texas.gov/policy/index.html.  The Texas General Land Office makes no representations or warranties regarding the accuracy or completeness of the information depicted on this map or the data from which it was produced. This map is not suitable for navigational purposes and does not purport to depict boundaries of private and public land.

Supp. App. 0122

mi
0    0.13  0.25           0.5



GLO000375

Print Date: 8/30/2022

DocuSign Envelope ID: F8606F68-6BC9-48B3-85A2-F0C4AC9FF936

## License Agreement -- The Texas General Land Office

This License Agreement is made and entered into as of November 13, 2020 (the "Effective Date") by and between the **TEXAS GENERAL LAND OFFICE**, on behalf of the Permanent School Fund, an agency of the State of Texas with a mailing address of 1700 North Congress Avenue, Austin Texas 78701 (the "Licensor"), and **U.S. CUSTOMS AND BORDER PROTECTION** ("CBP"), together with CBP's employees, representatives, contractors, and subcontractors (collectively, the "Licensees").

WHEREAS, The States of Texas, acting by and through the Texas General Land Office on behalf of the Permanent School Fund, is the lawful owner and manager of several tracts of land located near the international border between the United States and Mexico, with said tracts of land being more specifically located within the Texas counties of Cameron, Hidalgo, Starr, Zapata, Webb, Dimmit, Maverick, Kinney, Val Verde, Terrell, Brewster, Presidio, Jeff Davis, Hudspeth, and El Paso, as those counties are generally depicted on Exhibit A, which is attached hereto and made a part hereof. Said tracts of land (hereinafter, the "Properties") are more particularly described and depicted as individual parcels within the records and website (https://glo.texas.gov/land/land-management/gis/index.html) of the Texas General Land Office;

WHEREAS, the Properties include a vast network of non-public roadways located within 25 miles of the international border with Mexico (hereinafter, "Access Roads") that the Licensor, and the Licensor's grantees and permittees, may use to access and traverse the Properties and adjacent tracts of land;

WHEREAS, CBP, acting in part through the United States Border Patrol, is responsible for securing the United States border;

WHEREAS, CBP may use the Access Roads in the course of exercising CBP's statutory authority to patrol the international border in order to prevent the illegal entry of aliens into the United States (see 8 U.S.C. § 1357(a)(3));

WHEREAS, from time to time, the Licensees may desire to enter upon the Properties to maintain, repair and improve the existing Access Roads within their current footprints, and to perform site survey and assessment activities related to such maintenance, repair, and improvements with prior notice to the Licensor, in order to help ensure that CBP is able to safely and effectively patrol the United States' border with Mexico;

WHEREAS, Licensor understands and acknowledges that this License Agreement does not affect the authority of CBP to access property, as authorized by law, in the course of performing its border security and enforcement mission;

WHEREAS, this License Agreement expresses Licensor's permission for the Licensees to non-exclusive access of the Properties for the purposes as set forth below; and

WHEREAS, Licensor acknowledges that well maintained Access Roads on the Properties help lead to improved border security and provide a benefit to Licensor;

GLO000882

DocuSign Envelope ID: F8606F68-6BC9-48B3-85A2-F0C4AC9FF936

**NOW THEREFORE**, effective as of the date of full execution of this License Agreement, the undersigned parties agree as follows:

1.     Permitted Use.   The Licensees are permitted to enter upon the Properties to maintain, repair and improve existing Access Roads, including but not limited to the Access Roads or portions thereof detailed on the Texas General Land Office website, and perform site survey and assessment activities (the "Permitted Use").   Licensees understand and acknowledge that no disturbance to soils is permitted outside of established Access Roads unless approved by the Licensor. The Licensees' Permitted Use also includes the following activities: (a) removing hazardous obstructions that impede access to, maintenance and repair of, or improvement to existing Access Roads, (b) graveling, grading, removing debris, filling in potholes, controlling drainage (any soil work outside of existing Access Roads must be approved by the Licensor and cleared for compliance with applicable laws, including cultural resources ), and repairing weather-related damage to roadway surfaces; (c) implementing erosion control measures such as re-seeding, re-planting, mulching and/or placement of silt screen, hay bales and/or erosion control blankets; (d) performing site surveys and site assessments related to the aforesaid activities; (e) access for the purpose of accessing and performing work on adjacent properties (f) access for, and temporary storage of, the equipment, materials and supplies necessary for the aforesaid activities, provided that said temporary storage shall be allowed only for so long as the Properties are being used for the Permitted Use and that no permanent storage will be allowed, and (g) any other activities that are reasonably necessary to perform the Permitted Use.

