# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>    Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>    Defendants. | No. 7:21-cv-00272 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO ADDITIONAL QUESTIONS PRESENTED BY THE COURT**

1

# INTRODUCTION

Each topic this Court addressed at the hearing on November 29, 2023, poses no obstacle to speedily granting Plaintiffs relief.

On standing, the Fifth Circuit already concluded that Plaintiffs have standing if this Court finds that Plaintiffs adequately supported their factual allegations. Injury in fact has never been at issue. And as to causation and redressability, Plaintiffs have established that relief here would tend to slow or reduce the number of immigrants illegally entering the country, which the Fifth Circuit concluded would be sufficient. The *Enforcement Priorities* decision that postdates the Fifth Circuit's decision was exceptionally narrow and limited to the "highly unusual provision of federal law" and the "highly unusual" lawsuit at issue in that case. It does not undermine the Fifth Circuit's decision in this case.

The Fifth Circuit's decision also makes clear that the States separately have special solicitude, and that doctrine has never been overturned by the Supreme Court. Although the States have standing independent of that doctrine, one way of understanding that doctrine is merely as a recognition that States can assert things that individual plaintiffs cannot: like sovereign and quasi-sovereign interests. The Supreme Court has expressly recognized that one incredibly important sovereign interest is "maintenance and recognition of borders."

As to causes of action, Plaintiffs have asserted statutory, constitutional, and procedural claims through the vehicle of the Administrative Procedure Act, as well as through inherent equitable actions to enforce the Constitution. The APA expressly

provides a cause of action even absent a finding that agency action is arbitrary and capricious.

As to what specific remedy would provide redress, both prohibitive relief and mandatory relief would help redress Plaintiffs' injuries. The redressability concerns Justice Gorsuch expressed in his separate opinion in the *Enforcement Priorities* case do not apply here. That case implicated a statute that prohibited courts from entering injunctions. Even vacating the agency action—in Justice Gorsuch's view—could not provide redress because federal officials possessed underlying discretion in line with that agency action. Here, however, no statute prohibits injunctive relief, and federal officials possess no underlying discretion not to use the relevant funds to build new border barriers. Congress expressly directed otherwise.

A prohibitive injunction against implementing the January 20 Proclamation would provide redress because it would enjoin what currently serves as an impediment to complying with the congressional mandate. And a mandatory injunction directing Defendants to build new physical barriers would redress Plaintiffs' injuries for all the reasons the Fifth Circuit expressly held. Defendants would of course have discretion to determine how to build new physical barriers.

## ANALYSIS

I. **The Fifth Circuit already determined that Plaintiffs have multiple avenues of standing.**

The Fifth Circuit has already held that both Missouri and Texas have standing at the pleading stage. *General Land Office v. Biden*, 71 F.4th 264, 271 n.10 (5th Cir. 2023). Although Plaintiffs at the preliminary injunction stage often must support

standing with evidence (such as affidavits), not just pleadings, the Fifth Circuit's decision about what kinds of facts would establish standing is binding, law of the case, and informative.

On injury, the Fifth Circuit determined that "[i]njury in fact is not at issue" because the States have asserted "'costs in issuing driver's licenses, providing education, and administering healthcare.'" *Id.* at 272. These costs "are readily cognizable and well-established in this court's precedents." *Id.* Because Plaintiffs have established a nonzero cost from the Federal Government's unlawful action— even one dollar will do, *see Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021)— Plaintiffs have established injury in fact.

On causation, the court determined both that the States had alleged "and the DHS has in the past affirmed" that border barriers "reduce illegal entries" and "increase the rate at which illegal aliens are detected and apprehended." *General Land Office*, 71 F.4th at 272. DHS also "has affirmed that border barriers funnel illegal immigrants to areas where Customs and Border Protection is better prepared to intercept them, thus reducing illegal immigration." *Id.* at 273. DHS has likewise said "deterrence of illegal border activities 'is achieved *primarily* through' border barriers." *Id.* (emphasis in original). Because any decrease in illegal immigration reduces the costs to the States, the States have established causation. *Id.*

On redressability, the court concluded that a "declaratory judgment and injunction" would redress the States' injuries because they would "slow or reduce" the

4

number of immigrants illegally entering the country. *Id.* Because Plaintiffs have demonstrated this with sufficient likelihood, redressability is likewise established.

