IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, *et al.*,<br><br>    Plaintiffs,<br>v.<br><br>JOSEPH R. BIDEN JR., in his official capacity as President of the United States, *et al.*,<br><br>    Defendants | No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>    Plaintiffs,<br>v.<br><br>JOSEPH R. BIDEN JR., in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052)<br>Hon. Drew B. Tipton |

SIXTH DECLARATION OF PAUL ENRIQUEZ

I, Paul Enriquez, declare as follows:

1. I am the Director, Infrastructure Portfolio, U.S. Border Patrol Program Management Office Directorate ("PMOD"), U.S. Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS"). I have held this position since January 2023 and support the planning and execution of border infrastructure projects from construction to

1

maintenance. From May 2021 to December 2022, I served as the Deputy Director for the Infrastructure Portfolio and from August 2018 to May 2021, I served as the Real Estate and Environmental Director for the Infrastructure Portfolio. From 2013 to August 2018, I was the Real Estate and Environmental Branch Chief for the Border Patrol and Air and Marine Program Management Office ("BPAM"), Facilities Management and Engineering, Office of Facilities and Asset Management. From 2011 to 2013, I was employed as an Environmental Protection Specialist in the BPAM office. In that role, I performed environmental analyses for various border infrastructure projects. From 2008 to 2011, I was a contractor assigned to the BPAM office and provided environmental support on various border infrastructure projects.

2. CBP is the DHS component with primary responsibility for border security. CBP constructs, operates, and maintains border infrastructure necessary to deter and prevent illegal entry on the southern border.

3. Within CBP, PMOD has expertise in managing and executing border infrastructure projects. PMOD is tasked with managing the schedule, finances, real estate acquisition, environmental planning, and construction of the border infrastructure system along the U.S. border.

4. Based upon my current and past job duties, I am familiar with the funding appropriated to CBP for barrier construction and the obligations and projects associated with such funding.

5. I previously submitted declarations on December 8, 2021, July 12, 2022, August 18, 2023, September 27, 2023, and October 17, 2023, that outlined, among other things, how CBP was using the appropriated funds it received in fiscal years ("FY") 2020 and 2021 for barrier system.

6. This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

7. On March 8, 2024, the Court issued an order stating that CBP's FY20 and FY21 barrier system appropriations may only be used for the "construction of physical barriers, such as walls, fencing, buoys, etc." The court's order specifically prohibits "the Government and all its respective officers, agents, servants, employees, attorneys, and other persons who are in active

concert or participation with them" from obligating FY20 or FY21 barrier system funds "toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes."

8. CBP is working diligently to comply with the Court's order. However, given the breadth and scope of activities affected by the Court's order, CBP seeks additional time to comply.

9. CBP has over 40 contracts or agreements with other federal agencies, funded, in whole or in part, by the FY20 and FY21 barrier system appropriations that are impacted by the Court's order. Those contracts are in various stages of completion, cover a range of projects, services, and activities, and span hundreds of miles of the U.S. border. The agreements include inter-agency agreements with other federal agencies, including the U.S. Army Corps of Engineers and the Department of the Interior, that obligate portions of the FY20 and FY21 barrier system funds for use of those agencies on various barrier system programs, ranging from land acquisition support to remediation projects, within the expertise of those agencies. Together, these contracts and agreements account for approximately $2 billion in obligated funds.

10. Given the breadth and scope of the activities funded by the FY20 and FY21 barrier system appropriations, the large number of contracts impacted by the Court's injunction, and the need for inter-agency coordination, CBP requires sufficient time to prepare the appropriate stop work orders, contract suspension notices, or take the other contract actions necessary to comply with the Court's order. The additional time will also allow CBP to assess what work can continue and what work may require additional clarification from the Court.

11. As noted, the contracts that have already been awarded with the FY20 and FY21 barrier system appropriations cover a range of project areas and types of activities. Some of those contracts only cover a single activity. For example, CBP has awarded contracts for the installation of system attributes in areas where the Department of Defense has already constructed physical barrier. Because the Court's order prohibits CBP from obligating or expending FY20 or FY21 barrier system funds toward the installation of system attributes, CBP is in the process of issuing stop work orders for those contracts and for others where the contract activities fall within the

Court's prohibitions. There are numerous other contracts, however, that cover multiple activities. For the contracts that cover multiple activities, the additional time may allow the government to avoid unnecessarily broad stop work orders, to the extent the contracts authorize work consistent with the Court's order. CBP seeks time to take the contracting actions necessary to comply with the Court's order but avoid issuing broad stop work orders that suspend both permissible and enjoined activities. The additional time will provide CBP with an opportunity to analyze those multiple activity contracts to determine which scopes of work need to be suspended to comply with the Court's order and which may continue. To cite just a few examples, CBP has a remediation contract for the Tucson Sector that, as part of the remediation work, includes filling 83 gaps and constructing 10 gates, totaling approximately 2896 feet of vertical barrier construction. CBP has completed 35 of the gaps for a total of 2003 feet of vertical barrier construction. Approximately 893 feet of vertical barrier construction remains. Because the Court's order permits the "construction of physical barriers, such as walls, fencing, buoys, etc.," some of the work under these multiple purpose contracts may still be permissible, such as filling gaps in existing barrier with new barrier and installing gates in existing physical barriers, which also has the effect of filling gaps with new barrier. Similarly, CBP has numerous contracts for ancillary services, including, for example, environmental planning, geographic information systems support, and public outreach and communications. Many of these ancillary services contracts are connected to activities that are prohibited by the Court's order. For example, much of the environmental planning, public outreach, and communications is connected to the remediation and system attribute projects CBP had planned to execute with the FY20 and FY21 barrier system appropriations. Other activities covered by these ancillary support services contracts may be able to proceed, as they are intertwined with or in service of the construction of physical barrier. Unnecessarily broad stop work orders or suspension notices could prematurely shut down activities that further the construction of physical barrier. In addition, to the extent CBP stops work or suspends multi-purpose contracts that contain work that is permitted by the Court's order, CBP will incur costs, such as delay claims and requests for equitable adjustments, to later

unsuspend that work. It may also be difficult to quickly start work again after a stop work order is lifted, as contractors may need to recall personnel and re-mobilize equipment that is removed from a project area after a suspension. These unneeded delays and additional costs can be avoided if CBP has the time to stop work or suspend only those portions of the contracts that are prohibited by the Court's order.

12.     The additional time will also allow CBP to determine which projects or activities may require further clarification from the Court. For example, as detailed in my August 2023 declaration, CBP has a project in the United States Border Patrol ("USBP") El Centro Sector to construct a 30-ft bollard-style automatic train gate, which will replace an existing manual chain link gate. The existing sub-standard gate is routinely exploited by smugglers. CBP had planned to use the FY20 barrier system appropriation to pay for some of the costs associated with this project. CBP considers this project to be consistent with the Court's determination that the FY20 and FY21 barrier system appropriations may be used to construct physical barriers. However, because the project replaces old existing chain link fencing that no longer meets USBP's operational needs with new operationally effective barrier, rather that constructing new barrier in an area of the border where there currently is no barrier, CBP believes it is prudent to seek clarification from the Court that such work is appropriate under the Court's order. CBP anticipates that its assessment of contracts for projects funded by the FY20 and FY21 barrier system appropriations will likely result in the need for clarification from the Court regarding other projects as well.

***

This declaration is made pursuant to 28 U.S.C. 1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14 day of March, 2024

*[signature]*

Paul Enriquez
Infrastructure Portfolio Director
Program Management Office Directorate
U.S. Border Patrol