**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>Defendants. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>Defendants. | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

**DEFENDANTS' MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION
AND FOR EXTENSION OF STAY PENDING DECISION**

On March 8, 2024, this Court issued a memorandum opinion concluding that Congress's

appropriation of funds to the Department of Homeland Security (DHS) and United States

Customs and Border Protection (CBP) for "construction of barrier system" in fiscal years 2020

and 2021 "permits only the construction of physical barriers, such as additional walls, fencing,

buoys, etc." Mem. Op. & Order at 56 (ECF No. 128).  The Court preliminarily enjoined the Federal Government from obligating those funds for any other purpose, including for "mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." *Id.*  The Government is working expeditiously to comply with the Court's order by taking appropriate steps to cease using the challenged funds for projects barred by the Court's order.

Defendants move to clarify the scope of the preliminary injunction as to five categories of costs that Defendants do not believe the Court meant to foreclose.  As explained below, the terms of the order entered by the Court could be read to extend to prohibit several categories of actions necessary for, or in furtherance of, construction of physical barriers, which would make it extremely difficult, if not impossible, for the government to construct new physical barriers, such as the 17-mile new barrier project in Starr County, Texas.  Because Congress appropriated funds for barrier system construction without separately providing funds for all necessary antecedents and components (such as land acquisition, roads for constructions crews to access sites, and project management and planning), Congress clearly intended those funds to cover those obvious expenses for construction of a barrier system.  That is the way in which prior administrations have all understood similar appropriations for border barriers and the way in which Congress typically provides appropriations consistent with longstanding appropriations law.  Defendants do not understand the Court to have intended to prohibit paying these costs from the barrier system appropriation, which would be wasteful and broadly preempt new or existing projects to build physical barriers.  The Court should thus clarify that its order does not extend so broadly.

Relatedly, Defendants ask for clarification regarding several other categories of expenses. Several existing projects discussed in the record to build physical barrier fall outside the scope of

the Court's injunction but were not mentioned by the Court in its opinion when it discussed specifics projects that were lawfully funded by the barrier system appropriations, so Defendants respectfully requests clarification that those projects may continue. Defendants also seek clarification that the injunction permits erecting a new barrier to *replace* a dilapidated or outdated barrier, as well as certain incidental costs to construction involving the disposition of excess materials. Finally, the government seeks clarification that the Court's order does not bar using the barrier system funds to pay for the costs of complying with the injunction by winding down work in a safe manner that does not endanger Border Patrol agents, migrants, or the public.

During the pendency of this motion, Defendants request that the Court extend the stay of the preliminary injunction. Maintaining the status quo while the Court decides the motion will avoid a situation where Defendants may be compelled to implement contracting actions and stop work orders on activities funded by the challenged funds that would be permitted if the Court clarified the scope of the preliminary injunction. At a minimum, the Court should extend the stay of the injunction as applied to the five categories of barrier construction activities described in this motion pending a decision on the motion for clarification.

Because the current stay expires at the end of the day on Friday, March 22, Defendants' respectfully request that the Court rule on the request to extend the stay promptly. Counsel for Defendants is available for a video hearing or status conference prior if it would be of assistance to the Court.[1]

---

[1] The parties conferred about Defendants' motion to clarify and to extend the stay. Plaintiffs do not consent. Plaintiffs' positions are set forth in the Certificate of Conferral at the conclusion of this motion.

## STANDARD OF REVIEW

A preliminary injunction order must "state its terms specifically," and "describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).  To ensure compliance with Rule 65, the Supreme Court has explained that districts courts have the "sound discretion" to "clarif[y]" the scope of their injunctions.  *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) ("[W]e think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court."); *see Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting same).  By clarifying the scope of a previously issued preliminary injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984); *see Scott v. Schedler*, 826 F.3d 207, 208 (5th Cir. 2016) (emphasizing that Rule 65 is intended "to prevent uncertainty and confusion on the part of those faced with injunctive orders"); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2956 (3d ed. 1987) ("It should be noted that when an interested individual is confused as to the applicability of an injunction to him or whether the scope of an order applies to certain conduct, he may request the granting court to construe or modify the decree.").

