IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>JOSEPH R. BIDEN JR., in his official capacity as President of the United States, *et al.*,<br><br>Defendants | No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>Plaintiffs,<br>v.<br><br>JOSEPH R. BIDEN JR., in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052)<br>Hon. Drew B. Tipton |

SEVENTH DECLARATION OF PAUL ENRIQUEZ

I, Paul Enriquez, declare as follows:

1.　　I am the Director, Infrastructure Portfolio, U.S. Border Patrol Program Management Office Directorate ("PMOD"), U.S. Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS"). I have held this position since January 2023 and support the planning and execution of border infrastructure projects from construction to

maintenance. From May 2021 to December 2022, I served as the Deputy Director for the Infrastructure Portfolio and from August 2018 to May 2021, I served as the Real Estate and Environmental Director for the Infrastructure Portfolio. From 2013 to August 2018, I was the Real Estate and Environmental Branch Chief for the Border Patrol and Air and Marine Program Management Office ("BPAM"), Facilities Management and Engineering, Office of Facilities and Asset Management. From 2011 to 2013, I was employed as an Environmental Protection Specialist in the BPAM office. In that role, I performed environmental analyses for various border infrastructure projects. From 2008 to 2011, I was a contractor assigned to the BPAM office and provided environmental support on various border infrastructure projects.

2. CBP is the DHS component with primary responsibility for border security. CBP constructs, operates, and maintains border infrastructure necessary to deter and prevent illegal entry on the southern border.

3. Within CBP, PMOD has expertise in managing and executing border infrastructure projects. PMOD is tasked with managing the schedule, finances, real estate acquisition, environmental planning, and construction of the border infrastructure system along the U.S. border.

4. Based upon my current and past job duties, I am familiar with the funding appropriated to CBP for barrier construction and the obligations and projects associated with such funding.

5. I previously submitted declarations on December 8, 2021, July 12, 2022, August 18, 2023, September 27, 2023, October 17, 2023, and March 14, 2024, that outlined, among other things, how CBP was using the appropriated funds it received in fiscal years ("FY") 2020 and 2021 for barrier system and the steps CBP is taking to comply with the Court's order of March 8, 2024.

6. This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

**BACKGROUND**

7. On March 8, 2024, the Court issued an order stating that CBP's FY20 and FY21 barrier system appropriations may only be used for the "construction of physical barriers, such as walls,

fencing, buoys, etc." The court's order prohibits "the Government and all its respective officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them" from obligating FY20 or FY21 barrier system funds "toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes."

8. In my declaration of March 14, 2024, I stated that CBP is working diligently to comply with the Court's order. I further stated that given the breadth and scope of activities affected by the Court's order, CBP needed additional time to not only comply with the Court's order, but also assess what work can continue and what work may require additional clarification from the Court.

9. On March 15, 2024, the Court granted the government's request for an additional seven days to comply with the Court's order.

10. CBP continues to work diligently to comply with the Court's order. To date, it has suspended or stopped work on ten contracts or interagency agreements for projects or activities that are prohibited by the Court's order, including contracts for the installation of system attributes in the former Department of Defense ("DoD") project areas, interagency agreements with the Department of the Interior through which CBP planned to fund mitigation actions, environmental planning support for planned remediation work in the former DoD project areas, and other ancillary support contracts that would have supported work that is now prohibited by the Court's order. CBP plans to issue additional suspension notices or stop work orders in the coming days.

11. In addition to identifying projects or activities that must stop under the terms of the Court's order, CBP's review of its existing contracts and interagency agreements that are funded by FY20 and FY21 barrier system appropriations has revealed several activities that it believes are permissible under the Court's order. CBP has also identified projects or activities that require additional clarification from the Court. These projects and activities are detailed below. Further guidance and clarification from the Court will help CBP determine what additional contract actions must be taken to comply with the Court's order.

