# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>Defendants. | No. 7:21-cv-00272 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR EXTENSION OF STAY**

1

**INTRODUCTION**

Faced with a preliminary injunction enjoining the obligation of funds in violation of subsection 209(a)(1), Defendants ask this Court to "clarify" its Memorandum Opinion and Order (ECF 128) with respect to five categories of DHS spending, and further request a stay of the preliminary injunction during the pendency of that motion. ECF 133. This Court requested an initial response from Plaintiffs with respect to the stay request by 3 p.m. today, March 22, 2024, and a subsequent response with respect to the clarification request by close of business March 27. In this filing, Plaintiffs respond to the stay request.

Defendants have not met their burden to obtain a stay. They make no attempt to justify an outright stay, so at a minimum no stay extending beyond the five categories of activities they mention is justified. But even with respect to those five categories, Defendants have not even argued, much less satisfied, the traditional four-factor test. And unlike the Federal Government's declaration filed March 14, which expressly stated that Defendants needed additional time to comply with this Court's order (which is why Plaintiffs acceded to a one-week extension), Defendants do not appear to make any similar claim in their latest declaration.

Defendants' motion makes clear that further stay is unwarranted. Although styled as a "motion for clarification," Defendants in fact ask this Court to reconsider issues already decided. Since the Fifth Circuit issued its decision last June, Defendants have had nine months to prepare for the possibility of a preliminary injunction. Further delay is unwarranted, especially when some of the funds expire

just a few months from now. At the very least, no administrative stay should extend further than the day after Plaintiffs are able to more fully respond to the motion for clarification. Plaintiffs hope to file that response Monday.

## STANDARD OF REVIEW

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks and citation omitted). The movant bears the burden of demonstrating that the circumstances justify issuance of a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In determining whether to grant a stay, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426. "The first two factors of the traditional standard are the most critical." *Id.* at 434.

## ARGUMENT

This Court should reject Defendants' motion to extend the stay because they have not satisfied—or even attempted to satisfy—the traditional four-factor stay analysis. Defendants dedicate less than a page to arguing for a stay, and beyond a general argument that the Federal Government may incur unspecified delays and costs if this Court grants its motion for clarification but does not grant a stay,

Defendants make no effort to meet *any* elements of the four-factor test laid out in *Nken*. This is fatal for their request. Even if Defendants had argued those factors, they cannot satisfy them.

*First*, Defendants have not made a strong showing that they are likely to succeed on the merits. In light of this Court's request to submit a response to the stay motion by today and the clarification motion by Wednesday, Plaintiffs necessarily offer only a snapshot of the reasons why Defendants are unlikely to succeed on the merits of their clarification motion.

Defendants cannot establish likelihood of success because this Court already found that "the bulk of the Government's obligations in the Plan do not comply with subsection 209(a)(1), which requires that those appropriations be obligated for the construction of barriers at the Southwest border." Op. at 52 (ECF 128). Four of the five categories of projects Defendants identify seek to use funds under subsection (a)(1) for purposes *other* than constructing physical barriers. They identify many projects where actual construction of physical barriers is "now complete" but then ask this Court for permission to use subsection (a)(1) funds for *non-construction* activities like "closeout costs." *E.g.*, ECF 133 at 17 (seeking to use subsection (a)(1) funds even though "grate installation is now complete"); *see also id.* at 13 (seeking permission to use subsection (a)(1) for "close-out activities" even though "physical installation of the new barrier and gates is substantially complete"); *id.* at 15 (asking to use these funds for "close out activities" on a project that is "substantially complete"); *id.* at 16 ("The

new bollard barrier *is now installed*, but additional contracting actions are needed to *close out* the project and comply with the terms of the contract." (emphasis added)).

This Court already and correctly rejected that argument. Plaintiffs do not dispute that many things that go into constructing barriers, such as land acquisition, are necessary, but Defendants must use *other* buckets of funds for those purposes, such as the "catch-all provision that funds anything that supports DHS's objectives," Op. at 51 (citing subsection 209(a)(5)), or even funding provisions entirely outside subsection 209(a). And even if no other buckets were available, Defendants could still obligate the current funds in subsection (a)(1) *now* for construction of barriers and then use funds from future fiscal years for ancillary projects.

An additional critical problem with Defendants' submission is that they offer no limiting principle. Under their position, they would be entitled to spend 100 percent of funds on "close-out" costs and anything else tangentially related to constructing actual physical barriers—all without building a single linear inch of barrier. That flouts the plain-text reading of the statute under this Court's interpretation.

Defendants are also unlikely to succeed on their fifth category, which is subsection I.B. in their motion. ECF 133 at 12–13. Defendants note that this Court identified two projects that are in compliance with subsection 209(a)(1), and they in effect ask this Court to name other projects that they think are in compliance. But that comes dangerously close to seeking an advisory opinion. Defendants in fact concede that those projects are *not* yet in compliance with this Court's order. ECF

5

133 at 13 ("Defendants will suspend those aspects of the remediation contracts that are prohibited by the Court's order ...."). Having already explained what the Federal Government can and cannot do under the statute, this Court need not individually bless or condemn projects by name. The first factor counsels against a stay.

