**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| The General Land Office of the State of Texas, and George P. Bush, *in his official capacity as Commissioner of the Texas General Land Office*,<br>   Plaintiffs,<br><br>v.<br><br>Joseph R. Biden, *in his official capacity as President of the United States of America*; United States Dept. of Homeland Security; and Alejandro Mayorkas, *in his official capacity as Secretary of the United States Dept. of Homeland Security*,<br>   Defendants.<br><br>----------------- | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 7:21-CV-00272 |
| The State of Missouri; and the State of Texas,<br>   Plaintiffs,<br><br>v.<br><br>Joseph R. Biden, *in his official capacity as President of the United States of America*; The United States of America; Alejandro Mayorkas, *in his official capacity as Secretary of the United States Dept. of Homeland Security*; United States Dept. of Homeland Security; Troy Miller, *in his official capacity as Acting Commissioner of the United States Border Protection*; and United States Customs and Border Protection,<br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 7:21-CV-00420 |

| | | |
|---|---|---|
| Posillico Civil Inc. Coastal Environmental Group Inc., *a joint venture doing business as* Southern Border Constructors,<br>       Plaintiff-Intervenor,<br><br>v.<br><br>Joseph R. Biden, *in his official capacity as President of the United States of America*; The United States of America; Alejandro Mayorkas, *in his official capacity as Secretary of the United States Dept. of Homeland Security*; United States Dept. of Homeland Security; Troy Miller, *in his official capacity as Acting Commissioner of the United States Border Protection*; and United States Customs and Border Protection,<br>       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: _____ |

## POSILLICO CIVIL INC. COASTAL ENVIRONMENTAL GROUP INC. *doing business as* SOUTHERN BORDER CONSTRUCTORS' <u>MOTION TO INTERVENE</u>

Pursuant to Federal Rule of Civil Procedure 24, Posillico Civil Inc. ("Posillico") Coastal Environmental Group Inc. ("Coastal"), a joint venture doing business as Southern Border Constructors (collectively, "SBC") respectfully moves this Court to allow SBC to intervene in the above captioned litigation.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .............................................. 1

I.     SBC begins work on the Contract, but is repeatedly stymied by the federal
       government. .................................................................................................... 2

II.    SBC begins termination settlement negotiations with USACE to recover
       millions in costs incurred because of the federal government's conflicting
       directives. ...................................................................................................... 4

III.   The federal government ends settlement discussions with SBC, citing this
       Court's March 8, 2024 Injunction. ................................................................ 5

ARGUMENT ............................................................................................................ 6

I.     SBC is entitled to intervene as of right because the scope of this Court's
       injunction has been unilaterally interpreted by the federal government in a
       manner that has already impaired SBC's rights. ......................................... 7

       A.    SBC has moved for intervention within days of USACE's letter ending
             settlement negotiations because of this Court's Injunction. ........................ 8

       B.    SBC has an overwhelming interest in this Court's clarification of the
             Injunction, which the federal government (wrongly) believes impacts
             millions of dollars in settlement monies..................................................... 10

       C.    SBC cannot protect its indisputable interest in settling its terminated
             contract for border wall construction without intervention. ...................... 12

       D.    None of the parties to this lawsuit possibly represent SBC's discrete
             interests as a terminated government contractor. ....................................... 12

       E.    In conclusion: SBC has proven its right to intervene in this matter. .......... 14

II.    Alternatively, this Court should grant SBC permissive intervention because of
       shared issues of fact and law between this case and SBC's settlement
       negotiations with USACE. ........................................................................... 15

CONCLUSION ...................................................................................................... 16

CERTIFICATE OF CONFERENCE ................................................................... 17

CERTIFICATE OF COMPLIANCE ................................................................... 17

CERTIFICATE OF SERVICE ............................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) .............................................................................8, 13

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) .....................................................................................12

*Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*,
817 F.3d 198 (5th Cir. 2016) ..............................................................................13, 14

