# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and GEORGE P. BUSH, in his official Capacity as Commissioner of the Texas General Land Office,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States of America; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the United States Department of Homeland Security,<br><br>Defendants | § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00272 |
| THE STATE OF MISSOURI; and THE STATE OF TEXAS,<br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, JR. in his official capacity as President of the United States of America; THE UNITED STATES OF AMERICA; ALEJANDRO N. MAYORKAS, in his official capacity as Secretary of the United States Department of Homeland Security UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY A. MILLER, in his official capacity as the Acting Commissioner of the United States Border Protection; and UNITED | § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00420<br>(formerly No. 6:21-cv-00052) |

| | |
|---|---|
| STATES CUSTOMS AND BORDER PROTECTION, United States Department of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY A. MILLER, in his official capacity as the Acting Commissioner of the United States Border Protection; and UNITED STATES CUSTOMS AND BORDER PROTECTION, <br><br>            Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DIAMOND A RANCH, WESTERN DIVISION L.L.C. AND GUADALUPE RANCH CORPORATION MOTION FOR LEAVE TO INTERVENE AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

SUMMARY ........................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

    A.    Likelihood of Success on the Merits ...................................................................... 4

        1.    Congressional funding of construction that causes harm to private landowners should also be available to remedy that harm ......................... 4

        2.    The appropriation for new wall construction is the only logical appropriation to pay for curing harm caused by that construction ............. 4

        3.    The contract for new wall construction makes clear that construction includes curing any damage caused by that activity ................................. 5

        4.    This interpretation is consistent with the Court's most recent clarification of its Order ............................................................................................... 7

    B.    The Balance of Equities Favors the Ranch ............................................................ 7

CONCLUSION AND RELIEF SOUGHT ......................................................................... 9

CERTIFICATE OF CONFERRAL ................................................................................. 10

CERTIFICATE OF WORD COUNT ............................................................................... 11

CERTIFICATE OF SERVICE ......................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Diamond A Ranch L.L.C. v. Wolf*,
 Civ. No. 20-3478 (DDC) ...................................................................................................1, 3

**STATUTES**

Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209, 133 Stat. 2317 (2019)......1, 5

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182
 (2020) ...................................................................................................................................1

**OTHER AUTHORITIES**

"Why a new jaguar sighting near the Arizona-Mexico border gives experts hope," National
 Geographic, March 23, 2021 ...............................................................................................2

Fed R. Civ. P 24(a)(2) .............................................................................................................1, 2

The Diamond A Ranch, Western Division L.L.C. and Guadalupe Ranch Corporation (together, "the Ranch") move for leave to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure so that the Ranch may seek clarification or modification of the injunction entered by the Court on March 8, 2024. Mem. Op. & Order at 56 (ECF No. 128) ("the Order").

## SUMMARY

The Ranch is suing the Department of Homeland Security and other federal parties ("the Department") in the District of the District of Columbia. *Diamond A Ranch L.L.C. v. Wolf*, Civ. No. 20-3478 (DDC). The suit contends that the Department's construction resulted in significant damage to Ranch property, exposing the Ranch to ongoing erosion, soil loss, and serious flood risks without due process.

After several years of litigation and negotiation, the Ranch and the Department reached broad agreement on a settlement designed to undo much of the damage caused by the wall construction. On March 26, 2024, however, the Department declared that the proposed agreement could not be implemented. The Department took the view that it could not spend money to remedy damage caused by its border wall construction because this Court's Order prevented such expenditures from the only available source, the amounts appropriated for "construction of barrier system" in fiscal years 2020 and 2021.[1]

It therefore appears that the Court's disposition of the above-referenced case is as a practical matter impairing the Ranch's ability to protect its interest in obtaining an adequate remedy for the Department's violations of law during the border wall construction. Given the

---

[1] Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209, 133 Stat. 2317, 2511 (2019) (allotting $1,375,000,000 "for the construction of [a] barrier system along the southwest border") and Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57 (2020).

adversity and difference in institutional interests between the Ranch and the Department, the Ranch cannot rely on the Department to adequately represent the Ranch's interest and it therefore seeks leave to intervene for the limited purpose of requesting a clarification or modification of the Order. Fed R. Civ. P 24(a)(2).

