UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, et al., <br><br>**Plaintiffs,** <br><br>v. <br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States of America, et al., <br><br>**Defendants.** | § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00272 |
| THE STATE OF MISSOURI; and THE STATE OF TEXAS, <br><br>**Plaintiffs,** <br><br>v. <br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States of America, et al., <br><br>**Defendants.** | § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00420 **(formerly No. 6:21-cv-00052)** |

**MOTION TO INTERVENE AND MEMORANDUM OF LAW
OF PROPOSED DEFENDANTS-INTERVENORS SIERRA CLUB
AND SOUTHERN BORDER COMMUNITIES COALITION**

Proposed Defendants-Intervenors, Sierra Club and Southern Border Communities Coalition (collectively, "Sierra Club Intervenors" or "Proposed Intervenors"), are nonprofit organizations who pursued and successfully settled litigation challenging the federal government's unlawful use of military construction and Treasury Department forfeiture funds for border wall construction projects that Congress had specifically declined to fund through border

wall appropriations. Sierra Club Intervenors brought two separate actions to challenge the President's misuse of military construction and Treasury forfeiture funds in two consecutive fiscal years—*Sierra Club v. Biden*, No. 19-cv-892-HSG (N.D. Cal. compl. filed Feb. 19, 2019) (FY19), and *Sierra Club v. Biden*, No. 20-cv-1494-HSG (N.D. Cal. compl. filed Feb. 28, 2020) (FY20). Sierra Club Intervenors prevailed in obtaining preliminary and permanent injunctions in both cases, and the U.S. Court of Appeals for the Ninth Circuit affirmed those injunctions.

The United States successfully petitioned for certiorari, but while the *Sierra Club* cases were pending at the Supreme Court, the current President took office and issued a proclamation changing the government's border wall policy. *See* Proclamation No. 10142, 86 Fed. Reg. 7225, 7225 (Jan. 27, 2021). Following remand from the Supreme Court, the parties to the *Sierra Club* litigation—as well as plaintiff states in consolidated cases also challenging the unlawful use of military construction and Treasury forfeiture funds for border wall construction—then negotiated a joint Settlement Agreement. *See* Decl. of Cecilia Wang, attached as Exs. A and B. Pursuant to that Settlement Agreement, the United States undertook specific actions to mitigate harms to wildlife species and to public lands caused by the unlawful border wall construction during FY19 and FY20.[1] Among other mitigation measures, the Settlement Agreement requires the United States to allocate $45 million for projects to offset or mitigate the impacts of the unlawful border wall construction. *Settlement Agreement* ¶ 48. The United States identified FY20 and FY21 barrier system appropriations as the source of funding for these projects. *Id.*

After this Court issued its preliminary injunction, counsel for the United States informed

---

[1] Although the *Sierra Club* plaintiffs obtained injunctions against the misuse of the military construction and Treasury forfeiture funds, border wall construction began after the Supreme Court issued a stay of the injunctions on July 26, 2019. *See Trump v. Sierra Club*, 140 S. Ct. 1, No. 19A60 (July 26, 2019) (Mem.).

the Sierra Club Intervenors that it has stopped work toward the mitigation projects required under the Settlement Agreement because the government believes that the terms of the preliminary injunction issued by this Court forbid the use of FY20 and FY21 barrier system funding for those projects. The Sierra Club Intervenors are thus directly harmed by this Court's preliminary injunction and are entitled to intervention as of right under Federal Rule of Civil Procedure 24. *Brumfield v. Dodd*, 749 F.3d 339, 3445 (5th Cir. 2014) (holding that the "purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions"). The Court should grant Proposed Intervenors' motion to intervene as of right, or, in the alternative, grant permissive intervention, so that Proposed Intervenors can seek clarification that the preliminary injunction, and any final judgment in this case, does not impact the government's ability to comply with the preexisting settlement in the *Sierra Club* litigation. Fed. R. Civ. P. 24.[2]

## BACKGROUND

**I.  Unlawful transfer of military construction and Treasury forfeiture funds for border wall construction**

In 2019, the President's budget request for the Department of Homeland Security included $5.7 billion for border wall construction. *Sierra Club v. Trump ("Sierra Club I")*, 963 F.3d 874, 880 (9th Cir. 2020). In the final budget for FY19, however, Congress budgeted only $1.375 billion for border wall construction, and it included specific limitations and areas where it declined to authorize border wall construction. *Id*. The President then declared an "emergency" and transferred military construction funds and Treasury forfeiture funds from the FY19 and

---

[2] Counsel for the United States informs the Sierra Club Intervenors that it is reserving its position for its written response. All Plaintiffs oppose this motion. Decl. of Cecillia D. Wang ¶ 3.

