## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| The General Land Office of the State of Texas, and George P. Bush, *in his official capacity as Commissioner of the Texas General Land Office,*<br>Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | Civil Action No.: 7:21-CV-00272 |
| Joseph R. Biden, *in his official capacity as President of the United States of America;* United States Dept. of Homeland Security; and Alejandro Mayorkas, *in his official capacity as Secretary of the United States Dept. of Homeland Security,*<br>Defendants. | ) ) ) ) ) ) ) ) | |
| The State of Missouri; and the State of Texas,<br>Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Civil Action No.: 7:21-CV-00420 |
| Joseph R. Biden, *in his official capacity as President of the United States of America;* The United States of America; Alejandro Mayorkas, *in his official capacity as Secretary of the United States Dept. of Homeland Security;* Troy Miller, *in his official capacity as Acting Commissioner of the United States Border Protection*; and United States Customs and Border Protection,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Texas Sterling Construction Co.<br>Plaintiff-Intervenor, | ) ) ) ) | |
| v. | ) ) ) | Civil Action No.: _____ |

Joseph R. Biden, *in his official capacity as*     )
*President of the United States of America;*       )
The United States of America; Alejandro            )
Mayorkas, *in his official capacity as*            )
*Secretary of the United States Dept. of*          )
*Homeland Security;* Troy Miller, *in his*         )
*official capacity as Acting Commissioner*         )
*of the United States Border Protection*; and      )
United States Customs and Border                   )
Protection,                                        )

**TEXAS STERLING CONSTRUCTION CO.'S**
**FIRST AMENDED MOTION TO INTERVENE AND BRIEF IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................**5**

**FACTUAL AND PROCEDURAL BACKGROUND** ...............................................**5**

I.       **Texas Sterling begins work on the Contract.** ...............................................**6**

II.     **Texas Sterling begins termination settlement negotiations which the government halts.** .......**6**

**ARGUMENT** .....................................................................................................................**7**

I.       **TSC is entitled to intervention as a right.** ...................................................**7**

II.     **In the alternative, TSC is entitled permissive intervention.** ........................**8**

III.    **Timeliness of TSC's Motion.** .........................................................................**9**

IV.   **No prejudice to other parties if TSC's Motion is granted.** ............................**9**

V.    **TSC will be irreparably harmed should intervention be denied.** ..................**9**

VI.   **Unique Circumstances.** ..................................................................................**10**

VII.  **TSC's claim shares common questions of law and fact with the present action.** ....................**11**

**CONCLUSION AND RELIEF SOUGHT** ..........................................................**11**

**CERTIFICATE OF CONFERAL** ......................................................................**12**

**CERTIFICATE OF WORD COUNT** .................................................................**12**

**CERTIFICATE OF SERVICE** ...........................................................................**13**

## TABLE OF AUTHORITIES

**Cases**

*Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) ................................7

*In re Lease Oil Antitrust Litig.,* 570 F.3d 244, 248 (5th Cir. 2009)......................................7

*Texas v. United States*, 805 F.3d 653, 656-657 (5th Cir. 2015) ....................................7

**Statutes**

40 U.S.C. §3133.............................................................................................................10

48 C.F.R. §49.105............................................................................................................6

49 C.F.R. §49.201(a) .......................................................................................................6

Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209, 133 Stat. 2317, 2511 (2019)
..........................................................................................................................10

Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, §209(a)(1), 133 Stat. 2317, 2511
(2019)......................................................................................................................5

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, §210, 134 Stat. 1182, 1456-57
(2020) .....................................................................................................................5

Fed. R. Civ. P. 24...........................................................................................................7

Fed. R. Civ. P. 24(a).....................................................................................................7

Fed. R. Civ. P. 24(a)(2)...............................................................................................8

Fed. R. Civ. P. 24(b)......................................................................................................8

## INTRODUCTION

Texas Sterling Construction Co. ("TSC") seeks intervention so that TSC may obtain clarification and/or modification of the injunction issued on March 8, 2024, as necessary. TSC is the recipient of a multi-million dollar contract relating to construction efforts on the border wall. TSC's interest in this litigation is solidified by the United States Customs and Border Protection's position that "[i]nvoices cannot be processed for payment for <u>suspended work</u> at this time as a result of the March 8, 2024, preliminary injunction."[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves the United States of America's Executive Branch's application of Congressional appropriations for the expenditure of funds relating to the "construction of [a] barrier system along the southwestern border." Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, §209(a)(1), 133 Stat. 2317, 2511 (2019); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, §210, 134 Stat. 1182, 1456-57 (2020) (collectively, "the Appropriations Acts").

TSC, like fellow intervenors, Southern Border Constructors and Randy Kinder Excavating Inc. d/b/a RKE Contractors, was awarded a contract and task order under Contract HSBP1017D00020 ("the Contract"),[2] attached as Ex. 2, and Task Order 70B01C22F00000953, attached as Ex. 3. The Contract was a competitively bid, multiple award contract issued by Customs and Board Protection (CBP) on behalf of the Department of Homeland Security, a Defendant in this case. The Contract as broken into Task Orders under the Federal Acquisition Regulation ("FAR") Subpart 16.

