**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, <br><br> Defendants. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.* <br><br> Defendants. | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' PROPOSED VACATUR REMEDY**

The Administrative Procedure Act's (APA) provision for courts to "set aside" unlawful agency actions, 5 U.S.C. § 706(2), does not authorize the type of universal vacatur that Plaintiffs seek.  As a matter of first principles, the "set aside" language in § 706(2) should not be read as authorizing remedies, which are governed by § 703 of the APA.  Section 703 states that "[t]he form of proceeding for judicial review" of agency action is either a "special statutory review

proceeding" or, in "the absence or inadequacy thereof," any "applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus."  5 U.S.C. § 703.  Because Plaintiffs do not purport to identify any applicable "special statutory review proceeding," § 703 affords them only traditional equitable remedies such as the prohibitory injunction that the Court has already entered in this case and the parties propose for final judgment.  *See* S. Doc. No. 79-248, at 36–37 (1946) (referring to § 703 as governing remedies).  Section 706(2) does not address remedies at all.  Rather, § 706(2) is properly understood as a rule of decision directing the reviewing court to disregard unlawful "agency action, findings, and conclusions" in resolving the case before it, consistent with basic principles of judicial review.  Universal vacatur is therefore not an available remedy under the APA.  *See United States v. Texas*, 599 U.S. 670, 693–99 (2023) (Gorsuch, J., concurring in the judgment); *Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-CV-00278-P, 2024 WL 965299, at *41–43 (N.D. Tex. Mar. 5, 2024) (explaining that the "APA does not explicitly authorize vacatur").

Defendants recognize that the Fifth Circuit has described vacatur of an unlawful agency action as the "default rule."  *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859-860 (5th Cir. 2022).  But even if the APA authorizes some sort of vacatur, the Fifth Circuit has treated universal vacatur as a discretionary equitable remedy, not one that is automatic or compelled in every case.  *See Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality opinion) (concluding without contradiction from any other member of the Court that the district court could consider on remand "a more limited remedy" than universal vacatur, and instructing the district court to "determine what remedy … is appropriate to effectuate" the judgment), *cert. granted*, 144 S. Ct. 374 (2023); *Central & S.W. Servs., Inc. v. EPA*, 220 F.3d

2

683, 692 (5th Cir. 2000) (declining to enter vacatur in favor of remand).  Further, the Supreme

Court has explained that Congress's authorization for courts to issue a remedy "hardly suggests

an absolute duty" to grant such relief "under any and all circumstances."  *Hecht Co. v. Bowles*,

321 U.S. 321, 329 (1944).  Rather, a statutory provision authorizing remedies, especially

equitable remedies, should be construed consistent with "the traditions of equity practice."  *Id.*

("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to

mould each decree to the necessities of the particular case.").  The APA reinforces that

longstanding rule by explicitly stating that its authorization of judicial review does not affect "the

power or duty of the court to . . . deny relief on any . . . equitable ground."  5 U.S.C. § 702(1).

Here, under traditional equitable principles, the Court should decline to vacate the

entirety of the DHS Border Wall Plan Pursuant to Presidential Proclamation 10142 and its

Amendment (DHS Plan).  *See Nuziard*, 2024 WL 965299, at *40–44 (rejecting universal vacatur

for equitable reasons where injunction would suffice).  Plaintiffs do not identify any reason why

vacatur of the entire DHS Plan is necessary to afford them complete relief in this case, and such

an overbroad order would harm Defendants and the public interest.  "It is well-established that 'a

plaintiff's remedy must be tailored to redress the plaintiff's particular injury."  *Cargill*, 57 F.4th

at 472 (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018)).  The proposed permanent

injunction provides Plaintiffs with all the relief that their alleged injuries could require by

prohibiting Defendants from expending the fiscal year 2020 and 2021 barrier system funds

challenged in this case (*i.e.*, the subsection (a)(1) funds) on activities other than "construction of

physical barriers."  *See* ECF No. 150-1.  The injunction is therefore appropriately tethered to the

legal defect identified by the Court regarding Defendants' use of the (a)(1) funds.  *See Madsen v.*

*Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (stating that relief must be "no more

burdensome to the defendant than necessary to provide complete relief to the plaintiffs")
(citation omitted); *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (stating that an
injunction should "remedy the specific action which gives rise to the order").

