**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>                    Defendants. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>                    Plaintiffs,<br><br>          v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>                    Defendants. | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

**DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

I.      Diamond A Ranch............................................................................................ 2

II.     Southern Border Constructors and RKE Contractors ....................................... 5

III.    Texas Sterling .................................................................................................. 6

IV.    Sierra Club and Southern Border Communities Coalition ................................ 6

ARGUMENT ........................................................................................................... 8

I.      Proposed Intervenors Are Not Entitled To Intervention As Of Right ............... 8

      A.      The Proposed Intervenors Motions Are Not Timely ............................... 9

      B.      The Proposed Intervenors Cannot Establish That Their Asserted Interests Will Be Impaired Absent Intervention Because They Have Alternative Judicial Forums To Assert Their Claims. ........................................................................... 11

II.     Proposed Intervenors' Request for Permissive Intervention Should Be Denied. ............. 17

CONCLUSION...................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Adam Joseph Res. v. CNA Metals Ltd.*,
 919 F.3d 856 (5th Cir. 2019) ................................................................. 9, 11, 15

*Alam v. Mae*,
 No. H-02-4478, 2007 WL 4411544 (S.D. Tex. Dec. 17, 2007) ............................. 14

*Biden v. Sierra Club*,
 142 S. Ct. 46 (2021) ....................................................................................... 7

*Biden v. Sierra Club*,
 142 S. Ct. 56 (2021) ....................................................................................... 7

*California v. Trump*,
 407 F. Supp. 3d 869 (N.D. Cal. 2019) ............................................................. 7

*California v. Trump*,
 963 F.3d 926 (9th Cir. 2020) ......................................................................... 7

*Deus v. Allstate Ins. Co.*,
 15 F.3d 506 (5th Cir. 1994) ..................................................................... 11, 12

*Diaz v. Southern Drilling Corp.*,
 427 F.2d 1118 (5th Cir. 1970) ...................................................................... 15

*Edwards v. City of Houston*,
 78 F.3d 983 (5th Cir. 1996) .......................................................................... 15

*Floyd v. City of New York*,
 302 F.R.D. 69 (S.D.N.Y. 2014) ..................................................................... 19

*General Land Office v. Biden*,
 71 F.4th 264 (5th Cir. 2023) .......................................................................... 9

*Grainger v. Ottawa Cnty.*,
 90 F.4th 507 (6th Cir. 2024) ......................................................................... 16

*Haspel & Davis Milling & Planting Co. v. Board of Levee Comm'rs of Orleans Levee Dist.*,
 493 F.3d 570 (5th Cir. 2007) .......................................................................... 9

*International Tank Terminals, Ltd. v. M/V Acadia Forest,*
   579 F.2d 964 (5th Cir. 1978) ........................................................................ 8

*John Doe No. 1 v. Glickman,*
   256 F.3d 371 (5th Cir. 2001) ...................................................................... 10

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
   884 F.2d 185 (5th Cir. 1989) ...................................................................... 17

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,*
   No. 5:21-CV-071-H, 2022 WL 974335 (N.D. Tex. Mar. 31, 2022) ......................................... 16

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
   732 F.2d 452 (5th Cir. 1984) ................................................................. 18, 19

*Nipponkoa Ins. Co. v. Port Terminal R.R. Ass'n,*
   No. H-10-0284, 2011 WL 1103584 (S.D. Tex. Mar. 23, 2011) ............................................. 19

*Olympic Diamond v. Kotwitz,*
   No. Civil No. H-04-3936, 2005 WL 2416614 (S.D. Tex. Sept. 30, 2005) ............................... 14

*Rotstain v. Mendez,*
   986 F.3d 931 (5th Cir. 2021) ........................................................................ 8

*Saldano v. Roach,*
   363 F.3d 545 (5th Cir. 2004) ....................................................................... 18

*Sierra Club v. Espy,*
   18 F.3d 1202 (5th Cir. 1994) ........................................................................ 9

*Sierra Club v. Trump,*
   963 F.3d 874 (9th Cir. 2020) ........................................................................ 7

*Sierra Club v. Trump,*
   977 F.3d 853 (9th Cir. 2020) ........................................................................ 7

*St. Bernard Par. v. Lafarge N. Am., Inc.,*
   914 F.3d 969 (5th Cir. 2019) ...................................................................... 11

*Stewart v. City of Houston,*
   No. H-07-4021, 2009 WL 783319 (S.D. Tex. Mar. 24, 2009) ............................................. 14

*Texas General Land Office v. Biden,*
   619 F. Supp. 3d 673 (S.D. Tex. 2022) ................................................................ 9

*Texas General Land Office v. Biden*,
  No. 7:21-CV-00272, 2024 WL 1023047 (S.D. Tex. Mar. 8, 2024) ............................................ 9

*Texas Health Choice, L.C. v. Office of Personnel Mgmt.*,
  400 F.3d 895 (Fed. Cir. 2005) .................................................................................................... 12

*Texas v. United States*,
  No. 6:21-cv-00003, 2021 WL 411441 (S.D. Tex. Feb. 6, 2021) ......................................... 17, 19

