## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

|  |  |
|---|---|
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>　　　　　　Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |
| THE GENERAL LAND OFFICE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>　　　　　　Defendants. | No. 7:21-cv-00272 |

## PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS TO INTERVENE

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................ 1

ANALYSIS ................................................................................................. 2

I.   The motions for intervention should be rejected because each Putative
     Intervenor failed to comply with the requirements of FRCP 24(c). ................... 3

II.  Each Putative Intervenor fails to meet each element of intervention as of
     right. ................................................................................................ 5

     A.   The motions to intervene are untimely. ........................................... 5

     B.   Putative Intervenors have not demonstrated any sufficient interest relating
          to the dispute. .............................................................................. 11

     C.   The disposition of this action will not impair or impede Putative
          Intervenors' ability to protect their interests. ................................. 15

     D.   Putative Intervenors' interests are adequately represented by the existing
          parties to the suit. ......................................................................... 18

III. This Court should deny Putative Intervenors' requests for permissive
     intervention. ...................................................................................... 21

CONCLUSION ........................................................................................... 24

CERTIFICATE OF COMPLIANCE ............................................................... 27

CERTIFICATE OF SERVICE ....................................................................... 27

# TABLE OF AUTHORITIES

**Cases**  Page(s)

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ............................................................. 15, 18

*Chaucer Corporate Capital, No. 2 Limited v. Azad*,
    No. H-10-180, 2011 WL 13249479 (S.D. Tex. Sep. 8, 2011) ...................................... 4

*Deus v. Allstate Ins. Co.*,
    15 F.3d 506 (5th Cir. 1994) ..................................................................... 17

*Doe v. Glickman*,
    256 F.3d 371 (5th Cir. 2001) ................................................................. 5, 8

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996) ...................................................................... 6

*Entergy Gulf States Louisiana, L.L.C. v. EPA*,
    817 F.3d 198 (5th Cir. 2016) .................................................................... 19

*General Land Office v. Biden*,
    71 F.4th 264 (5th Cir. 2023) ................................................................. 7, 8

*Guenther v. BP Retirement Accumulation Plan*,
    50 F.4th 536 (5th Cir. 2022) ............................................................ 5, 12, 17

*In re SBMC Healthcare, LLC*,
    519 B.R. 172 (S.D. Tex. 2014) ................................................................... 4

*Kneeland v. Nat't Collegiate Athletic Ass'n*,
    806 F.2d 1285 (5th Cir. 1987) .................................................................. 21

*La Union del Pueblo Entero v. Abbott*,
    No. SA-21-cv-00844, 2021 WL 5410516 (W.D. Tex. Nov. 16, 2021) ....................... 22

*Louisiana International Marine, L.L.C. v. Drilling Rig Atlas Century*,
    No. C-11-186, 2011 WL 13340708 (S.D. Tex. Dec. 21 2011) .................................. 14

*Lucas v. McKeithen*,
    102 F.3d 171 (5th Cir. 1996) ..................................................................... 9

*M2 Technology, Inc. v. M2 Software, Inc.*,
    589 Fed.Appx. 671 (5th Cir. 2014) ............................................................ 24

*Miller v. Alamo*,
    975 F.2d 547 (8th Cir. 1992) ................................................................ 21

*New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) ........................................................... 13, 14

*Pin v. Texaco, Inc.*,
    793 F.2d 1448 (5th Cir. 1986) .............................................................. 3, 4

*Robles v. Eminent Medical Center, LLC*,
    619 F.Supp.3d 609 (N.D. Tex. 2022) ....................................................... 2

*St. Bernard Parish v. Lafarge North America, Inc.*,
    914 F.3d 969 (5th Cir. 2019) ................................................................ 10

*State v. Biden*,
    338 F.R.D. 219 (E.D. La. 2021) ............................................................ 19

*Texas v. U.S. Dep't of Energy*,
    754 F.2d 550 (5th Cir. 1985) ................................................................ 13

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ....................................... 11, 13, 14, 15, 19

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.*,
    834 F.3d 562 (5th Cir. 2016) .................................................................. 5

**Rules**

Federal Rule of Civil Procedure 5(b) ......................................................... 27

FRCP 7(a) .................................................................................................... 3

FRCP 24(a)(2) .............................................................................................. 4

FRCP 24(b) ................................................................................................ 21

FRCP 24(b)(1)(B) ................................................................................. 21, 22

FRCP 24(b)(3) ........................................................................................... 21

FRCP 24(c) ................................................................................. ii, 2, 3, 4

**Other Authorities**

C. Wright & A. Miller, *Federal Practice and Procedure* § 1920 ............. 1, 21

H.R. 2882 .................................................................................................. 17

## INTRODUCTION

Seven third-parties seek to intervene through five intervention motions filed with this Court: Posillico Civil Inc. Coastal Environmental Group Inc. d/b/a Southern Border Constructors ("SBC"); Randy Kinder Excavating Inc. d/b/a RKE Contractors ("RKE"), Texas Sterling Construction Co. ("Texas Sterling"); Sierra Club and Southern Border Communities Coalition (together referred to as "Sierra Club"); Diamond A Ranch Western Division LLC and Guadalupe Ranch Corporation (together referred to as "Diamond Ranch"). And they all share a common goal of having the Court interpret its order as applying to their specific border wall contracts in a way favoring each Putative Intervenor's financial interests—the exact type of contractual and border wall micromanagement the Court has disavowed.

