# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and GEORGE P. BUSH, in his official Capacity as Commissioner of the Texas General Land Office, <br><br>  Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States of America; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the United States Department of Homeland Security, <br><br>  Defendants | § § § § § § § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00272 |
| THE STATE OF MISSOURI; and THE STATE OF TEXAS, <br><br>  Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR. in his official capacity as President of the United States of America; THE UNITED STATES OF AMERICA; ALEJANDRO N. MAYORKAS, in his official capacity as Secretary of the United States Department of Homeland Security UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY A. MILLER, in his official capacity as the Acting Commissioner of the United States | § § § § § § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00420 (formerly No. 6:21-cv-00052) |

| | |
|---|---|
| Border Protection; and UNITED STATES CUSTOMS AND BORDER PROTECTION, United States Department of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY A. MILLER, in his official capacity as the Acting Commissioner of the United States Border Protection; and UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>　　　　Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DIAMOND A RANCH, WESTERN DIVISION L.L.C. AND GUADALUPE RANCH CORPORATION'S CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF <u>THEIR MOTION FOR LEAVE TO INTERVENE</u>**

The Diamond A Ranch, Western Division L.L.C. and Guadalupe Ranch Corporation (together, the "Ranch") file this Consolidated Reply in support of their Motion for Leave to Intervene (ECF 154) ("Motion") pursuant to Rule 24 so that the Ranch may seek clarification or modification of the injunction entered by the Court on March 8, 2024. Mem. Op. & Order (ECF 128) (the "Order") at 56. It responds to Plaintiffs' Omnibus Response in Opposition (ECF 185) ("Plaintiffs' Response"), and Defendants' Opposition (ECF 185) ("Defendants' Response").

For the reasons stated herein and in the motions filed by additional putative intervenors (ECF Nos. 148, 149, 167 & 172), the Court should grant the Motion and authorize the Ranch to intervene for the limited purpose of seeking clarification or modification of the Order, which impairs the Ranch's ability to protect its practical ability to settle its claims against the Department of Homeland Security (the "Department") arising from litigation filed in November 2020, *Diamond A Ranch, Western Division, L.L.C. v. Wolf*, No. 20-CV-3478-CRC (D.D.C.) (the "D.C. Litigation").

2

**SUMMARY**

Plaintiffs and Defendants (together, the "Parties") make two essential arguments against intervention—first that the Motion is not timely, and second that intervention will cause them prejudice and a denial of the Ranch's intervention will not hurt the Ranch. Both are remarkably weak.

Timeliness. Measured from the date when it knew or should have known about the effect of this case on its interests, the Ranch's Motion to intervene was plainly timely. This Court entered the Order on March 8, 2024. The Department informed the Ranch on March 26, 2024, that the proposed agreement to settle the D.C. Litigation could not be implemented because of the Order. (Mot. 1); *see also* (ECF 161) at 1. Prior to entry of the Order—and actual notice by the Department—the Ranch did not know, and could not reasonably have known, that the instant action would impair its ability to resolve the D.C. Litigation, which had been filed well before initiation of this lawsuit. The Ranch then promptly and diligently filed its Motion on April 11, 2024, only two weeks following the Court's hearing to clarify the Order. The Parties make no serious claim that the Ranch did not act promptly or that it should have known that its interests would be put at risk by the current case. Indeed, Defendants implicitly concede the point.

The Parties instead rely on a different factor used by the courts in analyzing timeliness. They complain about the delay in final resolution of this case and measure it against what they claim is not cognizable harm to the Ranch. In fact, it is not clear that resolving the intervenors' claims will take more than a few weeks, while the harm that the Ranch will suffer if it cannot intervene is devastating. It will lose a settlement that would have funded significant remediation of the harm it has suffered and will instead be remitted to years of future litigation that the

Department makes clear will be hard-fought and quite possibly fruitless. Only in Washington or Austin could it seem reasonable to resolve that balance in favor of the government parties.

<u>Prejudice</u>. In fact, the Parties are so enamored of that argument that they roll it out again in claiming that denying intervention will not "as a practical matter" impair or impede the Ranch's ability to protect its interest. They say that, in theory, the Ranch can pursue other avenues in the hope of obtaining remediation. If those purported other avenues are even available, they are not a practical substitute for the relief that the Ranch had negotiated and still could obtain if its intervention succeeds.

If it were not for their disappointment at having their expectations upset at the last minute, perhaps the parties would examine more objectively the weakness of their arguments – and the unfairness of upsetting the Ranch's settlement and then denying it a chance to argue against that outcome. They have not, however, and that task is now the Court's.

## ARGUMENT

### A. The Motion Should Not be Rejected on Formalistic Grounds

As a preliminary matter, we note that Plaintiffs (but not Defendants) have offered two formalistic objections to the Ranch's Motion. These are addressed in turn.

