UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, et al., §§§§§<br><br>**Plaintiffs,**<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States of America, et al.,<br><br>**Defendants.** | § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00272 |
| THE STATE OF MISSOURI; and THE STATE OF TEXAS,<br><br>**Plaintiffs,**<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States of America, et al.,<br><br>**Defendants.** | § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00420<br>(formerly No. 6:21-cv-00052) |

**REPLY IN SUPPORT OF MOTION TO INTERVENE BY
PROPOSED DEFENDANTS-INTERVENORS
SIERRA CLUB AND SOUTHERN BORDER COMMUNITIES COALITION**

In July 2023, following two years of active litigation in which Proposed Intervenors, Sierra Club and Southern Border Communities Coalition, secured two preliminary and two permanent injunctions, and then "nearly two years . . . [of] an intensive settlement mediation process," Defs.' Opp'n at 8, ECF No. 184, the United States and the Proposed Intervenors signed a Settlement Agreement. In that Agreement, the government committed, among other things, to allocate $45

million to remediate specific harms caused by its unlawful border wall construction on public lands in California, Arizona, and New Mexico. *See* Wang Decl. Ex. B, ECF No. 167-1 [hereinafter Settlement Agreement]. The Settlement Agreement identifies the U.S. Department of Homeland Security's FY 2020 and 2021 border barrier system appropriations—which are the subject of this Court's preliminary injunction—as the funding source for those remediation provisions. Defendants acknowledge—and Plaintiffs cannot dispute—that this Court's preliminary injunction has caused Defendants to stop work on projects undertaken under the Settlement Agreement. *See, e.g.*, Defs.' Opp'n at 8.

Defendants and Plaintiffs nonetheless have filed a joint motion to convert that preliminary injunction into a final judgment, which would permanently deprive Proposed Intervenors of the benefits of their Settlement Agreement. *See* Joint Mot. for Entry of Final J., ECF No. 150. Thus, no party to this litigation represents Proposed Intervenors' interests, which would be gravely harmed should this Court grant the parties' pending motion for a final judgment. These are precisely the circumstances in which intervention is required. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (holding that the "purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions").

Proposed Intervenors easily meet the settled standard for intervention, so that they may vindicate their interests in enforcing the Settlement Agreement before this Court issues a final judgment. Proposed Intervenors do not, at this stage, seek to relitigate the preliminary injunction. But they do seek to limit any final judgment in this case so that the government can comply with the Settlement Agreement—which, moreover, affects public lands *outside* of Texas. Because Proposed Intervenors timely assert a legally protectable interest that the parties do not adequately represent, the Court should grant the motion to intervene as of right or by permission.

**ARGUMENT**

Proposed Intervenors are entitled to intervention as of right under Rule 24(a) because Defendants have invoked this Court's preliminary injunction as the reason for its breach of the long-finalized Settlement Agreement. Proposed Intervenors possess a settled and court-approved contractual interest in narrowing the scope of any permanent injunctive relief in this case so that no obstacle stands in the way of the government's compliance with the Settlement Agreement.

Proposed Intervenors' motion is timely, and the pendency of the parties' Joint Motion for Final Judgment does not defeat timeliness. To the contrary, the government's joinder in that motion made it clear that no party is representing Proposed Intervenors' interests; Proposed Intervenors now seek to represent their interests and remove the government's excuse for its ongoing breach of the Settlement Agreement. Proposed Intervenors are mindful of the potential expiration of FY 2020 and 2021 barrier systems appropriations and do not seek to relitigate issues that have already been decided, including this Court's preliminary injunction order. *See* Pls.' Opp'n at 21, ECF No. 185. Instead, Proposed Intervenors seek to be heard on the scope of the permanent injunction with the goal of ending the government's breach of the Settlement Agreement. Thus, the parties are not prejudiced by the timing of intervention. Finally, although Proposed Intervenors may initiate an enforcement action in another federal court, pursuing that avenue alone, without intervention in this case, could lead to conflicting orders by two federal district courts; in this extraordinary circumstance, intervention is warranted because this Court could grant the narrow relief that Proposed Intervenors seek and eliminate any risk of dueling federal court orders. In any event, the scope of any permanent injunction issued by this Court will impact future proceedings in *Sierra Club v. Biden*, No. 20-CV-01494 (N.D. Cal. July 17, 2023).

In the alternative, the Court should grant permissive intervention because the parties will

3

not suffer prejudice and the Proposed Intervenors have unique interests in this matter.

