UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI;<br>THE STATE OF TEXAS,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>Defendants. | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security,<br><br>Defendants. | No. 7:21-cv-00272 |

**PLAINTIFFS' REPLY IN SUPPORT OF OPPOSED MOTION TO ENFORCE
PERMANENT INJUNCTION AND FOR A STATUS CONFERENCE**

Plaintiffs have asked this Court to enforce its permanent injunction by holding a status conference with the parties to ascertain whether recently reported activities of Defendants are an attempt to evade the Court's May 29, 2024, Final Judgment and Permanent Injunction. Dkt. No. 208. And former-and-incoming President Trump—who will have the burden of dealing with the aftermath of these actions—has voiced his support for examining whether Defendants are violating the injunction. Dkt. No. 235.

This Court has taken this first step to further this process. Dkt. No. 236. Next, it should allow Plaintiffs to probe Defendants' conclusory statements that none of the disputed border wall materials were purchased with the Consolidated Appropriations Act funds covered by the permanent injunction. A period of written discovery—to uncover the origin, manufacture date, original funding source, and other identifying information regarding each section of border wall, and other items being remitted for auction—should be sufficient to ensure the evidentiary basis for the funding source of these materials.

And to ensure that the Court retains its jurisdiction to enforce its judgment, it should enter an administrative stay preventing Defendants from disposing of any of the border wall materials until these questions are answered. "[A federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it." *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978).

## ARGUMENT

While thousands of miles of the United States' southern border remain unsecured, the federal government is auctioning materials built specifically to remedy that problem. The Court should order a period of written discovery where Plaintiffs may demand Defendants provide evidence of the origin, manufacture date, original funding source, and other identifying information regarding each section of border wall, and other items that have been remitted for auction. To prevent irreparable harm and protect its own jurisdiction to enforce its judgment, the Court should also issue an administrative stay against Defendants disposing of any border wall materials, for the duration of any discovery period. This is the way to determine whether

Defendants are circumventing this Court's Final Judgment and Permanent Injunction by selling off border wall materials that were purchased with funds that the Court has said may only be used for the "construction of physical barriers." Dkt. No. 208 at 2.

> I. **The Court should allow written discovery into whether any of the border wall materials were originally acquired with Consolidated Appropriations Acts funds subject to the permanent injunction.**

Defendants respond that "[t]hese construction materials were DoD's property, they were purchased with DoD funds, and the administrative costs associated with carrying out this congressionally mandated disposal process have been paid exclusively from DoD's budget." Dkt. No. 237 at 2. They also argue that "[t]here also is no basis for Plaintiffs' speculation that border wall materials funded by DHS's Consolidated Appropriations Acts barrier system funds were sold to third parties instead of used for construction of physical barrier." Dkt. No. 237 at 12–13 (cleaned up). They base these assertions on declarations submitted by several federal officials. But the statements in those declarations are conclusory, without supporting documentation that each item of border wall materials was originally funded by sources other than the Consolidated Appropriations Acts subject to this Court's injunction.

For example, in support of their statement that "none of the construction material DoD purchased under § 2808 and § 284 was funded by DHS's fiscal year 2020 or 2021 barrier system appropriations," Dkt. No. 237 at 10, Defendants cite the Declaration of Paul Enriquez. But that Declaration does not provide any evidence of this, merely the base conclusion:

> CBP has not provided any funding, including funding from the FY2020 or FY2021 barrier system appropriations, to DoD to assist with DoD's disposal of border wall construction material purchased by DoD under section 2808 and 284 of Title 10 of the United States Code. None of the construction material DoD purchased under section 2808 and 284 was funded by CBP's FY2020 or FY2021 barrier system appropriations.

Dkt. No. 237-6, ¶ 12. Similarly, in support of their statement that "[s]ince the Court issued its preliminary injunction in March 2024, CBP has not disposed of any steel bollards purchased with the fiscal year 2020 and 2021 DHS barrier system appropriations," Defendants cite the same

3

declaration. Dkt. No. 237 at 13 (citing Enriquez Declaration ¶ 9). But that cited statement merely gives the conclusion that "[s]ince the Court's preliminary injunction order, CBP has not disposed of any steel bollards purchased with the FY2020 or FY2021 barrier system appropriations." Dkt. No. 237-6 at ¶ 9. Notably other declarations submitted by Defendants discuss the disposed materials without making any such assertion denying that any of the materials were purchased with such appropriations. *See* Dkt. No. 237-4, Declaration of Greg E. Hegge; Dkt. No. 237-5, Declaration of Michael O. Cannon.

This Court's injunction is not limited to DHS and its component agencies—both the United States and President Biden are Defendants in these consolidated cases and the permanent injunction applies to "[t]he Government" and anyone acting in concert with it. Dkt. No. 208 at 2. Neither the Enriquez Declaration nor any of the others provides any documentary evidence to support the conclusory allegations that the auctioned border wall materials at issue here were purchased with DoD or other funds not subject to the injunction. How do they know? Plaintiffs are entitled to examine not only the basis for the claimed knowledge of the declarants, but also whether in fact any of the border wall materials were originally funded by Consolidated Appropriations Acts funds. This would be to ascertain whether Defendants are using those funds for purposes other than actually constructing border barriers. This need would be satisfied by access to information regarding the origin, manufacture date, original funding source, and other identifying information regarding each section of border wall, and other items that have been remitted for auction. Such potential sources of information could include documents referenced in Defendants' declarations. For example, the Hegge Declaration references that the Army Corps of Engineers "completed the transfer paperwork for all remaining covered materials to [the Defense Logistics Agency] for screening and disposition as excess property." Dkt. No. 237-4 at ¶ 9; *see also id.* ¶ 10 (referring to "the transfer paperwork completed"). This includes the "transfer paperwork" for the "covered materials" "requested and received" by "Texas and California." *Id.* ¶ 10.b.

