IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office, Plaintiffs, <br> v. <br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, Defendants <br><br> *and* <br><br> SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*, Defendants-Intervenors | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, Plaintiffs, <br> v. <br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.,* Defendants. <br><br> *and* <br><br> SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*, Defendants Intervenors | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

**SIERRA CLUB INTERVENOR–DEFENDANTS' CONSOLIDATED MOTION (1) TO VACATE FINAL JUDGMENT AND PERMANENT INJUNCTION UNDER RULE 60(B)(4) & (5); AND (2) TO DISSOLVE THE PRELIMINARY INJUNCTION UNDER RULE 54(B) OR, IN THE ALTERNATIVE, RULE 60(B)(5) OR (6)**

## I. INTRODUCTION

Sierra Club and Southern Border Communities Coalition ("SCDI") respectfully move under Federal Rule of Civil Procedure 60(b) to vacate or modify the May 29, 2024, Final Judgment and Permanent Injunction.

*First*, because SCDI was wrongly denied intervention, the judgment and permanent injunction were issued without giving intervenors by right an opportunity to be heard. That fundamental due process defect renders the decree void under Rule 60(b)(4). *See Brumfield v. Louisiana Bd. of Educ.*, 749 F.3d 339, 344–45 (5th Cir. 2014).

*Second*, the judgment "rests on an earlier order that has been reversed," as the Fifth Circuit has reversed the denial of intervention. Fed. Civ. R. Pro. 60(b); No. 24-40447 (5th Cir. May 15, 2025). Rule 60(b)(5) (clause 2), therefore, requires relief.

*Third*, continued enforcement is "no longer equitable." Rule 60(b)(5) (clauses 1 & 3). On January 20, 2025, President Trump revoked Proclamation 10142 and directed DHS to resume barrier construction, eliminating the "no-wall" policy that this Court enjoined. DHS is now obligating the FY 2020-21 funds for both construction and mitigation, expressly authorized by the relevant appropriations as "operationally effective adaptations . . . that help mitigate community or environmental impacts." Consolidated Appropriations Act 2020, Div. D, § 209(a)(1); FY 2021 CAA, Div. F, § 210(a)(1).

*Trump v. CASA, Inc.* confirms that equitable relief may not extend beyond what is necessary to redress the Plaintiffs' injury. 145 S. Ct. 2540, 2548 (2025). If ever the nationwide scope of the preliminary and permanent injunctions was necessary to award the Plaintiffs relief, that is no longer the case.

Because the injunctions are void, satisfied, and prospectively inequitable, they must be dissolved and the case dismissed as moot. Vacatur will prejudice no one: Congress has just

appropriated $46.5 billion in new barrier-construction funds, and SCDI must enforce its prior settlement before the FY 21 money lapses on September 30, 2025.

## II. BACKGROUND AND PROCEDURAL POSTURE

Plaintiffs first sued in April 2021 to challenge President Biden's Proclamation 10142, which ordered a blanket "pause" on border-barrier construction. After two remands, *General Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023); *GLO v. Biden*, No. 22-40110 (5th Cir. 2022), this Court entered a March 8, 2024 preliminary injunction compelling DHS to obligate the FY 2020–2021 barrier-system money "solely for new barrier construction." On May 29, 2024, the Court, at the parties' joint request, converted that order into a permanent injunction and denied intervention to SCDI, an Arizona ranch, and prime contractors. The Fifth Circuit reversed the denial of intervention on May 15, 2025, holding that SCDI and the contractors were entitled to intervene as of right. No. 24-40447 (5th Cir. May 15, 2025).

SCDI's stake traces to *Sierra Club v. Trump*, two cases where SCDI obtained and defended permanent injunctive relief against unlawful wall construction in defined sites in California, Arizona, and New Mexico. After President Biden issued Proclamation 10142, the Supreme Court vacated the judgments and remanded "in light of the changed circumstances." *Biden v. Sierra Club*, 142 S. Ct. 56 (2021) (mem.). On remand, SCDI and the United States executed a July 2023 Settlement Agreement requiring the federal government to perform environmental mitigation. *Sierra Club v. Biden*, 4:19-cv-00892-HSG (N.D. Cal.); Document 372-1 ("Settlement Agreement"). The Settlement Agreement is funded exclusively from the FY 2020 and FY 2021 barrier-system appropriations.

