## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>                 Plaintiffs,<br><br>      v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*<br><br>               Defendants.<br><br>*and*<br><br>SIERRA CLUB, *et al.*<br>             Defendants-Intervenors | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |
| THE GENERAL LAND OFFICE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>               Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,<br><br>               Defendants.<br><br>*and*<br><br>SIERRA CLUB, *et al.*<br>Intervenors | No. 7:21-cv-00272 |

## PLAINTIFFS' OPPOSITION TO INTERVENORS' MOTION (1) TO VACATE FINAL JUDGMENT AND PERMANENT INJUNCTION UNDER RULE 60(B)(4) & (5); AND (2) TO DISSOLVE THE PRELIMINARY INJUNCTION UNDER RULE 54(B) OR, IN THE ALTERNATIVE, RULE 60(B)(5) OR (6).

1

## **INTRODUCTION**

Intervenors' motion to vacate and dissolve is little more than an effort to re-litigate issues already decided by this Court. Moreover, Intervenors' motion is an inappropriate short cut. Instead of pursing claims with the Court of Federal Claims, or enforcing its settlement with the Federal Defendants in the Northern District of California, Intervenors ask the Court to do what they should do elsewhere.

In March 2024, this Court entered a preliminary injunction in favor of Plaintiffs, finding that subsection 209(a)(1) of the FY 2020 DHS Appropriations Act—and corresponding subsection 210 of the FY 2021 DHS Appropriations Act—"pertains solely to the construction of *new* barriers at the Southwest border," and precluded obligations that were "not allocated to new wall construction." ECF 128, at 51 (emphasis added). The Court later addressed, and denied, a motion for clarification of the preliminary injunction. ECF 133, 147, and 208.

In May 2024, this Court entered a final judgment and permanent injunction prohibiting the Government Defendants "from obligating funds under Subsection 209(a)(1)—and corresponding funds under Section 210—toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." ECF 208, at 3. Intervenors now seek to challenge those conclusions to allow for expenditures inconsistent therewith. While Rule 60 permits the Court to vacate a final judgment under certain circumstances, it is "an extraordinary remedy which should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). That is especially so where a movant cannot

"demonstrate that he possesses a meritorious cause of action." *Pease v. Pakhoed,* 980 F.2d 995, 998 (5th Cir.1993).

Intervenors argue that the final judgment and permanent injunction impair their ability to enforce a settlement agreement made with the Biden Administration related to claims brought against the first Trump Administration. That deal—which was struck two years after this case was filed—provided for various environmental mitigation and remediation projects to be funded by the FY 2020 and FY 2021 barrier wall appropriations including those subject to this case. At the time, Intervenors accepted a limitation within that agreement that such funding was "subject to the availability of [the FY 2020 and FY 2021 appropriations,]" despite an ongoing challenge to the government's uses of those appropriations for environmental mitigation and remediation.

The crux of Intervenors' motion to vacate is a claim that the vacatur would permit the Court to hear argument on their claim that final judgment and permanent injunction, as is, prohibit "mitigation that Congress expressly authorized." ECF 256, at 9. But that argument is squarely precluded by this Court's prior rulings, ECF 128, at 51; ECF 208, at 3, and Intervenors offer no rationale for why the Court's interpretation of the congressional appropriations was not correct. As vacatur of the final judgment and permanent injunction would be a futile exercise and threaten to allow an irreversible harm to Plaintiffs, the Court should deny Intervenors' motion.

## ANALYSIS

Relief under Rule 60 is "an extraordinary remedy which should be used sparingly." *Templet*, 367 F.3d at 479. A Rule 60 motion is "not the proper vehicle for

rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 478. Rule 60 provides for "relief from a final judgment, order, or proceeding" under six provisions. Fed. R. Civ. P. 60(b). As relevant to Intervenors' arguments, Rule 60(b)(4) provides a movant relief where a "judgment is void," while Rule 60(b)(5) provides relief where a "[1] judgment has been satisfied, released, or discharged; [2] is based on an earlier judgment that has been reversed or vacated; or [3] applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(4), (b)(5). Intervenors have not established that this Court should vacate the final judgment and permanent injunction, or dissolve the preliminary junction, under any of these rules. As such, Intervenors' motion to vacate should be denied.

