IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., <br><br>                Plaintiffs,<br><br>                v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM,<br><br>                Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*,<br><br>                Defendants-Intervenors. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>                Plaintiffs,<br><br>                v.<br><br>DONALD J. TRUMP, *et al.*<br><br>                Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*,<br><br>                Defendants-Intervenors. | Civil Action No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |

**DEFENDANTS' RESPONSE TO MOTION TO VACATE JUDGMENT AND
PERMANENT INJUNCTION**

# **TABLE OF CONTENTS**

**BACKGROUND** .................................................................................................................. 2

    A.   Construction of Border Barriers In Compliance with the Court's Injunction ................. 2

    B.   Status of Intervenors ........................................................................................................ 4

          a.  Southern Border Constructors and RKE Contractors ............................................. 4

          b.  Texas Sterling ......................................................................................................... 5

          c.  Sierra Club and Southern Border Communities Coalition .................................... 6

    C.   Current Status of FY20 and FY21 Funds ........................................................................ 8

**ARGUMENT** ...................................................................................................................... 10

    A. Defendants Do No Oppose Permanent Vacatur of the Injunction Based on Changed Circumstances. .................................................................................................... 10

    B. Interim Relief Would Create Uncertainty and Risk About the Use of the FY21 Funds. . 12

**CONCLUSION** .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

8 U.S.C. § 1103 ........................................................................................................................... 8

31 U.S.C. § 1502 ........................................................................................................................... 9

31 U.S.C. § 1552 ........................................................................................................................... 8

31 U.S.C. § 1553 ....................................................................................................................... 8, 9

48 C.F.R. § 1.000 ......................................................................................................................... 4

90 Fed. Reg. 23946 (June 5, 2025) ............................................................................................... 9

90 Fed. Reg. 26060 (June 18, 2025) ............................................................................................. 9

90 Fed. Reg. 29574 (July 3, 2025) ............................................................................................... 8

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, Div. A, § 230, 133 Stat. 13, 28 ..... 5

Executive Order 14165 ............................................................................................................ 1, 2

Federal Rule of Civil Procedure 60 ....................................................................................... 11, 12

*Baum v. Blue Moon Ventures, LLC*,
   513 F.3d 181 (5th Cir. 2008) ................................................................................................ 11

*Biden v. Sierra Club*,
   142 S. Ct. 46 (2021) ............................................................................................................... 7

*Biden v. Sierra Club*,
   142 S. Ct. 56 (2021) ............................................................................................................... 7

*California v. Biden*,
   Case No. 4:19-CV-872-HSG ................................................................................................. 6

*California v. Biden*,
   Case No. 4:20-CV-1563-HSG ............................................................................................... 6

*California v. Trump*,
   963 F.3d 926 (9th Cir. 2020) ................................................................................................. 7

*Frew ex rel. Frew v. Hawkins*,
   540 U.S. 431 (2004) ............................................................................................................ 12

*Horne v. Flores*,
   557 U.S. 433–48 (2009) ...................................................................................................... 11

*SEC v. Novinger*,
   40 F.4th 297 (5th Cir. 2022) ................................................................................................ 11

*Sierra Club v. Biden*,
   Case No. 4:19-cv-00892-HSG (N.D. Cal.) ............................................................................ 6

*Sierra Club v. Biden*,
    Case No. 4:19-cv-01494-HSG (N.D. Cal.) ............................................................................... 6

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020) ................................................................................................... 7

*Sierra Club v. Trump*,
    977 F.3d 853 (9th Cir. 2020) ................................................................................................... 7

*Trump v. Sierra Club*,
    No 20-138 (U.S.) ..................................................................................................................... 7

*Trump v. Sierra Club*,
    No. 20-658 (U.S.) .................................................................................................................... 7

61 Comp. Gen. 609 (1982) .............................................................................................................. 10

DHS Border Wall Plan Pursuant to Presidential Proclamation 10142 .................................... 1-2

GAO, Principles of Federal Appropriations Law, 3th ed. 2004, ch. 5, (Washington, D.C. Jan. 2004) . 9, 10