2.     Notice.   Prior to performing the Permitted Use on a particular segment of Access Roads, Licensees shall provide notice to Licensor that (a) identifies the general location of the segment of Access Roads at issue, and (b) indicates the period during which Licensees expect to perform the Permitted Use on that segment of Access Roads.   Licensor shall subsequently notify any other grantees or permittees who may be affected by Licensees planned exercise of the Permitted Use.   Licensees shall provide the written notice required by this paragraph to Alan McWilliams, Deputy Director of Leasing Operations at 1700 North Congress Avenue, Austin Texas, 78701 or Alan.McWilliams@glo.texas.gov with a copy to Nick.Orman@glo.texas.gov.

3.     Authority.   Licensor affirms, to the best of its knowledge and belief, its lawful ownership of the Properties and Access Roads, and its authority to execute this License Agreement to permit the Licensees to access and use the Properties and Access Roads for the Permitted Use.

4.     Revocability.   Although this License Agreement will not automatically terminate upon a certain date, Licensor retains the right to revoke the License Agreement for any reason. NOTICE: In the even Licensor decides to revoke the License Agreement, Licensor agrees to provide written notice of revocation to CBP at least sixty (60) days prior to the effective date of revocation by delivering the notice to the License Administrator at the following address:

> U.S. Customs and Border Protection
> ATTN: License Administrator
> USBP PMOD, 6.5E STOP 1039
> 1300 Pennsylvania Avenue NW
> Washington, D.C. 20229

Supp. App. 0124

GLO000883

GLO000884

DocuSign Envelope ID: F8606F68-6BC9-48B3-85A2-F0C4AC9FF936

The License Administrator can also be reached via email at LicenseAdministrator@cbp.dhs.gov

  5. Contact for Questions, Concerns or Changes of Ownership Information. After executing this License Agreement, should the Licensor have any questions or concerns regarding this License Agreement or the Permitted Use that is undertaken pursuant to this License Agreement, CBP invites the Licensor to contact the License Administrator noted above. CBP is committed to being responsive to any and all correspondence received from Licensor.

  6. Restoration. Considering the nature of the Permitted Use authorized by this License Agreement, in the event of revocation, or in the event CBP determines that it is no longer necessary to access the Properties or the Access Roads to perform the Permitted Use, CBP will remove any equipment or other property stored upon the Property by the Licensees in connection with this License Agreement, but CBP will not otherwise be required to restore the Properties or the Access Roads to their earlier condition. Licensees shall nevertheless perform the Permitted Use in a safe and orderly manner.

  7. Costs. Licensor acknowledges that this License Agreement is being granted without cost or monetary compensation to Licensor. CBP acknowledges that it is responsible for all costs associated with the Licensees' use of the Property for the Permitted Use.

  8. Non-Exclusivity. The Licensees' use of the Properties for the Permitted Use pursuant to this License Agreement does not limit the Licensor or its grantees' and permittees' ability to use the Properties or the Access Roads thereon. However, Licensor understands that this License Agreement in no way restricts CBP from conducting any statutorily authorized activities on the Properties.

  9. Permission Specific to Licensor. This License Agreement is effective only insofar as Licensor retains ownership of the Property.

  10. No Assignment or Transfer. The rights of Licensees to use the Property pursuant to this License Agreement is restricted solely to Licensees and shall not be assigned, transferred, sublicensed, encumbered, or subject to any security interest without the written authorization of Licensor. Any attempted assignment will be void and of no effect.

  11. Modification or Amendment. This License Agreement may only be modified or amended by a written agreement, signed by Licensor and an authorized representative of CBP.