Only *after* concluding that the States have standing, the Fifth Circuit also concluded—to "eliminate any doubt as to standing"—that the States also have "special solicitude" standing. *Id.* at 274. This is true because the States assert a "procedural right" and the challenged action affects a "quasi-sovereign interest[]" or "sovereign interest." *Id.* The Fifth Circuit also noted that the Federal Defendants did not challenge the States' special solicitude. Special solicitude carries a concrete effect: "imminence and redressability are easier to establish here than usual." *Id.*

Thus, there are two independently sufficient avenues to find that the States have standing. And under the single-plaintiff rule, this Court need only find that one of the plaintiffs has standing. *Id.* at 271.

## II.  No subsequent precedent overturns this ruling, and the States possess special solicitude in any event.

At the November 29 hearing, the Court asked for additional input about the doctrine for standing in the immigration context as well as whether the States still have "special solicitude" and what "special solicitude" entails. The decision in *United States v. Texas (Enforcement Priorities)*, 599 U.S. 670 (2023), does not undermine the Fifth Circuit's standing holding, and it is well established that States have "special solicitude" because they can assert interests, such as sovereign interests, that individuals cannot.

### A. *United States v. Texas* does not undermine the Fifth Circuit's ruling in this case or the Fifth Circuit's ruling in the migrant protection protocol case.

Seven days after the Fifth Circuit's decision in this case, the Supreme Court decided the *Enforcement Priorities* appeal. That case alters nothing here. *Enforcement Priorities* addressed a challenge by two States to DHS' guidelines that DHS will not arrest criminal aliens whom Congress provided "shall" be arrested. *Enforcement Priorities*, 599 U.S. at 674. Although the Supreme Court determined that the States lacked standing, its holding was based *solely* on the rule that a party typically lacks standing to compel the arrest and prosecution of another—a rule that has no application in this case. *See id.*

Indeed, the Supreme Court took pains to stress how narrow the *Enforcement Priorities* decision was. The Court noted that "[t]he discrete standing question raised by this case rarely arises because federal statutes that purport to require the Executive Branch to make arrests or bring prosecutions are rare…. This case therefore involves both a highly unusual provision of federal law and a highly unusual lawsuit." *Id.* at 684. The Supreme Court further stressed that "this case raises *only* the narrow Article III standing question of whether the Federal Judiciary may in effect order the Executive Branch to take enforcement actions against violators of federal law—here, by making more arrests." *Id.* at 684–85 (emphasis added).

Here, Plaintiffs do not seek to compel the Federal Government to arrest or enforce the law against anybody. Plaintiffs instead seek merely to ensure that the Defendants comply with the spending obligations for border barriers compelled by Congress. The *Enforcement Priorities* case does not alter standing analysis outside

6

the context of the "highly unusual provision of federal law" and the "highly unusual" lawsuit at issue in that case.

Similarly, no Supreme Court case has altered the Fifth Circuit's extensive standing analysis in the Migrant Protection Protocols (MPP) case. *Texas v. Biden*, 20 F.4th 928, 966–75 (5th Cir. 2021). The "highly unusual" *Enforcement Priorities* case is not on point. And although the Supreme Court reversed the Fifth Circuit's MPP decision on the merits, the Supreme Court did not even address, much less overrule, the Fifth Circuit's analysis on standing. *Biden v. Texas*, 142 S. Ct. 1098 (2022). Indeed, the Court in *Enforcement Priorities* cited the standing analysis in the MPP litigation as different than in *Enforcement Priorities* because the challenge to MPP did not involve "arrest or prosecution policies." *See Enforcement Priorities*, 599 U.S. at 683 (citing *Biden*, 142 S. Ct. 2528).

That means the Court here should simply apply the binding analysis of the Fifth Circuit in the previous appeal in this case. Plaintiffs have repeatedly demonstrated the presence of direct fiscal harms as a result of Defendants' unlawful actions—a fact sufficient to confer standing. *See, e.g.*, States' Motion for Preliminary Injunction at 37–43 (detailing the direct fiscal harms the States have incurred, and will continue to incur, because of Defendants' actions). Setting aside the issue of special solicitude, these demonstrated financial harms are more than sufficient. Indeed, this rule for standing is so well established that the Federal Government did not even bother to dispute it before the Fifth Circuit. *General Land Office*, 71 F.4th at 272.

7

### B. Missouri and Texas also have special solicitude, which is independently sufficient but not necessary here.

For the reasons above, the Court need not even reach the issue of special solicitude, though there is no harm in doing so. At the November 29, 2023 hearing, this Court asked about whether the States are still entitled to special solicitude and what that looks like.