## ARGUMENT

The Court's preliminary injunction states that the fiscal year 2020 and 2021 "barrier system" funds may be spent "only" for the "construction of physical barriers."  Mem. Op. & Order at 56.  Defendants acknowledge that the Court's order prohibits using the challenged funds for actions such as "remediation and mitigation efforts" and "system attribute installation." *Id.* Defendants are in the process of implementing appropriate contracting actions and stop work

4

directives for such activities.  *See* Seventh Declaration of Paul Enriquez ¶ 10 (Exhibit 1).

Defendants, however, do not understand the intent of the Court's order to prohibit obligating or

expending the challenged funds on activities that are necessary for, or in furtherance of, the

construction of physical barriers.  If those obviously necessary costs were not permitted,

Congress's appropriation for construction of border barrier system would be a dead letter and

self-defeating.  Out of an abundance of caution, however, Defendants request that the Court

clarify that the five categories of activities set forth below may be funded with the fiscal year

2020 and 2021 "barrier system" funds subject to the Court's injunction.[2]  This clarification will

assist Defendants with identifying the contracting actions that must be implemented to comply

with the Court's injunction and provide appropriate guidance as to the activities that may

lawfully continue to support barrier construction.

**I.      The Court Should Clarify that the Preliminary Injunction Does Not Prohibit Obligating or Expending the Challenged Funds on Activities that Involve or Support Barrier Construction.**

      A.      <u>Project Costs Required to Support Construction of Physical Barrier</u>

The process of constructing a new border barrier is complex and requires a number of

necessary antecedent steps before physical construction of the barrier can begin or conclude.

These project activities include, among other things, (1) acquisition of real estate on which to

build new barrier; (2) construction or improvement of access and patrol roads that allow

construction crews and equipment to reach the planned construction sites along the border and

that are part of the barrier system's design for maintenance, patrol, and access; (3) erosion and

drainage control measures for the new barrier, which are necessary parts of the barrier's design

---

[2] *See* Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(a)(1), 133 Stat. 2317, 2511 (2019); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57 (2020).

long-term; (4) installation of power lines and utility infrastructure to power automatic pedestrian, vehicle, and stormwater gates integrated into the new barrier's design to provide access to first responders and guard against floods; (5) project oversight and management, without which no construction project can proceed; and (6) other ancillary services that may be funded as part of the construction contract or through separate support contracts, including design work, geo-technical, real estate, and environmental surveys, environmental planning support, contract administration, geographic information systems support, and public outreach and communications.  *See* Seventh Enriquez Dec. ¶¶ 12–18.

Congress does not include separate line-item appropriations for every possible expense the Government might incur in connection with constructing a border barrier project.  Rather, Congress obviously intended to cover necessary costs associated with constructing a border barrier by providing for the appropriation of funds for "construction of border barrier system." Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(a)(1), 133 Stat. at 2511.  That understanding is consistent with longstanding appropriations principles.  *See* GAO, Principles of Federal Appropriations Law at 4–20 (stating that "31 U.S.C. § 1301(a) does not require, nor would it be reasonably possible, that every item of expenditure be specified in the appropriation act").  As the Comptroller General explained nearly one hundred years ago, "it is a well-settled rule of statutory construction that where an appropriation is made for a particular object, by implication it confers authority to incur expenses which are necessary or proper or incident to the proper execution of the object . . . ."  *Comptroller Gen. Mccarl to Maj. Gen. Anton Stephan, Commanding Officer, D.C. Militia*, 6 Comp. Gen. 619, 621 (Mar. 25, 1927).

Indeed, as this Court recognized, the "Purpose Statute," 31 U.S.C. § 1301(a), is "somewhat flexible" and "does not require that every authorized expenditure be expressly

authorized in an appropriations act." Mem. Op. & Order at 42–43 (explaining the necessary expense doctrine). The actions listed above are necessary for, or support, the construction of physical barrier, as provided by the fiscal year 2020 and 2021 barrier system appropriations. These expenses are not prohibited by statute, nor is funding provided for them in a separate appropriation. *See U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1349 (D.C. Cir. 2012) (Kavanaugh, J.) (explaining necessary expense doctrine). Congress did not provide for these necessary expenses through a different appropriation, so there is no doubt that it intended these expenses to be encompassed by the appropriation for construction of a barrier system and that is how prior administrations have read similar appropriations. Were it otherwise, it is doubtful that any barrier would have been built. The Court should accordingly clarify that Defendants are permitted to fund these costs from its fiscal year 2021 and 2021 barrier system appropriations.