## PROJECT COSTS REQUIRED TO SUPPORT THE CONSTRUCTION OF PHYSICAL BARRIER

12.     The Court's order states that CBP's FY20 and FY21 barrier system appropriations may be used for the "construction of physical barriers, such as walls, fencing, buoys, etc." As set forth in more detail below, CBP has identified projects and activities currently funded in whole or in part by the FY20 and FY21 barrier system appropriations that involve the construction of physical barrier. Importantly, though, to construct physical barrier, CBP must be able to fund the project activities that are attendant or necessary to such construction. These project activities include, among other things, (1) acquisition of real estate; (2) construction or improvement of access and patrol roads, i.e., roads that provide access for both construction and long-term maintenance of the barrier and the road that is required for the United States Border Patrol ("USBP") to operate adjacent to the barrier; (3) erosion and drainage control measures; (4) installation of power lines and utility infrastructure to power automatic pedestrian and vehicle gates in the barrier; (5) project oversight and management; and (6) other ancillary services.

13.     <u>Acquisition of Real Estate</u>: Unless the barrier will be built on land owned by the federal government, the United States must acquire the necessary real estate interests from landowners where the barrier will be built or from landowners where CBP intends to construct new roads or improve existing roads in order to gain permanent access to the planned barrier and create utility corridors that provide permanent power to vehicle or other gates within the barrier. This complex process requires funding for, among other things, reviewing land ownership records associated with the proposed barrier; obtaining rights of entry for pre-construction land surveys and conducting property appraisals; and obtaining title to the property where the barrier will be built, either through negotiated sales with landowners or judicial actions (*e.g.*, Declarations of Taking). Acquisition of real estate also requires preparation of final title products, completion of post-acquisition title opinions, recording of interests, and closeout of previously executed offers to sell. Without the ability to obligate or expend the enjoined barrier system funds on land acquisition activities, CBP would be unable to construct new physical barrier projects on non-federal land.

14. <u>Access and Patrol Roads</u>: As a part of almost every barrier project CBP must construct new or improve existing roads for ingress and egress to planned barrier in order to provide adequate access for equipment and crews constructing the barrier. These same access roads provide permanent ingress and ingress for future maintenance of the barrier and provide USBP agents with access to the area adjacent to the barriers for enforcement operations. New barrier is frequently built in remote areas near the international boundary line where there are no existing public roadways that can support the delivery of necessary construction equipment and supplies. Roads must therefore be installed to provide access between the construction sites and nearby public roadways. Further, roads are needed immediately parallel to the physical barrier, both to facilitate the construction process and to allow USBP agents to patrol the areas adjacent to the barrier.

15. <u>Erosion and Drainage Control</u>: Erosion and drainage control measures are a critical element of barrier construction. If CBP does not ensure design and construction of the barrier includes proper drainage and long-term erosion control measures in and around constructed barrier, the integrity and stability of the barrier will be at risk due to undermining of the foundation of the barrier by heavy water flows during storm events which are common occurrences in the southwest border regions. Improper erosion or drainage control could also substantially increase the long-term maintenance costs of the barrier.

16. <u>Power and Utilities Installation</u>: The construction of physical barrier can require the installation of vehicle, pedestrian, or stormwater gates. Vehicle and pedestrian gates provide needed access through the barrier for USBP agents, emergency services, maintenance personnel, landowners, and other parties. In the Rio Grande Valley, for example, where barrier can be as much as a mile from the Rio Grande River and the international boundary, CBP must install gates to ensure the USBP agents, landowners, and first responders have access to land on both sides of the barriers. In other areas, CBP must install stormwater gates to ensure that sufficient water flows through the barrier during heavy rain events to ensure water flows do not overwhelm the barrier or increase flood risk. These gates need to be powered due to the size and heavy weight of these gates and to ensure they operate efficiently. Thus, CBP must install the necessary power and

utilities needed for long term operation of the gates.

17.     Project Oversight and Management: Construction of physical barrier also requires project oversight and management. This includes review of proposed barrier designs, oversight of work performed by construction contractors in the field, inspections of completed work to ensure it meets contract or other requirements, and regular communication between the government and contractors performing the construction contracts. In some instances, CBP executes interagency agreements with other federal agencies for their support in contract administration or project oversight and management. Where CBP executes interagency agreements, it is required to reimburse the other federal agency for the actual costs they incur in providing such support to CBP.