*Second*, Defendants will not be irreparably injured absent a stay. Defendants suggest that "[i]n the event CBP temporarily stops work or suspends construction activities that the Court later clarifies is not prohibited by the injunction, CBP will incur costs, such as delay claims and requests for equitable adjustments from the contractors performing the work, to later unsuspend that work," and "may have difficult quickly starting that work again after a stop work order is lifted." ECF 133 at 20. This is insufficient.

"Irreparable harm must be concrete, non-speculative, and more than merely de minimis." *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, 659 F. Supp. 3d 736, 742 (N.D. Tex. 2023). The injuries identified by the Defendants, through affiant Paul Enriquez, are purely speculative and depend entirely on Defendants succeeding on what they stylize as a motion for clarification. *See* ECF 131-1 at 4–5 ("broad stop work orders or suspension notices *could* prematurely shut down activities that further the construction of physical barrier;" and "[i]t *may* also be difficult to quickly start work again" (emphasis added)). Assertions that some costs may increase in the future or that later delays may arise are insufficient as a basis for staying the Court's preliminary injunction. *See Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015) ("And the government's allegation that the injunction is delaying preparatory work

is unpersuasive. Injunctions often cause delays, and the government can resume work if it prevails on the merits.").

Moreover, the Defendants will not be injured by implementation of a preliminary injunction prohibiting unlawful expenditures. *See All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 252 (5th Cir. 2023), *cert. granted*; *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (The Government "cannot suffer harm from an injunction that merely ends an unlawful practice."). As this Court noted, "the Government lacks an interest in the perpetuation of a plan that is unlawful." Op. at 55. By entering the preliminary injunction, the Court has removed the possibility that Defendants could continue unlawful expenditures under subsection 209(a)(1). Defendants are free to seek funding for the identified activities through other lawful means. This factor counsels against a stay.

*Third,* a stay will substantially injure Plaintiffs. This Court's opinion found that Plaintiffs would "likely" face irreparable harm as "[t]here is also no indication Plaintiffs will ever be able to recover for their injuries." Op. at 53. This reasoning remains. A stay would reinstate the very injury that the preliminary injunction sought to prevent. While "the maintenance of the status quo is an important consideration in granting a stay," *Dayton Board of Education v. Brinkman*, 439 U.S. 1358, 1359 (1978), the status quo here involves recognized harms to Plaintiffs "traceable to the implementation of [Defendants'] Plan," Op. at 55. Any stay of the preliminary injunction would allow for those injuries to continue.

7

To be sure, after this Court issued the preliminary injunction, Plaintiffs reluctantly acceded to Defendants' request for a one-time, one-week stay from March 15 to today, March 22, 2024. Plaintiffs did so in response to Defendants' statement that they needed more time than the initial week this Court stayed the order so that they could finish sorting through the contracts they believed may be affected. For example, the Sixth Enriquez declaration, filed March 14, stated that the Federal Government needed "additional time to comply" with the Court's order. ECF 131-1 ¶ 8 (Sixth Enriquez declaration). But the Seventh Enriquez declaration does not appear to make any similar claim that additional time is needed to comply, only that additional time is needed for this Court to consider their clarification motion. ECF 133-1.

There is no need for an additional stay. Defendants had nine months after the Fifth Circuit's decision to prepare for the possibility of a preliminary injunction and two weeks after this Court issued the injunction. The third *Nken* factor counsels against a stay.

*Fourth*, the public interest lies in denying a stay. "[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (citing *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). As this Court already found, "the public interest is served, rather than undermined, by an injunction," where "the Executive Branch is enjoined from

8

obligating funds in a manner that conflicts with the plain language of an appropriations bill." *See* Op. at 55. This factor counsels against a stay.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion for Extension of Stay Pending Decision.

Date: March 22, 2024

ANDREW BAILEY
Attorney General of Missouri

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE, #69875MO
Solicitor General
*Attorney-in-Charge*
Southern Dist. of Texas Bar No. 3833606

SAMUEL FREEDLUND, #73707MO*
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-1800
Fax (573) 751-0774
josh.divine@ago.mo.gov
samuel.freedlund@ago.mo.gov

*Counsel for Plaintiff
State of Missouri*

*Admitted *pro hac vice*

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

/s/ *Ryan D. Walters*
RYAN D. WALTERS
*Attorney-in-Charge*
Chief, Special Litigation Division
Texas Bar No. 24105085
Southern Dist. of Texas Bar No. 3369185

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
ryan.walters@oag.texas.gov

*Counsel for Plaintiff State of Texas*

/s/ *Austin R. Nimocks*
AUSTIN R. NIMOCKS
*Attorney-in-Charge*

Texas Bar No. 24002695
S.D. Tex. Bar No. 2972032
austin@peelenimocks.com

CHRISTOPHER L. PEELE
Of Counsel
Texas Bar No. 24013308
S.D. Tex. Bar No. 31519
chris@peelenimocks.com

PEELE | NIMOCKS LAW FIRM
6836 Bee Caves Rd. Bldg. 3, Ste. 201
Austin, TX 78746
Phone: (512) 522-4893

*Counsel for Plaintiffs Texas General Land Office and Commissioner Dawn Buckingham, M.D.*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 1,882 words, exclusive of matters designated for omission, as counted by Microsoft Word.

/s/ *Joshua M. Divine*
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on March 22, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Joshua M. Divine*
Counsel for Plaintiffs