*Guenther v. BP Ret. Accumulation Plan*,
50 F.4th 536 (5th Cir. 2022) .......................................................................................8

*In re Lease Oil Antitrust Litig.*,
570 F.3d 244 (5th Cir. 2009) ................................................................................8, 9

*Louisiana Int'l Marine, L.L.C. v. Drilling Rig Atlas Century*,
No. CV C-11-186, 2011 WL 13340708 (S.D. Tex. Dec. 21, 2011), No. CV
C-11-186, 2012 WL 13157133 (S.D. Tex. Mar. 19, 2012) ...................................11

*In re Oil Antitrust Litig.*,
570 F.3d at 247–48..........................................................................................................9

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) .....................................................................................11

*Symetra Life Ins. Co. v. Rapid Settlements Ltd.*,
No. CIV.A. H-05-3167, 2006 WL 2382250 (S.D. Tex. Aug. 16, 2006) ..............12

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ...............................................................................8, 10

**Statutes**

Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(a)(1),
133 Stat. 2317, 2511 (2019) .......................................................................................2

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134
Stat. 1182, 1456–57 (2020) .........................................................................................2

**Other Authorities**

48 C.F.R. § 49.105 ................................................................................................1, 4, 5

48 C.F.R. § 49.201(a) ..................................................................................................4

48 C.F.R. § 52.249-2(e)–(f) ........................................................................................5

FAR 52.249-2 ..............................................................................................................5

Fed. R. Civ. P. 24 ............................................................................................1, 7, 8, 10

Fed. R. Civ. P. 24(a) ......................................................................................1, 7, 8, 15

Fed. R. Civ. P. 24(a)(1)–(2) ........................................................................................7

Fed. R. Civ. P. 24(b) .............................................................................................1, 15

Fed. R. Civ. P. 24(b)(1)(A)–(B) ................................................................................15

Fed. R. Civ. P. 5(b) ....................................................................................................18

John Cibinic, Jr., James F. Nagle & Ralph C. Nash, Jr., ADMINISTRATION OF
    GOVERNMENT CONTRACTS 941 (Fifth Edition 2006) ...........................................4

## INTRODUCTION

As the holder of a multimillion-dollar border wall construction contract, SBC is entitled to intervene in this action as a matter of right under Federal Rule of Civil Procedure 24(a).  SBC's interest in this litigation has been crystallized by the federal government, acting through the United States Army Corps of Engineers ("USACE"), invoking this Court's preliminary injunction, Dkt. No. 128, as the chief reason to end settlement negotiations[1] with SBC over millions of dollars in costs incurred by SBC for border wall construction and during a suspension period caused by the federal government's vacillation on border wall construction objectives.

In the alternative, this Court should permit SBC to intervene under the permissive intervention provisions of Federal Rule of Civil Procedure 24(b) because of common issues of law and fact between this dispute and the settlement negotiations with USACE.

## FACTUAL AND PROCEDURAL BACKGROUND

As this Court knows, this labyrinthine litigation is about whether a number of arms of the Executive Branch must comply with Congressional appropriations legislation affirmatively requiring the expenditure of over two billion dollars "for the construction of [a] barrier system along the southwest border." Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(a)(1), 133 Stat. 2317, 2511 (2019); Consolidated

---

[1] As discussed further herein, these settlement negotiations are not tied to resolution of litigation, but are instead required under federal regulation.  *See* 48 C.F.R. § 49.105 ("[T]he [Terminating Contracting Officer] shall . . . [p]romptly settle the contractor's settlement proposal. . . .").

Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57 (2020) (collectively, "the Appropriations Acts").

SBC's relationship to this litigation is simple enough: SBC was tapped to construct a significant portion—over $500 million dollars' worth—of the aforementioned barrier system funded by the Appropriations Acts. SBC, a joint venture comprised of Posillico and Coastal, a company with significant operations in Texas, was established to perform work under Contract W9126G19D0020 ("the Contract"),[2] attached as Ex. 1, MATOC Award, a competitively bid multiple award contract issued by USACE on behalf of the DHS and CBP, both defendants in this case, and broken into "task orders" under the Federal Acquisitions Regulation ("FAR") Subpart 16. Posillico brought its heavy civil construction expertise to the Project; Coastal provided support functions like accounting, risk management, human resources, legal, and corporate safety.