## STATEMENT OF FACTS

For background, the Ranch is located in remote mountain country on the border of Arizona, Mexico, and New Mexico, where the American Rockies come closest to Mexico's Sierra Madre. It is a working ranch with a family in residence who are committed to preserving the land in an unspoiled and sustainable state. Their success so far has made the Ranch a prime candidate location for [the return of jaguars to the United States](#).[2]

In late 2020, the Department decided to build a section of border wall all along the ranch's southern boundary. The Ranch is a strong supporter of border security measures, but it believed that the steep slopes in this region were already deterring illegal entry and create a risk of harm to the Ranch's economic and environmental interests. It intended to make these points if the Department followed its longstanding practice of seeking a right of entry to intrude on Ranch land during construction.

But by December 2020, the Department had no time for legal niceties. It asked for no consent and sought no right of entry. It simply started blasting and bulldozing. It may have hoped to keep the effects of construction within the 60-foot Roosevelt easement, but the rugged terrain made that impossible. In the end, the Department blasted rocks the size of Volkswagens plus tons of dirt out of the federal easement and downslope onto Ranch pastureland. The Department also

---

[2] *"Why a new jaguar sighting near the Arizona-Mexico border gives experts hope,"* National Geographic, March 23, 2021, last seen April 7, 2024 at
https://www.nationalgeographic.com/animals/article/jaguar-near-arizona-border-wall-mexico.

began but did not finish a structure that serves no border enforcement purpose but blocks Guadalupe Creek, the ranch's main streambed. This blockage creates a severe risk of heavy flooding in any significant rainstorm, a risk that will be made worse by the tons of soil displaced by construction and left exposed to erosion on steep slopes above Guadalupe Creek. The expected flooding is likely in turn to destroy the ranch's one reliable road -- the family's only practical route to the outside to access supplies and medical care.

Faced with these intrusions and harms, the ranch sued in federal district court in the District of Columbia, *Diamond A Ranch L.L.C. v. Wolf*, Civ. No. 20-3478 (DDC), arguing that the government's unilateral intrusions were a violation of due process. In 2021, the Department opened negotiations to settle the lawsuit by agreeing to remediate the damage done to the Ranch. An agreement in principle was reached this year that the Department would broadly remediate flooding and erosion risks caused by its construction using approximately $10 million in funds from the FY 2020 and 2021 appropriations. After the Order was adopted, the Department informed the Ranch that it construes the Order as preventing the use of FY 2020 and 2021 funds to remedy construction damage. No other funds are available for such remediation; in particular, the Department did not request or receive funds for that purpose from Congress in the most recent appropriation covering FY 2023.

In further support of this Motion, the Ranch incorporates the Declaration of Sage Goodwin, attached as Exhibit 2.

## ARGUMENT

### A.  Likelihood of Success on the Merits

#### 1. Congressional funding of construction that causes harm to private landowners should also be available to remedy that harm

The Order should not be read to leave landowners harmed by new border wall construction without a remedy. As a matter of appropriations law, any use of the funds from these appropriations must have "a logical relationship" to the appropriation, which is only "for the construction of [a] barrier system along the southwest border." In this case, damage to the Ranch from border wall construction was not just "logically related" to the construction; it was tied directly to the construction. In a project this size some damage to private landowners was the inevitable consequence of spending appropriated funds on new wall construction projects. So is the obligation, contractual and constitutional, to cure harms directly and inevitably caused by the project. It is unlikely in the extreme that Congress appropriated funds to be spent on activities that would predictably cause harm to private landowners without providing the funds needed to cure that damage. (It is for this reason that the Order's prohibition on use of funds for "mitigation and remediation efforts" should not be generalized to bar the curing of harm imposed directly on private landowners by new wall construction. It may be reasonable to conclude that generalized spending on environmental measures was not what Congress contemplated when it funded new wall construction; it is not reasonable to conclude that Congress intended to impose costs on landowners and leave them to whistle for redress.)