FY20 budgets to make up the difference between what Congress appropriated for border wall construction, and what the President wanted to build. *Id*. at 881.

## II.     The *Sierra Club* Litigation in the Northern District of California

Sierra Club and Southern Border Communities Coalition sued in the U.S. District Court for the Northern District of California to challenge the Presidents' misuse of military construction and Treasury forfeiture funds to build border wall segments Congress had declined to fund as part of DHS's border wall appropriations. *Sierra Club v. Biden*, No. 19-cv-892-HSG (N.D. Cal. compl. filed Feb. 19, 2019) (FY19), and *Sierra Club v. Biden*, No. 20-cv-1494-HSG (N.D. Cal. compl. filed Feb. 28, 2020) (FY20). Those cases were consolidated with related cases brought by the State of California, joined by up to 19 other states harmed by the transfer of funds for border wall construction. *State of California, et al. v. Biden*, Nos. 19-cv-872-HSG, 20-cv-1563-HSG.

The district court in the *Sierra Club* and *California* cases granted the plaintiffs' motions for preliminary injunctions, and those decisions were affirmed by the U.S. Court of Appeals for the Ninth Circuit. *Sierra Club I*, 963 F.3d at 880; *Sierra Club v. Trump* ("*Sierra Club II*"), 977 F.3d 853, 862 (9th Cir. 2020). The United States sought and obtained a stay from the Supreme Court, and the previously enjoined border wall construction began. *Trump v. Sierra Club*, 140 S. Ct. 1 (2019). The Supreme Court also granted the government's certiorari petition. *Trump v. Sierra Club*, 141 S. Ct. 618 (2020).

Before argument in the Supreme Court, however, President Biden took office. On January 27, 2021, the President issued a proclamation stating that "[i]t shall be the policy of [his] Administration that no more American taxpayer dollars be diverted to construct a border wall." *See* Proclamation No. 10142, 86 Fed. Reg. 7225, 7225 (Jan. 27, 2021). The Supreme Court then

vacated the judgments below and remanded the cases to the Ninth Circuit to consider what further proceedings were necessary. *Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *Biden v. Sierra Club*, 142 S. Ct. 56 (2021).

In July 2023, the parties to the *Sierra Club* and *State of California* litigations entered into a settlement agreement providing for, among other things, the federal government to allocate $45 million for projects to mitigate the damage done to wildlife, plants, and land by the government's border wall construction by the unlawful transfer of military construction and Treasury forfeiture funds. Pursuant to that agreement, the *Sierra Club* and *State of California* plaintiffs voluntarily dismissed their cases.

### III. The Impact of the *General Land Office of Texas* Preliminary Injunction on the United States' Compliance with the *Sierra Club* Settlement Agreement

Shortly after this Court granted the Plaintiffs' motion for preliminary injunction, counsel for the United States informed Sierra Club Intervenors of the Court's order and that it had stopped all mitigation projects in the areas at issue in the *Sierra Club* litigation, including mitigation projects required under the Settlement Agreement. Decl. of Cecillia Wang ¶ 6. Sierra Club and Southern Border Communities Coalition continue to meet and confer with the United States about the government's breach of the Settlement Agreement, including about prospective enforcement litigation in the U.S. District Court for the Northern District of California. *Id.* ¶¶ 7–8. On April 3, 2024, Sierra Club and Southern Border Communities Coalition sent the United States a formal notice of breach pursuant to the Settlement Agreement. *Id.* ¶ 8. The Settlement Agreement gives the government 45 days to respond to the notice of breach. *Id.*

## ARGUMENT

The Sierra Club Intervenors are entitled to intervention as of right under Rule 24(a) because the United States has invoked this Court's preliminary injunction order in the instant

case as the reason for the government's breach of the Settlement Agreement in the *Sierra Club* litigation in the Northern District of California. The motion is timely, as four other motions for intervention by others similarly affected by the preliminary injunction have been filed in the past 11 days, and the parties' responses are due between April 29 and May 6. The Sierra Club Intervenors seek to protect their concrete interest in securing the federal government's compliance with the *Sierra Club* Settlement Agreement and, absent intervention, their ability to protect those interests will be impaired. The Sierra Club Intervenors have no assurance that the United States will represent their concrete interests in obtaining relief from this Court that would permit the federal government to proceed with compliance with the Settlement Agreement. In the alternative, the Court should grant permissive intervention.