---

[1] See Ex. 1.
[2] Intervenor has provided pages 1-2 of the Contract for brevity, however a full copy will be made available to the Court on request.

I.      **Texas Sterling begins work on the Contract.**

On or about August 31, 2017, TSC was awarded a design-build, multiple award indefinite delivery/indefinite quantity task order contract, under Contract Number HSBP1017D00020.[3]

TSC was awarded Task Order 70B01C22F00000953[4] for the design and construction of gaps and gates completion, legacy fence removal, and bollard panel completion on the existing board wall in the area of El Paso Zones 1 and 2.

On or about February 9, 2024, TSC was issued a suspension of work notification which sought to descope millions of dollars of remaining work, effectively terminating TSC's contract for convenience.[5]

II.     **Texas Sterling begins termination settlement negotiations which the government halts.**

As this Court and the parties are aware, when government contracts are terminated for convenience, the government is required to negotiate reasonable compensation for contractors' costs and reasonable profits. 48 C.F.R. §49.105; 49 C.F.R. §49.201(a). The contractor initiates the negotiation through a termination settlement proposal and the parties proceed to negotiate. 48 C.F.R. §52.249-2(e)-(f). This regulatorily mandated activity is what is at issue with regard to TSC. Unfortunately, on March 28, 2024, TSC received correspondence from the government stating that "[i]nvoices cannot be processed for payment for underlined suspended work at this time as a result of the March 8, 2024, preliminary injunction."[6]

According to the federal government, the injunction therefore prevents the agency from proceeding under its regulatory required duties to negotiate settlement of terminated contracts.

---

[3] Ex. 2.
[4] Ex. 3.
[5] Ex. 4. TSC's contract was effectively concluded a month before the March 8, 2024, order was issued. All that remained were administrative tasks.
[6] See Ex. 1.

This suspension not only financially implicates TSC, but also its subcontractors who have expended labor and material costs to perform work on the Project. TSC has received no further communication from DHS or any other division of the federal government attempting to restart settlement negotiations since that time and moves to intervene to protect its interests and those of its subcontractors.

## ARGUMENT

Intervention in federal court can be based on a right to intervene or as a result of permissive intervention. FEDERAL RULE OF CIVIL PROCEDURE 24. TSC is entitled to intervene as a matter of right because the federal government is withholding money owed to TSC as a result of the Injunction issued by this Court. No current litigants in this case are available to defend TSC's interest.

In the alternative, TSC should be granted permissive intervention because common issues of fact and law exist. Specifically, TSC has settlement claims for work already completed on behalf of the federal government, which the federal government is refusing to proceed to negotiate as a result of the meaning of the Appropriation Acts and subsequent injunction issued by this Court.

## I.     TSC is entitled to intervention as a right.

Intervention of right is available to litigants under the following scenarios:

> **(a) Intervention of Right.** On timely motion, the court <u>must</u> permit anyone to intervene who:
> **(1)** is given an unconditional right to intervene by a federal statute; or
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a) [emphasis added].

Courts have repeatedly held that the intervention statutes should be applied liberally, allowing intervention when no litigant would be harmed.[7] Further, "a movant must only show that the existing representation may be inadequate"[8] and resolution of doubts as to the necessity of the intervention should favor the intervenor.[9]

In the present case, it is clear that TSC has an interest relating to the subject to this action, that disposition of the action would impair or impede TSC's interest, and that no current existing parties adequately represent TSC's interest.  Accordingly, the Court must grant TSC's intervention as a right.

## II.    In the alternative, TSC is entitled permissive intervention.

Permissive intervention is available to litigants as follows:

> **(b) Permissive Intervention.**
> **(1) *In General.*** On timely motion, the court <u>may</u> permit anyone to intervene who:
> > **(A)** is given a conditional right to intervene by a federal statute; or
> > **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b) [emphasis added].

Further, The Fifth Circuit has delineated four factors to determine timeliness under Rule 24(a)(2):

> (1) "the length of time since learning intervenor's interest in the action";
> (2) prejudice to existing parties;
> (3) prejudice to intervenor if intervention is denied; and

---

[7] *Texas v. United States*, 805 F.3d 653, 656-657 (5th Cir. 2015) (*citing Brumfield v. Dodd,* 749 F.3d 339, 341 (5th Cir. 2014) and *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994)).

[8] *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (citing *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307-8 (5th Cir. 2022))(internal quotes omitted).

[9] *In re Lease Oil Antitrust Litig.,* 570 F.3d 244, 248 (5th Cir. 2009).

(4) any unusual circumstances.[10]

### III. Timeliness of TSC's Motion.

TSC learned of the government's position and resulting harm to TSC approximately two weeks ago. Since learning of the government's position, TSC has taken reasonable steps to research the issues, available remedies, and evaluate the necessity of intervention. In this time, no hearings have been held in the matter, not have any subsequent orders been issued. Given that the Fifth Circuit has concluded that delays as long as two years were not overlong in some cases, this factor is met here.[11]

### IV. No prejudice to other parties if TSC's Motion is granted.

No party to this action will be prejudiced as a result of TSC's intervention. The parties are still seeking clarification of the Court's March 8, 2024, ruling and no final order has been entered in this matter.