Vacating the DHS Plan would serve no practical purpose and do nothing further to
redress Plaintiffs' asserted injuries.  The injunction supersedes any contrary policy direction in
the DHS Plan with respect to the execution of the (a)(1) funds.  Consequently, there is no risk
that Defendants would be able evade the injunction if the DHS Plan were to remain in place.  In
the context of this case, the proposed injunction already provides all the relief that vacatur would
provide to Plaintiffs, and more.  Like vacatur, the injunction "restrict[s] or stop[s] official
action," *Direct Mktg. Ass'n* v. *Brohl*, 575 U.S. 1, 13 (2015), that Plaintiffs challenged, and it
requires federal officials to "refrain from taking actions to enforce, implement, or otherwise
carry out" agency action that contravenes the injunction.  *Garland* v. *Aleman Gonzalez*, 142 S.
Ct. 2057, 2065 (2022).  The critical difference, however, is that the proposed permanent
injunction properly provides for the Court to tailor final relief solely to the use of the (a)(1)
funds, consistent with equitable principles and the Court's finding that Plaintiffs have
demonstrated success on that claim.  By contrast, wholesale vacatur of the entire DHS Plan
would be overbroad and inconsistent with traditional equitable remedial principles.  Such an
overbroad remedy makes little sense in this case because it would provide *less* relief than what
Plaintiffs have already obtained; absent the injunction, vacatur of the DHS Plan would not of its
own force restrict DHS's discretion in obligating the appropriations at issue.  *See Enforcement
Priorities*, 599 U.S. at 691 (Gorsuch, J., concurring) (stating that vacatur of the DHS
enforcement guidelines "does nothing to change the fact that federal officials possess the same
underlying prosecutorial discretion").

The problems caused by overbroad universal remedies are well catalogued and apply whether such a remedy takes the form of a nationwide injunction or universal vacatur. *See, e.g.*, *Labrador v. Poe*, 144 S. Ct. 921, 921–28 (2024) (2024) (Gorsuch, J., concurring); *Arizona v. Biden*, 40 F.4th 375, 395–98 (6th Cir. 2022) (Sutton, C.J., concurring).  Vacatur of the DHS Plan would be particularly inappropriate in this case because the plan addresses appropriations and DHS policies that were not challenged in this litigation.  *See Enforcement Priorities*, 599 U.S. at 702 (Gorsuch, J., concurring) (stating that "an extraordinary remedy like vacatur would demand truly extraordinary circumstances to justify it").  For starters, the DHS Plan addresses appropriations in prior years (2017–2019) that are not subject to the Court's decision.  *See* ECF No. 66-3 at 5–6, 9–10.  The Court's conclusion about the scope of (a)(1) funds in fiscal years 2020 and 2021 should not prohibit DHS from following its plan for separate funds appropriated in prior years.  Additionally, the DHS Plan sets forth policies concerning a wide range of other subjects that were not challenged in this case, including issuance and rescission of environmental waivers; pre-construction environmental planning; inter-agency and Executive Branch coordination; consultation with non-federal parties impacted by barrier construction; and eminent domain actions.  *Id.* at 5–8.  These provisions can operate independently on their own, notwithstanding the Court's conclusion about the (a)(1) funds.  Accordingly, there is no equitable or practical reason for the Court to vacate the entire DHS Plan to redress Plaintiffs' claim about the use of the (a)(1) funds.  *See VanDerStok v. Garland*, No. 23-10718, 2023 WL 4945360, at *1 (5th Cir. July 24, 2023) (staying universal vacatur because "the agency has shown a strong likelihood of success on its assertion that the vacatur of the several non-challenged parts of the Rule was overbroad").

Plaintiffs' arguments in favor of universal vacatur lack merit.  Plaintiffs contend that complete vacatur of the plan is appropriate because it would be "difficult to separate challenged parts from unchallenged parts."  ECF No. 168 at 5.  But the fact that the DHS Plan addresses DHS's appropriations generally by fiscal year and includes other policies is not a reason to vacate the plan in totality.  Plaintiffs' all-or-nothing approach conflicts with longstanding principles that equitable relief "cannot encompass more conduct than was requested or exceed the legal basis of the lawsuit."  *E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021) (internal quotations omitted).

Although the Fifth Circuit has partially vacated agency rules previously, *see Southwestern Elec. Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (concluding that two "portions of the final rule" are "unlawful" and thus "vacat[ing] those portions of the rule"), that approach would be the wrong fit here because of the DHS Plan's general applicability to all DHS funds appropriated between 2017–2021.  It would be impracticable to try to "erase . . . from the books" only those words of the Plan that conflict with the Court's decision.  *Enforcement Priorities*, 599 U.S. at 696 (Gorsuch, J., concurring).  Any attempt at partial vacatur would be overbroad and nullify DHS funds and policies that were not challenged in this litigation.  The appropriate solution, instead, is injunctive relief that is targeted solely to the use of the fiscal year 2020 and 2021 barrier system funds, as proposed in the final judgment.  That remedy is more than sufficient to remedy Plaintiffs' asserted injuries, avoids problems with overbroad vacatur, and aligns with the Supreme Court's instruction that the "scope of injunctive relief is dictated by the extent of the violation established."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Vacatur of the entire DHS Plan also would conflict with the Fifth Circuit's recent decision in *VanDerStok v. Garland*, 86 F.4th 179, 196–97 (5th Cir. 2023), *cert. granted*, No. 23-