*Trump v. Sierra Club*,
  140 S. Ct. 1 (2019) ...................................................................................................................... 7

*Turner v. Cincinnati Ins. Co.*,
  9 F.4th 300 (5th Cir. 2021) ........................................................................................................ 17

*United States v. Associated Milk Producers, Inc.*,
  534 F.2d 113 (8th Cir. 1976) ..................................................................................................... 18

*United States v. City of Jackson*,
  519 F.2d 1147 (5th Cir. 1975) ................................................................................................... 14

*United States v. LULAC*,
  793 F.2d 636 (5th Cir. 1986) ..................................................................................................... 12

*United States v. Texas E. Transmission Corp.*,
  923 F.2d 410 (5th Cir. 1991) ..................................................................................................... 16

**Statutes**

10 U.S.C. § 284(b)(7) ......................................................................................................................... 3

28 U.S.C. § 516 ................................................................................................................................ 18

28 U.S.C. § 1295(a)(3) ..................................................................................................................... 13

28 U.S.C. § 1491(a)(1) ..................................................................................................................... 12

41 U.S.C. § 7101 .............................................................................................................................. 12

41 U.S.C. § 7103(a) .......................................................................................................................... 12

41 U.S.C. § 7104 .............................................................................................................................. 12

41 U.S.C. § 7105 .............................................................................................................................. 12

41 U.S.C. § 7107(a)(1) ..................................................................................................................... 13

42 U.S.C. § 2000e–2(n) ........................................................................... 15

DHS Appropriations Act, 2019,
    Pub. L. No. 116-6, 113 Stat. 13 ...................................................... 5

DHS Appropriations Act, 2020,
    Pub. L. No. 116-93 ............................................................................ 4

DHS Appropriations Act, 2021,
    Pub. L. No. 116-260 .......................................................................... 4

**Rules**

Fed. R. Civ. P. 24 ................................................................................... 1

Fed. R. Civ. P. 24(a) ............................................................................. 9

Fed. R. Civ. P. 24(a)(2) ...................................................................... 11

Fed. R. Civ. P. 24(b)(3) ...................................................................... 17

Fed. R. Civ. P. 60 ............................................................................... 13

**Regulations**

28 C.F.R. § 0.20(b) .............................................................................. 18

48 C.F.R. § 1.000 ................................................................................. 5

## <u>INTRODUCTION</u>

Three federal government contractors, a private landowner, and coalition of environmental organizations have moved to intervene in this case to clarify the scope of the Court's preliminary injunction.  *See* ECF Nos. 148, 149, 154, 167, 172.  Prior to the Court's injunction, Defendants intended to expend some of the now-enjoined fiscal year 2020 and 2021 border barrier system appropriations on actions that would have benefited the proposed intervenors.  The Army Corps of Engineers was utilizing the barrier system funds to pay for agency labor costs associated with settling contract terminations.  The Department of Homeland Security (DHS) was relying on the challenged funds to pay for replacement of legacy barriers and gates.  DHS also was expending the funds to pay for litigation settlement costs to remediate property and environmental damage allegedly caused by prior barrier construction activities.  Defendants stopped funding these and other activities in compliance with the Court's preliminary injunction, which prohibits use of the fiscal year 2020 and 2021 barrier system funds for purposes other than "construction of physical barriers, such as additional walls, fencing, buoys, etc."  Mem. Op. & Order at 56 (ECF No. 128); *see* Transcript of Motion Hearing on March 28, 2024 (ECF No. 147) (clarifying injunction).  Defendants respectfully disagree with the Court's decision and continue to believe that costs associated with contract administration, remediation activities, and replacement of existing barriers are lawful expenditures within the scope of the challenged appropriations.  The injunction, however, does not allow Defendants to pay for these activities with the enjoined funds.

Although Defendants are sympathetic to the proposed intervenors' current circumstances and the disruptions caused by the injunction, the motions to intervene should nonetheless be denied because they do not meet the requirements for intervention under Federal Rule of Civil

Procedure 24.  Proposed intervenors' request is untimely.  The delay and complications likely to result from introducing five new parties and expanding this litigation far beyond its original scope on the eve of final judgment weigh against granting intervention.  Proposed intervenors also cannot establish that denying intervention in this case will impede their interests because they have an adequate opportunity to assert their contract, property, and settlement claims against the federal government in separate and more appropriate judicial forums.  When alternative judicial forums are available, the denial of intervention does not practically impair the movants' ability to protect their interests.  Further, intervention is inappropriate because the federal Defendants—not private parties—should control litigation involving federal appropriations, including post-merits requests for equitable relief and decisions about whether to appeal.  Injunctions against federal agencies in Administrative Procedure Act lawsuits inevitably will have downstream impacts on many private parties, but allowing intervention on that basis would encourage an influx of new parties at the conclusion of litigation, as this case illustrates, and deprive Rule 24's limitations of any meaningful effect.

    For these reasons, as explained further below, the motions to intervene should be denied.