Notwithstanding their motives, in each instance intervention is pointless, untimely, and unwarranted.

It is pointless because any intervenors are "bound by all prior orders and adjudications of fact and law as though [they] had been a party from the commencement of the suit." C. Wright & A. Miller, *Federal Practice and Procedure* § 1920 n.8 (citation omitted). The Putative Intervenors seek to revisit an order this Court already issued. Indeed, many of the Putative Intervenors, including SBC, RKE, and Sierra Club candidly admit to the Court that they seek to relitigate issues already decided to gain an advantage in separate litigation or settlement negotiations with another non-party or DHS. As a matter of law, they cannot relitigate matters already decided.

1

It is untimely because the putative intervenors seek to inject their unrelated issues at the eleventh hour, after over thirty-three months of litigation and several rounds of complex briefing.

And it is unwarranted because the intervention motions are beset by a host of other problems. None of the organizations includes a proposed pleading with their intervention motions, itself a fatal flaw to each motion. Nor can any putative intervenor establish any of the four elements needed to intervene. For example, several organizations never dispute that they have other avenues to protect their interests. And *any* position they could take on the "ultimate issue" of this action is already fully represented.

Permissive intervention should similarly be denied. Indeed, Putative Intervenors' failure to each provide a pleading setting out the claims or defenses they raise—thereby providing notice to the Court and parties of what they seek to argue— alone warrants denial of both intervention requests. FRCP 24(c).

Several independent reasons support denial of each motion to intervene. These various third parties cannot, and should not, step in at the last minute and force the existing parties to suffer further delay.

## <u>ANALYSIS</u>

Although representing different third-party entities, all five motions to intervene raise similar arguments—none of which supports intervention.[1] Plaintiffs'

---

[1] The exception is Diamond Ranch, which entirely fails to state the appropriate standard for intervention, supply any authority whatsoever supporting intervention, or explain how it meets any (let alone each) of the four elements of intervention as of

arguments herein apply to each motion to intervene (unless particular distinctions between the motions to intervene are noted).

## I.     Each Putative Intervenor failed to comply with the requirements of FRCP 24(c).

The motions should be denied because each Putative Intervenor failed to comply with the requirement of FRCP 24(c) that an intervenor attach to their motion a "pleading which sets out the claim or defense for which intervention is sought."

FRCP 24(c) lists the "required" elements that any motion to intervene "must" meet. These include that "[a] motion to intervene … be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FRCP 24(c). A pleading is defined as either "a complaint" or "an answer to a complaint." *See* FRCP 7(a).  In other words, FRCP 24(c) requires that a party seeking to intervene inform the Court and existing parties what claims or defenses it seeks to bring on intervention by attaching a pleading. Each Putative Intervenor has failed to do so.

Their failure to comply with the requirements of FRCP 24(c) is fatal. "[T]he plain fact is that Rule 24(c) obligates a district judge to make an assessment of whether the proposed intervenor's complaint states a cause of action, at least when

---

right. Rather, Diamond Ranch appears to attempt to argue a vague preliminary injunction standard—raising questions of "likelihood of success on the merits" and a "balance of equities." Diamond Ranch Mot. to Intervene at 4–9. Diamond Ranch's failure to offer any argument to each element of intervention as of right waives that issue and provides an independent basis to deny its motion. *See Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp.3d 609, 626 (N.D. Tex. 2022) ("Arguments raised for the first time in a reply brief are generally waived, as the responding party is deprived of the opportunity to respond to the new argument.") (internal citations and quotation marks omitted). Even if Diamond Ranch had not waived intervention as of right, Plaintiffs' other arguments against intervention still defeat the motion.

the motion to intervene is opposed, and where, as here, the complaint in intervention adds substantive claims that no other party asserted." *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986). Consequently, courts will deny a motion to intervene when a prospective intervenor "provided no complaint in intervention, despite Rule 24's requirement that a motion to intervene 'must state the grounds for intervention *and* be accompanied by a pleading that sets out the claim or defense for which intervention is sought.'" *Chaucer Corporate Capital, No. 2 Ltd. v. Azad*, Case No. H-10-180, 2011 WL 13249479 at *1 (S.D. Tex. Sep. 8, 2011) (emphasis in original); *In re SBMC Healthcare, LLC*, 519 B.R. 172, 185 (S.D. Tex. 2014) ("Rule 24(c), as interpreted by the Fifth Circuit, requires a motion to intervene to include a well-pleaded complaint … the Court will deny the Motion for failure to plead a cause of action in compliance with FRCP Rule 24(c).").