First, Plaintiffs complain that the Ranch's Motion was not accompanied by a pleading that "sets out the claim or defense for which intervention is sought" as required by Rule 24(c). In fact, the Motion sets out precisely the relief sought by the Ranch, as the Ranch reiterated in its Reply to Plaintiffs' Response in Opposition to Putative Intervenors' Motion for a Briefing and Argument Schedule (the "Briefing Schedule Reply"). *See* Br. Sch. Rep. 3-4 ("The merits of the Ranch's case are equally straightforward. The Ranch's motion makes the case in just five pages."). In those pages, (Mot. 8-12), the Ranch outlined the arguments that it will make on the merits as an

intervening party. The Parties can be in no doubt about what claims the Ranch will make; it is pure formalism to claim that the Motion should be rejected because it did not set out those arguments in a separate document. No additional pleading is necessary to allow the Court and the Parties "to make an assessment of whether the proposed intervenor's complaint states a cause of action." *See Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986).

Second, Plaintiffs contend that the Motion should be denied because the Ranch "fails to state the appropriate standard for intervention" or to "explain how it meets any (let alone each) of the four elements of intervention as of right." (Pl. Resp. 6 n.1.) In fact, the Ranch agrees with Plaintiffs (and everyone else in this proceeding) that intervention under Rule 24(a)(2) requires four elements:

> (1) the application . . . must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.*, 834 F.3d 562, 565 (5th Cir. 2016).

The Ranch did in fact address these elements – admittedly in abbreviated fashion – in its Motion and its Briefing Schedule Reply (Br. Sch. Rep. 3), wherein the Ranch argued: (1) the Motion was timely, as it was filed less than three weeks after first learning that this proceedings could interfere with the Ranch's rights; (2) the Ranch had an interest in the subject of this action, as the Order ostensibly affected its earlier-filed D.C. Litigation; (3) the injunction in the Order prevents the Ranch from obtaining the relief that it had negotiated in its earlier-filed D.C. Litigation; and (4) neither Plaintiffs nor Defendants were adequately representing the Ranch's interest, as both sides took the view that any final judgment based on the Order would supersede any relief available to the Ranch in the earlier-filed D.C. Litigation. Plaintiffs suffered no harm from the Ranch's abbreviated treatment of the four elements, which have been canvassed by other

5

putative intervenors at such length and in a fashion that overlaps so extensively with the Ranch's that, as this Court's recent orders have recognized, they can be addressed by consolidated briefing. *See* (ECF 183, 191, 192, 198). In this context, Plaintiffs' objection is purely formalistic.

### B. The Ranch Has a Right to Intervene

#### 1. The Motion Is Timely.

The timeliness of the Ranch's Motion depends on four factors: (a) how long the Ranch "knew or reasonably should have known" of its stake in the case; (b) "the prejudice, if any" to Plaintiffs and Defendants for the failure of the Ranch to intervene when it "knew or reasonably should have known" of its stake in the case; (c) the prejudice to the Ranch if the court does not permit it to intervene; and (d) any unusual circumstances. *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). Each factor is addressed below.

##### a. The Ranch Filed Its Motion Less Than Three Weeks After Receiving Notice that These Proceedings Could Interfere with Its Rights

There can be no real argument that the Ranch unreasonably delayed in filing its Motion. Indeed, the Court's Order was issued on March 8, 2024; the Department did not notify the Ranch of its impact of these proceedings on the D.C. Litigation until March 26, 2024; and the Ranch filed its Motion just over two weeks later on April 11, 2024. "The timeliness clock runs either from the time the applicant knew or reasonably should have known of his interest [in the litigation], or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).

Plaintiffs make much of purported publicity around this action and its appeals, all occurring hundreds if not thousands of miles (and in different circuits) from either the Arizona Ranch or its District of Columbia litigation. But nothing about that publicity suggests that the Ranch should have known that its interests would be put at risk by later-filed litigation in this Court. Indeed,

Defendants implicitly concede the "should have known" point when they claim that the Sierra Club (and only the Sierra Club) should have known about the potential impact of this case on its interests. Def. Resp. 9-11. It would be a gross injustice to allow Defendants to benefit from a claim that the Ranch should have known of the potential impact of this case on its settlement talks with Defendants when that impact was never mentioned during those talks.

        **b.**      **There Is Little, if Any, Prejudice to Plaintiffs and Defendants from the Short Interval Before the Ranch Filed Its Motion.**

The second timeliness factor is "the prejudice, if any" to Plaintiffs and Defendants for the failure of the Ranch to intervene when it "knew or reasonably should have known" of its stake in the case. *See Glickman*, 256 F.3d at 376. As just discussed, the Ranch filed its Motion just over two weeks after being made aware of its stake in these proceedings following the Order, and it provided notice of intent to intervene days before that. There is little, if any, prejudice to Plaintiffs and Defendants from that short delay.