I.  **PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2).**

As demonstrated in their Motion to Intervene, ECF No. 167, Proposed Intervenors satisfy all four elements for intervention as of right under Fed. R. Civ. P. 24(a)(2). Notably, Defendants only contest two of the elements—timeliness and whether Proposed Intervenors' interests would be impaired absent intervention—but they do not and cannot contest that Proposed Intervenors have a legally protectable interest in this litigation that is not adequately represented by the parties. *See generally* Defs.' Opp'n. Those concessions alone undermine the Plaintiffs' arguments to the contrary.

   A.  **Proposed Intervenors' Motion Is Timely.**

The parties principally argue that the motion is untimely. Those arguments are based on a misunderstanding of when Proposed Intervenors' interests were first affected by this litigation. Although the government did not notify Proposed Intervenors of any impact of the instant case on the Settlement Agreement until March 14, 2024, the parties argue that Proposed Intervenors should have intervened before this Court entered its preliminary injunction order—as early, Plaintiffs seem to suggest, as when they initiated their lawsuits in 2021. Pls.' Opp'n at 6–7. But, as Plaintiffs acknowledge, the relevant time is "the time [the intervenor] became aware that his interest would no longer be protected by the existing parties." *Id*. at 6 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996)). Such a rule reasonably guards against too many unnecessary or premature attempts to intervene.

Under the *Edwards* standard, Proposed Intervenors' interests did not ripen until, at earliest, March 14, 2024, when the government informed them that it had stopped compliance with the Settlement Agreement. Wang Decl. ¶ 6, ECF No. 167-1. *See Edwards*, 78 F.3d at 1001–02

(rejecting party's argument that putative intervenors should have anticipated extensive class-based remedies when class was not yet certified and they "anticipated only narrowly tailored relief"). Until then, there was no indication that Proposed Intervenors' specific interests would be affected, much less that the government would fail to represent their interests as a party to the Settlement Agreement.[1] Proposed Intervenors thus moved within thirty-seven days, far more quickly than in the cases the parties cite, where the Fifth Circuit denied intervention motions on timeliness grounds. *See St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969 (5th Cir. 2019) (six years); *Lucas v. McKeithen*, 102 F.3d 171 (5th Cir. 1996) (over a year); *compare Edwards*, 78 F.3d at 1000 (thirty-seven and forty-seven days after notice of consent decree). Even measured from the date of the Court's preliminary injunction (March 5, 2024)—when Proposed Intervenors did not yet know that the government would rely on the order to stop work on its contractual obligations under the Settlement Agreement or move for a final judgment—Proposed Intervenors moved within forty-six days. Under *Edwards*, this is timely.

Ironically, the parties argue that the fact that they have jointly moved for entry of a final judgment should defeat the motion to intervene. But the pendency of that motion is precisely why Proposed Intervenors have a timely interest now, because all the parties are seeking to make the preliminary injunction, and its harms to Proposed Intervenors' interests, permanent. That joint motion was unexpected because Proposed Intervenors had a reasonable expectation that the government would protect their common interests in complying with the Settlement Agreement and because the joint motion represented an about-face by Plaintiffs; previously, they objected to this Court's proposal to consider briefing on Plaintiffs' motion for a preliminary injunction as

---

[1] Indeed, for the first several years of this litigation, the parties focused on threshold issues of standing and jurisdiction, and other procedural issues. *See Texas Gen. Land Off. v. Biden*, 619 F. Supp. 3d 673, 718 (S.D. Tex. 2022); *Gen. Land Off. v. Biden*, 71 F.4th 264, 269 (5th Cir. 2023).

5

cross-motions for summary judgment. *See* Pls.' Objection, ECF No. 118. Under the circumstances, the parties cannot fairly allege an improper "eleventh hour" intervention when it was precisely their joint decision to leapfrog to final judgment that underscored the need for intervention. Thus, the parties cannot claim any prejudice or "unusual circumstances" against intervention, especially when Proposed Intervenors are willing to accept all decisions that have been made and focus solely on the scope of the permanent injunction and, if necessary, any future appeal.[2]

In contrast, the prejudice to Proposed Intervenors absent intervention is immense. *See* ECF No. 167 at 7–8. As demonstrated below, the possibility of enforcing the settlement through an alternative forum is not grounds for denying intervention here. Defendants rely on cases that are not only distinguishable but, to the contrary, support Proposed Intervenors' position. For instance, in *St. Bernard*, the putative intervenor conceded he had an adequate alternative forum and considered it inconvenient to pursue relief in that forum. 914 F.3d at 975. *See also infra* Section I.D. Proposed Intervenors are not choosing to intervene for mere convenience but because their alternate path to remedies in the Northern District of California may lead to dueling federal court orders, unless this Court narrows the scope of the permanent injunction.