There is also good reason to doubt the veracity of those conclusory statements. President Trump, who has greater access to information as part of the presidential transition, doubts the

4

22f22f55bd54ede3

veracity of those statements and has called for "formal discovery" by court order. Dkt. No. 235 at 3. Defendants' untested allegations should not be taken at face value when they have, for the past four years, done everything within their power to actively resist complying with the laws requiring them to build the border wall.

Skepticism is also warranted because of the process Defendants have used to dispose of these materials. As noted by the Declaration of William McKerall, the Deputy Executive Director and Director of Facilities Design & Construction for the Texas Facilities Commission (TFC), the disposal process instituted by the federal government was significantly lacking in both presentation and detail. Ex. A, McKerall Declaration at ¶ 8. This process deviated from what TFC has seen in the past. *Id.* ¶ 7. Necessarily, Mr. McKerall was required to travel to Arizona to assess the nature and viability of available materials and Texas remains interested in their acquisition. *Id.* ¶¶ 13, 15.

## II. The Court should issue an administrative stay to allow discovery and maintain jurisdiction to enforce its judgment.

If Defendants are permitted to continue disposing of the border wall materials while this inquiry continues, they would be depriving the Court of the ability to prevent transactions that may violate its permanent injunction. The solution is provided by the All Writs Act, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Court should use its authority to issue and administrative stay of any agency action disposing of the border wall materials until the end of any discovery period.

Judge Barker recently used an administrative stay in this way, in a case brought by Texas and Missouri (along with 14 other States) challenging an agency action granting parole-in-place to certain illegal aliens. Dkt. No. 27, *Texas v. DHS*, No. 6:24-CV-306, at 1 (E.D. Tex. Aug 26, 2024). Given that the court there could not "perceive how to practicably unwind parole once issued to an alien," preserving its jurisdiction to issue full relief required that the agency be stayed from proceeding with that program. *Id.* at 4–5. On appeal of an order in that case denying intervention,

the Fifth Circuit extended the administrative stay of the program—demonstrating the propriety of such relief. Dkt. No. 68-2, *Perez v. Texas*, No. 24-40571 (5th Cir. Sept. 11, 2024).

An administrative stay reflects a "first-blush judgment" by a court about the relative consequences of blocking an agency action versus allowing it to go forward. Dkt. No. 27, *Texas v. DHS*, No. 6:24-CV-306, at 2. "There is no 'one-size-fits-all test that courts apply before entering' such an administrative stay." *Id.* (quoting *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring)). But it is well-accepted that an administrative stay is proper to "preserve the status quo pending prompt review of an agency's action through existing channels." *Id*.

Here, these considerations apply because once Defendants have disposed of the disputed border wall materials, it is not likely the Court would be able to unwind those transactions. An administrative stay of any further dispositions would therefore be a proper use of the Court's authority to preserve its own jurisdiction to enforce its judgment.

## CONCLUSION

Plaintiffs respectfully request that the Court allow post-judgment written discovery into the origin, manufacture date, original funding source, and other identifying information regarding each section of border wall, and other items that have been remitted for auction. The Court should also issue an administrative stay against any disposition of border wall materials during the discovery period.

| | |
|---|---|
| Date: December 26, 2024 | Respectfully submitted, |
| ANDREW BAILEY<br>Attorney General of Missouri | KEN PAXTON<br>Attorney General of Texas |
| /s/ *Joshua M. Divine*<br>JOSHUA M. DIVINE, #69875MO<br>Solicitor General<br>*Attorney-in-Charge*<br>Southern Dist. of Texas Bar No. 3833606 | BRENT WEBSTER<br>First Assistant Attorney General<br><br>RALPH MOLINA<br>Deputy First Assistant Attorney General |
| SAMUEL FREEDLUND, #73707MO*<br>Deputy Solicitor General | AUSTIN KINGHORN<br>Deputy Attorney General for Legal Strategy |
| OFFICE OF THE ATTORNEY GENERAL<br>Supreme Court Building 207<br>West High Street<br>P.O. Box 899<br>Jefferson City, Missouri 65102 Tel. (573) 751-1800<br>Fax (573) 751-0774<br>josh.divine@ago.mo.gov<br>samuel.freedlund@ago.mo.gov | /s/ *Ryan D. Walters*<br>RYAN D. WALTERS<br>*Attorney-in-Charge*<br>Chief, Special Litigation Division<br>Texas Bar No. 24105085<br>Southern Dist. of Texas Bar No. 3369185 |
| *Counsel for Plaintiff State of Missouri*<br><br>*Admitted pro hac vice | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1414<br>Fax: (512) 936-0545<br>ryan.walters@oag.texas.gov<br><br>*Counsel for Plaintiff State of Texas* |

/s/ *Austin R. Nimocks*
AUSTIN R. NIMOCKS
*Attorney-in-Charge*

Texas Bar No. 24002695
S.D. Tex. Bar No. 2972032
austin@pntlawfirm.com

CHRISTOPHER L. PEELE
Of Counsel
Texas Bar No. 24013308
S.D. Tex. Bar No. 31519
chris@pntlawfirm.com

PNT LAW FIRM
206 Wild Basin Rd. S.
Bldg. A, Ste. 206
Austin, TX 78746
Phone: (512) 522-4893

*Counsel for Plaintiffs Texas General Land Office and Commissioner Dawn Buckingham, M.D.*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 1,715 words, exclusive of matters designated for omission, as counted by Microsoft Word.

/s/ *Ryan D. Walters*
Counsel for Plaintiff State of Texas

## CERTIFICATE OF SERVICE

I certify that on December 26, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Ryan D. Walters*
Counsel for Plaintiff State of Texas