This Court's May 29, 2024, injunction bars those same appropriations from being used for "mitigation and remediation efforts." Citing the Preliminary Injunction, DHS halted settlement

projects, including wildlife passages and erosion control. The United States did not appeal. The Defendants currently claim that the Judgment and Permanent Injunction render the FY funds "unavailable" for the Settlement Agreement and therefore excuse their performance thereunder.

Like when SCDI's judgment was vacated by the Supreme Court due to the "changed circumstances" precipitated by a new administration reversing a prior administration's policies, the landscape has once again shifted. On January 20, 2025, President Trump issued Proclamation 10886 and EO 14165, rescinding Proclamation 10142 and directing DHS to resume border barrier construction. DHS has obligated FY 20-21 funds on multiple projects. Congress, meanwhile, appropriated $46.5 billion for new barriers, available through FY 2029.

Yet the FY 2021 money needed for SCDI's Settlement Agreement will lapse on September 30, 2025. Unless this Court vacates or modifies its injunction, SCDI's bargained-for relief will disappear, while the new Administration uses this Court's injunction to escape its earlier obligations and directs the FY 21 funds toward barrier projects prohibited by the FY 2021 appropriations.

### III. ARGUMENT: THE FINAL JUDGMENT AND PERMANENT INJUNCTION MUST BE VACATED UNDER RULE 60(b)

Federal Rule of Civil Procedure 60(b) enables courts to vacate judgments "whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). The rule text defines six numbered grounds, and two are pivotal here. First, under Rule 60(b)(4), a judgment that is "void" for jurisdictional failure or denial of due process must be set aside. Second, Rule 60(b)(5) permits a court to grant relief when (i) "the judgment has been satisfied, released, or discharged," (ii) "it rests on an earlier judgment that has been "reversed or vacated," or (iii) "applying it prospectively is no longer equitable." The Supreme Court has twice

emphasized that clause (iii) obligates district courts to tailor or dissolve injunctions once "significant change[s] in fact or law" undercut their rationale. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992); *Horne v. Flores*, 557 U.S. 433, 447 (2009). The Fifth Circuit has enforced that duty with equal vigor. *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Collectively, these decisions teach that equity is dynamic: "it is often said that the rule should be liberally construed in order to do substantial justice." *Seven Elves,* 635 F.2d at 401.

There is no longer any controversy between the Plaintiffs and the federal defendants, and the Plaintiffs have no standing to challenge the federal government's commitments to SCDI in a Settlement Agreement they did not participate in and that does not injure them. Vacating the injunctions or at least issuing a targeted modification permitting compliance with the federal government's prior Settlement Agreement would injure nobody and prevent significant injustice.

A. *The Final Judgment and Permanent Injunction Must be Vacated Pursuant to Federal Rule of Civil Procedure 60(b)(4)*

Federal Rule of Civil Procedure 60(b)(4) authorizes relief from a "void" judgment. An order is void "only if the court that rendered it lacked jurisdiction . . . or it acted in a manner inconsistent with due process of law." *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015) (quotation omitted); *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003). Where a party is denied "notice or the opportunity to be heard," the defect is jurisdictional, and relief is mandatory. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271-72 (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

On April 10, 2024, the United States and the State Plaintiffs jointly asked this Court to enter a final judgment that barred DHS from spending FY 2020-21 barrier funds on "mitigation and remediation efforts, repair of existing barrier, [or] system-attribute installation." Dkt. 150.

Nine days later, SCDI moved to intervene, explaining that the proposed decree would injure its hard-won Settlement Agreement requiring DHS and DoD to perform environmental mitigation funded from those very appropriations. Dkts. 167, 202 ("Proposed Intervenors seek to be heard on the scope of the permanent injunction"). The Court denied intervention and, on May 29, 2024, entered the consent judgment unchanged. Final J., Dkt. 208.

Following appeal of the denial of SCDI's motion to intervene, the Fifth Circuit held that SCDI possesses "concrete and legally protectable interests" and was "entitled to intervene as of right." No. 24-40447 (5th Cir. May 15, 2025). By excluding SCDI before imposing an injunction that directly impairs its interests, the Court deprived SCDI of due process. *See Brumfield*, 806 F.3d at 301 ("The very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."); *Carter v. Fenner*, 136 F.3d 1000, 1003 (5th Cir. 1998) (vacating judgment where procedural safeguards were ignored).