## I.    The Final Judgment and Permanent Injunction Is Not Void.

Intervenors argue (at 5–6) that the final judgment and permanent injunction is void "[b]ecause the final judgment was issued without affording [Intervenors their] right to be heard." Not so.

The Fifth Circuit has explained that an order "is void only if the court that rendered it lacked jurisdiction of the subject matter or of the parties, or it acted in a manner inconsistent with the due process of law." *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015) (citation omitted). "[A] void judgment is one *so affected by a fundamental infirmity* that the infirmity may be raised even after the judgment becomes final." *Id.* at 270 (emphasis added). "The list of such infirmities is exceedingly short." *Id.*

The final judgment and permanent injunction is not "so affected by a fundamental infirmity" that the judgment is void. Intervenors sought leave to

4

intervene to "seek clarification that the preliminary injunction, and any final judgment in this case, does not impact the government's ability to comply with the preexisting settlement in the *Sierra Club* litigation." ECF 167, at 3. The motion to vacate makes plain that Intervenors offer no arguments yet to be considered by this Court on the lawfulness (or lack thereof) of spending border barrier system appropriations on "mitigation and remediation." Instead, Intervenors argue (at 10–11) that the FY 2020 and FY 2021 DHS appropriations include a "mitigation clause," that authorizes the environmental mitigation and remediation contemplated in their settlement agreement. Not so. Intervenors' incorrect interpretation of the appropriations is based on the language of subsection 209(a)(1) of the FY 2020 appropriation regarding "operationally effective adaptations" of steel bollards. *See* FY 2020 Appropriations, § 209(a)(1). Contrary to Intervenors' argument, the FY 2020 and FY 2021 appropriations do not include a "mitigation clause," but instead provide funds for steel bollard designs and other "operationally effective adaptations of such." *See* FY 2020 Appropriation, § 209(a)(1). The phrase "that help mitigate community or environmental impacts" is a restrictive relative clause that modifies the type of wall design, not an independent clause for open-ended funding of environmental mitigation. While the funds may be spent on "operationally effective adaptations" of *steel bollard designs* "that help mitigate community or environmental impacts," those funds are not available for mitigation or remediation projects in and of themselves.

In any event, the Government Defendants presented the same arguments on mitigation efforts in their briefing on the preliminary injunction, *see* ECF 96, at 4–5,

9, 41, 45, and their request for clarification after the preliminary injunction issued, *see* ECF 133 at 5–6, 10–11.  Indeed, the Government Defendants offered an affidavit that identified the very mitigation and remediation projects that Intervenors ask the Court to reconsider.  *See* ECF 96-2 at 27 (Third Declaration of Paul Enriquez) ("CBP also is planning to utilize up to $50,000,000 of the FY2020 and 2021 barrier system funds to implement mitigation projects . . . to offset or mitigate the environmental impacts of border barrier construction in the former DoD project areas . . . includ[ing] actions to address impacts to Tribal cultural resources, contributing funding for the acquisition of mitigation property, and studies to assess impacts of barrier construction on threatened or endangered species.").

The Court rejected those arguments, finding that "Subsection 209(a)(1) pertains *solely* to the construction of new barriers at the Southwest border."  ECF 128 at 51 (emphasis added).  The mitigation and remediation activities that Intervenors seek are squarely at odds with this conclusion.  Intervenors' due process rights were not violated where the arguments they claim a right to raise were already brought before the Court and rejected.

Even if the Intervenors' absence at the final judgment stage was a due process violation, any such violation was harmless.  *See Tennessee Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 303 (2007) (finding alleged procedural due process violation was "harmless beyond reasonable doubt.").  The Court should reject Intervenors request to vacate the final judgment and permanent injunction under Rule 60(b)(4).