Press Release, 100 Days of Making America Safe Again (April 28, 2025) .............................. 1

Press Release, DHS issues new waivers to expedite new borer wall construction in Arizona and New Mexico (June 5, 2025) ....................................................................................................... 1

Press Release, DHS awards contract for 27 miles of new border wall in Arizona; issues waiver to accelerate construction in Texas (June 18, 2025) ...................................................................... 1

Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to the Border Wall Construction, Proclamation No. 10142, 86 Fed. Reg. 7225 .......... 1, 10

## INTRODUCTION

Since the moment President Trump took office on January 20, 2025, "[i]t [has been] the policy of the United States to take all appropriate action to secure the borders of our Nation" including by "[e]stablishing a physical wall and other barriers[.]" Executive Order 14165, § 2. In just the first hundred days of this Administration, the Department of Homeland Security (DHS) had 85 miles of new border wall construction either planned or under construction. *See* Press Release, 100 Days of Making America Safe Again (April 28, 2025) (https://www.dhs.gov/news/2025/04/29/100-days-making-america-safe-again). DHS is issuing new waivers to expedite border wall construction, *see, e.g.*, Press Release, DHS issues new waivers to expedite new borer wall construction in Arizona and New Mexico (June 5, 2025) (https://www.cbp.gov/newsroom/national-media-release/dhs-issues-new-waivers-expedite-new-border-wall-construction-0), and awarding new contracts to construct border wall. *See, e.g.,* Press Release, DHS awards contract for 27 miles of new border wall in Arizona; issues waiver to accelerate construction in Texas (June 18, 2025) (https://www.cbp.gov/newsroom/national-media-release/dhs-awards-contract-27-miles-new-border-wall-arizona-issues-waiver. In short, the facts and circumstances of this case are now substantially different from the way things were when the Plaintiffs initiated this lawsuit in 2021.

Plaintiffs sued to force Defendants to spend the funds appropriated for barrier system construction on the construction of new physical barriers along the southern border. The focus of this lawsuit and the Court's permanent injunction was the border wall spending policies of the prior Administration. *See* Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to the Border Wall Construction, Proclamation No. 10142, 86 Fed. Reg. 7225, 7225 (Jan. 20, 2021); DHS Border Wall Plan Pursuant to

1

Presidential Proclamation 10142 (June 9, 2021) (ECF No. 66-3). Those policies are no longer in force and there is no dispute about the Trump Administration's commitment to the construction of new barriers along the southwest border. *See* Executive Order 14165 (revoking Proclamation 10142 and directing agencies to "immediately take all appropriate action, consistent with law . . . to construct additional physical barriers along the southern border"). Due to this significant change in circumstances, Defendants do not oppose permanent vacatur of the Court's injunction. However, Defendants oppose interim relief vacating the injunction temporarily, with the prospect that it could be reinstated later, an option that was raised at the August 6, 2025 Status Conference, because such relief would create legal and fiscal uncertainty about the obligation of any challenged funds during the interim period.

## BACKGROUND

**A. Construction of Border Barriers In Compliance with the Court's Injunction**

On March 8, 2024, the Court issued an order stating that CBP's FY20 and FY21 barrier system appropriations may only be used for the "construction of physical barriers, such as walls, fencing, buoys, etc." ECF No. 128 at 56. The Court's order prohibits "the Government and all its respective officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them" from obligating FY20 or FY21 barrier system funds "toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." *Id.* The Court's order was converted to a Final Judgment and Permanent Injunction, as clarified by the Courts' oral ruling of March 21, 2024, on May 29, 2024. *See* ECF 208. The Court issued a second clarifying order about drainage and erosion expenditures on February 7, 2025. *See* ECF No. 250.

Since March 2024, CBP has worked diligently to not only comply with the Court's

2

injunction but also make maximum use of the FY20 and FY21 funds in a manner that is consistent with the injunction. *See* Ninth Declaration of Paul Enriquez ¶ 8 (attached as Exhibit 1). In response to the Court's injunction, CBP took various actions to suspend, modify, or terminate, as appropriate, various contracts and interagency agreements that relied on the FY20 and FY21 barrier system funds to pay for projects and activities prohibited by the Court's injunction, such as installation of barrier system attributes, environmental mitigation projects, and replacement of existing barriers. *Id.* ¶ 9.