  12. No Waiver of Federal Tort Claims Act Remedies. Licensor does not waive any right to seek remedies for any damages that may result from this License Agreement. Licensor understands that its exclusive remedy for damage claims against CBP is pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 - 2680, as amended.

  13. Insurance. Licensor acknowledges that CBP, as a federal agency, is a self-insured entity. If CBP causes any personal injury or death, or loss or damage to any real or personal property of any person, then CBP's liability, if any, shall be determined in accordance with the FTCA. In addition, any contractors, subcontractors, or non-federal government personnel that intend to exercise the Permitted use on behalf of CBP pursuant to this License Agreement shall

GLO000885

DocuSign Envelope ID: F8606F68-6BC9-48B3-85A2-F0C4AC9FF936

obtain adequate insurance for payment of any damages, which might result during their exercise of the Permitted Use.  Any such entity shall submit proof of insurance coverage to the Licensor prior to performing the Permitted Use.

14.  <u>Availability of Funds</u>.  In accordance with applicable federal law, the obligations of CBP under this License Agreement, if any, shall be subject to the availability of appropriated funds.  No appropriated funds are obligated by this License Agreement.

15.  <u>No Obligation to Perform Work</u>.  Licensor acknowledges that although this License Agreement authorizes the Licensees to access the Properties and the Access Roads to perform the Permitted Use, the Licensees are under no obligation to do so.

16.  <u>Disclaimer</u>.  This License Agreement does not, and should not be construed to; create any substantive or procedural right or benefit, enforceable at law against the United States, its agencies, its officers, or its employees.

17.  <u>Entire Agreement</u>.  This License Agreement constitutes the entire agreement between Licensor and CBP with respect to the Licensees' use of the Properties for the Permitted Use; provided, however, that if the Properties or any portion thereof is subject to an existing lease, license, right of entry, or other existing agreement with CBP or any other branch of the federal government, then the terms and provisions of this License Agreement shall not alter or otherwise affect the terms and provisions of such existing license agreement.

18.  <u>Counterparts and Facsimile Signatures</u>.  This License Agreement may be executed in counterparts, each of which shall be deemed to be an original of equal dignity with the other, but all of which together shall constitute but one and the same instrument, and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  The execution of this License Agreement by the signature of any party electronically transmitted as a facsimile or scan shall have the same force and validity as an original signature.  The exchange of copies of this License Agreement and of signature pages by facsimile transmission, by electronic mail in "portable document format" ("PDF") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this License as to the parties and may be used in lieu of the original License Agreement or all purposes.

19.  CBP ACCEPTS THE PROPERTIES "AS IS" IN THEIR EXISTING PHYSICAL AND TOPOGRAPHIC CONDITION. CBP IS NOT RELYING ON ANY REPRESENTATION OR WARRANTY OF THE LICENSOR REGARDING ANY ASPECT OF THE PROPERTIES. LICENSOR DISCLAIMS ANY AND ALL WARRANTIES OF HABITABILITY, MERCHANTABILITY, SUITABILITY, FITNESS FOR ANY PURPOSE, AND ANY OTHER EXPRESS OR IMPLIED WARRANTY NOT EXPRESSLY SET FORTH IN THIS AGREEMENT.  CBP IS PUT ON NOTICE THAT ANY PRIOR GRANT AND/OR ENCUMBRANCE MAY BE OF RECORD AND CBP IS ADVISED TO EXAMINE IN THE ARCHIVES AND RECORDS DIVISION OF THE GENERAL LAND OFFICE, 1700 NORTH CONGRESS AVENUE, AUSTIN, TEXAS, 78701 AND ALL OTHER LAND TITLE RECORDS IN WHICH THE PROPERTIES ARE LOCATED.