Although the term "special solicitude" was discussed in a concurrence and in a dissent in the *Enforcement Priorities* case, the majority did not discuss it at all. 599 U.S. at 688 (Gorsuch, J., concurring). The Fifth Circuit's decision from one week before *Enforcement Priorities*, holding that the States have special solicitude standing, thus remains binding.

One way of understanding "special solicitude" is merely as a term to recognize well-established law holding that States can sue over more kinds of injuries than can private individuals. Like individuals, States can assert a "proprietary interest," such as an interest "in a business venture." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). But States, unlike private parties, can also assert "sovereign" interests" and "quasi-sovereign" interests. *Id.* Quasi-sovereign interests include, but are not limited to, a State's interest in "the well-being of its populace"[1] and in "all the earth and air within its domain." *Id.* at 602, 604. Sovereign interests include the "power to create and enforce a legal code" and "the demand for recognition from other sovereigns." *Id.* at 601. Perhaps most important here,

---

[1] When a sufficiently large number of citizens of one State are affected, an injury to all those persons becomes "really an additional injury to the state *itself*." *Kentucky v. Biden*, 23 F.4th 585, 596-601 (6th Cir. 2022) (italics in original).

8

sovereign interests frequently "involve[ ] the *maintenance and recognition of borders*." *Id.* (emphasis added). The Supreme Court has, likewise, recognized "the importance of immigration policy to the States," which "bear[ ] many of the consequences of unlawful immigration." *Arizona v. United States*, 567 U.S. 387, 397 (2012).

The ability of the States to sue over more injuries than private parties stems not only from their status as sovereigns, but also their status as *co*-sovereigns with the Federal Government. "When a State enters the Union, it surrenders certain sovereign prerogatives." *Massachusetts v. EPA*, 549 U.S. 497, 519 (2007). But by entering the Union, the States "did not thereby agree to submit to whatever might be done." *Georgia v. Tennessee Copper C*o., 206 U.S. 230, 237 (1907). Instead, the States surrendered the ability to use military "force," but gained "the alternative to force," which "is a suit in [federal] court." *Id.* The States, therefore, are "entitled to special solicitude in [the Supreme Court's] standing analysis." *Massachusetts v. EPA*, 549 U.S. at 520.

And although the States' other standing arguments are independently sufficient for jurisdiction, the States directly invoked special solicitude standing (among other reasons for standing) in their Complaint. The States noted that "Missouri and Texas bring this action to redress harms to," among other things, "their sovereign interests" and "quasi-sovereign interests." Complaint, ECF No. 1, case no. 7:21-cv-00420 (the "States' Complaint") at 13. The Fifth Circuit concluded that the States invoked their "sovereign interest in [their] fiscal policy and lawmaking authority." *General Land Office*, 71 F.4th at 274.

The concept of a *parens patriae* action applies only in some "special solicitude" contexts: those where a State asserts a quasi-sovereign interest in "the health and welfare of its citizens." *Massachusetts v. EPA*, 549 U.S. at 519–20 & n.17. When a State asserts a sovereign interest, as the States do here, the *parens patriae* doctrine does not apply with respect to that interest, *see id.*, yet special solicitude still applies, *General Land Office*, 71 F.4th at 274 (applying special solicitude to "the States' sovereign interest in [their] fiscal policy and lawmaking authority").

### III. The APA provides a cause of action for each claim.

This Court also asked for clarification about the causes of action. Simply put, the APA provides a cause of action on each count, the APA permits relief even absent a finding that action is arbitrary and capricious, and the constitutional claims are also independently actionable.

**1.** To begin, the APA provides a valid cause of action for each claim. The States assert violations of statutes, violations of the Constitution, and procedural violations. The plain text of the APA provides a cause of action for each. In reviewing agency action, the court "shall" "hold unlawful and set aside agency action, findings, and conclusions" that the court finds are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or the court finds "contrary" to the Constitution, or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A)-(C). In other words, the APA provides an express cause of action to challenge federal action as contrary to a statute or the Constitution. Agency action does not have to be procedurally invalid—*e.g.*, arbitrary and capricious—to violate the APA.

What the plain text states, case law confirms. The Supreme Court has directly held that "[t]he Administrative Procedure Act requires federal courts to set aside federal agency action that is 'not in accordance with law,' 5 U.S.C. § 706(2)(A)—which means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis in original). Consequently, courts applying the APA have examined whether an agency's action is "arbitrary and capricious" *or* "contrary to law" as two separate categories of APA challenges. *See, e.g. City of Columbus v. Cochran*, 523 F.Supp.3d 731, 772 (D. Md. 2021) (juxtaposing "instances where agency action is deemed arbitrary and capricious rather than contrary to law.").