Land Acquisition: Unless the barrier will be built on land owned by the federal government, the United States must acquire the necessary real estate interests from landowners where the barrier will be built. Seventh Enriquez Decl. ¶ 13. Land must also be acquired from landowners where CBP intends to construct new roads or improve existing roads in order to gain permanent access to the location of the planned barrier and create utility corridors that provide permanent power to vehicle or other gates within the barrier. *Id.* This complex process requires funding for, among other things, reviewing land ownership records associated with the proposed barrier; obtaining rights of entry for pre-construction land surveys and conducting property appraisals; and obtaining title to the property where the barrier will be built, either through negotiated sales with landowners or judicial actions (*e.g.*, Declarations of Taking). *Id.* Acquisition of real estate also requires preparation of final title products, completion of post-

acquisition title opinions, recording of interests, and closeout of previously executed offers to sell.  *Id.*

As Defendants previously advised the Court, DHS awarded a construction contract in September 2023 to build approximately 17 miles of new, 18-foot steel bollard barrier in Starr County, Texas, paid for by DHS's fiscal year 2019 barrier appropriation.  *See* Fifth Declaration of Paul Enriquez ¶¶ 8–9 (ECF No. 110); Seventh Enriquez Decl. ¶ 21–22.  CBP, the United States Army Corps of Engineers, and the Department of Justice are currently working together to acquire the required real estate interests for this project.  *See* Seventh Enriquez Decl. ¶ 22.  The agencies' land acquisition activities are funded by money from DHS's fiscal year 2021 barrier system appropriation.  *Id*.  For example, the U.S. Attorney's Office for the Southern District of Texas' border fence initiative handles eminent domain actions required for the acquisition of land for border barriers in south Texas and that office is relying on the fiscal year 2021 funds provided by DHS through an inter-agency agreement to acquire land for the Starr County project in the areas of Falcon Heights, La Grulla, and Rio Grande City, Texas.  CBP intends to move forward with the barrier project in Starr County, Texas without associated system attributes.  *See* Seventh Enriquez Decl. ¶ 22.  However, without the ability to obligate or expend the enjoined funds on land acquisition activities for the Starr Country project or other barrier construction projects, CBP would be unable to construct new physical barrier projects on non-federal land. *See id.* ¶ 13.

Access and Patrol Roads:  If construction crews cannot reach planned construction sites, barrier construction cannot begin.  As a part of almost every barrier project, CBP must construct new or improve existing roads for ingress and egress to planned barrier in order to provide adequate access for equipment and crews constructing the barrier.  *See* Seventh Enriquez Decl.

¶ 14.  These same access roads provide permanent ingress and egress for future maintenance of the barrier and provide Border Patrol agents with access to the area adjacent to the barriers for enforcement operations.  *Id.*  New barrier is frequently built in remote areas near the international boundary line where there are no existing public roadways that can support the delivery of necessary construction equipment and supplies.  *Id.*  Roads must therefore be installed to provide access between the construction sites and nearby public roadways.  *Id.*  Further, roads are needed immediately parallel to the physical barrier, both to facilitate the construction process and to allow Border Patrol agents to patrol the areas adjacent to the barrier.  *Id.*

Erosion and Drainage Control:  Erosion and drainage control measures are a critical element of barrier construction.  *See* Seventh Enriquez Decl. ¶ 15.  Even though the Court's order prohibits use of the relevant funds for "mitigation and remediation efforts," Mem. Op. at 56, that restriction has no application to new barrier construction.  Indeed, there is no indication that Congress intended the Government to ignore obvious erosion or drainage risks when undertaking a new barrier project.  If CBP does not ensure design and construction of the barrier includes proper drainage and long-term erosion control measures in and around constructed barrier, the integrity and stability of the barrier will be at risk due to undermining of the foundation of the barrier by heavy water flows during storm events, which are common occurrences in the southwest border regions.  *Id.*  Improper erosion or drainage control also substantially increase the long-term maintenance costs of the barrier.  *Id.*