18.     Ancillary Services: There are also numerous ancillary services that must be funded as part of the construction of physical barrier. These services may be funded as part of the construction contract or through separate support contracts. These services include, among other things, barrier and road design and geo-technical surveys that inform the design work; environmental surveys and environmental planning support necessary to comply with applicable environmental laws, including, for example, preparation of environmental assessments and development of stormwater pollution prevention plans; geographic information systems and mapping support; data systems; and public outreach and communications. Such as consultations required by federal law.

19.     Because the above-referenced project costs support the construction of physical barrier, CBP believes they are permissible under the Court's order. CBP, however, seeks clarification from the Court.

**CONSTRUCTION OF PHYSICAL BARRIER**

20.     In its review of its existing contracts or interagency agreements funded by the FY20 and FY21 barrier system appropriations, CBP has identified projects involving the construction of physical barrier that it believes may continue under the terms of the Court's order.

21.     Construction of Physical Barrier in the United States Border Patrol Rio Grande Valley Sector. As detailed in my August and October 2023 declaration, in June 2023 DHS announced that

it had authorized CBP to move forward with planning and execution of up to approximately 20 miles of new border barrier system in the USBP Rio Grande Valley Sector ("RGV Sector"). In September 2023, CBP awarded a contract for the construction of approximately 17 miles of new border barrier system in Starr County, Texas, within the USBP RGV Sector (the "RGV Barrier Contract"). On October 5, 2023, the Secretary of Homeland Security, pursuant to his authority under section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, 8 U.S.C. § 1103 note, issued a waiver covering the construction of barrier system in Starr County. The RGV Barrier Contract calls for the construction of 18-foot steel bollard panels that will be placed in concrete jersey barriers.

22. The RGV Barrier Contract is funded by the CBP's FY19 barrier system appropriation. CBP's FY19 barrier system appropriation has now expired and is no longer available for new obligations. CBP, therefore, is using the FY20 and FY21 barrier system appropriations to fund the additional project costs that are necessary for and support the execution of the project, the most notable of which is the acquisition of real estate. DHS has executed interagency agreements with the United States Army Corps of Engineers and the Department of Justice to make approximately $14 million of FY21 barrier system funds available to those agencies to support DHS's land acquisition activities. In light of the Court's order permitting the use of FY20 and FY21 barrier systems appropriations for the construction of physical barriers, CBP intends to move forward with actions necessary to construct physical barrier in Starr County without associated system attributes. To construct approximately 17 miles of physical barrier in Starr County, CBP must use the FY20 and FY21 barrier system appropriations to fund the types of project activities noted above that are necessary for or support the construction of physical barrier. CBP, for example, must be able to acquire the real estate necessary for the barrier footprint, access and patrol roads, and the utility corridors that are needed to power the gates that ensure USBP agents, landowners, and first responders can access land on either side of the barrier. CBP also must be able to fund other project costs, including, for example, project management, real estate and environmental surveys, and environmental planning support. Because these project costs are necessary for or support the

construction of physical barrier, CBP believes they are permissible under the Court's order. If CBP cannot fund these project costs with FY20 and FY21 barrier system appropriations, it will not be able to construct physical barrier in Starr County.

23. <u>Gaps and Gates</u>. As detailed in my March 14, 2024 declaration, CBP has a remediation contract for work in the USBP Tucson Sector that, as part of the remediation work, includes filling gaps in the barrier with new bollard-style barrier and constructing gates in the existing barrier. CBP will suspend the work under this contract that is prohibited by the Court's order, including installation of system attributes where DoD has already constructed physical barrier and other remediation work such as drainage improvements, erosion control measures, and road improvements in the former DoD project areas within the USBP Tucson Sector that do not support the construction of new barrier or gates. However, because closing gaps and installing gates involves the construction of physical barrier, CBP believes that work may continue under the terms of the Court's order.