## I.  SBC begins work on the Contract, but is repeatedly stymied by the federal government.

SBC was awarded two "task orders" ("the Task Orders") to construct border wall under the Contract: Rio Grande Valley ("RGV")-08 and RGV-09.  *See* Task Order RGV08 & 09, attached as Exs. 2 & 3, respectively.  Among other things, SBC was responsible for the design and install of 30' "bollard" wall and related infrastructure improvements like patrol roads and the like ("the Project").  Originally, Task Order RGV-08 alone had a value of some $120,412,400.00; by late 2021, the contract award had increased in value to

---

[2] For brevity's sake, the entire Contract has not been appended to this motion.  Should the Court wish to see it, SBC is happy to provide it in full.

$259,035,543.00.  SBC began its work on or about September 28, 2019—nearly five years ago—and continued performing its contractual obligations under the Task Orders until January 22, 2021.

That was when the federal government issued a suspension of work notice to SBC. In its Suspension of Work Order, the federal government directed SBC to immediately stop procurement, mobilization, demobilization, design, and construction—basically any work associated with the Task Orders.  *See* Jan. 22, 2021 Suspension Letters, attached as Ex. 4.  But rather than simply terminate SBC's contract and allow it to go about its business, the federal government held the suspension in place indefinitely, requiring SBC to remain onsite to ensure site security and safety.  SBC was given no direction as to how to accomplish this goal—or what it was to do with the significant infrastructure and manpower it had amassed at various locations for the Project.  SBC's myriad letters to the government requesting guidance on these points went unanswered.  SBC incurred significant costs during this period of governmental inaction and indecision.

In August 2021, after some 200 days of inaction, the federal government purported to lift the "suspension" and require SBC to restart certain portions of the work.  *See* Aug. 16, 2021 Letters from USACE, attached as Ex. 5.  In the following weeks, the government clarified its instructions, and SBC prepared to restart its operations pursuant to the new directive.  But the restart was short-lived.  On October 16, 2021, the government reversed course once again.  This time, it formally terminated SBC "for convenience" pursuant to the Task Orders.  *See* Oct. 16, 2021 Termination for Convenience Letters, attached as Ex. 6.

That "termination" lasted until February 18, 2022, when the bureaucratic whipsaw resumed with the federal government's partial recission of its full termination of SBC, followed by a subsequent reinstatement of certain parts of the Task Orders' scope of work.  *See* Feb. 18, 2022 Recission and Reinstatement Letter, attached as Ex. 7.  By this time, the costs incurred by SBC because of the government's indecision had ballooned into the millions.  Nonetheless, SBC worked diligently to complete the altered scope of work, completing the scope in December 2022 (RGV-08) and January 2024 (RGV-09).  The government has accepted and has the benefit of SBC's work under both Task Orders.

II.     **SBC begins termination settlement negotiations with USACE to recover millions in costs incurred because of the federal government's conflicting directives.**

In the government contracts sphere, terminations "for convenience" are not aberrational.  "The Termination for Convenience of the Government clause is one of the most unique provisions contained in government contracts.  In no other area of contract law has one party been given such complete authority to escape from contractual obligations."  John Cibinic, Jr., James F. Nagle & Ralph C. Nash, Jr., ADMINISTRATION OF GOVERNMENT CONTRACTS 941 (Fifth Edition 2006).  However, this authority comes with the requirements that the government shall promptly negotiate and agree to fairly compensate contractors for costs incurred plus a reasonable amount of profit.  *Id.*; 48 C.F.R. § 49.105; 48 C.F.R. § 49.201(a).