#### 2. The appropriation for new wall construction is the only logical appropriation to pay for curing harm caused by that construction

Certainly there is no evidence of such intent in the relevant appropriations acts. As the Court observed in its order, the appropriations act sets aside funds for five categories:

1. "Construction of barrier system along the southwest border;"

4

    2.       "Acquisition and deployment of border security technologies and trade and travel assets and infrastructure;"

    3.       "Facility construction and improvements;"

    4.       "Integrated operations assets and infrastructure';" and

    5.       "Mission support and infrastructure."[3]

The Order interprets these five categories as mutually exclusive, so that funds appropriated for border wall construction are not available for acquisition of border security technologies or facility construction or infrastructure or mission support. But curing the damage caused by actual construction of actual border wall does not fall into any of the last four categories. Unless Congress intended to leave construction damage without a remedy, the logical conclusion is that Congress viewed the construction, the damage, and the obligation to repair the damage as a single category of expense. It is all part of building the wall, and funds appropriated for building the wall may also be used to cure the inevitable harms caused by building the wall.

    **3.    The contract for new wall construction makes clear that construction includes curing any damage caused by that activity**

This understanding is bolstered by the wall construction contract that led to the damage of Ranch property.[4] Written in 2019, when enthusiasm for the project was at its height, the contract treats remedial action as an integral part of the construction project itself. At several points the contract expressly includes in the contractor's duties an obligation to undo harms caused by construction under the Contract. Thus the contractor must:

---

[3] § 209(a), 133 Stat. at 2511.
[4] Tucson Project 1, 2, 3 FY19 Vehicle and Pedestrian W912PL19C0015 Barrier Replacement Project (63 Miles), Section 01 57 19, Temporary Environmental Controls ("Barrier Replacement Contract".). Attached as Exhibit 1 to this Motion.

- "In the event a [best management practice] nonconformance or environmental noncompliance associated with the contracted services, tasks, or actions occurs, take corrective and preventative actions." (Barrier Replacement Contract, para. 1.4.1.)
- "Restore to an equivalent or improved condition upon completion of work that is consistent with the requirements of the Border Patrol" (*Id*. at 3.1)
- "Remove displaced rocks from uncleared areas" (*Id*. at 3.1.2)
- "Remove temporary culverts or bridges upon completion of work, and repair the area to its original condition unless otherwise required by the Contracting Officer." (*Id*. at 3.1.3)
- "Provide erosion and sediment control measures in accordance with state and local laws and regulations…." (*Id*. at 3.2.2)

The Ranch understands that remedial obligations of this sort are a longstanding feature of Border Patrol construction contracts; indeed it is hard to see how any responsible agency would fail to treat such remedial action as a part of the overall project when it draws up a budget and seeks appropriations for construction. These are also the actions the Department agreed to take in its negotiations to settle the Ranch's lawsuit -- to restore land it had disturbed and to mitigate the flood, erosion, and sediment risks it had created. Finally, they are the kinds of actions that the contract ties directly to wall construction. This history makes clear the Department's understanding in 2019 – at the height of the Department's enthusiasm for wall construction -- that such a use of the funds was an integral part of the appropriation for new wall construction that the Department had requested.

### 4. This interpretation is consistent with the Court's most recent clarification of its Order

This interpretation is also consistent with the approach taken by the Court in the most recent hearing on the Defendant's motion for clarification. In that hearing, the Court treated several categories of activity as so closely tied to construction of new border wall that they fall within the scope of paragraph a (1). *Transcript of Motion Hearing, The General Land Office of the State of Texas v. Biden*, March 28, 2024 ("Tr."). These include the near-term costs of acquiring land on which wall will be constructed, Tr. at 20, the cost of closing gaps and installing gates on recently built wall, Tr. at 21-23, expenditures to move bollards to locations where new wall is being constructed, Tr. at 24-25, and the cost of inspecting the new wall construction to ensure compliance with the contract. Tr. at 25. The principle applied by the Court, the Ranch submits, is that appropriations under paragraph a (1) may be spent on construction of new border wall and on activities tied directly to that construction. The Court was asked to rule on expenditures to cure damage caused by new wall construction, but such damage is as closely related to new wall construction as the installation of gates or the purchase of land or inspection to ensure contract compliance. (There is no doubt that the damage that the Department has agreed to remedy was the result of new border wall construction. The damage was done in late 2020 and early 2021, by some of the last border wall construction carried out under the last administration.)