## I. PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2).

A non-party has the right to intervene in an action when: (1) the application for intervention is timely; (2) the proposed intervenors "have an interest relating to" the subject matter of the action; (3) the proposed intervenors are "so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest"; and (4) the proposed intervenors' interests are "inadequately represented by the existing parties to the suit." Fed. R. Civ. P. 24(a)(2). Proposed Intervenors satisfy each of these elements.

### A. Proposed Intervenors' Motion Is Timely.

In the intervention context, courts evaluate timeliness in the context of all relevant circumstances, and "allow intervention 'where no one would be hurt and greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1204 (5th Cir. 1994) (citation omitted). The Fifth Circuit has articulated four factors for determining the timeliness of a motion to intervene, all of which counsel in favor of allowing intervention here: (1) how long intervenors know of their

interest in the case; (2) prejudice existing parties may suffer as a result of any delay; (3) prejudice that intervenors would suffer; and (4) any "unusual circumstances" regarding timeliness. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977).

The Sierra Club Intervenors' motion is timely because they learned of their interest in this litigation mere weeks ago. Counsel for the United States informed them of the government's understanding of the preliminary injunction order's impact on compliance with the Settlement Agreement on March 14, 2024. Decl. of Cecillia Wang ¶ 6. Since that time, the parties to the *Sierra Club* litigation have been conferring about the federal government's compliance with the Settlement Agreement, including about prospective enforcement litigation in the Northern District of California. *Id.* ¶ 7. While that meet-and-confer process has been ongoing, four separate intervention motions have been filed in this case by others similarly impacted by the Court's preliminary injunction order. Under the local rules, the parties are currently scheduled to respond to those motions between April 29 and May 6, with replies due a week later, though the government has suggested that the Court apply the same schedule to all pending motions to intervene. ECF No. 166 at 2. The parties will not be prejudiced by allowing the Sierra Club Intervenors to participate in the litigation at this stage, so shortly after the preliminary injunction order and with other intervention motions pending.

Instead, as discussed immediately below, the Sierra Club Intervenors will suffer significant prejudice absent intervention. *See Stallworth*, 558 F.2d at 264–66. Currently, the government is invoking this Court's preliminary injunction as the basis for its failure to comply with its obligations in the Settlement Agreement. The government has jointly moved with the Defendants for a final judgment. To the Sierra Club Intervenors' knowledge, the United States has not sought a carve-out from the Court's preliminary injunction that would permit the

government to comply with its pre-existing obligations under the Settlement Agreement. Intervention is thus timely and appropriate. *See Ross v. Marshall*, 426 F.3d 745, 754-55 (5th Cir. 2005) (intervention not tardy when motion was filed within six months after learning of interest); *Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983) (reversing denial of intervention where record did not show undue delay or prejudice to the government).

### B. Proposed Intervenors Have a Substantial Legal Interest in the Case.

The Sierra Club Intervenors plainly have "an interest that is concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). Indeed, even though an intervenor's interest needs not to be "an enforceable legal entitlement," *id.* at 659, the Sierra Club Intervenors' interest is legally enforceable. They easily meet the Fifth Circuit's "practical [approach] to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross*, 426 F.3d at 757 (internal citations and quotation marks omitted).

### C. Proposed Intervenors' Ability to Protect Their Interests May Be Impaired Absent Intervention.

The Sierra Club Intervenors also meet the "minimal" burden to show that "the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield*, 749 F.3d at 344–45 (citation and internal quotation marks omitted). While the Sierra Club Intervenors continue to meet and confer with the United States and are preparing for enforcement litigation in the Northern District of California pursuant to the Settlement Agreement's terms, denial of the instant motion plainly may impair Proposed Intervenors' ability to protect their interests, as the scope of permanent injunctive relief in this Court's final judgment could be explicitly cabined to clarify that none of this Court's orders presents any obstacle to the United States' compliance with the Settlement Agreement.

### D. Defendants May Not Adequately Represent Proposed Intervenors' Interests.

Finally, there is no reason to believe that the Defendants in this case will adequately represent the Sierra Club Intervenors' interests. *See* Fed. R. Civ. P. 24(a)(2). Indeed, the Defendants have not even attempted to represent the Sierra Club Intervenors' interests, for example, by requesting a carve-out from the preliminary injunction so that the government may comply with its pre-existing obligations in the Settlement Agreement. Under the circumstances, intervention is warranted. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) (all that is required is the "minimal" burden of showing that the representation "'may be' inadequate"); *Entergy Gulf States Louisiana*, *L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (holding that proposed intervenor need not show that the representation by existing parties *will* be inadequate). Even though the United States and the Sierra Club Intervenors theoretically have a common interest in compliance with the Settlement Agreement, the Intervenors have more than met the low threshold of showing that their interests may not be adequately represented. *See Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (concluding that interests of government and proposed intervenor "will not necessarily coincide, even though, at this point, they share common ground").