### V. TSC will be irreparably harmed should intervention be denied.

The government's position that it cannot negotiate settlement of previously incurred costs and expenses will irreparably harm TSC's financial wellbeing should TSC's intervention be denied. No current litigant to this action is similarly situated as TSC. Although there are two other intervenors who also seek clarification of the Court's ruling, the scope of work under TSC's Task Order is discrete and separate from that of the other intervenors, such that TSC's interest may not be adequately represented by those two intervenors. In particular, the Court's March 8, 2024, Memorandum Opinion and Order stated that

> 2. The Government is prohibited from <u>obligating</u> funds under Subsection 209(a)(1)—and corresponding funds under Section 210—toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing

---

[10] *Id. at 248-250.*
[11] *Id. at 248 and 252.*

> sites, or other similar purposes. Those types of expenses may be authorized under Subsections (a)(2) through (a)(5) where appropriate, however, Subsection (a)(1) permits only the construction of physical barriers, such as additional walls, fencing, buoys, etc.…
>
> This Order shall not affect obligations that are permissible under other Subsections of the CAAs.[12]

TSC is unable to determine, nor is it apparent that the government has taken any effort to determine the particular subsection of the Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209, 133 Stat. 2317, 2511 (2019), under which TSC's work was tasked.

Further, the government's position on indefinitely suspending settlement negotiations until this injunction is resolved exposes TSC to Miller Act type claims by its subcontractors.[13] Claims which would be financially harmful to TSC.  It is foreseeable that continued motion and appellate practice in this case will extend up to and potentially beyond the Miller Act's one-year statute of limitations.[14]

## VI.    Unique Circumstances.

A party to this suit, the Department of Homeland Security, is relying on this Court's ruling to cease its mandatorily regulated activities required to pay TSC for work that has already been completed pursuant to a valid Contract and Task Order prior to this Court's injunction. The direct impact this action has had on TSC's financial wellbeing is significant. Further no party to this action is motivated to resolve the issue of clarification as to payment for work already performed prior to this Court's injunction. TSC and its subcontractors are uniquely burdened by this action, and without the ability to seek legal redress, should the intervention be denied.

---

[12] Dkt. No. 128, page 56.
[13] 40 U.S.C. §3133.
[14] *Id.*

**VII.    TSC's claim shares common questions of law and fact with the present action.**

TSC has a clear property and legal interest in this litigation. The government has, thus far, interpreted the Court's injunction to be a prohibition on negotiation of settlement, and by extension payment, on a debt owed by the federal government. The government's reliance on this position necessarily affects TSC's property and legal interests.

Nothing in the Court's ruling or subsequent injunction appears to prohibit the federal government from continued negotiations of settlement and payment for costs already incurred. In fact, the Injunction specifically carves out those portions of Section 205… that are not affected by the Injunction. The government has made no effort to delineate between the two. Alternatively, if this Court agrees with the federal government's interpretation of the Injunction as currently written, TSC has a vested interest in this Court's clarification of the Injunction to reflect that the settlement funds owed to TSC for previously completed border wall construction are not subject to the injunction.

TSC's rights under the Contract and Task Order will be severely impaired if it is not allowed to intervene into this litigation. TSC has a clear interest in the outcome of this litigation and the scope of this Court's Injunction. Accordingly, the intervention should be granted.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, TSC request that the Court grant TSC's intervention to this action to protect its interests in recovering millions of dollars in costs already incurred prior to the Court's injunction.

Respectfully Submitted, this 23rd day of April, 2024.


/s/ *Savannah Stroud*
Paul Sanderford
Texas State Bar No. 17578500
Savannah Stroud
Texas State Bar No. 24051908
SANDERFORD & CARROLL
1002 Arbor Park Drive
Suite 100
Belton, Texas 76513
Telephone: 254-773-8311
Facsimile: 254-773-9175
Email: paul@txconstructionlaw.com
Email: savannah@txconstructionlaw.com

**ATTORNEY IN CHARGE FOR TEXAS STERLIING CONSTRUCTION CO.**


**CERTIFICATE OF CONFERAL**

I certify that, on April 12, 2024, counsel for TSC contacted counsel of record for each party to this action. Counsel for Plaintiffs advised that they oppose TSC's motion to intervene. Counsel for Defendants advised that they reserve their position and will submit a response according to any schedule set by the Court.


/s/ *Savannah Stroud*
**Savannah Stroud**

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing document contains 1919 words, exclusive of matters designated for omission, as counted by Microsoft Word.


/s/ *Savannah Stroud*
**Savannah Stroud**

## CERTIFICATE OF SERVICE

I certify that on April 23, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with FEDERAL RULE OF CIVIL PROCEDURE 5(b).

/s/ *Savannah Stroud*
**Savannah Stroud**