6

852, 2024 WL 1706014 (U.S. Apr. 22, 2024). There, ATF issued a final rule regulating untraceable firearms commonly known as "ghost guns." *Id.* at 184–85. Plaintiffs challenged only "two portions of the final rule" and the Fifth Circuit agreed that those parts of the rule conflicted with the Gun Control Act of 1968. *Id.* at 187, 190, 195. The district court, however, issued a "universal vacatur of the entire Final Rule (*i.e.*, not just the two challenged portions)." *Id.* at 196. In addressing ATF's challenge to the scope of that remedy on appeal, the Fifth Circuit stated that its "precedent generally sanctions vacatur under the APA," but the court notably did not affirm the district court's universal vacatur of the entire rule. *Id.* Instead, the Fifth Circuit vacated "the district court's vacatur order" and remanded "for further consideration of the remedy, considering this Court's holding on the merits." *Id.* at 196–97; s*ee id.* at 214 (Oldham, J., concurring) (agreeing that the "matter should be remanded to the district court to fashion an appropriate remedy for the plaintiffs"); *VanDerStok*, 2023 WL 4945360, at *1 (granting stay because "the vacatur was overbroad"). That disposition is telling, as the court's merits decision focused on two limited provisions in the rule that the court found inconsistent with the statute, rather than the legality of the rule in its entirety.

The Fifth Circuit's decision in *VanDerStok* reinforces two key points that should guide this Court's decision. First, to the extent universal vacatur is a remedy authorized by the APA, it turns on a sound exercise of equitable discretion and is not a remedy that is automatic or compelled in every case. Second, such universal vacatur is particularly inappropriate for a case like this one where there is a significant mismatch between the limited scope of the Court's merits holding (here, use of the (a)(1) funds) and Plaintiffs' request for complete vacatur of the DHS Plan, including policies unaffected by the Court's decision.

Plaintiffs ignore *VanDerStok* and instead urge the Court to follow the approach set forth in *Chamber of Commerce v. SEC*, 88 F.4th 1115 (5th Cir. 2023). *See* ECF No. 168 at 3. That case, however, dealt with an entirely different situation where the court was deciding whether to vacate an agency rule or remand the matter to the agency "to correct the defects in the rule" without entering any relief. *VanDerStok*, 88 F.4th at 1117–18. Instead of vacating the rule immediately, the Fifth Circuit remanded the matter to the agency for thirty days to correct the rule. *Id.* at 1117. The agency was unable to fix the defects identified by the court within the thirty-day period, so the Fifth Circuit vacated the rule. *Id.* at 1118. Plaintiffs contend that Defendants cannot satisfy the legal standard governing remand to the agency without relief, *see* ECF No. 168 at 3, but that proposition has no application to this case because the Court is not faced with a choice between vacatur and remand without relief. No party is seeking remand without any kind of relief; thus, there is no need for the Court to analyze whether vacatur would have "disruptive consequences" or the agency would be able to correct its decision on remand. *SEC*, 88 F.4th at 1118. Instead, the parties have proposed entry of a permanent injunction directed to the (a)(1) funds that is consistent with the terms of the Court's preliminary injunction, as subsequently clarified. The choice here is whether the Court should issue an overbroad vacatur remedy on top of a permanent injunction targeted to the (a)(1) funds. Under longstanding principles and Fifth Circuit precedent, that question is answered by looking to traditional equitable factors, and for the reasons explained above, the answer is no.

The Court should deny Plaintiffs' request for universal vacatur of the DHS Plan and enter the proposed final judgment without the language in paragraph 5. *See* ECF No. 150-1 at 2–3.

Dated:  April 26, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar #23840-49)
Senior Trial Counsel
MICHAEL J. GERARDI
(D.C. Bar #1017949)
Trial Attorney / Attorney-in-Charge
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, No. 7506
Washington, D.C. 20005
Tel: (202) 616-5084
Fax: (202) 616-8470
E-mail: Andrew.Warden@usdoj.gov

ALAMDAR S. HAMDANI
United States Attorney

*/s/ Daniel D. Hu*
DANIEL D. HU
Chief, Civil Division
Assistant United States Attorney
Southern District No. 7959
Texas Bar No. 10131415
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
Fax: (713) 718-3303
E-mail: Daniel.Hu@usdoj.gov

ALYSSA IGLESIAS
Assistant United States Attorney
Southern District of Texas No.: 3610302
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Alyssa.Iglesias@usdoj.gov

### CERTIFICATE OF WORD COUNT

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 2365, as counted by Microsoft Word.

*/s/ Andrew I. Warden*
ANDREW I. WARDEN

### CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024, I electronically filed a copy of the foregoing opposition memorandum.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Andrew I. Warden*
ANDREW I. WARDEN