## BACKGROUND

### I.    Diamond A Ranch

    In 2020, DHS started construction of an approximately 5-mile border barrier project in rural southeastern Arizona known as "Tucson A-5."  *See* Declaration of Paul Enriquez ¶ 10, originally filed in Case No. 20-CV-3478-CRC (D.D.C.) (attached as Exhibit 1).  The project was funded by appropriations to the Department of Defense in response to a request for assistance

from DHS pursuant to 10 U.S.C. § 284(b)(7).[1]  *See id.* ¶¶ 8–9.  The construction area for part of

the Tucson A-5 project was adjacent to property owned by proposed intervenors Diamond A

Ranch, Western Division, L.L.C. and Guadalupe Ranch Corporation (collectively, "the Ranch").

Both before and during the construction process, DHS and the Army Corps of Engineers were in

regular communication with the Ranch about the design and construction work for the section of

the project adjacent to the Ranch's property.  *See id.* ¶¶ 15, 20; Second Declaration of Col.

Antoinette Gant ¶¶ 8–36, originally filed in Case No. 20-CV-3478-CRC (D.D.C.) (attached as

Exhibit 2).  During these consultations, the Ranch raised various concerns about impacts to its

property from the barrier construction activity, including rockfall that landed on the Ranch's

property from explosive blasting and enhanced flood risks the Ranch attributed to installation of

a water culvert under a section of the barrier that crossed a creek near the Ranch.  *See* Enriquez

Decl. ¶¶ 15–20; Second Gant Decl. ¶¶ 8–36.  DHS and the Army Corps of Engineers attempted

to address the Ranch's concerns, but the parties were unable to resolve their differences.  *See*

Enriquez Decl. ¶¶ 15–20; Second Gant Decl. ¶¶ 8–36.

In November 2020, the Ranch sued DHS and the Army Corps of Engineers in the United

States District Court for the District of Columbia.  *See Diamond A Ranch, Western Division,*

*L.L.C. v. Wolf*, No. 20-CV-3478-CRC (D.D.C.) (*Diamond A Ranch*).  The parties litigated a

motion for a temporary restraining order and preliminary injunction that sought to stop further

construction of the Tucson A-5 project adjacent to the Ranch's property.  *See Diamond A Ranch*,

Minute Order (Dec. 7, 2020).  The Department of Defense subsequently cancelled the Tucson A-

---

[1] 10 U.S.C. § 284(b)(7) authorizes the Department of Defense to provide "support for the
counterdrug activities . . . of any other department or agency of the Federal Government,"
including for "[c]onstruction of roads and fences and installation of lighting to block drug
smuggling corridors across international boundaries of the United States."

5 project in 2021, and the parties agreed to stay the litigation while they attempted to negotiate a settlement of the Ranch's claims. *See, e.g.*, *Diamond A Ranch*, ECF Nos. 36, 49, 56, 59 (notice of cancellation of project and joint status reports about settlement discussions).  In February 2024, the parties reported that they were close to a final settlement agreement, subject to resolution of a few outstanding issues and formal approvals.  *See Diamond A Ranch*, ECF No. 61.

On March 8, 2024, this Court issued a memorandum opinion concluding that Congress's appropriation of funds to DHS in fiscal year 2020 and 2021 for "construction of barrier system" permits "only the construction of physical barriers, such as walls, fencing, buoys, etc."  ECF No. 128 at 56; *see* Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(a)(1), 133 Stat. 2317, 2511 (2019); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57 (2020).  The Court's order specifically prohibits Defendants from "obligating funds under Subsection 209(a)(1)—and corresponding funds under Section 210— toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes."  *Id.*; ECF No. 147 (Transcript of motion hearing on March 28, 2024, clarifying injunction).  The Court's injunction effectively disrupted the pending settlement negotiations with the Ranch.  Defendants had intended to utilize the now-enjoined barrier system funds to pay for remediation work on the Ranch's property to redress impacts the Ranch attributed to prior barrier construction.  The Court's injunction, however, does not permit Defendants to use the barrier system funds for this purpose.  The parties have notified the district court in the District of Columbia about this Court's injunction and that court has requested a status report on May 15, 2024.  *See Diamond A Ranch*, ECF No. 62; Minute Order (April 15, 2024).

## II.     Southern Border Constructors and RKE Contractors

In 2019, the Army Corps of Engineers awarded task orders under federal contracts to Southern Border Constructors (SBC) and RKE Contractors (RKE) to build border barrier projects in Texas.  *See* ECF No. 148-1–3, ECF No. 149-1–2.  The two contractors performed various activities in furtherance of barrier construction, including creating design plans for the barrier, acquisition and fabrication of barrier components, and installation of new barrier in the project areas.  *See* ECF No. 148 at 2–3, ECF No. 149 at 2–3.

Following the President's Proclamation in January 2021 requiring a re-evaluation of the use of funding concerning barriers on the southern border, the Army Corps of Engineers suspended and then subsequently terminated the task orders and contracts under which SBC and RKE had been performing work.  *See* ECF No. 148-4–7, ECF No. 149-3–6.  In accordance with the requirements of the Federal Acquisition Regulation, 48 C.F.R. § 1.000 *et seq.*, the Army Corps of Engineers started processing the contractors' termination settlement proposals.  *See* ECF No. 148 at 4–5, ECF No. 149 at 4–5.  That work was ongoing at the time of the Court's preliminary injunction.  *See* ECF No. 148 at 4–5, ECF No. 149 at 4–5.