Each Putative Intervenor's failure to comply with FRCP 24(c) prevents the Court from discharging its "obligat[ion]" to "make an assessment of whether the proposed intervenor's complaint states a cause of action." *Pin*, 793 F.2d at 1450. As such, this Court should deny each motion to intervene.

Denial should also be with prejudice. As Plaintiffs have demonstrated, no Putative Intervenor is entitled to intervene either as of right or permissively. See infra Sec. II–III. Any renewed motion to intervene is futile. Continued delay or briefing successive motions to intervene imposes unnecessary costs on the court and parties.

## II.   Each Putative Intervenor fails to meet each element of intervention as of right.

To obtain intervention as of right under FRCP 24(a)(2), an intervenor must satisfy a four-prong test:

> (1) the application … must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.*, 834 F.3d 562, 565 (5th Cir. 2016). An intervenor bears the burden of "show[ing] that [it] satisfies each factor of the above test to be entitled to intervene." *Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536, 542–43 (5th Cir. 2022).

Failure to meet any element defeats a claim of intervention as of right. None of the Putative Intervenors is able to meet even a single element.

### A.   The motions to intervene are untimely.

The Fifth Circuit established "four factors" (commonly called the *Stallworth* factors) that courts "must consider in order to determine whether a motion to intervene is timely." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). The four factors are:

> (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.

5

*Id*. Each factor demonstrates that the motions to intervene are untimely.

>    1.    **The length of time Putative Intervenors reasonably should have known about this multi-year lawsuit supports untimeliness.**

Putative Intervenors each seek to intervene in a case originally filed almost three years ago. "The timeliness clock runs either from the time the applicant knew or reasonably should have known of his interest [in the litigation], or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).

Each Putative Intervenor assumes that the "timeliness clock" runs from the date the government "issued a letter [to the Putative Intervenor] … unilaterally interpreting this Court's Injunction." SBC Mot. at 8 (claiming to receive such a letter on "March 28"); RKE Mot. at 8 (same); Texas Sterling Mot. at 6 ("on March 28, 2024, [Texas Sterling] received correspondence from the government" suspending payment of invoices); Sierra Club Mot. ("Counsel for the United States informed [Sierra Club] of the government's understanding of the preliminary injunction order's impact on compliance with the Settlement Agreement on March 14, 2024."); Diamond Ranch Mot. at 3 ("After the Order was adopted, the Department informed the Ranch that it construes the Order as preventing the use of FY 2020 and 2021 funds to remedy construction damage.").

This assumption by each Putative Intervenor is incorrect. The question, rather, is when Putative Intervenors "reasonably should have known" that this lawsuit could affect its interests. *Edwards*, 78 F.3d at 1000. Plaintiffs filed their Complaints

between July and October 2021 and their motion for preliminary injunction in November 2021, and, since then, the parties have extensively (and publicly) briefed the preliminary injunction questions. *See, e.g.*, ECF 24; 30; 32; 54; 96; 101; 107; 111; 120; 124; 125. The Fifth Circuit weighed in on the question, publishing an opinion in this case nearly a year ago. *General Land Office v. Biden*, 71 F.4th 264, 275 (5th Cir. 2023). The press offices of the governmental entities involved in the litigation all issued multiple press and informational releases regarding the litigation. And the national news coverage of this case has been extensive, ranging from the Texas Tribune, to the New York Times, to Law360.com, and myriad other national news outlets.

Each of these public filings reasonably put Putative Intervenors on notice that any interest each third party has may be affected. This is particularly true for the third parties that seek to intervene here. SBC has "significant operations in Texas," and both SBC and RKE were approved for hundreds of millions of dollars of government work along the southern border. SBC Mot. at 2; RKE Mot. at 2. Texas Sterling, likewise, is a contractor that was performing work along the southern border under "design-build, multiple award indefinite delivery/indefinite quantity" contracts that accrued "millions of dollars" of work. Texas Sterling Mot. at 6. Sierra Club is a national organization that partnered with "the State of California" and "19 other states" to engage in multi-year litigation to halt construction of border barriers—litigation that went all the way up to the Supreme Court—and then to enter into an ongoing settlement related to that action for tens of millions of dollars. Sierra Club

7

Mot. at 4–5. And Diamond Ranch has purportedly been engaged in "several years of litigation and negotiation" with the federal government related to barrier construction along the southern border. Diamond Ranch Mot. at 1.

While the Court has granted a preliminary injunction, the parties agree (with only the dispute about vacatur) that final judgment should take substantially the same form. Putative Intervenors cannot wait to intervene until just moments before final judgment.