There is no need for extensive litigation that will delay the final judgment. In fact, the Ranch sought to minimize any such delay by asking that the merits of its case be addressed at the same time as intervention. (Mot. 4-8.) The merits call for a determination whether the Order should prohibit use of FY20 and 21 appropriations to remedy direct harm caused by border wall construction of the kind required by those appropriations. That question has been briefed by the Ranch now for over five weeks; it would be close to resolution today if Plaintiffs and Defendants had accepted the Ranch's invitation to join the merits with the motion to intervene.

        **c.**      **The Ranch Will Suffer Serious Prejudice if Not Permitted to Intervene.**

In contrast to the unidentified harm to the Parties from a modest delay in obtaining an injunction, the prejudice suffered by the Ranch from denial of the motion will be permanent and devastating. In the interest of avoiding redundancy, we will discuss this prejudice when we

7

describe how these proceedings "may as a practical matter impair or impede [the Ranch's] ability to protect its interest," Fed. R. Civ. P. 24(a)(2).

### d. Any Unusual Circumstances Favor the Ranch's Intervention.

The Parties use the "unusual circumstances" factor to restate their earlier arguments about timeliness. Plaintiffs say that it is unusual that so many putative intervenors are attempting "at the 11th hour to assert unrelated breach of contract disputes that can be asserted (and, in some cases, are already being asserted) in separate actions." (Pl. Resp. 11.) Defendants argue that it's unusual to "encourage late-arriving parties to join litigation over federal agency actions near the conclusion of litigation." (Def. Resp. 11.) In fact, what's unusual here is the fact that no one anticipated that the Plaintiffs' claims and the Court's Order would so directly and disastrously affect parties who had no reason to foresee that outcome. Now that the impact is clear, so too is the need for intervention.

### 2. The Ranch Has an Interest Relating to the Appropriations at Issue in this Action, and the Disposition of this Action Will Impair the Ranch's Ability to Protect That Interest.

Rule 24 asks first whether a putative intervenor has an interest in the litigation and then whether the litigation will as a practical matter impair its ability to protect that interest. The Plaintiffs claim that the Ranch has no interest affected by the current case, but that argument is largely indistinguishable from the Parties' claim that the Ranch's interest will not be impaired if the Ranch is not allowed to intervene. We discuss both points in this section.

Plaintiffs argue that the Ranch's interest is insufficient because there may be other avenues by which the Ranch can litigate against the government. (Pl. Resp. 13-15.) In the same vein, the Parties contend that the Ranch can protect its interests or recover on its claims through the D.C. Litigation. (Pl.Resp. 17; Def.Resp. 11-13.) But this argument strays from the standard, which

requires only a showing that, as a "practical matter," the outcome of the litigation will directly impair or impede the Ranch's ability to protect its interests.

That impairment could hardly be more obvious. Before the Court issued its Order, the Ranch had reached an agreement in principle that would have resulted in immediate and substantial remediation of harm caused to it by border wall construction on and near its property. After the Order, that settlement is off the table, and at best the Ranch is being offered the prospect of years of litigation under the Federal Torts Claims Act or in the Court of Federal Claims seeking compensation for a physical taking of its property in violation of the Fifth Amendment. (Def. Resp. 13.) The Rule focuses attention on whether that switch impairs the Ranch's interest as a practical matter. The answer could hardly be more plain. A takings claim will not pay for remediation; and Federal Torts Claims Act claims allows a variety of defenses that in a practical sense may very likely lead to no remedy whatsoever for the Ranch. Indeed, the Defendants make clear just how arduous the routes they offer will be; they refuse to concede that any of these avenues will produce anything like the settlement overturned by the Order, or indeed anything at all: they "do not make any representations about the potential availability of current or future funds to pay for a future judgment in other cases." (Def. Resp. 13.)[1]

The Parties offer no serious case support for their remarkable proposition. They rely on *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994). In that case, the court denied intervention because the only purpose of the proposed intervention was to gain access to

---

[1] The idea suggested by Plaintiffs that there are millions of dollars of other appropriated general-purpose funds that could be used to settle the remediation claims of the Ranch ignores the practicalities of how appropriations are assembled with clear claims on every dollar and a constituency against "diversion" of those funds to things like remediation. Appropriations have a very long lead time and a detailed set of claims to any funding appropriated; if these funds subject to the Order are not available, for all practical purposes there are no funds, and whether there will be funds years in the future will depend on a concentrated effort more likely to fail than to succeed.