Finally, Defendants' claim that there are "unusual circumstances" that disfavor intervention when "unique federal interests" are involved cannot be squared with Fifth Circuit cases that permit intervention involving similar federal interests, like immigration and environmental policy. *See, e.g.*, *Texas v. United States*, 805 F.3d 653, 655 (5th Cir. 2015); *Sierra*

---

[2] Moreover, contrary to Defendants' assertion, Defs.' Opp. at 11, granting intervention to Proposed Intervenors will not open the floodgates to late-arriving parties whenever a case involves federal agency actions. Proposed Intervenors have a finalized and court-approved settlement against the federal government that is directly enjoined by the Court's preliminary injunction order. The parties have not identified, and Proposed Intervenors have not found, cases discussing this unique procedural posture.

*Club v. Espy*, 18 F.3d 1202, 1203 (5th Cir. 1994).

      **B.**      **Proposed Intervenors Have a Substantial Legal Interest in the Case.**

As Defendants concede, Proposed Intervenors have "an interest that is concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658. Unlike the putative intervenors in the cases Plaintiffs cite, Proposed Intervenors are not asserting a general or indirect economic interest. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452 (5th Cir. 1984) (denying intervention where putative intervenors had no contract benefits and were concerned with potential increase of utility costs); *Texas v. U.S. Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985) (same where they had no role in the statutory scheme and no direct economic interest beyond a general concern with potential increase in costs). Rather, in the Settlement Agreement, Proposed Intervenors have the "basis for a legally protectable interest or for possession of the substantive legal right—**enforcement of the contract**—which they seek to assert by intervention . . . ." *NOPSI*, 732 F.2d at 470 (emphasis added); *see also, e.g.*, *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970) (granting intervention to judgment creditors of defendants); *Brendel v. Meyrowitz*, No. 15-CV-1928-D, 2017 WL 1178244, at *3–4 (N.D. Tex. Mar. 30, 2017) (granting intervention where putative intervenor had interest in the funds at issue via a state court default judgment against several of the parties).

      **C.**      **Intervention Does Not Require the Attachment of a Pleading.**

Plaintiffs assert that Proposed Intervenors were required under Fed. R. Civ. P. 24(c) to attach a pleading to their motion to set out the claim or defense for which intervention is sought. Pls.' Opp'n at 3–4. However, the Fifth Circuit, like most circuits, has not strictly enforced Rule 24(c)'s requirements, including the pleading provision, but rather favor "a permissive interpretation." *Chaucer Corp. Capital, No. 2 Ltd. v. Azad*, Case No. H-10-180, 2011 WL

13249479 at *1 (S.D. Tex. Sept. 8, 2011) (quoting *Liberty Surplus Ins. Cos. v. Slick Willies of Am., Inc.*, No. H-07-0706, 2007 WL 2330294, at *1–2 (S.D. Tex. Aug. 15, 2007)). "Thus, the rule's requirements [of an attached pleading] typically are excused where the motion to intervene sufficiently 'does put the parties on notice of [the intervenor's] grounds for intervention . . . .'" *Id*. at 1 (citation omitted); *see also Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1075 (5th Cir. 1980) (holding it was within the discretion of the district court to consider a motion to intervene even though the party did not comply with Rule 24(c)); *The Aransas Project v. Shaw*, No. CIVA C-10-75, 2010 WL 2522415, at *7 (S.D. Tex. June 17, 2010) (collecting cases), *aff'd sub nom. Aransas Project v. Shaw*, 404 Fed. App'x 937 (5th Cir. 2010).

Proposed Intervenors' interest is clearly stated in their motion and in the declaration and documents attached to it. *See* ECF Nos. 167, 167-1. They are seeking to narrow the scope of the final judgment; oppose the vacatur remedy that Plaintiffs have proposed to the extent it interferes with the government's compliance with the Settlement Agreement; and, if necessary, pursue an appeal if the government chooses not to defend its commitments of FY 2020 and 2021 barrier system funds under the Settlement Agreement. The Proposed Intervenors, therefore, easily meet the Fifth Circuit's "practical [approach] to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club v. Espy*, 18 F.3d at 1207 (5th Cir. 1994) (citation omitted).