Because the final judgment was issued without affording SCDI its right to be heard, it is void and must be vacated under Rule 60(b)(4).

B. *The Judgment and Permanent Injunction Must be Vacated Under Rule 60(b)(5) Because It Rests on an Order Now Reversed*

Rule 60(b)(5) authorizes relief where "the judgment is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). Because the permanent injunction was entered pursuant to the agreement of the parties only after this Court denied intervention—and the Fifth Circuit has now vacated that denial—Rule 60(b)(5) requires relief.

The final judgment and permanent injunction rested on the Court's denial of SCDI's and others' motions to intervene.

The final judgment and permanent injunction were granted on the parties' joint motion. ROA.3407. Had SCDI and other intervenors participated, the joint motion would have been disputed, and final judgment would not have been issued on the same terms or timeline. *See, e.g.*, ROA.3804 (Hrg. Tr. Apr. 17, 2024) (explaining the Court's view that the intervention motions changed the scope of the dispute); ROA.3401-3402 (denying intervention because it would delay judgment); ROA.3397 (denying intervention because it would introduce additional issues).

That the decree incorporated the earlier preliminary injunction does not save it. The parties' agreement (and the exclusion of intervenors) was indisputably a basis for the Court's final judgment and permanent injunction. *See Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 386 (5th Cir. 2012) (a judgment is "based on" another where the other was a "necessary element" of it); *cf. Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). The final judgment and permanent injunction were not only issued without SCDI's participation, but also the Court was explicit that it did not consider the merits of SCDI's claims or the equities of the injunction as applied to them.

Because the Fifth Circuit has now vacated the intervention denial, the decree cannot stand. Vacatur is required.

C. *Even If Not Void, Prospective Enforcement Is Inequitable Under Rule 60(b)(5)(1) & (3)*

Rule 60(b)(5) allows a court to relieve a party from a judgment when "the judgment has been satisfied" or "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). An injunction must yield when "a significant change either in factual conditions or in law" renders it "detrimental to the public interest." *SEC v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022) (quoting

*Horne v. Flores*, 557 U.S. 433, 447 (2009). "If a durable remedy has been implemented, continued enforcement … is not only unnecessary, but improper." *Anderson v. City of New Orleans*, 38 F.4th 472, 479 (5th Cir. 2022) (citation modified).

### 1. The judgment's core mandate has been satisfied.

On January 20, 2025, President Trump revoked Proclamation 10142 and, in Proclamation 10886 and Executive Order 14165, ordered DHS and DoD "to construct additional physical barriers along the southern border." Those directives—and the Government's ensuing conduct—eliminate the only "categorical failure to build" that Plaintiffs claimed as injury. *See* Pls.' Opp. to Clarification, Dkt. 138 at 16 (ROA.2641) (case "concerns . . . the overarching policy that the administration unlawfully adopted"); Pls.' Reply ISO PI, Dkt. 30 at 21–22 (ROA.527-28). DHS has since waived environmental statutes for new wall segments and awarded contracts for 27 miles of barrier in Arizona and Texas.[1] The Department of Justice has filed dozens of condemnation suits in this District "for purposes of building and maintaining a border barrier."[2] In short, the very conduct the injunction compels is now occurring voluntarily; clause 1 of Rule 60(b)(5) is met.

### 2. Factual and legal conditions have materially changed.

Rule 60(b)(5) also authorizes relief when prospective enforcement has become inequitable. That standard is satisfied on both factual and legal fronts. Horne v. Flores, 557 U.S. 433, 447 (2009).

---

[1] *See, e.g.*, *DHS issues new waivers to expedite new border wall construction in Arizona and New Mexico*, U.S. Customs and Border Protection (June 5, 2025), https://www.cbp.gov/newsroom/national-media-release/dhs-issues-new-waivers-expedite-new-border-wall-construction-0; *DHS awards contract for 27 miles of new border wall in Arizona; issues waiver to accelerate construction in Texas*, U.S. Customs and Border Protection (June 18, 2025), https://www.cbp.gov/newsroom/national-media-release/dhs-awards-contract-27-miles-new-border-wall-arizona-issues-waiver.