## II.  The Court Should Not Vacate the Final Judgment and Permanent Injunction Under Rule 60(b)(5).

"Rule 60(b)(5) provides three independent, alternative grounds for relief: '[1] the judgment has been satisfied, released, or discharged; [2] it is based on an earlier judgment that has been reversed or vacated; or [3] applying it prospectively is no longer equitable.'" *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015) (quoting Fed. R. Civ. P. 60(b)(5)).  The party seeking relief bears the burden of showing that Rule 60(b)(5) applies.  *Id.* (citing *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 438 (5th Cir.2011)).  Intervenors seek relief under the second and third clauses.  Their arguments fail for several reasons.

*First*, to obtain relief from a judgment under Rule 60(b), Intervenors must establish a meritorious defense.  *See Pease v. Pakhoed,* 980 F.2d 995, 998 (5th Cir.1993) ("It is well established that Rule 60(b) requires the movant to demonstrate that he possesses a meritorious cause of action."); *see also Local 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992) (stating the meritorious defense requirement "guards the gateway to Rule 60(b) relief . . . . [A] litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise.").  A "bare assertion" that a meritorious defense is "insufficient" to meet this requirement.  *Pease*, 980 F.2d, at 1000.  Intervenors do not assert that they have a meritorious defense to the underlying claims.  Indeed, they have none.  Intervenors claim (at 9) that the final judgment and permanent injunction "destroys mitigation that Congress expressly authorized."  This is not a meritorious defense, as the Court already rejected that

argument when the Government Defendants made it in the first instance.  *See* ECF 128 at 51.  Vacating the final judgment for reconsideration of already rejected arguments would be an empty exercise, and thus inappropriate under Rule 60.  *See Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests.").

*Second*, Intervenors argue (at 6–7) that "[t]he final judgment and permanent injunction rested on the Court's denial of [their] motion[ ] to intervene."  Not so.  The second clause of Rule 60(b)(5) provides for vacatur where a final judgment is "based on an earlier judgment that has been reversed or vacated."  Fed. R. Civ. P. Rule 60(b)(5).  "[A] decision is 'based on' a prior judgment when it is 'a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense.'" *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 386 (5th Cir. 2012). In *Lowry*, the Fifth Circuit explained that, for purposes of Rule 60(b)(5), "based on" is to be understood "with analogies to claim or issue preclusion," such that "the first judgment has claim or issue preclusion effects on the second."  *Id.* at 386 n.16. (quoting 12 Moore's Federal Practice § 60.46[1]).  The Court's order on the motions to intervene did not have preclusive effects on the final judgment and permanent injunction.  Intervenors' argument (at 7) that the denial of intervention was "a basis for the Court's final judgment and permanent injunction" stretches the meaning of "based on" well beyond the limited reach anticipated by Rule 60(b)(5), and should be rejected.

*Third*, Intervenors argue (at 7–9) that prospective enforcement of the final judgment and permanent injunction would be inequitable because "the judgment's core mandate has been satisfied" and "factual and legal conditions have materially changed." This is wrong several times over.

As an initial matter, relief under Rule 60(b)(5) requires that the continued enforcement of the judgment be "detrimental to the public interest." *SEC v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). Intervenors have not argued that the final judgment and preliminary injunction is detrimental to the public interest. They cannot make such a showing. As the Court recognized in granting the preliminary injunction, "the public is served when the law is followed" and "would be served if the Executive branch is enjoined from obligating funds in a manner that conflicts with the plain language of the appropriations bill." ECF 128, at 55. There is "no public interest in the perpetuation of unlawful agency action." *Id.* (citation omitted). Yet that outcome is the natural result of Intervenors' request. If the injunction were lifted for Intervenors' mitigation and remediation efforts, funds from the FY 2021 appropriations would be spent in ways that directly "conflict[ ] with the plain language of the appropriations bill." *Id.* In that sense, vacatur—rather than continued enforcement of the final judgment—is detrimental to the public interest and should be rejected.