Additionally, CBP initiated a planning process to identify new border barrier construction projects that could be funded with FY20 and FY21 barrier system funds consistent with the Court's injunction. CBP focused its efforts on identifying areas along the southwest border without current pedestrian barrier, in United States Border Patrol's (USBP) highest priority areas, that would benefit from the construction of new physical barriers. *Id.* ¶ 10. Among other things, CBP conducted site visits and surveys of potential construction sites in California, Arizona, New Mexico, and Texas. *Id.* Further, CBP considered the improvements to border security and public safety likely to result from new barrier construction, focusing on areas without current pedestrian barrier that have experienced high levels of migration traffic. *Id.*

Based on this planning process, CBP identified new border barrier construction projects in California, Arizona, New Mexico, and Texas that it is executing with the FY20 and FY21 barrier system funds. *Id.* ¶ 11. Since the Court's injunction, CBP has used the FY20 and FY21 funds to award four construction contracts and 53 contract options for the construction of new border barrier. *Id.* ¶ 12. The total contract value of those contracts and contract options is approximately $727M. *Id.* When work under those contracts is complete, CBP will have constructed approximately 55 miles of new barrier in high priority locations in the USBP San Diego, Yuma,

3

Tucson, El Paso, and Rio Grande Valley Sectors. *Id.*

### B. Status of Intervenors

Prior to entry of the Court's injunction, Defendants intended to expend some of the now-enjoined FY20 and FY21 border barrier system appropriations on actions that would have benefited the intervenors. Defendants stopped funding these actions, and other activities, in compliance with the Court's injunction. A summary of the current status of each intervenor is set forth below.

#### a. Southern Border Constructors and RKE Contractors

In 2019, the Army Corps of Engineers awarded task orders under federal contracts to Southern Border Constructors (SBC) and RKE Contractors (RKE) to build border barrier projects in Texas. *See* ECF No. 148-1–3, ECF No. 149-1–2. The two contractors performed various activities in furtherance of barrier construction, including creating design plans for the barrier, acquisition and fabrication of barrier components, and installation of new barrier in the project areas. *See* ECF No. 148 at 2–3, ECF No. 149 at 2–3.

Following the President Biden's Proclamation in January 2021 requiring a re-evaluation of the use of funding concerning barriers on the southern border, the Army Corps of Engineers suspended and then subsequently terminated the task orders and contracts under which SBC and RKE had been performing work. *See* ECF No. 148-4–7, ECF No. 149-3–6. In accordance with the requirements of the Federal Acquisition Regulation, 48 C.F.R. § 1.000 *et seq.*, the Army Corps of Engineers started processing the contractors' termination settlement proposals. *See* ECF No. 148 at 4–5, ECF No. 149 at 4–5. That work was ongoing at the time of the Court's preliminary injunction. *See* ECF No. 148 at 4–5, ECF No. 149 at 4–5.

Although funding for the construction costs of the barrier system projects undertaken by SBC and RKE came from appropriations in prior years that were not affected by the Court's injunction, *see, e.g.*, Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, Div. A, § 230, 133 Stat. 13, 28, the Army Corps of Engineers was relying on DHS's FY21 barrier system funds to pay for its in-house labor costs to process and complete the contract termination claims. In light of the Court's injunction, the Army Corps of Engineers could no longer use the enjoined funds to pay for its internal labor costs to settle the terminated contracts and notified SBC and RKE of this issue. *See* ECF No. 148 at 5–6; ECF No. 149-5–6.