GLO000886

DocuSign Envelope ID: F8606F68-6BC9-48B3-85A2-F0C4AC9FF936

20.    IN EXERCISING THE PERMITTED USE AUTHORIZED BY THIS LICENSE AGREEMENT, CBP SHALL COMPLY WITH ALL APPLICABLE LAWS, INCLUDING THE NATIONAL HISTORIC PRESERVATION ACT OF 1966, (PUB. L. NO. 89-665, 80 STAT. 915, AS AMENDED.    IN ADDITION, CBP IS EXPRESSLY PLACED ON NOTICE OF THE ANTIQUITIES CODE OF TEXAS, CHAPTER 191, TEX. NAT. RES. CODE ANN. (VERNON 2000 SUPP.). IN THE EVENT THAT ANY SITE, OBJECT, LOCATION, ARTIFACT OR OTHER FEATURE OF ARCHEOLOGICAL, SCIENTIFIC, EDUCATIONAL, CULTURAL OR HISTORIC INTEREST IS ENCOUNTERED DURING ANY ACTIVITY ON THE PROPERTIES, CBP WILL IMMEDIATELY CEASE SUCH ACTIVITIES AND WILL IMMEDIATELY NOTIFY LICENSOR AND THE TEXAS HISTORICAL COMMISSION, P.O. BOX 12276, AUSTIN, TEXAS 78711, SO THAT ADEQUATE MEASURES MAY BE UNDERTAKEN TO PROTECT OR RECOVER SUCH DISCOVERIES OR FINDINGS, AS APPROPRIATE.

**IN WITNESS WHEREOF,** Licensor and an authorized representative of CBP have caused this License Agreement to be executed.

For Licensor:

The Texas General Land Office

By: _____ on  11/13/2020
Printed Name: George P. Bush        Date
Title: Commissioner

For U.S. Customs and Border Protection:

PAUL R
ENRIQUEZ

Digitally signed by
PAUL R ENRIQUEZ
Date: 2020.10.30
17:54:32 -04'00'           on    10/30/20

Paul Enriquez                              Date
Division Director
Program Management Office Directorate
United States Border Patrol

Page 5 of 5



DocuSign Envelope ID: F8606F68-6BC9-48B3-85A2-F0C4AC9FF936

**Legend**
Texas County Border
Existing TI Roads

Date: 10/16/2020
Sector: All Southern
Border Sectors
Data Sourced from TxDot
Open Data and CBP FITT
Database

**Texas General
Land Office, Owner(s)**

Existing Tactical Infrastructure Roads
Southern Texas Border

Exhibit A, Page 1/1



N

0          62.5          125
Mi

Supp. App. 0129

GLO000888

[Placeholder and confirmation of GLO's production of video: "Video – starr co.mov"]

GLO000339



Public School Fund (PSF) Lands within 25 Miles of the Texas Border with Mexico
EL PASO
HUDSPETH
CULBERSON
LOVING
WINKLER
ECTOR
MIDLAND
GLASSCOCK
STERLING
COKE
MARTIN
HOWARD
MITCHE
WARD
CRANE
UPTON
REAGAN
TOM GREEN
IRION
REEVES
JEFF DAVIS
PECOS
CROCKETT
SCHLEICHER
SUTTON
TERRELL
PRESIDIO
BREWSTER
VAL VERDE
EDWARDS
KINNEY
MAVERICK
County Boundary
Rio Grande 25 Mile Buffer
PSF Surface Land 25 Miles from Border
VAL VERDE
KINNEY
UVALDE
MEDINA
BEXAR
GONZALES
LAVACA
WILSON
DEWITT
JACKSON
MAVERICK
ZAVALA
FRIO
ATASCOSA
KARNES
VICTORIA
GOLIAD
CALHOUN
DIMMIT
LASALLE
MCMULLEN
LIVE OAK
BEE
REFUGIO
JIM WELLS
SAN PATRICIO
WEBB
DUVAL
NUECES
KLEBERG
ZAPATA
JIM HOGG
BROOKS
KENEDY
STARR
HIDALGO
WILLACY
CAMERON
0 20 40 Miles
The Texas General Land Office manages approximately 497,075 acres of PSF Surface properties within 25 miles of the Texas border with Mexico.
N
W
E
S
0 20 40 80 Miles
Texas General Land Office
George P. Bush, Commissioner
Geospatial Technology Services
June 17, 2021
The Texas General Land Office makes no representations or warranties regarding the accuracy or completeness of the information depicted on this map or the data from which it was produced. This map IS NOT suitable for navigational purposes and does not purport to depict or establish boundaries between private and public land.



GLO000376



GLO000377



GLO000378