The States invoked the APA for each claim. *See* States' Complaint ¶¶ 51–58. On the statutory claims, for example, Plaintiff States challenge the Federal Government's action as violating the Impoundment Control Act and the Consolidated Appropriations Acts of 2020 and 2021. *Id.* at 24–29, 34–35. In each instance, they seek judicial review of an agency action "not in accordance with law" and "in excess of [the agency's] statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (2)(C). The GLO similarly asserts statutory, constitutional, and procedural claims through the APA. *See* GLO Complaint ¶¶ 118–35.

**2.** Even apart from the APA, the constitutional claims are independently actionable. Plaintiffs, for example, assert a violation of the Take Care Clause and a violation of separation of powers. States' Complaint ¶¶ 76–95; GLO Complaint, ¶¶ 70–75, 86–91. Plaintiffs have demonstrated at length how Defendants' actions

11

violate each of the respective constitutional provisions. *See, e.g.* States' Motion for Preliminary Injunction at 29–34. Because Plaintiffs are likely to succeed on their statutory arguments, the Court does not need to reach their constitutional claims. *BST Holdings, L.L.C. v. Occupational Safety and Health Admin, U.S. Dept. of Labor*, 17 F.4th 604, 611 (5th Cir. 2021). But to the extent the Court reaches the constitutional issue, the Supreme Court recently reaffirmed the "long history of judicial review of illegal executive action" that the Constitution permits for suits in equity even absent an express cause of action. *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327–28 (2015); *see also* Plaintiffs' Supplemental Brief in Support of Motion for Preliminary Injunction, ECF 101, at 39.

### IV. Both prohibitive and mandatory remedies would redress Plaintiffs' injuries.

The Court also asked for briefing about what kind of remedy would redress Plaintiffs' injuries. As Plaintiffs have detailed in their previous briefing, an injunction against implementing the January 20 Proclamation would provide redress because it would eliminate an unlawful impediment to federal officials complying with a congressional mandate. And an injunction directing the Federal Government to build new barrier systems—which must include actual barriers—and to use these funds only for that purpose, is also permissible and would provide redress.

An order to this effect would differentiate the relief in this case from the remedy in *Enforcement Priorities* and the redressability concerns with that remedy raised by Justice Gorsuch. As Justice Gorsuch noted, "[o]rdinarily, to remedy harms like those the States demonstrated in this suit, they would seek an injunction."

*Enforcement Priorities*, 599 U.S. at 690 (Gorsuch, J., concurring in the judgment). The problem for Justice Gorsuch in the *Enforcement Priorities* case was that injunctive relief was unavailable because 8 U.S.C. § 1252(f)(1) expressly prohibits injunctive relief in that context. *Id.* Justice Gorsuch further noted that vacatur could not redress the asserted injury because vacating the enforcement guidelines would do "nothing to change the fact that federal officials possess the same underlying prosecutorial discretion." *Id.* at 691.

This case is entirely different. The anti-injunction provision of § 1252(f)(1) does not apply here. So, unlike in *Enforcement Priorities*, the "[o]rdinar[y]" relief Justice Gorsuch identified *is* available. Also unlike in *Enforcement Priorities*, the Federal Government does *not* "possess … underlying … discretion" about the ultimate issue: whether to decline to construct physical barriers. While Congress certainly permitted discretion about what *kinds* of barriers to build—for example, nothing says the barrier must be a wall instead of a fence—Congress expressly eliminated discretion on the question *whether* to build new physical barriers.

That means that a remedy crafted by this Court need not be overly detailed or tell Defendants how to build border barriers. The Court can redress injury both through prohibitive relief and mandatory relief.