Power & Utilities Installation:  The construction of physical barrier can require the installation of vehicle, pedestrian, or stormwater gates, both to protect against erosion or flood risks for the newly constructed barrier and as part of the new barrier's design to permit Border

Patrol access.  *See* Seventh Enriquez Decl. ¶ 16.  Vehicle and pedestrian gates provide needed

access through the barrier for Border Patrol agents, emergency services, maintenance personnel,

landowners, and other parties.  *Id.*  In the Rio Grande Valley, for example, where barrier can be

as much as a mile from the Rio Grande River and the international boundary, CBP must install

gates to ensure the Border Patrol agents, landowners, and first responders have access to land on

both sides of the barriers.  *Id.*  In other areas, CBP must install stormwater gates to ensure that

sufficient water flows through the barrier during heavy rain events to ensure water flows do not

overwhelm the barrier or increase flood risk.  *Id.*  Due to the size and heavy weight of these gates

and to ensure they operate efficiently, these gates need to be powered.  *Id.*  Thus, CBP must

install the necessary power and utilities needed for long term operation of the gates.  *Id.*

  <u>Project Oversight & Management</u>:  Construction of physical barrier also requires project

oversight and management.  *See* Seventh Enriquez Decl. ¶ 17.  These costs include review of

proposed barrier designs, oversight of work performed by construction contractors in the field,

inspections of completed work to ensure it meets contract or other requirements, and regular

communication between the government and construction contractors.  *Id.*  In some instances,

CBP executes interagency agreements with other federal agencies for their support in contract

administration or project oversight and management.  *Id.*  Where CBP executes interagency

agreements, CBP is required to reimburse the other federal agency for the actual costs they incur

in providing support to CBP.  *Id.*

  <u>Ancillary Support Services</u>:  Planning is also a fundamental part of barrier construction,

without which the government could not undertake new projects.  Numerous ancillary services

are thus necessary parts of the construction of physical barrier.  *See* Seventh Enriquez Decl. ¶ 18.

These services may be funded as part of the construction contract or through separate support

contracts. *Id.* These services include, among other things, barrier and road design and geo-technical surveys that inform the design work; environmental surveys and environmental planning support necessary to comply with applicable environmental laws, including, for example, preparation of environmental assessments and development of stormwater pollution prevention plans; geographic information systems and mapping support; data systems; and public outreach and communications, such as consultations required by federal law. *Id.*; *see* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C, tit. I, § 102(b)(1)(C), 110 Stat. 3009 (1996), as amended, (codified as amended at 8 U.S.C. § 1103 note) (mandating consultation with various stakeholders about barrier construction impacts).

***

Congress's appropriation of funds to DHS for "construction of barrier system" in fiscal years 2020 and 2021 includes the authority for DHS to obligate and expend funds on actions that are necessary for, or support, the construction of physical barriers. *See Fed. Lab. Rels. Auth.*, 665 F.3d at 1349; 1 GAO, Principles of Federal Appropriations Law at 4–20. For example, to construct the new Starr County barrier project, DHS must acquire the real estate necessary for the barrier footprint; access and patrol roads near the barrier; install required utilities needed to power gates that ensure Border Patrol agents, landowners, and first responders can access land on either side of the barrier; and fund costs for project management, real estate and environmental planning support. *See* Seventh Enriquez Decl. ¶ 22. CBP will not be able to construct the new barrier project in Starr County unless it can pay for these costs with the fiscal year 2020 and 2021 barrier system appropriations. *See id.* To ensure the Court's injunction does not sweep so broadly as to prohibit these types of obvious expenses required for construction of

11

physical barrier, the Court should clarify that these expenses fall outside of the prohibitions of the Court's injunction.

**B.**     **Projects Involving the Construction of Physical Barrier**

Defendants also seek clarification that certain projects described in the record before the Court may proceed because they involve construction of new physical barrier.  The Court's opinion identified only two protects (Tijuana River Channel and Yuma Hill) where it found "the Government is complying with Subsection 209(a)(1)'s requirements" because the projects involve "filling gaps in existing walls."  Mem. Op. & Order at 56.  Defendants have re-reviewed the record in this case and respectfully submit that additional projects in the record satisfy the Court's criteria for lawful expenditures that may be funded with the fiscal year 2020 and 2021 barrier system appropriations.  Because the Court's opinion expressly mentioned only two projects that it considered lawfully funded by the challenged funds, Defendants seek clarification that the additional projects described below, all of which involve construction of new physical barrier, are not prohibited by the preliminary injunction.