24. CBP has five additional contracts for remediation work in the USBP San Diego, El Centro, Tucson, and El Paso Sectors. As part of each of those remediation contracts, CBP tasked the contractors with filling gaps and installing gates in the existing barrier. Installation of the physical barrier to fill the gaps and gates is now substantially complete. However, the contractors are required to complete several remaining close out actions to finish the projects. This would include contractor warranty requirements, completing the as built drawings of the gates and gaps, which will assist CBP with future maintenance and repair, and any remaining drainage or erosion control measures that ensure the long-term stability of the bollards and gates. CBP will suspend the work under these contracts that is prohibited by the Court's order (e.g., system attribute installation), but believes it is appropriate to make the FY20 and FY21 funds available for the contractors to close out and complete the final steps required for gate and gap installation aspects of the projects.

## BARRIER REPLACEMENT PROJECTS

25. CBP seeks clarification from the Court as to whether the terms of the Court's order allow CBP to use the FY20 and FY21 barrier system appropriations to replace existing barrier that is failing, is easily compromised, and no longer meets USBP's operational needs with new barrier that is more operationally effective. CBP believes these projects involve the construction of physical barrier and are therefore permissible under the Court's order. As stated in my March 14, 2024 declaration, however, because these projects replace existing barrier rather than constructing new barrier in an area of the border where there currently is no barrier, CBP believes it is prudent to seek clarification from the Court.

26. <u>Train Gates</u>. As detailed in my prior declarations, in the USBP El Centro and El Paso Sectors, CBP has two projects addressing security vulnerabilities where barrier intersects with railroad tracks that cross the international boundary. Both of these projects involve the replacement of existing barrier that is not operationally effective.

27. In the El Centro Sector, CBP is installing a 30-ft bollard-style automatic train gate, which will replace a manual chain link gate. The existing, substandard gate is routinely exploited by smugglers. The El Centro train gate construction contract is funded by CBP's FY18 border barrier appropriation. The project is currently in the design phase and construction is estimated to start in June 2024. CBP planned to use the FY20 barrier system appropriation to pay for some of the costs associated with this project. If that is not permissible under the Court's order, CBP will be forced to suspend the project.

28. In the El Paso Sector, CBP is relocating the existing barrier and installing a new gate closer to the Rio Grande River. This project will allow for continued railroad access while closing a gap in the existing barrier. The gap was a funnel point for illicit activity, and the daily train operations made it particularly dangerous for migrants and agents. The El Paso project is substantially complete; however, there are project close out activities that CBP had planned to fund with the FY21 barrier system appropriation. Close out actions include the installation and connection of power to the gate and completion of remaining erosion control measures

adjacent to the barrier which is located on a flood levee and could compromise the levee if not completed. CBP will be required to suspend those close out activities if this project is not permissible under the terms of the Court's order.

29. <u>Replacement of Existing Barrier in Friendship Circle in the USBP San Diego Sector</u>. As set forth in my August 2023 declaration, in the USBP San Diego Sector CBP is replacing primary and secondary barrier in and around the Friendship Circle area that is heavily corroded by the nearby ocean salt waters, is easily exploited, and no longer meets USBP's operational needs. This project is funded in part by both the FY20 and FY21 barrier system appropriations. Work on the secondary barrier is substantially complete, which included construction of 30-foot steel bollard barrier. Work on the primary barrier is on-going. CBP planned to replace approximately 0.3 miles of primary barrier with steel bollard barrier, starting at the Pacific Ocean and extending east through an area known as Yogurt Canyon, which will consist of 30-foot steel bollard barrier. The existing primary barrier was installed in 2008-2009. It was not properly treated to withstand corrosion and was at risk of failure. Work on the primary barrier is 80% complete. On the eastern side of the project area in Yogurt Canyon, all of the outdated primary barrier has been removed, but CBP still needs to complete the installation of approximately 120 feet of new barrier. Additionally, CBP needs to finish the patrol road that runs parallel to the new barrier in Yogurt Canyon, which is critical to both USBP operations and future maintenance and repair of the barrier. All of the newly constructed barrier will be treated to mitigate the corrosive effects of moisture from the Pacific Ocean. CBP had also planned to install anti-climb topping on all of the newly constructed barrier. CBP believes this anti-climb feature is part of the barrier itself and not a system attribute that would be prohibited by the Court's order. If the Court finds that the remaining portions of the Friendship Circle project are not permissible under the Court's order, CBP will suspend the remaining portions of the project, thus leaving sections of the border without any form of barrier. The remaining gaps, incomplete road, and absence of anti-climb topping will result in significant security vulnerabilities going forward.