To recover its costs, the contractor submits a "termination settlement proposal to the Contracting Officer," and the parties negotiate.  48 C.F.R. § 52.249-2(e)–(f) ("After termination, the Contractor *shall* submit a final termination settlement proposal to the

Contracting Officer . . . the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid or remaining to be paid because of the termination.") (emphasis added). Thus, negotiating a settlement with the contractor is a regulatorily mandated activity. 48 C.F.R. § 49.105. The contract at issue here included clauses allowing for termination for convenience, and the federal government remains bound by those clauses.

The termination for convenience at issue here, situated as it was amidst conflicting directives from the government as to SBC's responsibilities and obligations, was hardly the mine-run termination for convenience. Nonetheless, SBC proceeded with negotiations with USACE under the procedures in FAR 52.249-2, as set out in SBC's contract. SBC submitted its final TSP for the RGV-08 Task Order[3] on August 9, 2023 and revised on February 5, 2024, seeking approximately $10 million. USACE engaged the Defense Contracting Audit Agency ("DCAA") to audit SBC's proposal as part of USACE's review of SBC's proposal. DCAA's audit and back and forth negotiations between DCAA, USACE, and SBC were ongoing—that is, until roughly two weeks ago.

### III. The federal government ends settlement discussions with SBC, citing this Court's March 8, 2024 Injunction.

SBC assumed its settlement negotiations with the federal government were proceeding in accordance with the regulations and apace when it received a one-page letter on March 28, 2024 from the government halting the negotiations. The government's

---

[3] As work only recently completed on the remaining portion of RGV-09, SBC has not yet submitted its final TSP to the federal government for RGV-09.

reasoning was singular: on March 8, 2024, the United States District Court for the Southern District of Texas had issued a preliminary injunction, which the federal government unilaterally interpreted as "precluding the federal government from utilizing any Department of Homeland Security (DHS) Fiscal Year ('FY') 2020 and 2021 'barrier systems' appropriations, except for the construction of barriers." *See* Mar. 28, 2024 USACE Suspension of TSP Processing Letter, attached as Ex. 8.

According to the federal government, the injunction therefore "preclude[d] this agency from using the DHS FY 2020/21 funds to pay USACE's labor to administer the subject contract," and somehow, USACE was thus "unable to process [SBC's] termination settlement proposal." *Id.* In conclusion, the federal government stated that it would "inform" SBC if the "injunction was lifted, or other funds are identified to allow continued work on these matters," but that "communications regarding the subject of this letter will by necessity be limited" until that time. *Id.*

SBC has received no communications from USACE or any other division of the federal government attempting to restart the settlement negotiations since that time, and moves to intervene to protect its interests.

**ARGUMENT**

Federal Rule of Civil Procedure 24 governs intervention in federal court. Intervention takes two forms: intervention "of right" and "permissive" intervention. SBC is unquestionably entitled to intervene as a matter "of right" because it is owed monies being withheld by the federal government because of the Injunction entered in this case, and because no current litigants in this case even purport to—much less can adequately—

defend SBC's interest in obtaining that money.  At minimum, SBC should be granted permissive intervention because of the common issues of fact and law between its cost claims against the federal government, which are being denied based on this Court's preliminary interpretation of the Appropriation Acts, and this action, which centers on the meaning of those statutes.  SBC explains.

### I. SBC is entitled to intervene as of right because the scope of this Court's injunction has been unilaterally interpreted by the federal government in a manner that has already impaired SBC's rights.

Rule 24(a) provides for intervention "of right" in two circumstances: (1) where the putative intervenor "is given an unconditional right to intervene by a federal statute" or (2) where the putative intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(1)–(2).

The latter provision is at issue in this case.  The Fifth Circuit has distilled four requirements for intervention of right in this circumstance:

(1) the application for intervention must be timely;
(2) the applicant must have an interest relating to the property or transaction which is the subject of the action;
(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest;
(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)).

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). "At this stage, the court takes the movant's factual allegations as true." *See Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (quoting *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022)). Any doubts as to intervention must be "resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009). And the Fifth Circuit has repeatedly emphasized that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas*, 805 F.3d at 657 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Here, SBC easily satisfies each of the requirements for intervention of right.