### B. The Balance of Equities Favors the Ranch

For many of the same reasons, no preliminary injunction should be issued that prevents the Department from using appropriated funds to remedy the harm its construction caused to the Ranch. The cost of remedying the harm to the Ranch was estimated during negotiations to be less than $10 million dollars. That is a modest sum in the context of the overall appropriations, but it is a staggering cost to impose upon a cattle ranch trying to eke out a living from sparse, dry

7

mountain terrain. Requiring that the $10 million be spent on new wall construction somewhere else will do little or nothing to address the injury offered by the Plaintiffs to justify the injunction. It is not clear that the last $10 million in the appropriation can be spent before it expires, or that it will actually result in more than a panel or two of new wall, or that such a small contribution to wall construction will actually reduce the injury Plaintiffs have cited. None of those uncertainties apply to the injury that will be suffered by the Ranch if the damage it has suffered is not cured. Rainfall at the Ranch is sparse. When it comes, though, it can wash out gullies, deposit tons of debris, and transform the landscape. Those are the harms that the Ranch has faced in the (very dry) years since the Department intruded improperly on its property. The drought will not go on forever; the damage resulting from lack of remediation is inevitable and irreparable. It more than outweighs the abstract and unmeasurable future harm that Plaintiffs will experience if $10 million in wall construction funds is used to cure the Ranch's injuries.

Without the clarification requested here, there are no funds to remedy the harm suffered by the Ranch. New appropriations are already spoken for. There is no "free money" in the federal budget; to be paid for the damage it has suffered the Ranch will have to persuade the Department and the Congress to set aside funds for that purpose – likely in an appropriation to take effect no sooner than FY 2025. That is simply not likely to happen. Foreclosing payment from the FY 20 and FY21 acts will effectively deny the ranch a remedy for years if not forever. There is no one with a better equitable claim to payment than the ranch.

Whether viewed through a prism of appropriation law or of equity and irreparable harm, the injunction should not be applied to deprive the ranch of a remedy for harms directly caused by the Department's construction of new border wall. The Department has at last acknowledged and agreed to redress those wrongs. This court should not prevent the Department from doing so.

## CONCLUSION AND RELIEF SOUGHT

The Ranch requests that the Court enter the proposed order attached hereto authorizing its intervention in the above-captioned case. The Court should clarify that its Order of March 8, 2024, does not prevent the Department from obligating funds appropriated under Subsection 209(a)(1) and Section 210 for the purpose of curing or mitigating harms caused directly and immediately to the Ranch by the Department's construction of new border wall in 2020 and 2021.

April 11, 2024

Respectfully submitted,

**STEPTOE LLP**

*/s/ Larry R. Veselka*
Larry R. Veselka (attorney in charge)
TX Bar No. 20555400
SDTX No. 6797
Hale Neilson
TX Bar No. 24116820
SDTX No. 3635009
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: 713.221.2300
lveselka@steptoe.com
hneilson@steptoe.com

-and-

Stewart Baker (*Pro Hac Vice* Forthcoming)
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202.429.3000
sbaker@steptoe.com

***Attorneys for Diamond A Ranch, Western Division L.L.C. and Guadalupe Ranch Corporation***

## CERTIFICATE OF CONFERRAL

I certify that, on April 9, 2024, I conferred with counsel for Plaintiffs, counsel for Defendants. Counsel for Plaintiffs advised that they oppose Diamond A. Ranch, Western Division L.L.C. and Guadalupe Ranch Corporation's motion to intervene. Counsel for Defendants advised that they reserve their position and will submit a response according to any schedule set by the Court.

Stewart A. Baker

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 3,252 words, as counted by Microsoft Word.

>
> */s/ Larry R. Veselka*
> Larry R. Veselka

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2024, I electronically filed a copy of the foregoing motion. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

>
> */s/ Larry R. Veselka*
> Larry R. Veselka