Moreover, the rapid proliferation of intervention motions by others similarly affected by the federal government's invocation of this Court's preliminary injunction as an excuse for breach of contractual obligations (or ending settlement or contractual negotiations) demonstrates another reason for intervention here. Should the Court entertain any of those intervention motions—and it should, under Rule 24 and controlling case law—then it should consider the range of contractual and settlement obligations that have been disturbed by the preliminary injunction and that remain at issue as the Court considers the present parties' joint motion for a final judgment.

## II. ALTERNATIVELY, PROPOSED INTERVENORS SHOULD BE GRANTED PERMISSIVE INTERVENTION.

In the alternative, the Court should grant the Sierra Club Intervenors permissive intervention. The Court may permit intervention by a proposed intervenor who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court should permit intervention where it "will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas*, 805 F.3d at 657 (quoting *Sierra Club*, 18 F.3d at 1205). This is just such a case. As set forth above, the Sierra Club Intervenors have a stake in questions of law or fact that are being litigated in this case, concerning the lawfulness of the federal government's use of FY20 and FY21 border barrier system funds for the purpose of mitigating damage done to public lands and the environment by past border wall construction. The Court should permit intervention because the Sierra Club Intervenors' "arguments will significantly contribute to the development of the issues," *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019) (citation and internal quotation marks omitted), as this Court considers the parties' joint motion for a final judgment.

Courts routinely grant permissive intervention where, as here, the interests and perspectives of affected communities would otherwise be absent. *See, e.g.*, *State of Texas v. United States*, No. 6:21-CV-00003, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021) (granting intervention to individuals directly impacted by plaintiff states' preliminary injunction against federal government); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977) (finding chemical companies' intervention would be a helpful supplement to the EPA's defense,

10

because they offered knowledge of the policy's "impact . . . upon their operations . . . .")
(footnote omitted).

## CONCLUSION

The Motion to Intervene should be granted.

                Respectfully submitted,

                /s/ *David Donatti*
                Counsel for Proposed Defendants-
                Intervenors Sierra Club and Southern
                Border Communities Coalition

                David A. Donatti (Bar No. 24097612)
                Adriana C. Piñon (Bar No. 24089768)
                AMERICAN CIVIL LIBERTIES
                UNION OF TEXAS
                P.O. Box 8306
                Houston, TX 77288
                Telephone: (713) 942-8146
                ddonatti@aclutx.org
                apinon@aclutx.org

                Cecillia D. Wang\*
                My Khanh Ngo\*
                AMERICAN CIVIL LIBERTIES
                UNION FOUNDATION
                425 California Street, Suite 700
                San Francisco, CA 94104
                Telephone: (415) 343-0775
                cwang@aclu.org
                mngo@aclu.org

                Gloria D. Smith\*\*
                SIERRA CLUB ENVIRONMENTAL
                LAW PROGRAM
                2102 Webster Street, Suite 1300
                Oakland, CA 94612
                Telephone: (415) 977-5532
                gloria.smith@sierraclub.org

Ricardo A. Garza***
Texas State Bar No. 24109912
SDTX Bar No. 3336127
Border Policy Counsel
Southern Border Communities Coalition
Alliance San Diego
P.O. Box 2436
McAllen, TX 78502
(956) 605-5917
ricky@alliancesd.org

**Pro hac vice* application forthcoming
**Attorney for Proposed Defendant-Intervenor Sierra Club only
***Attorney for Proposed Defendant-Intervenor Southern Border Communities Coalition only

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 19, 2024, my co-counsel, Cecillia D. Wang, communicated with counsel for Defendants and Plaintiffs in this action to inform them that Sierra Club and Southern Border Communities Coalition would be filing a Motion to Intervene. Josh Divine, the Solicitor General of the State of Missouri, informed Proposed Intervenors that all Plaintiffs oppose the Motion to Intervene. Andrew Warden, of the U.S. Department of Justice, informed Proposed Intervenors that the Defendants reserve their position and will submit a response to the Motion to Intervene in due course.

/s/ *David Donatti*
David Donatti

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 2817, as counted by Microsoft Word.

/s/ *David Donatti*
David Donatti

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, I electronically filed a copy of the foregoing motion. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *David Donatti*
David Donatti