Although funding for the construction costs of the barrier system projects undertaken by SBC and RKE came from appropriations in prior years that were not affected by the Court's injunction, *see, e.g.*, Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, Div. A, § 230, 133 Stat. 13, 28, the Army Corps of Engineers was relying on DHS's fiscal year 2021 barrier system funds to pay for its in-house labor costs to process and complete the contract termination claims.  Pursuant to an inter-agency agreement, DHS provided the Army Corps of Engineers with approximately $12 million from the fiscal year 2021 barrier system appropriation to support various project management costs, including contract administration.  *See* Declaration of Anjna

O'Connor ¶ 4, ECF No. 133-2.  In light of the Court's injunction, the Army Corps of Engineers can no longer use the enjoined funds to pay for its internal labor costs to settle the terminated contracts.  Accordingly, the Army Corps of Engineers notified SBC and RKE of the Court's injunction and the agency's inability to continue processing the contractors' termination claims using the enjoined funds.  *See* ECF No. 148 at 5–6; ECF No. 149-5–6.

## III.   Texas Sterling

In 2022, DHS awarded a task order under a federal contract to Texas Sterling to remove old legacy fencing and install replacement gates and barrier in the El Paso border patrol sector. *See* ECF No. 172-3.  In February 2024, after certain tasks had been completed, DHS notified Texas Sterling that the agency had decided to descope several remaining components from the task order and directed Texas Sterling to cease those remaining construction activities.  *See* ECF No. 172-4.  DHS and Texas Sterling then began discussions to resolve outstanding claims associated with the replacement barrier construction performed under the task order and the descoping decision.[2]  Following entry of the preliminary injunction, DHS notified Texas Sterling of the Court's decision and the agency's inability to pay costs prohibited by the injunction, such as payments for replacement barrier projects.  *See* ECF No. 172-1.

## IV.   Sierra Club and Southern Border Communities Coalition

In 2018 and 2019, Sierra Club and Southern Border Communities Coalition (collectively, Sierra Club), along with a group of approximately 20 States, filed lawsuits in the Northern District of California challenging then-President Trump's decision to fund border barrier

---

[2] Texas Sterling characterizes the descoping action as a termination of the contract for convenience.  *See* ECF No. 172 at 5.  Defendants do not agree with that characterization.  The effect of descoping decision was among the issues under discussion at the time of the Court's injunction.

construction using Department of Defense and Department of Treasury funds not specifically appropriated for that purpose. *See Sierra Club v. Biden*, Case No. 4:19-cv-00892-HSG (N.D. Cal.); *Sierra Club v. Biden*, Case No. 4:19-cv-01494-HSG (N.D. Cal.); *California, v. Biden*, Case No. 4:19-CV-872-HSG; *California, v. Biden*, Case No. 4:20-CV-1563-HSG; *see also* Defs' Opp. to Pls.' Mot. for Prelim. Inj. at 5–6 (ECF No. 96) (summarizing litigation). Construction of border barriers using the challenged funds proceeded during the pendency of that litigation after the Supreme Court stayed a permanent injunction that prohibited such construction. *See Trump v. Sierra Club*, 140 S. Ct. 1 (2019); *see also California v. Trump*, 407 F. Supp. 3d 869, 907 (N.D. Cal. 2019) (staying a second permanent injunction). The cases ultimately made their way to the Ninth Circuit on merits appeals, where divided panels concluded that the federal government had not complied with various statutory requirements governing the use and transfer of military funds for border barrier construction. *See Sierra Club v. Trump*, 963 F.3d 874 (9th Cir. 2020); *California v. Trump*, 963 F.3d 926 (9th Cir. 2020); *Sierra Club v. Trump*, 977 F.3d 853 (9th Cir. 2020). At the time President Biden took office, the Supreme Court had granted *certiorari* in one set of cases and a second petition for a writ of *certiorari* was pending in another set of cases. *See Trump v. Sierra Club*, No 20-138 (U.S.); *Trump v. Sierra Club*, No. 20-658 (U.S.). Following the change in Administration, the Solicitor General advised the Supreme Court of the President's border wall Proclamation and the agencies' new border wall funding plans. The Supreme Court vacated the Ninth Circuit's judgments and remanded the cases for the district court to "consider what further proceedings are necessary and appropriate in light of the changed circumstances." *Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *Biden v. Sierra Club*, 142 S. Ct. 56 (2021).

On remand, Sierra Club, the States, and the federal government jointly requested that the district court stay further proceedings and refer the cases to a magistrate judge for confidential

settlement mediation.  Over the course of nearly two years, the parties engaged in an intensive settlement mediation process that culminated in a complex settlement agreement that resolved the litigation and resulted in dismissal of the lawsuits.  *See* Declaration of Cecilia Wang, Ex. B (ECF No. 167-1); *Sierra Club v. Biden*, Case No. 4:19-cv-00892-HSG (N.D. Cal.) (ECF No. 375) (dismissal order).  Among other things, the settlement committed the federal defendants to perform various actions to remediate and mitigate the construction impacts of the border barrier projects funded by military appropriations.  *See* Wang Decl., Ex. B.  The settlement provides that funding for that remediation and mitigation work would come from the fiscal year 2020 and 2021 barrier system appropriations that are now subject to the Court's injunction.  *See, e.g.*, *id.* at ¶¶ 16, 48.  Based on the Court's decision that these funds are not available to pay for "mitigation and remediation efforts" or "other similar purposes," Mem. Op. & Order at 56 (ECF No. 128), Defendants stopped implementation of those provisions of the settlement agreement that conflict with the Court's injunction.  As a result, Sierra Club has alleged that Defendants have breached the settlement agreement.  *See* Wang Decl. ¶ 8.