### 2. Intervention would prejudice the parties.

The second *Stallworth* factor, "the prejudice, if any, the existing parties may suffer" also strongly suggests the motions are untimely. *Glickman*, 256 F.3d at 376. All plaintiffs and defendants asked the Court to enter final judgment. ECF 150 at 2. The Putative Intervenors are thus wrong to suggest "this case remains in the preliminary injunction stage." SBC Mot. at 9; *see also* RKE Mot. at 9 (same); Sierra Club Mot. at 7 (arguing the existing parties would not be prejudiced by intervention "at this stage, so shortly after the preliminary injunction order"); Texas Sterling Mot. at 9 (incorrectly claiming that "[t]he parties are still seeking clarification of the Court's March 8, 2024, ruling"). On the contrary, *every* issue has already been resolved, jointly submitted for final judgment by the parties, or fully briefed. *See, e.g.*, ECF 128, 150, 177, 179. Final resolution is particularly important to Plaintiffs. As the Fifth Circuit noted, "[t]o the extent the facts have vindicated the States' position, significant delay will exacerbate their costs." *General Land Office*, 71 F.4th at 275. Defendants likewise have an interest in quick and final resolution.

The existing parties will significant prejudice if Putative Intervenors are permitted to intervene. As this Court has observed, "this case has been briefed to death." Tr. of Hr'g on March 28, 2024 at p.29. Intervention risks the addition of yet additional parties who will likely seek briefing on issues related to their specific interests. "[T]o permit intervention at the eleventh hour would … result[] in revisiting of issues previously addressed at length by the parties." *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996).

> ### 3. Putative Intervenors would not be prejudiced from a denial of intervention.

While the existing parties will be significantly prejudiced if intervention is granted, Putative Intervenors will not be prejudiced if their motions are denied. Each Putative Intervenor raises a single argument of prejudice: that "the government is invoking this Court's preliminary injunction as the basis" for various purported refusals to engage in further settlement negotiations or previous settlement agreements. Sierra Club Mot. at 7; *see also* SBC Mot. at 9 (claiming prejudice because the Army Corps is purportedly "using this Court's Injunction … as an excuse to not come to the table with SBC and closeout the settlement"); RKE Mot. at 9 (same); Texas Sterling Mot. at 9 (claiming prejudice based on "[t]he government's position that it cannot negotiate settlement"). Of course, each Putative Intervenor strains to make clear that they *do not believe* the government's position is valid or that the injunction prevents the federal government from paying that Putative Intervenor. *See* SBC Mot. at 12 (calling the Army Corps' interpretation "incorrect"); RKE Mot. at 12 (same); Sierra Club Mot. at 8 (asserting that Sierra Club is "preparing for

enforcement litigation … pursuant to the Settlement Agreement's terms"); Texas Sterling Mot. at 11 (noting that it is only "[a]ccording to the federal government" that the injunction affects Texas Sterling).

Not one of the Putative Intervenors disputes that it can use alternative methods to protect its rights, including filing their own lawsuits against the government. Indeed, some of the Putative Intervenors (specifically, Sierra Club) are already "preparing for enforcement litigation" to enforce the *same* purported rights they now claim would be affected absent intervention. Sierra Club Mot. at 8. Sierra Club offers no suggestion for how it is prejudiced absent intervention besides an apparent general desire to intervene in this multi-year lawsuit instead of bringing its own lawsuit because this Court "could" offer the same relief. Each of the other Putative Intervenors likewise is careful never to suggest that they are unable to bring a separate lawsuit against the federal government. Denial of a motion creates no prejudice where a would-be intervenor simply "preferred not to bring a separate action because it would be difficult." *St. Bernard Parish v. Lafarge North America, Inc.*, 914 F.3d 969, 975 (5th Cir. 2019). There is even less prejudice where, as in the case for Sierra Club and Diamond Ranch, they are *already engaged in* a separate action to protect their interests.

### 4. To the extent unusual circumstances exist, they favor a finding of untimeliness.

Three of the five Putative Intervenors—SBC, RKE, and Texas Sterling—assert "unique circumstances" support intervention. The only "unique circumstances" each can point to, however, is the third parties' attempt to inject a multi-year contract

10

dispute between unrelated parties into this APA case. *See* SBC Mot. at 9 (claiming "unique circumstances" because "a nonparty to this litigation" is "relying on this Court's Injunction to withhold millions of dollars from another nonparty."); RKE Mot. at 9 (same); Texas Sterling Mot. at 10 (claiming "unique circumstances" because DHS "cease[d] its mandatorily regulated activities required to pay [Texas Sterling] for work that has already been completed"). But that is exactly why intervention is inappropriate. If there is anything "unusual" about this case, it is the highly unusual request for so many organizations to try to intervene at the 11th hour to assert unrelated breach of contract disputes that can be asserted (and, in some cases, are already being asserted) in separate actions.

### B. Putative Intervenors have not demonstrated any sufficient interest relating to the dispute.

Apart from untimeliness, intervention should be denied because no Putative Intervenor can point to any direct interest in this case. An "interest" in a lawsuit warranting intervention requires a concrete demonstration that the would-be intervenor has "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). An asserted interest must be one which would affect the intervenor in a "direct" manner; it is not enough for a movant to "seek[] to intervene solely for ideological, economic, or precedential reasons." *Id.* at 657–58.