documents and testimony that were the subject of a protective order. *Id.* at 525. The court concluded that one party seeking intervention had no claim or defense needing protection, and the other party seeking intervention had a lawsuit pending against the defendant in federal court in another state and could protect his interest by filing a discovery request there. *Id.* in 526. The other cases cited by Defendants are equally distinguishable. (Def. Resp. 14.) For example, in *Olympic Diamond v. Kotwitz*, the court denied a motion to intervene because the party could not show "that the disposition of this case might impair its ability to protect its interest in the Property." 2005 WL 2416614, at *2 (S.D. Tex. Sept. 30, 2005). In *Alam v. Mae*, the court concluded that nothing impaired the interests of the party seeking to intervene where it could file its own lawsuit and "nothing decided in this case will operate to estop it from fully pressing its claims." 2007 WL 4411544, at *5 (S.D. Tex. Dec. 17, 2007). And in *Stewart v. City of Houston*—although cited by Defendants as a case wherein the court denied intervention—the court *granted* intervention after reasoning that if the "motion is denied, a ruling for Defendants could be relied upon to his detriment in an independent suit," thereby impairing or impeding the party's interest "as a practical matter." 2009 WL 783319, at *5 (S.D. Tex. Mar. 24, 2009). Nor do Defendants succeed in their attempts to distinguish the cases that allowed intervention despite availability of alternative fora. (Def. Resp. 14-16.) *See, e.g.*, *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996) (highlighting the "liberalization of the prerequisites to intervention" as a "more generous measure of impairment [that] favors would-be intervenors" but noting that the intervenors succeed even under the stricter standard that previously allowed intervention only where a party would be bound by the disposition of the action).

One further point: Plaintiffs claim that, "[a]bsent intervention, nothing in this decision constitutes *res judicata* on Putative Intervenors or collaterally estops Putative Intervenors." (Pl.

10

Resp. 16.). Defendants, as well, claim that "[d]isposition of this case would not have 'a potential res judicata or collateral estoppel effect' on the would-be intervenors." (Def. Resp. 14 (citation omitted).) This point is not sufficient to defeat a motion to intervene; "[t]he impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). But the Ranch is compelled to note that it would likely have no need to intervene if the Parties and the Court agreed that nothing in the current case and Order should be read as barring an outcome in the DC Litigation that includes remediation funded by FY20 and 21 appropriations. The Ranch suspects that such is not the Plaintiffs' or the Defendants' intent, but it would welcome a determination that the Order will have no effect on the DC Litigation.

        **3.    The Ranch's Interests Are Not Adequately Represented by Plaintiffs and Defendants.**

Plaintiffs finally argue that the Ranch's interest in the underlying dispute is adequately represented by Plaintiffs and Defendants. (Pl. Resp. 18-20.) Plaintiffs reach this conclusion by formulating the question as one of whether to grant or deny the injunction. (*Id.*). The problem with this formulation is that it ignores the fact that the Ranch's interest is in the scope of the injunction, not whether an injunction is granted or denied. While it is certainly true that Defendants opposed an injunction, they are adverse to the Ranch in the DC Litigation and, most tellingly, refuse to argue that they represent the Ranch's interest.

        **C.    The Ranch Should Be Permitted to Intervene under Rule 24(b)**

Contrary to Plaintiffs' argument to the contrary, (Pl. Resp. 21 n.7), the Ranch did move for permissive intervention. *See* Mot. for Br. Sch. 3 ("In addition, whether this Court's Order can and should impair the Ranch's rights in an earlier-filed federal case is a "common question of law or fact" between the two matters and thus supports permissive intervention under Rule 24(b)(1)(B).").

On the merits, Plaintiffs largely replay arguments already familiar from their objection to intervention as of right. Those arguments are no more persuasive in this context than in the earlier one.

## CONCLUSION AND RELIEF SOUGHT

The Court should grant the Motion to permit the Ranch's request for limited intervention for this Court to clarify that its Order of March 8, 2024, does not prevent the Department from obligating funds appropriated under Subsection 209(a)(1) and Section 210 for the purpose of curing or mitigating harms caused directly and immediately to the Ranch by the Department's construction of new border wall in 2020 and 2021.

May 17, 2024                                        Respectfully submitted,

                                                **STEPTOE LLP**

*s/ Larry R. Veselka*
Larry R. Veselka (attorney in charge)
TX Bar No. 20555400
SDTX No. 6797
Hale Neilson
TX Bar No. 24116820
SDTX No. 3635009
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: 713.221.2300
lveselka@steptoe.com
hneilson@steptoe.com

-and-

Stewart A. Baker (Admitted *Pro Hac Vice*)
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202.429.3000
sbaker@steptoe.com

***Attorneys for Diamond A Ranch, Western Division L.L.C. and Guadalupe Ranch Corporation***

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in this reply, exclusive of the matters designated for omission, is 3,441, as counted by Microsoft Word.

<i>s/ Larry R. Veselka</i><br>
Larry R. Veselka

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2024, I electronically filed a copy of the foregoing reply. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

<i>s/ Larry R. Veselka</i><br>
Larry R. Veselka