### D. Proposed Intervenors' Ability to Protect Their Interests May Be Impaired Absent Intervention.

The parties argue that Proposed Intervenors' interests will not suffer by exclusion from this litigation because they may initiate enforcement proceedings in another federal court. That does not undermine the appropriateness of intervention here. First, this Court's orders could eliminate the need for such action. Indeed, the government has recently informed Proposed Intervenors that

8

it intends to oppose enforcement of the Settlement Agreement in the Northern District of California by relying on this Court's preliminary injunction. *See* Decl. of David Donatti, ¶ 3 (filed herewith). Thus, granting intervention to Proposed Intervenors to seek a carveout here is not only economical but, in the Defendants' view, the only viable option for relief. Second, even if Proposed Intervenors do not secure complete relief, the outcome of this litigation will necessarily affect the scope of enforcement proceedings. For example, each project this Court deems permitted under a final judgment is a project another federal court does not need to review. Third, intervention can prevent the necessity of additional litigation and the potential for conflicting federal judicial orders.

Therefore, the parties' cited cases are distinguishable because either the putative intervenors conceded to having an adequate alternative forum, or their alleged interests were not directly implicated in the lawsuit. In *St. Bernard*, discussed above, the putative intervenor conceded they had a fully adequate remedy elsewhere. 914 F.3d at 975. In *Deus v. Allstate Ins. Co.*, the putative intervenors did not have a justiciable claim as they were only trying to access documents and testimony subject to a protective order. 15 F.3d 506, 525 (5th Cir. 1994). In *United States v. LULAC*, the intervenors did not even "contend that they have a federal statutory right to intervene." 793 F.2d 636, 644 (5th Cir. 1986). Hence, the district court failed to consider whether they met the prerequisites under Rule 24(a). *Id*. The other cases cited by the parties are similarly distinguishable. *See United States v. City of Jackson*, 519 F.2d 1147, 1150, 1152–53 (5th Cir. 1975) (putative intervenors were not impaired from denial of intervention into a case that settled with a consent decree, because they suffered no res judicata effect from it); *Stewart v. City of Houston*, No. H-07-4021, 2009 WL 783319, at *1 (S.D. Tex. Mar. 24, 2009) (noting it was "unclear that [intervenor] has met the 'impairment' requirement" where he could bring a separate suit); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 21-CV-071, 2022 WL

9

974335, at *6 (N.D. Tex. Mar. 31, 2022) (same); *Alam v. Mae*, No. H-02-4478, 2007 WL 4411544, at *4 (S.D. Tex. Dec. 17, 2007) (putative intervenor "has no 'interest relating to the property or transaction' that is the basis of this lawsuit").[3] Notably, in several of the cases Defendants cite, the court nevertheless *did* grant permissive intervention despite the existence of an alternative forum. *See LULAC*, 793 F.2d at 644; *Stewart*, 2009 WL 783319, at *2; *Nat'l Horsemen's*, 2022 WL 974335, at *7.

Proposed Intervenors' interests are squarely implicated by the Court's injunction and the parties' actions in this case. Enforcement of the Settlement Agreement is clearly not an interest that can be vindicated through an amicus brief, as Defendants suggest. *See* Defs.' Opp'n at 16.

### E. Defendants May Not Adequately Represent Proposed Intervenors' Interests.

Finally, no party in this case will adequately represent Proposed Intervenors' interests. *See* Fed. R. Civ. P. 24(a)(2). Defendants do not deny this: they have not attempted to narrow the scope of the injunctive relief in this case so they may comply with the Settlement Agreement and have not committed to seeking such relief. Since mid-March 2024, the federal government has taken the position that this Court's preliminary injunction prohibits *all* environmental mitigation projects required under the Settlement Agreement. And rather than litigate in the ordinary course, where Plaintiffs would have to allege and *prove* success on the merits to obtain a permanent injunction, the government has joined in a motion for final judgment and a permanent injunction. Under the circumstances, intervention is warranted. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528,

---

[3] In several cases, the courts denied intervention because there were no interests left to vindicate. For instance, in *Grainger v. Ottawa Cnty.*, an individual sought to intervene as a class representative after the underlying motion for class certification had been denied. 90 F.4th 507, 516 (6th Cir. 2024). Likewise, in *Olympic Diamond v. Kotwitz*, the court found no impairment of interest, not only because the putative intervenor could seek relief through separate state court action, but also because the interest in the case itself was dissolved by dismissal of the case. No. H-04-3936, 2005 WL 2416614, at *3 (S.D. Tex. Sept. 30, 2005).