[2] *See, e.g.*, *United States of America v. 0.220 ACRES OF LAND*, et al., 7:25-cv-323 (S.D. Tex.); *United States of America v. 24.728 ACRES OF LAND, et al.*, 7:25-cv-229 (S.D. Tex.).

*First*, there has been a complete policy reversal. The current Administration has adopted a "Day-One Achievement" of "restart[ing] construction of the border wall."[3] Governor Abbott concedes illegal crossings have "suddenly halt[ed]" since January 2025.[4] Whatever suspicion once attached to the prior administration's intentions (§ I, Final J. n.2), it cannot justify fettering the present administration's statutorily authorized spending.

*Second*, Congress has now appropriated $46.5 billion for barrier construction, available through FY 2029. The FY 2021 rider dollars—critical to SCDI's settlement—will lapse on September 30, 2025. Enforcing the injunction now destroys mitigation that Congress expressly authorized and the federal government agreed to without affecting the wall-building budget.

*Third*, the Supreme Court has recently reiterated that an injunction may reach no farther than necessary to redress the plaintiff's own injury. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2558 (2025) ("Complete relief is not a guarantee—it is the maximum a court can provide."). The decree drives every FY 2020–21 dollar—including projects in Arizona and California—into new-wall contracts while forbidding mitigation in those same States. That exceeds the equitable limit *CASA* imposes. At least, the Plaintiffs' theory of injury from the prior administration's spending decisions does not justify the broad and deep remedy they have received, *see id.*, or the significant ongoing collateral harms of the decree.

---

[3] *See Border & Immigration*, Whitehouse.gov.
[4] *Governor Abbott Lauds Trump's Successful Border Security*, Office of the Governor, Facebook (May 21, 2024), https://www.facebook.com/watch/?v=577118361657181.

*Rufo* instructs courts to "tailor" decrees considering "significant change in fact or law." 502 U.S. 367, 393 (1992). Here, all three pillars of the original injunction—policy, funding conditions, and governing equitable doctrine—have shifted. Continuing enforcement would not merely be unnecessary; it would affirmatively thwart the public interest by blocking environmental remediation the Government is otherwise obliged to consider, and it would harm SCDI's interests by thwarting its ability to hold the federal government to its Settlement Agreement.

Accordingly, even if the decree is not void, Rule 60(b)(5) compels vacatur—or, at minimum, modification—to lift the nationwide spending mandate and permit the federal government to use rider funds for mitigation. *Rufo*, 502 U.S. at 391; *Horne*, 557 U.S. at 447.

### IV. ALTERNATIVELY, THE INJUNCTION SHOULD BE MODIFIED.

If the Court declines to vacate the decree outright, it should at least modify Paragraphs 1–3 so the federal government can carry out the mitigation work Congress authorized, and the Settlement Agreement requires.

Both FY 2020 and FY 2021 barrier-system riders appropriate $1.375 billion "for the construction of barrier system . . . that utilizes currently deployed steel bollard designs **or operationally effective adaptations of such designs that help mitigate community or environmental impacts of barrier system construction, including adaptations based on consultation with jurisdictions within which such barrier system will be constructed**." CAA 2020, Div. D, § 209(a)(1); CAA 2021, Div. F, § 210(a)(1) (emphasis added).

Erosion control, wildlife passages, culvert realignments, and tribal-resource protection—the very projects embodied in the SCDI Settlement—fit this text. By contrast, "buoys, etc," which the decree blesses, are neither bollards nor an "adaptation" of a bollard and therefore lie outside the riders' scope.

The injunction bars DHS from obligating rider funds for "mitigation and remediation efforts." That blanket ban rewrites Congress's mitigation clause and has already forced DHS to suspend settlement projects.

Further, the nationwide spending mandate here compels DHS to obligate every FY 2020-21 dollar towards limited purposes far narrower than the statutory text, without considering whether prohibiting mitigation or remediation efforts is necessary to remedy the Plaintiffs' injuries. Such an injunction, which purports to say what the law is and compel compliance with it everywhere, exceeds this Court's equitable authority. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2560 (2025).