Intervenors also claim (at 8) that Plaintiffs only claimed a "failure to build" as injury, and thus resumed wall construction under the current administration satisfies the judgment. Not so. As the Court is aware, Plaintiffs challenged not only

the refusal to build new border wall consistent with the appropriations in FY 2020 and FY 2021, but also the expenditure of funds in a manner inconsistent with the language in those congressional appropriations. In both the preliminary injunction order and the final judgment and permanent injunction, this Court recognized that Government Defendants were acting "contrary to law" by expending appropriation funds outside of "new wall construction." *See* ECF 128, at 51; ECF 208, at 3. Indeed, the final judgment enjoined Government Defendants from spending the FY 2020 and FY 2021 appropriations at issue in this case for "mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation, or other similar purposes." ECF 208, at 3. By its own terms, the final judgment was not limited to a "failure to build." Intervenors offer no argument how President Trump's revocation President Biden's executive order, and issuance of a separate proclamation and executive order to construct physical barrier, satisfy this Court's orders prohibiting use of the § 209(a)(1) and § 210 funds for activities outside of the construction of new wall. They do not.

Intervenors next argue (at 8–10) that "[f]actual and legal conditions have materially changed" because either: a) the new administration has changed course; b) Congress has now adopted new funds for border wall construction; and c) the injunction is too broad following *Trump v. Casa*. None of these establishes that it has become "no longer equitable" to apply the judgment prospectively. As for (a) and (b), the new administration's priorities and new appropriations by Congress for border wall construction do not undermine the continued application of this Court's

10

conclusion that the FY 2020 and FY 2021 appropriations "pertain[ ] *solely* to the construction of new barriers at the Southwest border." ECF 128 at 51 (emphasis added). That the Congress has appropriated *additional* funds for border wall construction does not suddenly avail Intervenors to funds for unlawful activities.

As for (c), the Supreme Court's decision in *CASA v. Trump* does not counsel for a more-tailored injunction in this case. In reversing the dismissal of Texas and Missouri, the Fifth Circuit agreed that Missouri alleged injury vis-à-vis funds not being expended to physical barrier, ECF 85, at 8 n.10, 20, and this Court then found that the States had alleged injury whereby more illegal aliens would enter the United States "than would otherwise enter if the CAAs were spent as Congress specified," ECF 128, at 53. The final judgment and permanent injunction is appropriately tailored to address that injury.

Beyond the above, continued enforcement of the final judgment and permanent injunction is equitable because the Court's ruling was not an unforeseen condition at the time Intervenors reached a settlement with the Government Defendants. *Cf. U.S. v. Swift & Co.*, 286 U.S. 106, 119 (1932) ("Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned."). The Intervenors filed their settlement agreement with the Government Defendants in their Northern District of California litigation on July 17, 2023. *See* ECF 167-1. At that time, this case challenging the FY 2020 and FY 2021 appropriations for non-border-wall activities was already two years old. Despite this challenge, the

settlement agreement stated that the "environmental mitigation projects shall come *exclusively* from DHS's fiscal year 2020 or 2021 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020)."  *Id.*, at 43–44, ¶ 48 (emphasis added).

Moreover, the agreement stipulated that the funding for these projects was "subject to the availability" of the FY 2020 and FY 2021 appropriations, and granted that "[Government] Defendants' responsibility under this agreement is contingent upon the availability of appropriated funds."  *Id.*, at 37, ¶ 57.  The challenge to these funds, brought before Intervenors reached a settlement, clearly imperiled the availability funds from subsection 209(a)(1) and subsection 210.  Intervenors would have known that, yet they proceeded to identify those appropriations as the *exclusive* source of funding for their desired projects and made any payment *contingent* on the availability of those funds.  Because the final order and permanent injunction did not evoke an unforeseen condition on the Intervenors, its continued enforcement is equitable.  That Intervenors struck an unadvisable deal with a non-adversarial Government Defendant is not reason enough to vacate the well-considered final order and permanent injunction here.