Since the Court's injunction, however, CBP has provided the Army Corps of Engineers with other funding that is not subject to the Court's injunction to pay for the in-house labor costs to process and complete SBC and RKE's contract termination claims. *See* Ninth Enriquez Decl. ¶ 18. This alternative funding has been in place for approximately 14 months. *Id.* The Army Corps of Engineers estimated that the alternative funds it still has on hand will cover at least five more months of in-house labor costs. *Id.* If current alternative funding is exhausted before resolving SBC and RKE's termination claims, CBP has other available funding separate from the FY21 enjoined funds that it can provide to USACE for any remaining in-house labor costs that would be required to resolve SBC and RKE's claims. *Id.* Any actual payments or settlements that are made to SBC and RKE to resolve their termination claims will be paid from the prior year appropriations that were used to fund the SBC and RKE contracts. *Id.* Those prior year appropriations are unaffected by the Court's injunction. *Id.*

### b. Texas Sterling

In 2022, CBP awarded a task order under a federal contract to Texas Sterling to remove old legacy fencing and install replacement gates and barrier in the USBP El Paso Sector. *See* ECF

No. 172-3.  This task order was awarded with FY20 and FY21 barrier system funds.  *See* Ninth Enriquez Decl. ¶ 19.  In February 2024, after certain tasks had been completed, CBP notified Texas Sterling that the agency had decided to descope several remaining components from the task order and directed Texas Sterling to cease those remaining construction activities.  *See* ECF No. 172-4.  CBP and Texas Sterling then began discussions to resolve outstanding claims associated with the replacement barrier construction performed under the task order and the descoping decision.[1]  *See* Ninth Enriquez Decl. ¶ 19.  Following entry of the Court's injunction, CBP notified Texas Sterling of the Court's decision and the agency's inability to pay costs prohibited by the injunction, such as payments for replacement barrier projects.  *See* ECF No. 172-1.  In September 2024, CBP issued a contract termination notice to Texas Sterling.  *See* Ninth Enriquez Decl. ¶ 19.  Texas Sterling has yet to submit a Termination Settlement Proposal to CBP.  *Id.*

      c. **Sierra Club and Southern Border Communities Coalition**

In 2018 and 2019, Sierra Club and Southern Border Communities Coalition (collectively, Sierra Club), along with a group of approximately 20 States, filed lawsuits in the Northern District of California challenging President Trump's decision to fund border barrier construction using Department of Defense and Department of Treasury funds.  *See Sierra Club v. Biden*, Case No. 4:19-cv-00892-HSG (N.D. Cal.); *Sierra Club v. Biden*, Case No. 4:19-cv-01494-HSG (N.D. Cal.); *California, v. Biden*, Case No. 4:19-CV-872-HSG; *California, v. Biden*, Case No. 4:20-CV-1563-HSG; *see also* Defs' Opp. to Pls.' Mot. for Prelim. Inj. at 5–6 (ECF No. 96) (summarizing litigation).  After various appeals at different stages of the proceedings, the Ninth Circuit

---

[1] Texas Sterling characterizes the descoping action as a termination of the contract for convenience. *See* ECF No. 172 at 5. Defendants do not agree with that characterization. The effect of descoping decision was among the issues under discussion at the time of the Court's injunction.

concluded that the federal government had not complied with various statutory requirements governing the use and transfer of military funds for border barrier construction. *See Sierra Club v. Trump*, 963 F.3d 874 (9th Cir. 2020); *California v. Trump*, 963 F.3d 926 (9th Cir. 2020); *Sierra Club v. Trump*, 977 F.3d 853 (9th Cir. 2020). At the time President Biden took office, the Supreme Court had granted *certiorari* in one set of cases and a second petition for a writ of *certiorari* was pending in another set of cases. *See Trump v. Sierra Club*, No 20-138 (U.S.); *Trump v. Sierra Club*, No. 20-658 (U.S.). Following the change in Administration, the Solicitor General advised the Supreme Court of the President Biden's border wall Proclamation and the agencies' new border wall funding plans. The Supreme Court vacated the Ninth Circuit's judgments and remanded the cases for the district court to "consider what further proceedings are necessary and appropriate in light of the changed circumstances." *Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *Biden v. Sierra Club*, 142 S. Ct. 56 (2021).