**Prohibitive Relief.** Enjoining implementation of the January 20 Proclamation would restore the status quo to the time when the Federal Government was actively building border barriers. That is because the January 20 Proclamation currently operates as an impediment to complying with the congressional mandate

13

directing the Federal Government to construct new physical barriers. The Proclamation itself did not mince words: Contrary to congressional mandate, DHS was directed to halt "immediately the obligation of funds related to construction of a southern border wall" and halt work on "wall projects funded by direct appropriations" because the President held a policy disagreement with the law and believed that additional border construction is "a waste of money" and "not a serious policy solution."[2]  App. 021-022; ECF 19-1, No. 7:21-cv-420. Enjoining

---

[2] There can be no doubt that implementing the January 20 Proclamation impedes the congressional mandate to construct new physical barriers on the border. *See, e.g.* States' Reply in Support of their Motion for Preliminary Injunction, ECF 30, at 35–36; Reply of Commissioner George P. Bush and the Texas General Land Office in Support of Preliminary Injunction, ECF No. 32, at 14–16. Indeed, DHS has affirmatively repeated the January 20 Proclamation's "commitment that 'no more American taxpayer dollars [should] be diverted to construct a border wall.'" ECF 24-3, at 18 (alteration in original). These are not simply statements, either. Defendants have conceded in this case that, consistent with the January 20 Proclamation, they have taken affirmative steps, including cancelling construction contracts for border barriers that would be constructed in Texas. States' Reply in Support of their Motion for Preliminary Injunction at 18–19. Just a few months ago, Defendant Mayorkas reiterated that the Administration's position "has never wavered" from its decision that "a border wall is not the answer" to the humanitarian crisis at the border. DHS, *Statement from Secretary Mayorkas on Recent News Reports* (Oct. 5, 2023). Instead of "constructi[ng]" a "barrier system along the southwest border," Defendants continue to tell the Court they will only spend money to "add[] cameras, roads, and detection technology" to existing barriers. Fifth Enriquez Decl. ¶ 12; *id.* ¶ 13. Defendants have made clear that DHS will do everything it can besides the "construction" of new, physical barriers.

The attempts by Defendants to evade the conclusion that they fully intend to act contrary to the requirements of the 2020 and 2021 appropriations are pretextual, post-hoc rationalizations. *See, e.g.*, States Reply at 14–23. Defendants' pretextual explanations directly conflict with the representations of the January 20 Proclamation that new construction of a border wall "is not a serious policy solution," is "a waste of money" and that "no more American taxpayer dollars" will be spent on such construction. App.021-022.

implementation of the proclamation would remove the impediment to federal officials complying with the congressional mandate.

That would provide at least some redress to Plaintiffs. As the Fifth Circuit concluded in this case in the part of its opinion addressing redressability, the States' have "alleg[ed] facts that, if true, demonstrate DHS's June 2021 decision to divert 2020 and 2021 funds away from the creation of a border wall will result in fiscal injuries to the State" because of halted construction of border barriers. *General Land Office*, 71 F.4th at 272. Plaintiffs, through their extended briefing, have demonstrated the truth of these alleged facts. *See, e.g.*, States' Motion for Preliminary Injunction at 37–43. A prohibitive injunction prohibiting the Federal Government from diverting these funds away from border wall construction would have the tendency to "'slow or reduce' the relative number of illegal aliens entering Texas." *General Land Office*, 71 F.4th at 273 (quoting *Massachusetts v. EPA*, 549 U.S. at 525).

The APA gives this Court authority to issue this remedy. *See* 5 U.S.C. § 706(1), (2) (granting authority to federal courts to issue orders "compel[ling] agency action unlawfully held or unreasonably delayed" and to "set aside agency action" found to be arbitrary, capricious, an abuse of discretion, not in accordance with law, or in excess of statutory jurisdiction.").

Similarly, an injunction enjoining Defendants from continuing to implement the final agency action is sufficiently specific. Indeed, courts regularly issue similar injunctions, especially in the immigration context. *See, e.g.,* States' Reply at 43–44

(collecting cases). There is nothing broad or unworkable about a negative injunction that forbids Defendants from implementing the January 20 Proclamation. *See, e.g.*, States' Reply, ECF 30, at 42–44 (noting that "nationwide injunctive relief has been the standard remedy in analogous immigration cases" and reviewing similar cases).

**Mandatory Relief.** A mandatory injunction would provide additional redress, but it need not be overly detailed. DHS' 2020 and 2021 appropriations are clear: Congress appropriated $1.375 billion each year for "*construction* of barrier system along the southwest border," and provided that this money "shall *only* be available for barrier systems." App. 015–016 (emphasis added). If the Court issues a mandatory injunction, it need not don a hard hat. It need only direct the Federal Government (1) to "construct" barrier systems—that is, create new barrier systems, not just repair old ones—(2) to include actual physical barriers, and (3) to use these funds "only" for this purpose of "construction of barrier system along the southwest border." The Court can leave the remaining details to the Federal Government— where along the border to build; whether the physical barrier should be a fence, a wall, or something else; how high or wide to build; whom to contract with; etc.