The record before the Court explained that DHS had awarded various contracts funded by the fiscal year 2020 and 2021 barrier system appropriations for remediation work in the San Diego, El Centro, El Paso, and Tucson Sectors where the Department of Defense previously engaged in barrier construction pursuant to 10 U.S.C. § 284.  *See* Third Enriquez Decl. ¶ 21; Fifth Enriquez Decl. ¶ 12.  These contracts covered various scopes of work, including "closing gaps in the existing barrier" and "completing or installing gates" in the barrier.  *See* Third Enriquez Decl. ¶ 21; Fifth Enriquez Decl. ¶ 12.  DHS intends to complete this gap-filling and gate-closing work with its the fiscal year 2020 and 2021 barrier system appropriations.  *See* Seventh Enriquez Decl. ¶ 23–24.  In some project areas, such as the Tucson sector, installation of

gates and gap-filling work remains ongoing.  *Id.* ¶ 23.  In other sectors, the physical installation of the new barrier and gates is substantially complete, but contractors must complete various close-out activities to finish the projects.  *Id.* ¶ 24.  This close-out work includes contractor warranty requirements, completing as-built drawings of the gates and gaps to assist CBP with future maintenance and repair, and any remaining drainage or erosion control measures to ensure the long-term stability of the bollards and gates.  *Id.* ¶ 24.  Although Defendants will suspend those aspects of the remediation contracts that are prohibited by the Court's order (*e.g.*, system attribute installation), the Court should clarify that its injunction does not prohibit Defendants from obligating or expending the fiscal year 2020 and 2021 barrier system appropriations on work associated with closing gaps or installing gates in areas where barriers were previously constructed.

### C.      Replacement Barrier Projects

Defendants seek further clarification that the preliminary injunction does not prohibit obligating or expending the fiscal year 2020 and 2021 barrier system appropriations to replace existing sections of barrier that are dilapidated, outdated, or have security vulnerabilities with new barrier that is more operationally effective.  *See* Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(b), 133 Stat. 2317, 2511 (2019) (stating that the "amount designated in subsection (a)(1) for shall only be available for barrier systems that…use…operationally effective designs").  These projects are for construction of a *new* barrier, consistent with the Court's order, but would replace prior barriers that are no longer operationally effective.

Although the Court's injunction stated that "repair of existing barrier" is prohibited, Defendants submit that *replacing* dilapidated, failing, or ineffective fencing with new, operationally effective barrier should be permitted because it involves the "construction of

physical barriers, such as additional walls, fencing, buoys, etc." Mem. Op. & Order at 56. Defendants do not understand the intent of the Court's injunction to limit the use of the challenged funds solely to construction of projects in geographic locations where no barrier fencing currently exists. The Court stated that the challenged barrier system appropriations may fund "construction of new physical barriers (or their equivalents) at the Southwest border." *Id.* at 49. Defendants understand the term "new physical barriers" as used by the Court to allow Defendants to construct (1) new barriers that replace previously constructed barriers or sections thereof (such as dilapidated or outdated barriers or barriers that have serious security vulnerabilities), and (2) new barriers in locations where no barrier has previously been constructed.

This understanding is consistent both with the DHS's execution of its border barrier appropriations across multiple administrations and Congress's instruction to build barriers "where fencing would be most practical and effective." *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C, tit. I, § 102, 110 Stat. 3009 (1996), as amended, (codified as amended at 8 U.S.C. § 1103 note).