30. <u>Replacement of Existing Barrier in the USBP Yuma and El Centro Sectors</u>. As discussed in my August 2023 declaration, CBP has two fence replacement projects in the USBP Yuma and El Centro Sectors. Both projects replace dilapidated segments of legacy fencing that presently create safety and security concerns.

31. In the Yuma Sector, CBP replaced approximately 0.5 miles of legacy landing mat barrier with bollard barrier. The project is funded in part by the FY20 barrier system appropriation. It is substantially complete, including installation of new bollard barrier; however, additional contracting actions are needed to close out the project with the contractor. The remaining work consists of finalizing and resolving the contractor's request for an equitable adjustment to the original construction contract due to varying site conditions and due to the suspension of the contract after the Presidential Proclamation. If the Court determines that the Yuma project is not permissible under the Court's order, CBP will be unable to complete the remaining close out work.

32. In the El Centro Sector, CBP is replacing 0.6 miles of dilapidated and easily breached legacy barrier with new bollard barrier. This will help secure a heavily urbanized area that allows for quick vanishing times for illicit cross-border activity. The existing legacy barrier has been removed, and CBP needs to complete approximately 0.2 miles of the replacement barrier. The project is funded in part by the FY20 barrier system appropriation. If the Court determines that the El Centro project is not permissible under the Court's order, CBP will be unable to complete the project, resulting in a significant security vulnerability at this location going forward.

33. <u>San Diego Drainage Grates</u>. As noted in my August 2023 declaration, CBP has a project to replace drainage gates at 15 locations across the border. The steel grates were either missing or in disrepair, creating funnel points for illicit activity, as individuals attempt entry through the below-ground storm channels that terminate at the grates. When water levels are high, these areas can be particularly dangerous for migrants and agents and the new grates will serve as a barrier. As part of the project, CBP planned to install grate controllers, which improve the

operational efficiency of the grates, provide for awareness when a gate is opened, and further reduce the risk to agents and migrants. The project is funded in part by the FY20 barrier system appropriation. The steel grate work is complete; however, CBP has four remaining grate controllers installations to complete. The grate controllers are an integral part of the grate as they allow agents to remotely identify when a drainage grate has been breached or opened and when a drainage grate is in the closed position. The grate controls are a critical function of the drainage gates in this area which minimize health and safety issues for agents having to enter these storm drain areas especially due to the regular occurrences of pollution and sewage that flow through the storm channels. If the Court finds that the grate operators are not a permissible use of the FY20 barrier system appropriation, CBP will suspend this remaining work.

**PAYMENT OF CONTRACTORS FOR ORDERLY WIND DOWN ACTIVITIES**

34. Finally, CBP requests clarification as to whether it can use the FY20 and FY21 barrier system appropriations to pay contractors for orderly wind down activities. CBP is not seeking to pay contractors for work performed prior to the injunction that is now prohibited by the Court's order. Rather, CBP requests clarification as to whether it can use the FY20 and FY21 appropriations to cover the costs for actions necessary to comply with the injunction, including material and labor costs. As CBP suspends or stops work on projects or activities funded by the FY20 and FY21 barrier system appropriation that are now prohibited by the injunction, it will incur wind down costs. Being able to pay those wind down costs helps to ensure that as contractors close out project sites and demobilize personnel and equipment, they will do so in a manner that ensures the projects areas are safe and secure. This will minimize risks to USBP agents, migrants, and members of the public who may access such sites going forward. While the specific wind down activities will vary by project site based on specific conditions, this work will likely include such actions as closing of open trenches and removal/correction of exposed rebar that pose as imminent safety risks to agents and migrants; removal of contaminated soil and construction debris; blocking off culverts to avoid washing out of vertical barrier foundations; and ensuring proper site drainage to prevent flooding of patrol

roads adjacent to vertical barrier necessary for USBP agents.

***

This declaration is made pursuant to 28 U.S.C. 1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of March, 2024

Paul Enriquez
Infrastructure Portfolio Director
Program Management Office Directorate
U.S. Border Patrol