A.    <u>SBC has moved for intervention within days of USACE's letter ending settlement negotiations because of this Court's Injunction.</u>

SBC timely moved for intervention in this case—and it isn't close. The Fifth Circuit analyzes four factors to determine timeliness under Rule 24(a)(2):

> (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene;
> (2) the extent of prejudice to existing parties from allowing late intervention;
> (3) the extent of prejudice to the would-be intervenor if the petition is denied; and
> (4) any unusual circumstances.

*In re Oil Antitrust Litig.*, 570 F.3d at 247–48. SBC satisfies each factor handily.

***First***, SBC learned of its interest in this litigation mere days ago—when the federal government issued a letter on March 28th unilaterally interpreting this Court's Injunction

to prevent USACE from negotiating with SBC about the very thing—border wall construction—that this Court's Order enjoined the defendants to expend its funds upon. Given that the Fifth Circuit has concluded that delays as long as two years were not overlong in some cases, this factor is met here. *See In re Oil Antitrust Litig.*, 570 F.3d at 248.

*Second*, the other parties will suffer no prejudice because SBC's intervention is not "late" at all. *See id.* at 248–49. Even if it was, this case remains in the preliminary injunction stage, with extant disputes as to the extent of the preliminary injunction. SBC's timely intervention won't prejudice the other parties.

*Third*, SBC will suffer significant prejudice if it is not allowed to intervene. *See id.* at 249–50. The federal government's yearslong vacillation on SBC's duly awarded border construction contracts has cost SBC millions and remains unresolved. Now, the government is using this Court's Injunction *requiring expenditure on border wall contracts* as an excuse not to come to the table with SBC and closeout the settlement for SBC's border wall contracts. This factor, too, is satisfied here.

*Fourth and finally*, this case presents unique circumstances: a nonparty to this litigation (USACE), acting as agent of other federal governmental parties in this case (DHS and CBP), is relying on this Court's Injunction to withhold millions of dollars from another nonparty to this litigation (SBC)—a nonparty that may well have had its border wall construction contract honored if this injunction had been entered at an earlier stage in construction. SBC acted within ten days of learning of this anomalous situation. This final requirement supports the timeliness of SBC's intervention as well.

9

SBC's motion to intervene is timely.

B.   SBC has an overwhelming interest in this Court's clarification of the Injunction, which the federal government (wrongly) believes impacts millions of dollars in settlement monies.

SBC's interest in this Court's impending clarification of the Injunction is straightforward: the federal government is halting negotiations and withholding millions of dollars owed to SBC based on an erroneous, self-serving interpretation of the Injunction. The Fifth Circuit has noted that the "interest" required for intervention of right has no "clear definition" but that "the inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657. That said, a property interest is one of the most "elementary" interests recognized by Rule 24 "because it is concrete, specific to the person possessing the right, and legally protectable." *Id.* at 658.

SBC has a clear property interest in this litigation. The federal government has interpreted this Court's Injunction to prohibit further negotiation for—and ultimate payment of—millions of dollars owed to SBC under the government's termination of the Task Orders. The very real impact to SBC's rights under those terminated contracts is a classically sufficient property interest. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (holding that "legally protectable property interests in existing . . . contracts that are threatened by [a preliminary injunction]" was "an interest sufficient to satisfy [R]ule 24."); *cf. Louisiana Int'l Marine, L.L.C. v. Drilling Rig Atlas Century*, No. CV C-11-186, 2011 WL 13340708, at *5 (S.D. Tex. Dec. 21, 2011), *report and recommendation adopted,* No.

CV C-11-186, 2012 WL 13157133 (S.D. Tex. Mar. 19, 2012) (noting that a "contract claim is . . . a traditional interest recognized by substantive law.").