## ARGUMENT

### I.     Proposed Intervenors Are Not Entitled To Intervention As Of Right

To support a request for mandatory intervention under Rule 24, the would-be intervenor must establish four elements: "(1) the application for intervention [is] timely; (2) the applicant [has] an interest relating to the property or transaction which is the subject of the action; (3) the applicant [is] so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest [is] inadequately represented by the existing parties to the suit."  *Rotstain v. Mendez*, 986 F.3d 931, 936-37 (5th Cir. 2021) (alterations in original) (quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579

F.2d 964, 967 (5th Cir. 1978)). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Board of Levee Comm'rs of Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).

### A.    The Proposed Intervenors Motions Are Not Timely

Intervention as of right may only be granted "[o]n timely motion."  Fed. R. Civ. P. 24(a). The Fifth Circuit's test for timeliness requires the court to consider: "(1) the length of time during which the intervenor actually knew or reasonably should have known of his interest in the case; (2) the extent of prejudice to the existing parties to the litigation; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances." *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019).  "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

The Court should not permit five new entities, each with unique fact-specific claims, to intervene in this case on the eve of final judgment.  This case has been pending for nearly three years.  It has gone up and back to the Fifth Circuit multiple times. *See General Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023); *General Land Office v. Biden*, No. 22-40110 (July 29, 2022).  Two district judges have issued lengthy opinions evaluating the merits of Plaintiffs' claims based on multiple rounds of extended briefing. *See Texas General Land Office v. Biden*, 619 F. Supp. 3d 673 (S.D. Tex. 2022); *Texas General Land Office v. Biden*, No. 7:21-CV-00272, 2024 WL 1023047 (S.D. Tex. Mar. 8, 2024).  In the interim, the parties litigated various procedural issues, including case management procedures and the sufficiency of the administrative record. *See* ECF No 62, 80.  The parties are now close to the entry of final

9

judgment, having spent significant time and effort over the past several months, including hearings before this Court, positioning this matter for a final resolution.  *See* ECF No. 150.

Allowing intervention of five new parties at this stage would prejudice Plaintiffs and Defendants by complicating and prolonging this case.  The proposed intervenors seek to inject a wide range of new fact-specific interests about contract disputes, property damage, and environmental issues that have not previously been part of this litigation.  Intervention would thus significantly expand the scope of the issues and amount to the equivalent of starting five new lawsuits at a time when the case is on the doorstep of final judgment.

The harm to the existing parties from complicating and delaying this case so close to final resolution could have been mitigated if the intervenors had sought to enter this case much earlier. In particular, Sierra Club "knew or reasonably should have known" of its "stake in the case" long before it moved to intervene.  *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). Indeed, in July 2023 when the settlement agreement in the California litigation was finalized, that agreement expressly referenced remediation and mitigation projects funded by the fiscal year 2020 and 2021 barrier system appropriations on the condition of the availability of those funds.  *See, e.g.*, Wang Decl., Ex. B ¶¶ 48, 57.  Sierra Club does not allege that it was unaware of this litigation or that it could not have sought to intervene to assert its views about the challenged appropriations at the same time the parties were actively litigating that same issue in the preliminary injunction motion during the summer and fall of 2023.

The prejudice to Plaintiffs and Defendants of significantly expanding and complicating this litigation outweighs any potential harm to the proposed intervenors.  As explained below, the proposed intervenors cannot establish that denying intervention will impede their interests because they can assert their contract, property, and settlement claims against the federal

government in more appropriate judicial forums.  *See St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019) (third timeliness factor not satisfied where putative intervenor could obtain relief via a separate action); *see also infra* at 11–17 (citing cases denying intervention because putative intervenor could file a separate action).

This case also presents "unusual circumstances" warranting a determination that the motions to intervene are untimely.  *Adam Joseph Res.*, 919 F.3d at 865.  Permitting intervention here would encourage late-arriving parties to join litigation over federal agency actions near the conclusion of litigation after the merits of the case have been decided.  Injunctions against federal officials charged with carrying out agency policies will likely have downstream impacts on a diverse collection of people and organizations, as is the case here.  But proposed intervenors do not cite any authority where courts have allowed large numbers of new parties to intervene at the conclusion of such litigation to clarify or modify relief issued in litigation between the original parties.  The Court should not sanction such an unusual approach to intervention and transform a typical APA case nearing its conclusion into a new wide-ranging multi-party lawsuit about disparate interests unique to each new intervenor.