Remarkably, most of the Putative Intervenors disavow any belief in a "direct" interest or assert that the government did not have any basis for its actions. *See, e.g.*, SBC Mot. at 11 ("On SBC's read, this Court's Injunction does not appear to prohibit

the federal government, specifically the Army Corps, from negotiating a settlement of costs already incurred by SBC."); RKE Mot. at 11 (same); Sierra Club Mot. at 5 ("[Sierra Club] sent the United States a formal notice of breach pursuant to the Settlement Agreement" when the federal government invoked this Court's injunction); Texas Sterling Mot. at 10 (arguing that the government has "cease[d] its mandatorily regulated activities."). In other words, the Putative Intervenors seek to intervene while insisting that intervention will not actually affect them at all. In light of this, it cannot be said that these Putative Intervenors carried their burdens to demonstrate a sufficient interest. *Guenther*, 50 F.4th at 542–43.

Indeed, the only basis for intervention that every Putative Intervenor can point to is the representation, either by DHS or, in some instances, another nonparty (such as the Army Corps), that the government has refused to either continue in settlement discussions or to operate under a previous settlement agreement. *See, e.g.*, Texas Sterling Mot. at 7 ("[Texas Sterling] is entitled to intervene as a matter of right because the federal government is refusing to proceed to negotiate."); Sierra Club Mot. at 3 ("counsel for the United States informed the Sierra Club Intervenors that it has stopped work toward the mitigation projects required under the Settlement Agreement.");[2] SBC Mot. at 10 (asserting an interest because "the federal government is halting negotiations and withholding millions of dollars owed to SBC based on an erroneous, self-serving interpretation of the Injunction."); RKE Mot. at 10 (same).

---

[2] Sierra Club's own section of its analysis on its "substantial legal interest," while asserting that it "plainly" has an interest in this case, never specifies what it believes that interest to be. *See* Sierra Club Mot. at 8.

This statement of a purported "refusal to negotiate" or a "refusal to continue with a settlement" tied to outside contracts or previous disputes unrelated to the specific statutory and administrative challenges raised by Plaintiffs—and, indeed, expressly disavowed as incorrect by the Putative Intervenors—is insufficient to rise to the level of "a direct, substantial, legally protectable interest in the proceedings." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (internal citations and quotation marks omitted). There is no suggestion by any Putative Intervenor that it could not recover any money it is owed *regardless* of the outcome of this case. Rather, each Putative Intervenor appears to suggest that it would simply prefer not to independently litigate against the federal government and would rather co-opt the authority of this Court to pursue Putative Intervenors' purported third-party breach of contract claims.

This preference by Putative Intervenors, divorced from any direct assertion of any way each Putative Intervenor's rights are actually affected by the Court's injunction, is the definition of a "generalized preference [by SBC] that the case come out a certain way." *Texas*, 805 F.3d at 657. That "the outcome of [a case] might somehow increase" financial costs on a third party is not "sufficient to warrant intervention" where any costs rely on "speculation" about subsequent events by independent actors. *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 552 (5th Cir. 1985); *see also New Orleans Public Service*, 732 F.2d at 470 (that the would-be intervenor "is economically at some risk in respect to the utility's actions … does not entitle the city's officials to intervention under Rule 24(a)(2).") Any "economic interest" each

Putative Intervenor has in avoiding a protracted dispute with the Army Corps or another nonparty government agency does not fall within "the character of interest required by Rule 24(a)(2)." *New Orleans Public Service*, 732 F.2d at 470.

Far from carrying Putative Intervenors' burden, each case Putative Intervenors rely on to prove this element in fact demonstrates why Putative Intervenors' purported "interests" are insufficient. *Sierra Club v. Espy* found an interest sufficient to warrant intervention where an action directly limited one party's release of lumber, and therefore cut off all avenues for relief by forest industry intervenors that directly sought to purchase the lumber. 18 F.3d 1202, 1207 (5th Cir. 1994). This is, of course, markedly distinct from the present case—there is no claim that the injunction cuts off any other possible methods for relief for any Putative Intervenor.[3] Rather, each Putative Intervenor either expressly asserts the government's position is incorrect, or has already begun separate litigation against the government. No better is reliance on *Texas v. United States*, where the court found that "aliens who … are likely to receive grants of deferred action if DAPA goes into effect" had sufficient interest to intervene, because they "themselves will or will not be eligible for deferred action, depending on the outcome of this case." *Texas*, 805 F.3d at 656, 660. *Texas* is markedly different from the present situation. Here, each

---

[3] The unpublished *Louisiana International Marine*, the only other case relied on by SBC and RKE, is even less on point. *Louisiana International Marine* allowed a third-party to intervene to assert a preexisting maritime lien claim against one of the defendants in the underlying maritime breach of contract action—a situation markedly different than here. *La. Int'l Marine, L.L.C. v. Drilling Rig Atlas Century*, No. C-11-186, 2011 WL 13340708, at *1, *5 (S.D. Tex. Dec. 21 2011).

14

Putative Intervenor's goal is simple—they want to recover money from the federal government. What's more, far from the outcome of this case being the "only" mechanism for a party to either be eligible or not be eligible for a particular government right, each Putative Intervenor has either initiated alternative litigation or expressly disavowed the accuracy of the government's position. In short, both *Espy* and *Texas* are dissimilar because no Putative Intervenor has demonstrated that their purported monetary claims against the federal government, although perhaps made more convenient if they intervene, "depend[] on the outcome of this case." *Id*.