538 n. 10 (1972) (all that is required is the "minimal" burden of showing that the representation "'may be' inadequate"); *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (holding that proposed intervenor need not show that the representation by existing parties *will* be inadequate); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (concluding that interests of government and proposed intervenor "will not necessarily coincide, even though, at this point, they share common ground").

Plaintiffs seem to argue that Proposed Intervenors cannot overcome the presumption of adequate representation because they share the same "ultimate objective" as Defendants in the lawsuit. Pls.' Opp'n at 20. Whatever the parameters of that presumption, Proposed Intervenors have easily rebutted it here by showing "adversity of interest." *See Entergy Gulf States La.*, 817 F.3d at 204–06.

## II. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

The Court should permit intervention because it "will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As set forth above, the fact that the parties have jointly moved to forgo further litigation and convert the preliminary injunction into a final judgment does not trump Proposed Intervenors' strong interest in vindicating their settled contract rights through a narrowing of the permanent injunction to permit the United States to comply with the Settlement Agreement. Plaintiffs are adverse to Proposed Intervenors' interests, and Defendants have demonstrated through their actions since the preliminary injunction that they will not represent Proposed Intervenors' interests. And as noted above, *supra* Section I.D, courts have granted permissive intervention despite the existence of an alternative legal forum.

Proposed Intervenors are, therefore, unlike the putative intervenors denied permissive intervention because they had nothing to add to the litigation and would only cause delay. *See*

11

*Saldano v. Roach*, 363 F.3d 545, 555–56 (5th Cir. 2004) (city prosecutor had no interest where state attorney general was already representing interests of justice); *M2 Technology, Inc. v. M2 Software, Inc.*, 589 Fed. App'x 671, 675–76 (5th Cir. 2014) (sole shareholder of a company had no interest where the company itself was subject to the litigation); *La Union del Pueblo Entero v. Abbott*, No. SA-21-cv-00844, 2021 WL 5410516, at *3 (W.D. Tex. Nov. 16, 2021) (no permissive intervention for out-of-state legal advocacy organization with no ties to Texas and could not show how it would aid in factual development of the case); *Nipponkoa Ins. Co. v. Port Terminal R.R. Ass'n*, No. H-10-0284, 2011 WL 1103584, at *2, *6 (S.D. Tex. Mar. 23, 2011) (same where putative intervenor would have interjected different discovery and experts over equipment not subject to the lawsuit). The Court should permit intervention because the Sierra Club Intervenors' "arguments will significantly contribute to the development of the issues." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019) (citation and internal quotation marks omitted).

Finally, as to Defendants' concern that the Department of Justice should control government litigation over DHS's authority, Defs.' Opp'n at 18, Rule 24 offers them no textual support, and courts regularly allow intervention by private parties even where the federal government is involved. *See supra* Section I.A. Rule 24 intervention is meant to allow impacted parties like Proposed Intervenors to participate in cases precisely where, as here, their interests are not adequately represented.

## CONCLUSION

The Motion to Intervene should be granted.

Respectfully submitted,

/s/ David Donatti
Counsel for Proposed Defendants-
Intervenors Sierra Club and Southern
Border Communities Coalition

12

David A. Donatti (Bar No. 24097612)
Adriana C. Piñon (Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
ddonatti@aclutx.org
apinon@aclutx.org

Cecillia D. Wang*
My Khanh Ngo*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 343-0775
cwang@aclu.org
mngo@aclu.org

Gloria D. Smith*°
SIERRA CLUB ENVIRONMENTAL
LAW PROGRAM
2102 Webster Street, Suite 1300
Oakland, CA 94612
Telephone: (415) 977-5532
gloria.smith@sierraclub.org

Ricardo A. Garza°°
Texas State Bar No. 24109912
SDTX Bar No. 3336127
Border Policy Counsel
SOUTHERN BORDER
COMMUNITIES COALITION
ALLIANCE SAN DIEGO
P.O. Box 2436
McAllen, TX 78502
(956) 605-5917
ricky@alliancesd.org

*Admitted *pro hac vice*
°Attorney for Proposed Defendant-Intervenor Sierra Club only
°° Attorney for Proposed Defendant-Intervenor Southern Border

13

|  | Communities Coalition only |
|---|---|

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in this reply brief, excluding the matters designated for omission, is 3403, as Microsoft Word counts.

|  | /s/ David Donatti |
|---|---|
|  | David Donatti |

## CERTIFICATE OF SERVICE

I certify that on May 17, 2024, I electronically filed a copy of the foregoing brief. Notice of this filing will be emailed to all parties using the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

|  | /s/ David Donatti |
|---|---|
|  | David Donatti |