To align the decree with both the riders and *CASA*, SCDI proposes that this Court strike the prohibition on mitigation and mitigation efforts. Alternatively, this Court could order that "The final judgment and permanent injunction does not prohibit Defendants from obligating or expending the Department of Homeland Security's barrier system appropriations from fiscal year 2020 (subsection 209(a)(1)) and fiscal year 2021 (section 210) on mitigation and remediation efforts necessary for compliance with the SCDI Settlement Agreement, 4:19-cv-00892-HSG (N.D. Cal.) Document 372-1."

Such revisions are consistent with this Court's prior modification of the judgment and permanent injunction, Dkt. 250, and remove the obstacle to settlement performance without disturbing the Court's ability—should it remain necessary—to oversee future allocations for new barrier construction.

The Plaintiffs' "advisory opinion" objection misses the point. They previously argued that "this Court need not offer a stamp of approval" on projects. States' Opp. To Mot. For Clarification, Dkt. 138, at 16, ROA.2641. These arguments directly contradict the equitable

principles reflected in *CASA*. To win the extraordinary remedy of injunctive relief, the Plaintiffs must demonstrate that enjoining the Settlement Agreement projects is necessary to give them relief. They cannot do so.

## V. THE PRELIMINARY INJUNCTION HAS MERGED AND, IN ANY EVENT, MUST BE DISSOLVED

"[A] preliminary injunction ordinarily merges into the final injunction." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 317 (1999). The March 8, 2024, preliminary injunction merged into and was replaced by the May 29, 2024, permanent injunction.

If the Court retains jurisdiction after vacating or modifying the permanent injunction, the same defects that doom the permanent decree doom the PI: its factual premise—the alleged "no-wall" policy—has vanished; it prohibits mitigation Congress expressly allows, and is unsupported by this Court's equitable jurisdiction. Continuing to enforce the PI would no longer be equitable.

## VI. CONCLUSION

For the reasons explained, the May 29, 2024, Final Judgment and Permanent Injunction no longer rests on a valid legal or factual foundation, and the March 8, 2024, Preliminary Injunction has merged into the decree. The Court should therefore:

1. **VACATE** the Final Judgment and Permanent Injunction under Rule 60(b)(4) and, in the alternative, Rule 60(b)(5);
2. **DISSOLVE** the Preliminary Injunction as merged, moot, and prospectively inequitable; and
3. **DISMISS** the original claims as moot and lift any restriction that prevents DHS from using FY 2020-21 barrier-system funds for mitigation projects required by the January 2023 *Sierra Club* Settlement Agreement.

This relief will return the parties to the posture Congress envisioned, permit DHS to obligate FY 2021 funds before they cancel on September 30, 2025, and remove a decree that now frustrates—rather than advances—the public interest.

Respectfully submitted,

By: /s/*David A. Donatti*
David A. Donatti (Bar No. 24097612)
Adriana C. Piñon (Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
ddonatti@aclutx.org
apinon@aclutx.org

Cecillia D. Wang*
My Khanh Ngo*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104

Telephone: (415) 343-0775
cwang@aclu.org
mngo@aclu.org

Gloria D. Smith**
SIERRA CLUB ENVIRONMENTAL
LAW PROGRAM
2102 Webster Street, Suite 1300
Oakland, CA 94612
Telephone: (415) 977-5532
gloria.smith@sierraclub.org

Ricardo A. Garza***
Texas State Bar No. 24109912
SDTX Bar No. 3336127
Southern Border Communities Coalition
Alliance San Diego
P.O. Box 2436
McAllen, TX 78502
(956) 605-5917; ricky@alliancesd.org

*Counsel for Intervenors*

*Admitted *pro hac vice*
**Attorney for Proposed Defendant-Intervenor Sierra Club only
***Attorney for Proposed Defendant-Intervenor Southern Border Communities Coalition only

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 23, 2025, I communicated with counsel for all parties on these motions. The intervenors do not oppose vacatur, and, in the event this Court considers modifying the Final Judgment and Permanent Injunction, reserve their right to move separately for relief. The Defendants take no positions on this motion. The Plaintiffs are opposed.

/s/ *David Donatti*
David Donatti

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2024, I electronically filed a copy of the foregoing motion. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *David Donatti*
David Donatti