### III.   The Court Should Not Modify the Final Judgment and Permanent Injunction.

Intervenors request (at 10) that, in the absence of vacatur, the district court modify the final judgment to permit "mitigation work Congress authorized, and the Settlement Agreement requires." The Court should decline this request.

The request to modify relies on the same incorrect reading of the appropriations discussed above, *supra* at 4–10, and should be rejected for the same reasons. Moreover, as explained above, the settlement only "requires" the mitigation work to the extent that contingent funds from the FY 2020 and FY 2021 appropriations are available. Following this Court's interpretation of those appropriations, the funds from subsection 209(a)(1) and subsection 210 were rendered unavailable—an outcome the settlement agreement reasonably anticipated.

The remainder of Intervenors' arguments proceed from their incorrect reading of the appropriations. Intervenors accuse the Court (at 11) of "rewrit[ing] Congress's mitigation clause" and "compel[ing] DHS to obligate every FY 2020-21 dollar towards limited purposes far narrower than the statutory text." This is yet another attempt to re-litigate the contours of the barrier system appropriations. That is improper. Rule 60 is not a vehicle for raising legal theories or arguments that have already been rejected. *Cf. Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79.

Moreover, Intervenors claim (at 11) that their requested modifications "are consistent with this Court's prior modifications of the judgment and permanent injunction." Not so. As the Court correctly recognized during the August 6, 2025 hearing, no such modification occurred. Instead, this Court simply concluded that

certain "drainage and erosion features *necessary for the construction of new border barriers*" were not prohibited under the Court's interpretation of the FY 2020 and FY 2021 barrier system appropriations.    *See* ECF 250, at 1–2 (emphasis added). Intervenors do not claim that the projects contemplated in the settlement agreement concern the construction of new border barriers.    To the contrary, Government Defendants informed this Court that the environmental remediation and mitigation projects in the settlement agreements concern areas in "*former* DoD project areas," ECF 96-2, at 27 (3d Decl of Paul Enriquez), and the motion intervene explained that the settlement agreement contemplated "specific actions to mitigate harms to wildlife species and to public lands caused by . . . border wall construction during FY 19 and FY 20," ECF 167, at 2.  Thus, they conflict with this Court's reasoned interpretation of the appropriations and are not consistent with this Court's judgment and permanent injunction.  Worse yet, Intervenors' suggested carve-out would make the final judgment and permanent injunction contradictory on its face.

## IV.    The Court Should Not Vacate the Preliminary Injunction.

Intervenors' argue (at 12) that "the same defects that doom the permanent decree doom the PI" and thus "[c]ontinuing to enforce the PI would no longer be equitable."  Even if the Court elects to vacate the final judgment and permanent injunction, there is no basis for dissolving the preliminary injunction.    The preliminary injunction was the result of years-long briefing and this Court's reasoned interpretation of the limitations of the FY 2020 and FY 2021 appropriations. Intervenors' argument for vacatur of the preliminary injunction is based on the same flawed Rule 60(b)(5) reasoning applied to the final judgment and permanent

injunction discussed above.  For the same reasons, the request to dissolve the preliminary injunction should be rejected.

Moreover, Intervenors identify no authority for the proposition that it would be appropriate for this Court to dissolve the preliminary injunction alongside the permanent injunction.  When Intervenors moved to intervene, they explained that they sought "clarification that the preliminary injunction, and any final judgment in this case, does not impact the government's ability to comply with the preexisting settlement in the *Sierra Club* litigation."  ECF 167, at 3.  The new request, to *fully dissolve* the preliminary injunction, goes well beyond their stated purpose of intervention.  An intervenor "must join subject to the proceedings that have occurred prior to his intervention, he cannot unring the bell." C. Wright & A. Miller, Federal Practice and Procedure § 1920; *id* at n.9 ("Intervenor is bound by all prior orders and adjudications of fact and law as though he had been a party from the commencement of the suit." (citation omitted)).  Under this principle, as Intervenors moved in this case *after* the order of preliminary injunction was entered, they are bound by that order, and should not be able to "unring the bell" through a Rule 60 motion.