On remand, Sierra Club, the States, and the federal government jointly requested that the district court stay further proceedings and refer the cases to a magistrate judge for confidential settlement mediation. Two years of negotiations produced a settlement agreement that, among other things, committed the federal defendants to perform various actions to remediate and mitigate the construction impacts of the border barrier projects funded by military appropriations. The settlement provides that funding for that remediation and mitigation work would come from the fiscal year 2020 and 2021 barrier system appropriations that are subject to the Court's injunction. In accordance with the Court's decision that these funds are not available to pay for "mitigation and remediation efforts" or "other similar purposes," ECF No. 128 at 56, Defendants stopped implementation of those provisions of the settlement agreement that conflicted with the Court's injunction. Further, none of the other "buckets" of funding that Congress appropriated to

7

DHS in the subsection 209(a) appropriation is available to pay for settlement's remediation and mitigation work.[2]

### C. Current Status of FY20 and FY21 Funds

The period of availability for the FY20 barrier system funds expired on September 30, 2024, and they are no longer available for new obligations. Ninth Enriquez Decl. ¶ 13 n.1; Pub L. No. 116-93, Div. D, 133 Stat. at 2506. CBP currently has approximately $203 million in unobligated FY21 barrier system funds. Ninth Enriquez Decl. ¶ 13. The period of availability for those funds expires on September 30, 2025. *Id.*; *see* Pub L. No. 116-260, Div. F, 134 Stat. at 1452. After September 30, 2025, the FY21 barrier system funds will no longer be available for new obligations. *Id.; see* 31 U.S.C. § 1552–53. In light of the upcoming expiration date, CBP has a contracting and execution plan for the approximately $203 million in FY21 funds that remain unobligated, as follows:

- Approximately $153M of the remaining unobligated FY21 barrier system funds will be used to construct approximately 17 miles of waterborne barrier in the USBP Rio Grande Valley Sector. In order to ensure expeditious construction of the waterborne barrier, the Secretary of Homeland Security, pursuant to her authority under § 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended ("IIRIRA"), 8 U.S.C. § 1103 note, has issued a waiver for this project. 90 Fed. Reg. 29574 (July 3, 2025). CBP has solicited a contract for the project and plans to make contract award before

---

[2] The Court's injunction prohibits the use of FY20 and FY21 funds in the (a)(1) bucket. The FY20 and FY21 funds in subsections (2), (4), and (5) have expired and are no longer available to incur new obligations for anything. *See* Pub. L. No. 116-93, 133 Stat. at 2506; Pub. L. No. 116-260, 134 Stat. at 1452. The only non-enjoined FY21 funding potentially available for obligation before the end of the current fiscal year is from subsection 3, but that provision is limited to expenditures for "facility construction and improvements" and cannot be used for environmental remediation. *See* Pub. L. No. 116-93, 133 Stat. at 2511.

the end of the fiscal year.

- Approximately $25M of the remaining unobligated FY21 barrier system funds will be used to exercise contract options in furtherance of new barrier construction in the USBP Tucson Sector. Like the waterborne barrier contract noted above, the Secretary of Homeland Security has issued an IIRIRA waiver to ensure the expeditious construction of barrier in the USBP Tucson Sector. 90 Fed. Reg. 23946 (June 5, 2025). CBP has already awarded the base construction contract. CBP expects to exercise the contract options before the end of the fiscal year.

- Approximately $20M of the remaining unobligated FY21 barrier system funds will be used to exercise a contract option in furtherance of new barrier construction in the USBP Rio Grande Valley Sector. The Secretary has issued an IIRIRA waiver for the RGV barrier project. 90 Fed. Reg. 26060 (June 18, 2025). CBP has already awarded the base construction contract. CBP plans to award the option before the end of the fiscal year.