The Fifth Circuit has already concluded that this kind of injunction would provide redress, and that conclusion is binding. As the Fifth Circuit put it, an "injunction requiring DHS to spend 2020 and 2021 funds for border wall construction" provides redress because it would, under the evidence submitted by Plaintiffs, "'slow or reduce' the relative number of illegal aliens entering Texas." *General Land Office*, 71 F.4th at 273 (quoting *Massachusetts v. EPA*, 549 U.S. at 525). This is because,

16

"longer walls" would "prevent[]" some "illegal aliens . . . from entering Texas" and Missouri. *Id*. Without having to spell out specific details, the mandatory injunction suggested by Plaintiffs (or similar relief) would provide redress.

To be sure, both the prohibitive and mandatory relief might not "provide full redress" to Plaintiffs, "but the ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam*, 141 S. Ct. at 801. Any additional barrier construction—or removing the unlawful impediment to Congress's mandate to construct new barriers—will provide some redress because it will "'slow or reduce' the relative number of illegal aliens entering Texas." *General Land Office*, 71 F.4th at 273 (quoting *Massachusetts v. EPA*, 549 U.S. at 525). Plaintiffs of course seek as much redress as possible and thus seek both prohibitive and mandatory relief.

## CONCLUSION

Defendants have engaged in wide-sweeping administrative actions, contrary to previous statements and findings by DHS, based on nothing more than a bare policy statement that the President believes that walls are a "waste of money." App.021-022. As Plaintiffs have repeatedly established, Defendants' affirmative steps implementing this unlawful, arbitrary, and capricious shift continue to cause significant irreparable harm to Plaintiffs. An order limiting this significant ongoing harm is both appropriately specific and, as the Fifth Circuit has already held, would offer Plaintiffs redress.

| | |
|---|---|
| Date: December 8, 2023 | Respectfully submitted, |
| ANDREW BAILEY<br>Attorney General of Missouri | KEN PAXTON<br>Attorney General of Texas |
| /s/ *Joshua M. Divine*<br>JOSHUA M. DIVINE, #69875MO<br>Solicitor General<br>*Attorney-in-Charge*<br>Southern Dist. of Texas Bar No. 3833606 | BRENT WEBSTER<br>First Assistant Attorney General<br><br>GRANT DORFMAN<br>Deputy First Assistant Attorney General |
| SAMUEL FREEDLUND, #73707MO*<br>Deputy Solicitor General | RALPH MOLINA<br>Deputy Attorney General for Legal Strategy |
| OFFICE OF THE ATTORNEY GENERAL<br>Supreme Court Building<br>207 West High Street<br>P.O. Box 899<br>Jefferson City, Missouri 65102<br>Tel. (573) 751-1800<br>Fax (573) 751-0774<br>josh.divine@ago.mo.gov<br>samuel.freedlund@ago.mo.gov | /s/ *Ryan D. Walters*<br>RYAN D. WALTERS<br>*Attorney-in-Charge*<br>Chief, Special Litigation Division<br>Texas Bar No. 24105085<br>Southern Dist. of Texas Bar No. 3369185<br><br>OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1414<br>Fax: (512) 936-0545<br>ryan.walters@oag.texas.gov |
| *Counsel for Plaintiff*<br>*State of Missouri* | |
| *Admitted *pro hac vice* | *Counsel for Plaintiff State of Texas* |

/s/ *Austin R. Nimocks*
AUSTIN R. NIMOCKS
*Attorney-in-Charge*

Texas Bar No. 24002695
S.D. Tex. Bar No. 2972032
austin@peelenimocks.com

CHRISTOPHER L. PEELE
Of Counsel
Texas Bar No. 24013308
S.D. Tex. Bar No. 31519
chris@peelenimocks.com

PEELE | NIMOCKS LAW FIRM
6836 Bee Caves Rd. Bldg. 3, Ste. 201
Austin, TX 78746
Phone: (512) 522-4893

*Counsel for Plaintiffs Texas General Land Office and Commissioner Dawn Buckingham, M.D.*

## **CERTIFICATE OF SERVICE AND COMPLIANCE**

I certify that on December 8, 2023, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b). I further certify that the foregoing document contains 4,294 words and complies with the Court's December 6, 2023 scheduling order.

/s/ *Joshua M. Divine*
Counsel for Plaintiffs