Several projects in the record before the Court illustrate the practical importance of expending the fiscal year 2020 and 2021 barrier system appropriations on replacement barrier construction projects, consistent with Congress's intent. In the El Centro and El Paso Sectors, CBP is addressing security vulnerabilities where previously constructed barrier intersects with railroad tracks. *See* Third Enriquez Decl. ¶ 10.f; Administrative Record (ECF No. 66) at 35, 45, 151-153, 162, 169 (photos and project descriptions of El Paso and El Centro train gate projects). In El Centro, CBP is installing a 30-foot bollard-style automatic train gate, which will replace a manual chain link gate. *See* Seventh Enriquez Decl. ¶ 27. The existing, substandard gate is

14

routinely exploited by smugglers. *Id.*; *see* Administrative Record at 45 (photo of chain link gate and explaining that this "[s]ub-standard infrastructure creates an operational vulnerability" in a "heavily urbanized area in which illicit activity can disappear into the surrounding population, structures or vehicles in less than a minute"). In the El Paso Sector, CBP is relocating the existing barrier and installing a new gate closer to the Rio Grande River to close a gap between existing barrier segments near railroad tracks. *See* Seventh Enriquez Decl. ¶ 28; Administrative Record at 35. The gap is a funnel point for illicit activity, and the daily train operations made it particularly dangerous for migrants and Border Patrol agents. *See id.* The project is substantially complete, but additional fiscal year 2021 barrier system funds are needed to complete close out activities for the project, including installation and connection of power to the gate and completion of remaining erosion control measures adjacent to the barrier, which is located on a flood levee and could compromise the levee if not completed. *See* Seventh Enriquez Decl. ¶ 28.

In the San Diego Sector, DHS is currently using fiscal 2020 and 2021 barrier system appropriations to replace primary and secondary barrier that no longer meets operational needs near the Pacific Ocean in and around the Friendship Circle area. *See* Seventh Enriquez Decl. ¶ 27; Administrative Record at 44, 152–53, 166–167 (project description and photos of dilapidated barrier, including sections extending into the Pacific Ocean, that require replacement). Sections of the ineffective barrier, which were not properly treated to withstand salt water corrosion and were at risk of failure, were removed and most of the new bollard fencing has been installed. *See* Seventh Enriquez Decl. ¶ 29. To complete the project, CBP must fill the remaining gap with new, operationally effective replacement barrier, which will include appropriate treatments to withstand corrosion from the Pacific Ocean, and install anti-

climb plates on the new barrier segments. *See id.* Additionally, CBP requires funding to finish construction of the patrol road that runs parallel to the new barrier in this area to provide critical access to Border Patrol operations and future maintenance and repair of the barrier. *Id.* If the fiscal year 2020 and 2021 barrier system funds are unavailable for this replacement construction project, the remaining gap, incomplete road, and absence of anti-climb plates will result in significant security vulnerabilities going forward. *Id.*

Similar projects to replace outdated and ineffective barrier in the El Centro and Yuma Sectors are funded by the fiscal year 2020 barrier system funds. *See* Third Enriquez Decl. ¶ 10.i; Seventh Enriquez Decl. ¶¶ 30–32. In the El Centro Sector, CBP is replacing 0.6 miles of dilapidated legacy barrier with new bollard barrier. *See id.*; Administrative Record at 43 (photos of dilapidated barrier that requires replacement and project description). The legacy barrier in this area has been removed, thus use of the fiscal year 2020 funds will help secure a heavily urbanized area of California that allows for quick vanishing times for illicit cross-border activity. *See* Seventh Enriquez Decl. ¶ 32.[3] DHS also is utilizing the fiscal year 2020 funds to finalize a project to replace ineffective legacy barrier in the Yuma Sector that had become a funnel point for cross-border activity due to the immediate access to Interstate 8 and other nearby roadways. *See* Third Enriquez Decl. ¶ 10.i; Seventh Enriquez Decl. ¶ 31; Administrative Record at 43 (photos of barrier that requires replacement and project description). The new bollard barrier is now installed, but additional contracting actions are needed to close out the project and comply with the terms of the contract. *See* Seventh Enriquez Decl. ¶ 31.

---

[3] Vanishing time is the time and distance between the border and the point at which someone could blend into the local populace without detection or move onto major roadway. Vanishing times are often particularly short in urban areas.