On SBC's read, this Court's Injunction *does not* appear to prohibit the federal government, specifically USACE, from negotiating a settlement of costs already incurred by SBC for the erection of a barrier system on the border and related suspension costs incurred while it remained in limbo on the border awaiting direction from the government on the Project. Instead, the Court's Injunction appears to expressly require the federal government to obligate funds under the Appropriations Acts for the "the construction of physical barriers, such as additional walls, fencing, buoys, etc."—tasks that SBC undertook prior to the government's suspensions, terminations, and reinstatements, and that it remained onsite to continue when given the greenlight from the government. *See* Dkt. No. 128 at 56.

Alternatively, if this Court agrees with the federal government's interpretation of the Injunction as currently written, SBC has a vested interest in this Court's clarification of the Injunction to reflect that the settlement funds owed to SBC for border wall construction and the government's indecisions on the border are not implicated in any way by the Injunction.

In either scenario, SBC has a clear interest in the outcome of this litigation and the scope of this Court's Injunction.

C.   SBC cannot protect its indisputable interest in settling its terminated contract for border wall construction without intervention.

SBC cannot adequately protect its interests in obtaining the funds owed it under the Contract and Tasks Orders if it is not allowed to intervene in this litigation to clarify the scope of the Court's Injunction.  This third prong does not "require a showing by the applicant for intervention that he will be bound by the disposition of the action." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996).  Rather, "[t]he Fifth Circuit has consistently held that if a court's ruling may adversely impact an intervenor's interest, the third requirement is satisfied." *Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, No. CIV.A. H-05-3167, 2006 WL 2382250, at *4 (S.D. Tex. Aug. 16, 2006) (citing, among other cases, *Espy*, 18 F.3d at 1207).

If the injunction is left in its current form, the federal government will almost certainly persist in its unilateral (and incorrect) interpretation of the Injunction as prohibiting closeout of the regulatorily prescribed settlement negotiations.  Millions of dollars owed to SBC under the Contract and Task Orders—all caused by years of the government's vacillations on barrier system construction—will be relegated indefinitely to an administrative purgatory.

SBC's rights under the Contract and Task Orders will be severely impaired if it is not allowed to intervene in this litigation.

D.   None of the parties to this lawsuit possibly represent SBC's discrete interests as a terminated government contractor.

Finally, SBC's interests are not adequately—indeed, are not at all—represented by the other parties in this lawsuit.  The Fifth Circuit has noted that this final factor imposes

12

a "minimal" burden on the movant. *Brumfield*, 749 F.3d at 345.  The putative intervenor need only demonstrate "that representation of his interest 'may be' inadequate."  *Id.* (quoting *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)).  To ensure that this requirement has *some* teeth, though, the Fifth Circuit has imposed two presumptions of adequate representation.  *See id.* Neither applies here.

The first presumption "arises where one party is a representative of the absentee by law." *Brumfield*, 749 F.3d at 345.  None of the parties to this lawsuit—all arms of either state or federal government—can reasonably be said to represent the interests of a private contractor like SBC "by law."  *See id.* This presumption does not apply.

"The second presumption arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit, in which event the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *Brumfield*, 749 F.3d at 345).  SBC's objective in this lawsuit— ensuring that the monies owed to it under the Contract and Task Orders are paid to it— is related but necessarily distinct from the interests of the government parties to this lawsuit, who are arguing more generally over the proper interpretation of the Appropriations Acts.  SBC maintains its entitlement to the funds owed it by the federal government no matter this Court's ultimate interpretation of the Appropriations Acts, but given the government's erroneous interpretation of this Court's Injunction, SBC has a unique interest in the clarification of its proper scope.