> **B.      The Proposed Intervenors Cannot Establish That Their Asserted Interests Will Be Impaired Absent Intervention Because They Have Alternative Judicial Forums To Assert Their Claims.**

Rule 24 also limits mandatory intervention to circumstances where "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2).  The proposed intervenors cannot satisfy this requirement.

The Fifth Circuit has recognized that no impairment exists if a would-be intervenor has a full and fair opportunity to vindicate its interest in a separate forum.  *See Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525–26 (5th Cir. 1994).  "Intervention generally is not appropriate where the

11

applicant can protect its interests and/or recover on its claim through some other means." *Id.* at

526. The would-be intervenor in *Deus* was "already participating in a lawsuit" against the

defendant in another federal court, thus the Fifth Circuit denied the intervention request because

"he can protect any interest he has" in the course of that other litigation. *Id.* Similarly, in *United

States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986), the Fifth Circuit held that a group of college

students could not intervene in an action seeking to enjoin a mandatory state testing requirement

where "disposition of the request for an injunction" would not "'as a practical matter, impair or

impede' their ability to bring a separate action to protect any of their rights."

　　This Court should deny the intervention requests in this case for the same reason. The

proposed intervenors either have initiated, or can initiate, separate actions asserting their property

damage, breach of contract, or settlement claims against the federal government.

　　As for the three contractors (SBC, RKE, Texas Sterling), Congress has created a

comprehensive statutory scheme for resolution of contract claims against the federal government,

including the ability to seek judicial relief in the Court of Federal Claims. *See* Contract Disputes

Act of 1978, codified at 41 U.S.C. § 7101 *et seq.*; 28 U.S.C. § 1491(a)(1) ("The United States

Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the

United States founded . . . upon any express or implied contract with the United States"). The

Contract Disputes Act "exclusively governs Government contracts and Government contract

disputes" and "provides the exclusive mechanism for dispute resolution." *Texas Health Choice,*

*L.C. v. Office of Personnel Mgmt.*, 400 F.3d 895, 898-99 (Fed. Cir. 2005) (citations omitted).[3]

---

[3] The Contract Disputes Act requires that a contractor must first submit its claim to the agency
for a decision. *See* 41 U.S.C. § 7103(a). The contractor may then appeal the agency's decision
to the appropriate board of contract appeals or "bring an action directly on the claim in the
United States Court of Federal Claims." 41 U.S.C. § 7104; *see* 41 U.S.C. § 7105 (establishing
agency boards of contract appeals). A contractor may appeal the decision of either the Court of

The three contractors seeking intervention thus may bring an action under the Contract Disputes Act for appropriate costs attributable to the termination of the barrier construction contracts. The availability of that potential statutory remedy is unaffected by the Court's injunction.

The Ranch also has another form in which to seek relief. The Ranch already has a pending lawsuit in the District of Columbia seeking relief for the same property damage claims that it asserts in support of its motion to intervene. *See Diamond A Ranch L.L.C. v. Wolf*, Civ. No. 20-3478 (D.D.C.); *see also* ECF No. 154 at 5 (summarizing pending lawsuit). As Defendants have represented to that Court, the Ranch may seek remedies through the Federal Tort Claims Act; and to the extent the Ranch alleges a physical taking of its property in violation of the Fifth Amendment, it could file an action in the Court of Federal Claims seeking compensation. *See Diamond A Ranch*, ECF No. 20 at 9–12. The injunction in this case does not limit or restrict the availability of those potential claims.

Similarly, Sierra Club has an avenue for relief before the court in the Northern District of California. The settlement agreement includes a detailed provision to resolve compliance disputes, including the potential for Sierra Club to bring a motion under Federal Rule of Civil Procedure 60 for relief from dismissal of its lawsuits. *See* Wang Decl., Ex. B ¶ 73.

Defendants do not concede that the proposed intervenors' claims in these other forums would succeed and reserve the right to oppose such claims on any and all appropriate grounds. Defendants also do not make any representations about the potential availability of current or future funds to pay for a future judgment in other cases, but importantly, this case does not preclude the availability of other funds for such purposes. Accordingly, the key point for

---

Federal Claims or the agency board to the U.S. Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(3); 41 U.S.C. § 7107(a)(1).

purposes of whether to allow intervention in this case is that judicial forums, other than this Court, are available to hear and address the proposed intervenors' claims, and nothing in this suit directly bars relief through those other avenues. The availability of those other established and more appropriate forums forecloses the proposed intervenors' argument that their inability to participate as a party in this action will practically impede their ability to protect their interests.

Other courts in this District have denied requests to intervene in similar circumstances where the would-be intervenors had alternative judicial forums available to seek relief. *See, e.g.*, *Stewart v. City of Houston*, No. H-07-4021, 2009 WL 783319, at *1 (S.D. Tex. Mar. 24, 2009) ("If the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the 'impairment' prong of Rule 24(a) typically is not met."); *Alam v. Mae*, No. H-02-4478, 2007 WL 4411544, at *5 (S.D. Tex. Dec. 17, 2007) ("[The movant] has not demonstrated that disposition of this case would realistically impair its interests. [The movant] may file its own lawsuit to collect its purported debt, and nothing decided in this case will operate to estop it from fully pressing its claims."); *Olympic Diamond v. Kotwitz*, No. Civil No. H-04-3936, 2005 WL 2416614, at *3 (S.D. Tex. Sept. 30, 2005) (denying intervention where movant "has the ability to protect [its] interest by filing an action to quiet title in Texas state court").