No Putative Intervenor holds an interest sufficiently direct to this action, and intervention is therefore inappropriate.

### C.   The disposition of this action will not impair or impede Putative Intervenors' ability to protect their interests.

Putative Intervenors cannot prove that the outcome of this litigation will, as a "practical … and not merely theoretical" matter, directly impair or impede their ability to protect their interests. *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citation omitted). Sierra Club offers no argument on this point besides simply stating that this Court "could" amend the injunction to give Sierra Club a special carve-out. Sierra Club Mot. at 8. Indeed, Sierra Club has already started the process of separate, concurrent litigation in California federal court. Sierra Club Mot. at 5. Likewise, Diamond Ranch admits that it is currently engaged in a multiyear lawsuit over its same interests, with no suggestion of prejudice besides the fact that the government now refuses to settle the active lawsuit. Diamond Ranch Mot. at 3. SBC, RKE, and Texas Sterling fare little better. The entirety of SBC and RKE's arguments on this

point are the unsupported assertions that "the federal government will almost certainly persist in its unilateral (and incorrect) interpretation of the Injunction," leading to an "administrative purgatory." SBC Mot. at 12; RKE Mot. at 12. Texas Sterling, likewise, complains simply that the government now refuses to "negotiate settlement of previously incurred costs and expenses"—with no suggestion that the injunction prejudices its ability to later attempt to recover any costs or expenses. Texas Sterling Mot. at 9. Each of these arguments is the definition of a "theoretical," rather than "practical," claim of prejudice. Indeed, as observed above, many of the Putative Intervenors *disavow* that this Court's decision adversely affects their interests—instead arguing that the federal government has misinterpreted this Court's injunction.

Nor have Putative Intervenors established they lack recourse to satisfy any claims against the federal government. Two of the Putative Intervenors—Sierra Club and Diamond Ranch—admit they initiated other lawsuits over the same facts or are engaged in long-running litigation over the same facts. Sierra Club Mot. at 5, Diamond Ranch Mot. at 1. Absent intervention, nothing in this decision constitutes *res judicata* on Putative Intervenors or collaterally estops Putative Intervenors. Nowhere do Putative Intervenors suggest that they can not bring an independent action against the Army Corps (or any other nonparty agency) if they believed they are owed money the Army Corps is improperly refusing to pay. Putative Intervenors also never argue that they believe the federal government lacks other avenues or authorities to pay each Putative Intervenor any money owed besides the particular

16

appropriation in Subsection 209(a)(1) of the FY 2020 DHS appropriations. Indeed, Congress designates *billions of dollars* every single year for virtually unrestricted general operating expenses. ECF 138 at 6–15. In March, Congress provided $18.43 billion for DHS' general "operations and support." H.R. 2882 at 332–34. Nowhere do Putative Intervenors suggest, let alone demonstrate, that none of these other funds could be used to satisfy any interest it has.

Putative Intervenors, in other words, would simply prefer to intervene in this multi-year litigation in order to avoid bringing their own action. Some, such as Sierra Club, have already filed a "formal notice of breach" with the government and plan to initiate separate enforcement litigation. Others, like Diamond Ranch, have an ongoing action that has already been running for years. And some, such as SBC, RKE, and Texas Sterling, appear to seek intervention to avoid what they believe could be an "administrative purgatory" of filing a lawsuit against the federal government over its refusal to negotiate certain settlements. SBC Mot. at 12. But "[i]ntervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means"—including through a separate "lawsuit." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994). It is each Putative Intervenors' burden to demonstrate that any judgment would impair its ability to protect any general interest it has in getting paid. *Guenther*, 50 F.4th at 542–43. Each Putative Intervenor has "other means" to protect its interests, and has therefore failed to carry its burden.

**D.**    **Putative Intervenors' interests are adequately represented by the existing parties to the suit.**

Finally, Putative Intervenors' motions to intervene must be denied because any interest each Putative Intervenor has in the underlying dispute is adequately represented by the existing parties.

The Fifth Circuit imposes a presumption of adequate representation where a would-be intervenor shares "the same ultimate objective as a party to the lawsuit." *Brumfield*, 749 F.3d at 345. This presumption can only be overcome if the party moving to intervene "show[s] adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id*.

In an attempt to avoid this presumption, several Putative Intervenors argue no party represents their specific interests, because each seeks to intervene to assert a dispute "necessarily distinct" from the existing dispute, between the existing parties, on "the proper interpretation of the Appropriations Acts." SBC Mot. at 13; *see also* RKE Mot. at 13 (same); Texas Sterling Mot. at 7 (claiming "[n]o current litigants in this case are available to defend TSC's interest" of the fact "the federal government is withholding money owed to TSC"); Sierra Club Mot. at 9 (asserting the Defendants "have not even attempted" to represent Sierra Club's interests when they did not "request[] a carve-out from the preliminary injunction" benefitting Sierra Club).[4] As with their assertions of "unusual circumstances," Putative Intervenors' arguments prove too much. Putative Intervenors each attempt to argue that no party adequately

---

[4] Diamond Ranch does not appear to offer any argument attempting to overcome the presumption of adequate representation.

represents its interests only by injecting entirely distinct disputes—be it cost claims or claims of a breach of a settlement agreement—into this statutory and administrative action. This is not a basis for intervention.