Maintaining the preliminary injunctions also makes sense on a practical level. Across several years, Plaintiffs briefed their motions for preliminary injunction against the Government Defendants for unlawful expenditures of the FY 2020 and FY 2021 appropriations.  In granting a preliminary injunction, this Court held that "Plaintiffs have demonstrated that they are 'likely to suffer irreparable harm in the absence of preliminary relief.'"  ECF 128, at 54 (quoting *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008)). Dissolving the preliminary injunction and allowing Government Defendants to expend funds from the FY 2021 border barrier appropriation on non-border barrier activities would re-instate that irreparable harm and expressly allow Intervenors to force the government to undertake projects that this Court has deemed "contrary to law." *Id.* at 51. In weighing the Intervenors' interests against those of the Plaintiffs in this case, the most prudent course of action would be maintenance of the status quo through the preliminary injunction while the Court considers the Intervenors' (futile) challenge to this Court's interpretation of the FY 2020 and FY 2021 appropriations.

## V.    Proceedings After September 30, 2025.

During the hearing on August 6, 2025, the Court requested the Parties' positions on how the Intervenors might proceed if the issues presented remain open following the close the FY 2021 appropriations funding on September 30, 2025. Plaintiffs take no position on this issue. As explained above, and consistent with this Court's preliminary and final injunctions, FY2020 subsection 209(a)(1) and corresponding FY 2021 subsection 210 do not permit expenditures on "mitigation and remediation." Intervenors' request to use those funds, as contemplated in their settlement agreement, is wholly inconsistent with that interpretation and should not be permitted.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants-Intervenors' motion to vacate the final judgment and permanent injunction, and dissolve the preliminary injunction.

Date: August 15, 2025

Respectfully submitted,

ANDREW BAILEY
Attorney General of Missouri

KEN PAXTON
Attorney General of Texas

/s/ *Louis J. Capozzi III*
LOUIS J. CAPOZZI III, #900187664DC*
Solicitor General
*Attorney-in-Charge*

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

SAMUEL FREEDLUND, #73707MO*
Deputy Solicitor General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

REED C. DEMPSEY, #1697941DC*
Deputy Solicitor General

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-1800
Fax (573) 751-0774
louis.capozzi@ago.mo.gov
samuel.freedlund@ago.mo.gov
reed.dempsey@ago.mo.gov

*/s/ Zachary L. Rhines*
ZACHARY L. RHINES
Special Counsel
*Attorney-in-Charge*
Texas Bar No. 24116957
Southern Dist. of Texas Bar No. 3688738

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
Southern Dist. of Texas Bar No. 3379673

*Counsel for Plaintiff*
*State of Missouri*

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Tel.: (512) 936-2567
Fax: (512) 936-0545
Zachary.Rhines@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov

*Admitted pro hac vice

*Counsel for Plaintiff State of Texas*

17

<u>/s/ *Austin R. Nimocks*</u>
AUSTIN R. NIMOCKS
*Attorney-in-Charge*

Texas Bar No. 24002695
S.D. Tex. Bar No. 2972032
austin@pntlawfirm.com

CHRISTOPHER L. PEELE
Of Counsel
Texas Bar No. 24013308
S.D. Tex. Bar No. 31519
chris@pntlawfirm.com

PEELE | NIMOCKS | TOTH
6836 Bee Caves Rd. Bldg. 3, Ste. 201
Austin, TX 78746
Phone: (512) 522-4893

*Counsel for Plaintiffs Texas General Land*
*Office and Commissioner Dawn*
*Buckingham, M.D.*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 3,985 words, exclusive of matters designated for omission, as counted by Microsoft Word.

/s/ *Louis J. Capozzi III*
Louis J. Capozzi III

## CERTIFICATE OF SERVICE

I certify that on August 15, 2025, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Louis J. Capozzi III*
Louis J. Capozzi III