- The remaining approximately $6M in unobligated FY21 barrier system funds will most likely be used for change management for barrier contracts that are funded by the FY21 barrier system appropriation. Some portion of this funding may be used for support contracts or other programmatic costs. However, CBP expects that most of it will be used for change management. Even after the FY21 barrier system funds lapse, they will remain available for an additional five years for change management or upward adjustments on existing barrier contracts that are funded by the FY21 barrier system appropriation. 31 U.S.C. § 1502(a); 31 U.S.C. § 1553(a). It is standard practice for agencies to hold back some funding to ensure they can cover potential upward adjustments on existing contracts. *See,* GAO, Principles of Federal Appropriations Law, 3th ed. 2004, ch. 5, pg. 5-36

9

(Washington, D.C. Jan. 2004) ("In order to avoid over-obligating the original appropriation, the contracting officer must estimate the expected net additional obligations to insure that available appropriations are not committed to other purposes.") *citing* 61 Comp. Gen. 609, 612 (1982); B-192036, (Sept. 11, 1978).

- Between now and the end of fiscal year, CBP may also de-obligate FY21 funds from contracts that had to be suspended as a result of the Court's injunction. Consistent with the terms of the injunction, any funds that are de-obligated from suspended contracts will be used for costs associated with the construction of new barrier or held back for change management on existing FY21-funded contracts. CBP is planning to hold back approximately 13% of the awarded value of the existing FY21-funded barrier contracts (approximately $75M) to fund change management. This is consistent with the percentage of awarded value that CBP has held back for other construction contracts.

*See* Ninth Enriquez Decl. ¶ 13.

CBP has devoted substantial time and resources to planning the projects described above, including identifying areas for new barrier construction, preparing for potential real estate acquisitions, and planning the necessary contracting actions to execute the projects. *Id.* ¶ 14. Because the FY21 funds will lapse on September 30, 2025, any deviation from the contracting plan laid out above puts the remaining FY21 funding at risk of lapsing before the money can be obligated to new contracts. *Id.*

## ARGUMENT

### A. Defendants Do No Oppose Permanent Vacatur of the Injunction Based on Changed Circumstances.

While the prior Administration had a policy "that no more American taxpayer dollars be diverted to construct a border wall," Proclamation 10142, the Trump Administration is

10

aggressively pursuing new border wall construction. This represents a substantial change in circumstances in this litigation and the basis for the Court's injunction. For this reason, Defendants do not oppose permanent vacatur of the injunction.

Federal Rule of Civil Procedure 60 authorizes the Court to modify a final order when "applying it prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5). "A Rule 60(b)(5) motion is the appropriate vehicle for modifying a permanent injunction that has prospective effect, regardless of whether the modification expands restrictions or eliminates restrictions in the injunction." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008). The rule "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *SEC v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022) (cleaned up). The Supreme Court has explained that Rule 60(b)(5) "serves a particularly important function" in cases involving prospective injunctive relief where "changed circumstances" call for "reexamination of the original judgment." *Horne v. Flores*, 557 U.S. 433, 447–48 (2009). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Id.* at 447 (cleaned up).

Here, as discussed above, there has been a significant change in circumstances because it is now the Administration's policy to aggressively build new border barriers. The Court's injunction has served its purpose, and it is no longer needed to compel Defendants to spend appropriated funds on new border barrier construction. Defendants' recent actions demonstrate the full extent of this commitment: DHS has awarded new construction contracts, issued waivers to expedite construction, and undertaken an extensive planning process to prepare for new barrier

construction projects using the remaining FY21 funds. *See generally* Ninth Enriquez Decl. Where, as here, "the objects of the decree have been attained," the Court should ensure "responsibility for discharging the [government's] obligations is returned promptly to the [government] and its officials." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004).[3]

### B. Interim Relief Would Create Uncertainty and Risk About the Use of the FY21 Funds.

Defendants oppose temporary vacatur of the injunction subject to potential reinstatement, a possibility that was discussed at the August 6, 2025 Status Conference, because it would create uncertainty, put FY 2021 funds at risk of lapsing, and may still leave the Intervenors no better off than they are now. If the injunction is vacated temporarily subject to potential reinstatement, it is unclear whether Defendants would have the time and ability to change the current planned expenditures with the FY21 funds. The federal procurement process can be time-consuming and complex. Ninth Enriquez Decl. ¶ 15. It requires multiple steps, including the identification of new requirements, market research, acquisition plans, developing and issuing solicitation documents, obtaining proposals, and evaluating proposals before a contract can be awarded and funds obligated. *Id.* For each step in the process, the Federal Acquisition Regulation may impose various requirements, many of which add time to the procurement process. *Id.* For example, the government is typically required to issue a solicitation so interested parties can submit proposals. *Id.* After receipt of proposals, the government must evaluate each proposal. *Id.* After that review is completed, but prior to contract award, the government is typically required to document and explain its award decision. *Id.* Given the time required to complete these steps, any deviation from CBP's current contracting plan puts the FY21 funds at risk of lapse, as it is not at all clear