Additionally, DHS is installing replacement water drainage grates at 15 locations in the San Diego Sector. *See* Seventh Enriquez Decl. ¶ 33; Administrative Record at 102 (photos and project description). The grates were either missing or in disrepair, creating funnel points for illicit activity, as individuals attempted entry through the below-ground storm channels that terminate at the grates. *See id.*; *see also* Third Enriquez Declaration ¶ 10.c (photos showing before and after installation of new grates). The grate installation is now complete, but CBP must finish installing grate control mechanisms in four locations with its fiscal year 2020 barrier system appropriation. *See* Seventh Enriquez Decl. ¶ 33. The control mechanisms allow Border Patrol agents to remotely identify when a drainage grate has been breached or opened, and when a drainage grate is in the closed position. *Id.*

***

These projects illustrate that actions to construct new barrier to replace outdated or dilapidated barrier fencing with operationally effective designs is consistent both with the text of the fiscal year 2020 and 2021 appropriations and the Court's injunction that those funds be utilized only for the construction of physical barrier. The Court should therefore clarify that the preliminary injunction permits Defendants to construct (1) new barriers that replace previously constructed barriers or sections thereof, and (2) new barriers in locations where no barrier has previously been constructed.

### D. Disposition of Excess Bollards and Construction Materials

Defendants also seek clarification that the Court's injunction does not prohibit Defendants from using the fiscal year 2021 barrier system funds to pay costs associated with disposing of excess barrier construction materials. Pursuant to an interagency agreement between CBP and the United States Army Corps of Engineers (USACE), USACE is supporting

and assisting CBP with material disposition activities.  *See* Declaration of Anjna O'Conner ¶¶ 4–6 (Exhibit 2).  USACE contractors are currently storing unused steel bollards on contractor storage yards.  *See id.* ¶ 5.  USACE is currently facilitating the transfer of these bollards to CBP for future barrier construction projects, including for the 17-mile Starr County barrier project described above.  *See id.*  USACE therefore will be required to use the fiscal year 2021 barrier system funds to pay labor and other costs that USACE will incur to facilitate removal of the bollard panels from their current locations and transport them to new project or storage sites, where they can be used for the construction of physical barrier.  *See id.*

Additionally, USACE is supporting CBP in facilitating the transfer of various non-bollard panel construction materials, such as light poles, rebar, wire mesh, manufactured steel tubes, construction beams, and electrical components.  *See* O'Conner Decl. ¶ 5.  USACE is paying for its labor costs associated with this disposition work from the fiscal year 2021 barrier system funds.  *Id.*  If the appropriations were not available for this purpose, USACE would not have funding to facilitate the transfer of these materials.  The Court should accordingly clarify that the preliminary injunction does not prohibit using the fiscal year 2021 barrier system funds for costs associated with disposition of excess barrier construction materials.

### E.    Wind Down Costs to Comply with the Court's Injunction

The Government is working expeditiously to comply with the Court's order by taking appropriate steps to cease using the fiscal year 2020 and 2021 barrier system funds for projects that do not meet the requirements of the Court's injunction.  Defendants request clarification that challenged funds may be utilized to pay contractors for costs associated with winding down operations to comply with the Court's preliminary injunction.  To be clear, Defendants are not seeking to utilize the challenged funds to pay contractors for work performed prior to the

injunction that is now prohibited by the Court's order.  Instead, Defendants seek clarification that the fiscal year 2020 and 2021 barrier system funds can be used to pay for actions necessary to comply with the injunction, including material and labor costs.

CBP in the process of implementing appropriate contracting actions and stop work directives to cease using the fiscal year 2020 and 2021 barrier system funds on actions prohibited by the Court injunction, including for the installation of system attributes in the former Department of Defense project areas and environmental mitigation projects.  *See* Seventh Enriquez Decl. ¶ 10.  As CBP suspends or stops work on such projects, CBP will incur costs associated with winding down those activities.  *See* Seventh Enriquez Decl. ¶ 34.  Paying these costs helps to ensure that as contractors close out project sites and demobilize personnel and equipment, they will do so in a safe and secure manner.  *Id.*  While the specific wind down activities will vary by project site based specific conditions, this work will likely include closing of open trenches and removal/correction of exposed rebar that pose as imminent safety risks to agents and migrants; removal of contaminated soil and construction debris; blocking off culverts to avoid washing out of vertical barrier foundations; and ensuring proper site drainage to prevent flooding of patrol roads adjacent to vertical barrier necessary for Border Patrol agents.  *Id.*  Completing these activities using the fiscal year 2020 and 2021 barrier system appropriations will minimize risks to Border Patrol agents, migrants, and member of the public who may access the areas going forward.  *Id.*