Even were we to assume that SBC's ultimate objective was aligned with that of one of the current parties (and it is not clear which party's objective that would actually be), SBC has interests "adverse" to the interests on both sides of the "v" in this case.  *See Entergy Gulf States Louisiana*, 817 F.3d at 203–04 (noting that if an intervenor shares the "ultimate objective" with another party, it can nonetheless intervene where it shows an "adversity of interest").  Assuming that the monies affected by the Injunction also affect SBC's settlement negotiations with USACE (and SBC does not believe they should), both the state government plaintiffs and the federal government defendants wish to obligate and direct the disputed funds to different ends—and none have expressed that directing monies toward negotiating termination settlements with SBC are among their ends.  Put bluntly, SBC's pecuniary interests in its Contract cannot be put at the mercy of two warring sovereigns, neither of whom are concerned with a private contractor's pecuniary plight.

None of the current parties to the lawsuit adequately represent SBC's unique interests.

E.     <u>In conclusion: SBC has proven its right to intervene in this matter.</u>

SBC has demonstrated its entitlement to intervene in this matter as of right.  SBC should not be sidelined from this litigation while this Court's Injunction is used as the justification to deny SBC millions in costs incurred because of the federal government's fickle border policies.

**II.    Alternatively, this Court should grant SBC permissive intervention because of shared issues of fact and law between this case and SBC's settlement negotiations with USACE.**

If the Court disagrees that SBC is entitled to intervene as of right, it should nonetheless permit SBC to intervene in this matter under Rule 24(b)(1), which allows for permissive intervention.

Like Rule 24(a), Rule 24(b)(1) envisions two scenarios for permissive intervention: (A) where the putative intervenor has "a conditional right to intervene by a federal statute" or (B) where the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(A)–(B).  Once more, the latter circumstance is at issue here.

The resolution of SBC's cost claims under the Contract and Task Orders shares questions of law and fact with the resolution of this action—at least under the federal government's view.  If, as the federal government appears to believe, this Court's Injunction interprets the Appropriations Acts to prohibit the payment of funds owed to SBC for its work on various stages of the Project, then SBC must be allowed an opportunity to seek clarification of the Court's order and/or dispute that its operations fell outside of "the construction of physical barriers, such as additional walls, fencing, buoys, etc." under the Appropriations Acts.  Dkt. No. 128 at 56.  It cannot risk USACE's arbitrary invocation of this Court's Injunction to indefinitely deny it compensation under the Contract and Task Orders.

As explained in more detail above, SBC has timely sought intervention.  If the Court disagrees that it is entitled to intervene as a matter of right, SBC should nonetheless

be permitted to intervene because of the closely intertwined issues of law and fact shared

by this dispute and in SBC's settlement negotiations with USACE.

## CONCLUSION

For the foregoing reasons, SBC requests that the Court enter an order allowing

SBC to intervene in this action to protect its interests in recovering millions of dollars in

costs incurred because of the federal government's vacillations regarding its border

policy.

**Respectfully submitted**, this 8th day of April, 2024.

> _/s/      Scott Burnett Smith_
> Scott Burnett Smith
> Texas State Bar No. 24119040
> Southern District of Texas Bar No. 2923954
> Telephone: (256) 517-5198
> Facsimile: (256) 517-5298
> Email: ssmith@bradley.com
>
> **Attorney-In-Charge for POSILLICO CIVIL INC. COASTAL ENVIRONMENTAL GROUP INC.** *doing business as* **SOUTHERN BORDER CONSTRUCTORS.**

Of Counsel:

BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue W Suite 900
Huntsville, AL 35801
Telephone: (256) 517-5100
Facsimile:  (256) 517-5200

## CERTIFICATE OF CONFERENCE

I certify that on April 5, 2024, counsel for SBC contacted or attempted to contact, via phone and email, counsel of record for each party to this action. Via email, Josh Divine, speaking on behalf of the Plaintiffs, and Andrew Warden, speaking on behalf of the Defendants, both reserved their respective positions regarding SBC's Motion to Intervene. So, out of an abundance of caution, SBC treats this motion as opposed by the current parties to this action.

*/s/ Scott Burnett Smith*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 4146 words, exclusive of matters designated for omission, as counted by Microsoft Word.

*/s/ Scott Burnett Smith*

## CERTIFICATE OF SERVICE

I certify that on April 8, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

*/s/ Scott Burnett Smith*