Moreover, this case does not present any of the unique circumstances in which the Fifth Circuit has found the practical impairment requirement satisfied notwithstanding the availability of other judicial forums. Disposition of this case would not have "a potential res judicata or collateral estoppel effect" on the would-be intervenors. *United States v. City of Jackson*, 519 F.2d 1147, 1150 (5th Cir. 1975). This case does not involve the unique context of an attorney seeking to recover fees from a client, where the Fifth Circuit "has consistently held" that it

14

makes little sense for the intervening attorney "to initiate a subsequent action to collect the fees allegedly generated in the existing litigation." *See Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 866–67 (5th Cir. 2019) (stating that a law firm seeking fees from a former client would face defenses in a new action in another forum based on the existing litigation such as a "potential statute of limitations defense," a "res judicata defense," and uncertainty over "personal jurisdiction") (internal quotations omitted).  Nor does this case present a situation where the only alternative to intervention is litigation before a foreign tribunal. *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124-25 (5th Cir. 1970).  None of these unique circumstances is presented here.

The *en banc* decision in *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996), that the proposed intervenors rely on is also distinguishable because a federal statute in that case prevented judicial actions in other forums. *See* ECF Nos. 148 & 149 at 12. *Edwards* involved several groups of Houston police officers who moved to intervene to challenge a consent decree reached by the parties in an employment discrimination case. *Edwards*, 78 F.3d at 989.  The Fifth Circuit concluded that the officers satisfied the "practical impairment standard" because they would be "bound by the Consent Decree and limited in their future promotion opportunities" if not permitted to intervene. *Id.* at 1004–05.  The Fifth Circuit emphasized that the police officers had no ability to seek judicial relief in another forum because a federal statute precluded "challenges to a court-approved consent decree via a new lawsuit independent of the proceeding giving rise to the decree." *Id.* at 997; *see also id.* at 1005 (explaining that the "preclusive effects" of 42 U.S.C. § 2000e–2(n) supported intervention).  No such practical or statutory obstacle arises from this case.  The Ranch may continue to pursue its pending lawsuit in the District of Columbia, the three contractors may assert contractual claims against the federal

government under the Contract Disputes Act, and Sierra Club has the ability to seek relief under

the settlement agreement in the Northern District of California.  Unlike *Edwards*, entry of final

judgment in this case interpreting the meaning of the fiscal year 2020 and 2021 barrier system

appropriations will have no precedential or preclusive effect on the merits of any future property

damage, contract, or settlement claims asserted by the proposed intervenors in other litigation.

      To the extent the proposed intervenors contend that it would be more efficient and cost-

effective for them to pursue relief in this case, courts have consistently held that the "mere

inconvenience caused by requiring would-be intervenor[s] to litigate separately is not the sort of

adverse practical effect contemplated by Rule 24(a)(2))."  *Nat'l Horsemen's Benevolent &*

*Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2022 WL 974335, at *6 (N.D. Tex. Mar. 31,

2022) (denying intervention where the "state intervenors could pursue their unique Tenth

Amendment claim in separate litigation"); *see Grainger v. Ottawa Cnty.*, 90 F.4th 507, 516 (6th

Cir. 2024) ("Other circuits have similarly found that intervention is not required when it would

only prevent litigants from facing the inconvenience of filing their claims in other litigation.").

Were it otherwise, every would-be-intervenor would be able to show impairment by asserting

typical litigation costs and burdens.  As the Fifth Circuit has observed, Rule 24(a)(2) does not

create "rights of indiscriminate intervention" and instead "set[s] bounds that must be observed."

*United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (quotation

marks omitted).  Instead of becoming parties, proposed intervenors and other entities that are

likely to be affected by litigation over a federal action may inform the courts of their interests

through the filing of an amicus brief.

16

The proposed intervenors can protect their interests by asserting their various claims against the federal government in more appropriate judicial forums.  Consequently, they do not face any adverse practical effects cognizable under Rule 24 that support a right to intervene here.

## II.   Proposed Intervenors' Request for Permissive Intervention Should Be Denied.

The Court also should deny proposed intervenors' request for permissive intervention.  A court may grant permissive intervention pursuant to Rule 24(b)(1)(B) when:  "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties."  *Texas v. United States*, No. 6:21-cv-00003 (Tipton, J.), 2021 WL 411441, at *1 (S.D. Tex. Feb. 6, 2021) (quoting *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).  "Permissive intervention is 'wholly discretionary' and may be denied even when the requirements of Rule 24(b) are satisfied."  *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (citation omitted).