The question before this Court is whether each Putative Intervenor has "the same ultimate objective" as a party on the specific claims or defenses raised in *this* lawsuit. *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016). "There can only be one 'same ultimate objective'" in this lawsuit; "[h]ad the Court desired to make it more than one ultimate objective, it would have added an 's' to objective." *State v. Biden*, 338 F.R.D. 219, 224 (E.D. La. 2021). "Additionally, the 'same ultimate objective' must be specific to this lawsuit." *Id*. The "ultimate objective" specific to this lawsuit concerns whether a permanent injunction and vacatur are appropriate remedies for violations by Defendants of specific statutory or constitutional provisions. In other words, "[t]his specific lawsuit is about constitutional and statutory authority, not" the Army Corps' contracts or negotiations with Putative Intervenors. *Id*. at 224. Plaintiffs and Defendants represent the full scope of possible positions on the "ultimate objective" of whether a permanent injunction and vacatur are appropriate remedies. As such, "the 'same ultimate objective' presumption [of adequate representation] applies." *Texas*, 805 F.3d at 661.[5]

Putative Intervenors also attempt to overcome this presumption by simply raising a variant of the argument that it does not have a specific interest in any

---

[5] No Putative Intervenor suggests, let alone demonstrates, that any party has engaged in "adversity of interest, collusion, or nonfeasance" necessary to overcome this presumption. *Entergy Gulf States La.*, 817 F.3d at 203.

dispute between the existing parties over "the proper interpretation of the Appropriation Acts," but rather cares only that "the monies owed to it … are paid to it." SBC Mot. at 13; see also RKE Mot. at 13 (same); Texas Sterling Mot. at 10 (seeming to argue lack of adequate representation by raising concerns about "expos[ure] … to Miller Act type claims by [Texas Sterling's] subcontractors).[6]

The fact that "it is not clear" to Putative Intervenors "which party's objective" each would prefer to support does not overcome the fact that all possible positions on the "ultimate objective" of whether a permanent injunction and vacatur are appropriate in response to Defendants' actions are represented. SBC Mot. at 14; *see also* RKE Mot. at 14. Neither is there inadequate representation as to Plaintiffs' statutory and administrative questions because the federal government has purportedly been denying payments to Putative Intervenors under third-party agreements or contracts. *See, e.g.* Sierra Club's Mot. at 9 (attempting to overcome presumption of adequate representation by claiming that Defendants, despite opposing this motion, did not "request[] a varve-out from the preliminary injunction" in favor of Sierra Club). There is no allegation that Plaintiffs and Defendants have not fully litigated each side of the question.

---

[6] This, of course, must be assumed from the motion—Texas Sterling does not raise any specific arguments regarding the lack of adequate representation besides the bare legal conclusion that "no current existing parties adequately represent [Texas Sterling's] interest." Texas Sterling Mot. at 8.

### III.   This Court should deny Putative Intervenors' requests for permissive intervention.[7]

Most of the Putative Intervenors, in the alternative, ask this Court to allow permissive intervention. Permissive intervention under FRCP 24(b) "is wholly discretionary with the [district] court … even though … the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Under Rule 24(b), a would-be intervenor must demonstrate "a claim or defense that shares with the main action a common question of law or fact." FRCP 24(b)(1)(B). Even when this requirement is satisfied, permissive intervention is an abuse of discretion where intervention will "unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3). Permissive intervention should be denied for at least three reasons.

*First*, even if any Putative Intervenor had some common claim or defense with either party, allowing any Putative Intervenor to intervene would not materially affect any claim or defense. Any intervenors are "bound by all prior orders and adjudications of fact and law as though [they] had been a party from the commencement of the suit." C. Wright & A. Miller, *Federal Practice and Procedure* § 1920 n.8 (citation omitted); *see also Miller v. Alamo*, 975 F.2d 547, 551 (8th Cir. 1992) ("As an intervenor in this case, the government is bound by all prior judicial decisions."). Each Putative Intervenor asserts that they either seek "clarification" or "modification" of this Court's preliminary injunction order. *See, e.g.*, SBC Mot. at 15

---

[7] Diamond Ranch did not move for permissive intervention. *See* Diamond Ranch Mot. at 1.