---

[3] Because changed circumstances under Rule 60(b)(5) are legally sufficient to authorize the Court to vacate the injunction, the Court need not reach the Intervenors' other theories of relief or revisit the merits of the Court's decision regarding the meaning of the subsection (a)(1).

that CBP can solicit, evaluate, and award new contracts before the end of the fiscal year. *Id.* Accordingly, a temporary vacatur of the injunction may not result in any new obligations beneficial to the Intervenors before the end of the fiscal year.

Additionally, temporary vacatur of the injunction would place Defendants in a precarious legal position given the prospect that the Court may reinstate the injunction at a later date. Even if Defendants could reverse the actions already taken toward obligation of the remaining FY21 funds and pivot toward projects and expenditures favored by the Intervenors in the time remaining before the funds expire, Defendants would be required to cancel those obligations if the Court reinstates the injunction. As we explained in other submissions, Defendants canceled previously awarded contracts and task orders that were inconsistent with this Court's injunction. *See* Ninth Enriquez Decl. ¶ 9. Defendants would have to do the same thing again if funds were obligated for expenses during an interim period when the injunction was not in place, but those expenses were later deemed to violate the injunction were it to take effect at a later date. None of the parties would be better off by such an outcome. And Defendants would almost certainly lose the ability to spend any such funds on projects consistent with the injunction because the funds will have already lapsed or there will be insufficient time to deobligate and subsequently reobligate the funds before September 30. Even if the Court provides interim relief and expedites proceedings, it is hard to imagine a scenario where there would be sufficient time to terminate the contracts awarded during that interim period, de-obligate the funds, and solicit and obligate those funds to new projects consistent with the injunction after the Court's final ruling and before September 30, 2025.

Furthermore, Defendants would have to consider this risk of permanently losing access to the funds when making obligation and contracting decisions if the injunction is vacated subject to potential reinstatement. Defendants have a fiscal responsibility to make decisions that diminish

13

the risk of appropriations lapsing and currently have a plan in place to ensure the remaining FY21 funds are spent appropriately. Given this Court's prior ruling on the interpretation of the statute and appropriate remedy, there is substantial risk that incurring expenses that might be contrary to the injunction during an interim period when the injunction is not in effect would result in potentially wasteful spending if the injunction were to come back into place, thus necessitating cancellation of those expenditures without any ability to reobligate the funds for lawful purposes.

For these reasons, Defendants respectfully request that the Court make a final ruling on Intervenors' motion and not grant any interim relief.

## CONCLUSION

For the foregoing reasons, Defendants do not oppose permanent vacatur of the injunction and respectfully urge the Court to make a final ruling on Intervenors' motion.

Dated:  August 15, 2025                                    Respectfully submitted,

                                                           BRETT A. SHUMATE
                                                           Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Samuel Bean*
SAMUEL BEAN (MD)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 455-9619
Samuel.B.Bean2@usdoj.gov

*Counsel for Defendants*

ALAMDAR S. HAMDANI
United States Attorney

/s/ *Daniel D. Hu*
DANIEL D. HU
Chief, Civil Division
Assistant United States Attorney
Southern District No. 7959
Texas Bar No. 10131415
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
Fax: (713) 718-3303
E-mail: Daniel.Hu@usdoj.gov

ALYSSA IGLESIAS
Assistant United States Attorney
Southern District of Texas No.: 3610302
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Alyssa.Iglesias@usdoj.gov

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I electronically filed a copy of the foregoing response memorandum. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

>                    */s/ Sam Bean*
>                    Sam Bean