An order clarifying that Defendants are not prohibited from using challenged funds to pay for costs required to comply with the Court's injunction and wind down project sites in a safe and orderly fashion would be consistent with the equitable nature of the preliminary injunction remedy.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "In

exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–312 (1982)).  Here, the public interest will be significantly undermined if Defendants are unable to pay contractors to perform the necessary work required to comply with the Court's order.  If work sites are suddenly left unattended in an unsafe state, both the public and Border Patrol agents risk potential injury and border security interests could be undermined.  Equitable principles therefore favor that the Court should exercise its "sound discretion" and clarify that Defendants may expend the fiscal year 2020 and 2021 barrier system appropriations to pay for wind down costs required to comply with the Court's injunction. *Winter*, 555 U.S. at 24.

## II.    The Court Should Extend the Stay of the Injunction Pending a Decision on Defendants' Motion to Clarify.

The Court should extend the stay of the preliminary injunction pending the Court's consideration of Defendants' Motion for Clarification.  The current stay of the preliminary injunction extends up to and through Friday, March 22, 2024.  *See* Order (ECF No. 132).  To ensure compliance with the preliminary injunction were it to go into effect while this motion is pending, Defendants would likely need to issue overly broad stop work directives and contract suspension notices applicable to the barrier construction activities discussed in this motion.  In the event CBP temporarily stops work or suspends construction activities that the Court later clarifies is not prohibited by the injunction, CBP will incur costs, such as delay claims and requests for equitable adjustments from the contractors performing the work, to later unsuspend that work.  *See* Sixth Declaration of Paul Enriquez ¶ 11 (ECF No. 131-1).  CBP may have difficulty quickly starting that work again after a stop work order is lifted, as contractors may need to recall personnel and re-mobilize equipment that is removed from a project area after a

20

suspension.  *Id.*  These unneeded delays and additional costs can be avoided by extending the stay while the Court considers this motion.

At a minimum, the Court should extend the stay of the injunction as it applies to the five categories of activities at issue in this motion.  A tailored extension of the stay applicable to the activities described above would mitigate the harms associated with prematurely stopping funding and work on those barrier construction activities while the Court decides the motion to clarify.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for clarification and for an extension of the stay of the preliminary injunction during the pendency of the motion.  Proposed orders are attached.


Dated:  March 21, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

 */s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar #23840-49)
Senior Trial Counsel
MICHAEL J. GERARDI
(D.C. Bar #1017949)
Trial Attorney / Attorney-in-Charge
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, No. 7506
Washington, D.C. 20005
Tel: (202) 616-5084

Fax: (202) 616-8470
E-mail: Andrew.Warden@usdoj.gov

ALAMDAR S. HAMDANI
United States Attorney

/s/ *Daniel D. Hu*
DANIEL D. HU
Chief, Civil Division
Assistant United States Attorney
Southern District No. 7959
Texas Bar No. 10131415
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
Fax: (713) 718-3303
E-mail: Daniel.Hu@usdoj.gov


ALYSSA IGLESIAS
Assistant United States Attorney
Southern District of Texas No.: 3610302
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Alyssa.Iglesias@usdoj.gov

**CERTIFICATE OF WORD COUNT**

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 6125, as counted by Microsoft Word.


*/s/ Andrew I. Warden*
ANDREW I. WARDEN


**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2024, I electronically filed a copy of the foregoing motion.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.


*/s/ Andrew I. Warden*
ANDREW I. WARDEN

**CERTIFICATE OF CONFERRAL**

I hereby certify that on March 20, 2024, I sent an email to counsel for Plaintiffs in the above-captioned cases requesting their position on the relief sought in this motion.  The parties conferred by telephone/video conference that same day and followed up by email.  Counsel for Plaintiffs stated that they oppose the motion to clarify with respect to categories a, c, d, and e in Defendants' motion because the fiscal year 2020 and 2021 "barrier system" appropriations authorize expenses only for barrier construction.  Plaintiffs also stated that clarification is not necessary for category b in Defendants' motion.  Plaintiffs oppose Defendants' request to extend the stay of the preliminary injunction pending resolution of the clarification motion.


*/s/ Andrew I. Warden*
ANDREW I. WARDEN