Permissive intervention should be denied for the same reasons that the proposed intervenors cannot intervene as of right.  As explained above, the Court should not permit five new parties to intervene at this late stage and inject new issues that are unnecessary to protect their interests.  Expanding this litigation beyond its original scope and the attendant delay would prejudice the original parties, who have expended considerable time to prepare this case for final resolution.  Proposed intervenors have the ability to pursue their claims in other forums, thus there is no compelling reason to introduce a diverse array of new factual and legal issues into this case, thereby delaying entry of final judgment.  *See* Fed. R. Civ. P. 24(b)(3) ("In exercising its

17

discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

Additionally, permissive intervention should be denied because intervention would prejudice Defendants by interfering with the Department of Justice's control of Government litigation and DHS's authority to manage its appropriated funds.  The Attorney General—not private entities—is empowered to control "litigation in which the United States, an agency, or officer thereof is a party."  28 U.S.C. § 516; *see United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976) ("It is axiomatic that the Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest."); *cf. Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) (recognizing the Texas Attorney General's interest in maintaining control over the State's criminal cases in rejecting request for intervention by a Texas district attorney).  Further, the Solicitor General of the United States is charged with "[d]etermining whether, and to what extent, appeals will be taken by the Government."  28 C.F.R. § 0.20(b).  The Fifth Circuit has recognized that when an intervenor obtains "full party rights," "the control of the original parties over their own lawsuit is significantly diminished."  *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 473 (5th Cir. 1984).  In an APA case challenging unique federal interests about the way DHS spends money appropriated to it by Congress, the federal government should control the course of the litigation and any future appeals, not private parties.  *See id.* (denying intervention where addition of intervenor could prevent the original "parties from simply accepting a judgment of the district court by allowing it to become final without appeal").  Granting intervention would undermine these important federal interests.

18

Even if the proposed intervenors satisfied the minimum requirements for permissive intervention—which they do not—this Court would have substantial discretion to deny their request. *See New Orleans Pub. Serv., Inc.*, 732 F.2d at 470–71 (holding that even where the requirements of Rule 24(b) are satisfied, "[p]ermissive intervention is wholly discretionary with the [district] court").[4]  In addition to the reasons set forth above, courts may also consider whether "the intervenor's presence is likely to provide significant contributions to the development of the underlying factual issues." *Id.*  This factor weighs against permissive intervention.  The present case involves APA claims decided on the basis of an administrative record that Defendants have already produced, and the Court has relied upon to decide the motion for preliminary injunction.  Proposed intervenors have no role in developing the factual record for the claims at issue in this litigation.  Moreover, the proposed intervenors are not seeking to litigate discrete legal questions presented based on the narrow administrative record. Instead, they seek to expand the scope of this case by asking the Court to clarify or modify the injunction based on factual circumstances unique to each intervenor.  The delay and complications likely to result from such a significant expansion of this litigation beyond its original scope weigh against granting intervention.  *See Nipponkoa Ins. Co. v. Port Terminal R.R. Ass'n*, No. H-10-0284, 2011 WL 1103584, at *2 (S.D. Tex. Mar. 23, 2011) ("Where permissive intervention would further complicate the case without any added benefit, the court may deny a motion to intervene.").

---

[4] In *Texas*, this Court granted permissive intervention to a legal services organization that represented individuals affected by the 100-day removal pause policy challenged in that case. *See Texas*, 2021 WL 411441, at *1–4.  For the reasons explained herein, this case presents a significantly different situation that warrants denial of the requests for permissive intervention. *See Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014) ("Motions to intervene are highly fact-specific and tend to resist comparison to prior cases.").

## **CONCLUSION**

For the foregoing reasons, the motions to intervene should be denied. A proposed order is attached.

Dated:  May 10, 2024                                 Respectfully submitted,

                                                     BRIAN M. BOYNTON
                                                     Principal Deputy Assistant Attorney General

                                                     ALEXANDER K. HAAS
                                                     Director, Federal Programs Branch

                                                     _/s/ Andrew I. Warden_____
                                                     ANDREW I. WARDEN (IN Bar #23840-49)
                                                     Senior Trial Counsel
                                                     MICHAEL J. GERARDI
                                                     (D.C. Bar #1017949)
                                                     Trial Attorney / Attorney-in-Charge
                                                     U.S. Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     1100 L St. NW, No. 7506
                                                     Washington, D.C. 20005
                                                     Tel: (202) 616-5084
                                                     Fax: (202) 616-8470
                                                     E-mail: Andrew.Warden@usdoj.gov

                                                     ALAMDAR S. HAMDANI
                                                     United States Attorney

                                                     /s/ _Daniel D. Hu_____
                                                     DANIEL D. HU
                                                     Chief, Civil Division
                                                     Assistant United States Attorney
                                                     Southern District No. 7959
                                                     Texas Bar No. 10131415
                                                     1000 Louisiana, Suite 2300
                                                     Houston, Texas 77002
                                                     Tel: (713) 567-9000
                                                     Fax: (713) 718-3303
                                                     E-mail: Daniel.Hu@usdoj.gov

ALYSSA IGLESIAS
Assistant United States Attorney
Southern District of Texas No.: 3610302
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Alyssa.Iglesias@usdoj.gov

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 6104, as counted by Microsoft Word.

*/s/ Andrew I. Warden*
ANDREW I. WARDEN

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2024, I electronically filed a copy of the foregoing response memorandum.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Andrew I. Warden*
ANDREW I. WARDEN

21