(seeking permissive intervention "to seek clarification of the Court's [preliminary injunction] Order"); RKE Mot. at 15 (same); Sierra Club's Mot. at 10 (seeking permissive intervention to "litigate[] … the lawfulness of the federal government's use of FY20 and FY21 border barrier system funds" for environmental mitigation); Texas Sterling's Mot. at 11 (seeking to intervene for "clarification of the Injunction" related to certain Texas Sterling settlement funds). But this Court has provided such guidance on the record after extensive briefing. ECF 133, 138–39; Tr. of Hr'g on March 28, 2024, at p.29. The existing parties have since then filed a joint motion finalizing resolution of all issues except the narrow issue of vacatur as an appropriate additional remedy. ECF 150. This issue has, itself, already been fully briefed by the parties. See ECF 177. Putative Intervenors must take the case as they find it, and have not expressed any interest in the only remaining question of vacatur as a remedy. As such, this Court should deny permissive intervention. *See La Union del Pueblo Entero v. Abbott*, SA-21-cv-00844, 2021 WL 5410516, at *3 (W.D. Tex. Nov. 16, 2021) (denying permissive intervention where the proposed intervenor "fail[ed] to show any unique legal interests or factual contributions *that would aid in the resolution of this case*.") (emphasis added).

*Second*, permissive intervention is inappropriate because Putative Intervenors can demonstrate no "claim or defense that shares with the main action a common question of law or fact." FRCP 24(b)(1)(B). As addressed in Section I above, at no point does any Putative Intervenor articulate a specific "claim or defense" it seeks to assert through any pleading. *Infra*. From the arguments, it *appears* that those Putative

Intervenors who seek permissive intervention argue the following "claim or defense" they seek to litigate: (1) for SBC and RKE, "cost claims under the Contract and Task Orders";[8] (2) for Texas Sterling, "payment for costs already incurred";[9] and (3) for Sierra Club, seeking "compliance with [a] Settlement Agreement."[10] Plaintiffs' Complaint raises statutory and constitutional challenges, and this Court ultimately found a substantial likelihood of success on (at least) Plaintiffs' statutory argument. ECF 1 at 28–40; ECF 128 at 52. SBC, RKE, and Texas Sterling's disputes with various federal governmental branches surrounding the "costs" or "cost claims" incurred for construction work performed years ago does not contain any "common question of law or fact" with Plaintiffs' administrative and constitutional challenge. Likewise, Sierra Club's claim that the government breached a past settlement agreement with it—in effect, a breach of contract claim—does not contain any "common question of law or fact" with Plaintiffs' administrative and constitutional challenge. Allowing Putative Intervenors to intervene in this multi-year action simply because statutory and contract claims both relate to the general subject of "border security" and "construction" would expand the scope of permissive intervention in unprecedented ways.

*Third*, permissive intervention should be denied because intervention at this late stage of the litigation will significantly delay resolution of this action. The parties have already engaged in several rounds of briefing and, following this extensive

---

[8] *See* SBC Mot. at 15; RKE Mot. at 15.
[9] *See* Texas Sterling Mot. at 11.
[10] *See* Sierra Club Mot. at 8.

briefing and a decision by this Court, are on the cusp of a final judgment. Every issue relevant to this case has either already been decided by the Court or has been fully briefed by the existing parties. Permissive intervention will only serve to delay resolution of this matter. *See M2 Technology, Inc. v. M2 Software, Inc.*, 589 Fed. Appx. 671, 676 (5th Cir. 2014) (affirming denial of permissive intervention where "the [district] court reasonably found that [the intervenor's] involvement here would delay resolution of the matter").

## **CONCLUSION**

For the foregoing reasons, this Court should deny the motions to intervene.

Date: May 10, 2024

ANDREW BAILEY
Attorney General of Missouri

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE, #69875MO
Solicitor General
*Attorney-in-Charge*
Southern Dist. of Texas Bar No.
3833606

SAMUEL FREEDLUND, #73707MO*
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-1800
Fax (573) 751-0774
josh.divine@ago.mo.gov
samuel.freedlund@ago.mo.gov

*Counsel for Plaintiff*
*State of Missouri*

*Admitted pro hac vice

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

/s/ *Ryan D. Walters*
RYAN D. WALTERS
*Attorney-in-Charge*
Chief, Special Litigation Division
Texas Bar No. 24105085
Southern Dist. of Texas Bar No. 3369185

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
ryan.walters@oag.texas.gov

*Counsel for Plaintiff State of Texas*

25

/s/ *Austin R. Nimocks*

AUSTIN R. NIMOCKS
*Attorney-in-Charge*

Texas Bar No. 24002695
S.D. Tex. Bar No. 2972032
austin@pntlawfirm.com

CHRISTOPHER L. PEELE
Of Counsel
Texas Bar No. 24013308
S.D. Tex. Bar No. 31519
chris@pntlawfirm.com

PEELE | NIMOCKS | TOTH
6836 Bee Caves Rd. Bldg. 3, Ste. 201
Austin, TX 78746
Phone: (512) 522-4893

*Counsel for Plaintiffs Texas General Land
Office and Commissioner Dawn
Buckingham, M.D.*

26

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 6,381 words, exclusive of matters designated for omission, as counted by Microsoft Word.

/s/ *Joshua M. Divine*
Joshua M. Divine

## CERTIFICATE OF SERVICE

I certify that on May 10, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Joshua M. Divine*
Joshua M. Divine

27