IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office, Plaintiffs,<br>    v.<br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*, Defendants-Intervenors | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, Plaintiffs,<br>    v.<br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.,* Defendants.<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*, Defendants Intervenors | Civil Action No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |

**SIERRA CLUB INTERVENOR–DEFENDANTS' REPLY IN SUPPORT OF VACATUR**

Since the Court entered its preliminary injunction in March 2024, the foundation for that decree has disappeared. Three developments matter. First, the Fifth Circuit held that SCDI has a right to intervene, confirming that the permanent injunction was issued without hearing from parties whose interests it directly impairs. Second, the political branches have reversed course. The new administration rescinded Proclamation 10142 and the related memoranda and directed DHS and DoD to resume barrier construction—formally and practically eliminating the "no-construction" policy that this case was brought to enjoin. Third, time is running out. FY20 funds have lapsed and, according to the Ninth Enriquez Declaration, DHS has obligated or set aside nearly all FY21 funds, which will expire on September 30, 2025. In contrast, Congress has recently provided DHS with orders-of-magnitude more funding for barrier construction, further undermining any need to preserve a categorical bar on rider-authorized mitigation.

These "changed circumstances" warrant relief. *Biden v. Sierra Club*, 142 S. Ct. 56 (2021) (mem.); *Horne v. Flores*, 557 U.S. 433, 447-48 (2009). The United States does not oppose vacatur. Dkt. 267. The States do not carry their burden to justify continued, nationwide injunctive relief. As the record now stands, the injunction functions only to prevent the Government from fulfilling mitigation commitments identified in the July 2023 settlement agreement. Although that settlement has been on file here for more than a year, Dkt. 167-1, the Plaintiffs simply assume its commitments are unlawful without identifying a single settlement project that causes them harm. Indeed, the States never argue that settlement agreement projects—building wildlife passages operated by CBP, erosion and drainage control, culvert work, and related measures—injure them, that they are unlawful, or that blocking them is necessary to afford them complete relief. They are not entitled to the relief they have obtained. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2558 (2025)

("Complete relief is not a guarantee—it is the maximum a court can provide."). In fact, the Plaintiffs now concede that erosion and drainage control can be lawful. Dkt. 266 at 13-14.

The Plaintiffs further concede that Congress expressly authorized using (a)(1) funds for "operationally effective adaptations . . . that help mitigate community or environmental impacts," including consultation. Dkt. 266 at 5. They therefore do not defend the decree's categorical prohibition on using those funds "toward mitigation and remediation efforts." Dkt. 208 at 2. Their fallback, that "those funds are not available for mitigation or remediation projects in and of themselves," Dkt. 266 at 5, does not describe the settlement work. Each settlement agreement project is either expressly authorized mitigation or (1) logically related to the "construction of a barrier system," (2) not prohibited, and (3) not provided for in another appropriation. Dkt. 128 at 42-43 (stating the necessary expense doctrine).

This Court has not concluded otherwise. Its mandate was never to oversee the construction of a barrier system, and the Court disclaimed any intention to "micromanage" the outlay of FY21 dollars. ROA3766 ("I'm not going to be making . . . line-item decisions."). Yet that is the practical effect of the decree, which "needs to have at least a review at least at some high level." ROA.3784. The text of the injunction forecloses even rider-authorized mitigation, and the States are wielding it as such to block common-sense projects in other states that protect our national environmental and cultural heritage without impeding barrier system construction. The interpretive stakes are high for all parties and the public: environmental adaptation and remediation are integral to any lawful barrier program, and they are urgent to SCDI and the environments and borderlands communities it fights to protect.

This Court should vacate the permanent injunction under Rule 60(b)(4) and 60(b)(5). At a minimum, it should strike the prohibition on "mitigation and remediation efforts" from paragraphs 1-3, or modify the decree to state expressly that nothing in it bars obligations "authorized by CAA 2020 § 209(a)(1) and CAA 2021 § 210(a)(1)." That narrow correction avoids project-level supervision here and permits the court overseeing the settlement to adjudicate implementation. SCDI will pursue relief in the settlement court, but because this Court's injunction is the present obstacle to performance. SCDI respectfully requests the Court's urgent relief.

## I. ARGUMENT

The United States does not oppose vacatur. Dkt. 267. Plaintiffs' opposition rests on two arguments: (1) that vacatur would be "futile," and (2) every settlement-mitigation project is unlawful. Both are wrong.

First, vacatur would not be futile. Rule 60 requires the Court to reconsider its decree in light of (i) SCDI's now-recognized right to be heard and (ii) the material changes since 2024. Whether the Court ultimately grants similar relief is beside the point—the decree must be reassessed with SCDI at the table and on the current record. The Court may not pre-judge the merits to decide what process is due. *See, e.g.*, *Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 86-87 (1988).

Second, Plaintiffs are defending an entitlement, not equitable relief. The Plaintiffs are not claiming injury from SCDI's settlement agreement projects. This Court has never evaluated the lawfulness of these projects. Instead, the Plaintiffs claim a right to oversee the outlay of FY21 funds to ensure that no "funds from the FY 2021 appropriations would be spent in ways that . . . conflict with the plain language of the appropriations bill." Dkt. at 9 (cleaned up). The Plaintiffs

cannot show that such a power is within this Court's power to give, let alone that it is necessary to remedy the Plaintiffs' claimed fiscal injuries.

Third, Plaintiffs' own brief concedes what the statute says: § 209(a)(1)/§ 210(a)(1) permit "operationally effective adaptations … that help mitigate community or environmental impacts" as part of barrier-system construction. Having made that concession, they cannot justify a categorical bar on "mitigation and remediation efforts." At a minimum, the injunction must be modified to remove that prohibition.

The Court should vacate the permanent injunction under Rule 60(b)(4) and (5). In the alternative, it should strike the mitigation ban.

### A. Rule 60(b)(4): The permanent injunction must be vacated

Rule 60(b)(4) relief is mandatory when a judgment is entered "in a manner inconsistent with due process of law," i.e., without notice and a meaningful opportunity to be heard. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271–72 (2010). Under Rule 60(b)(4), a court has no discretion. "[T]he judgment is either void or it is not." *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986).

The United States agrees that vacatur is appropriate. Dkt. 267. Plaintiffs do not meaningfully address SCDI's due process showing.

SCDI moved to intervene "to be heard on the scope of the permanent injunction." Dkts. 167, 202. The Court denied intervention and then entered judgment. Dkt. 208. The Fifth Circuit has since reversed, holding SCDI is entitled to intervene as of right. No. 24-40447 (5th Cir. May 15, 2025). SCDI was therefore denied the due process that Rule 60(b)(4) protects. *Cf. Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 301–02 (5th Cir. 2015) ("The very purpose of

intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions.").

Plaintiffs reply that any violation was "harmless because the arguments SCDI claims a right to raise were already brought . . . and rejected." Dkt. 266 at 5-6 (citing *TSSAA v. Brentwood Acad.*, 551 U.S. 291, 303 (2007)). That misunderstands due process and misreads *Brentwood*. *Brentwood* involved an alleged evidentiary taint within an otherwise full hearing. The Court concluded that, given the extensive process afforded, any error was harmless beyond a reasonable doubt. 551 U.S. at 303 & n.4. This case presents a different scenario: SCDI was excluded from the proceeding entirely and the injunction issued after the denial of its right to intervene. Due process is about inputs, not outcomes. "[J]udicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471 (2000); *see also Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 85 (1988) (rejecting as "untenable" a requirement to show a meritorious defense before setting aside a judgment without proper notice).

Nor is it correct that SCDI's position has already been presented. The Court expressly declined to entertain SCDI's "fact-specific interests," deeming them outside of the scope of the parties' dispute. Dkt. 207 at 6. Plaintiffs' brief confirms the point. Rather than engage with specific settlement projects (which have been on file at Dkt. 167-1), they cite only generalized references to "environmental" or "remediation" spending in the parties' briefing. Dkt. 266 at 5-6. Even if the United States raised mitigation and remediation generally, or "settlement agreements" specifically, the Fifth Circuit found SCDI's interests were not adequately represented in this Court. No. 24-40447 at 8 n.2, 12 n.7.

Moreover, SCDI's Rule 60 motion turns on developments that post-date the 2024 orders—rescission of the challenged Proclamation and plans, the Administration's opposite construction directives, the Government's sworn description of how the decree uniquely blocks settlement mitigation, and the impending cancellation of FY21 funds—none of which could have been presented to the Court. Each of these is a potentially "meritorious defense" capable of affording SCDI some relief.

"Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.'" *Peralta*, 485 U.S. at 86-87 (quoting *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915)). The permanent injunction is void and must be vacated. *See Carter v. Fenner*, 136 F.3d 1000, 1003 (5th Cir. 1998) (vacating judgment under Rule 60(b)(4)); *Edwards v. City of Houston*, 78 F.3d 983, 989 (5th Cir. 1996) (intervenors on remand receive the full rights of parties).

### B. Rule 60(b)(5) (clause 2) requires vacatur

Rule 60(b)(5) authorizes relief when "the judgment is based on an earlier judgment that has been reversed or vacated." The clause is liberally construed, and the touchstone is whether the earlier ruling was a necessary element of the later one. *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385, 387 & n.11 (5th Cir. 2012) (cleaned up) ("Cases in which one judgment is 'based' on another are not that frequent or obvious," but the clause applies where the prior decision is "a necessary element of the [later one], giving rise, for example, to the cause of action or a successful defense.").

That is exactly this case. The final judgment and permanent injunction issued only after the Court denied intervention and expressly declined to consider intervenors' "fact-specific interests," reasoning that granting intervention "would significantly expand the scope of the issues and amount to the equivalent of starting five new lawsuits at a time when the case is on the doorstep of final judgment," and noting that "three of the five motions were filed after the existing Parties jointly moved for entry of final judgment." Dkt. 207 at 6–7. The decree itself records that it was granted on the parties' joint motion. Dkt. 208 at 1–2. As SCDI explained, and the States do not dispute, "[h]ad SCDI and other intervenors participated, the joint motion would have been disputed, and final judgment would not have issued on the same terms or timeline." Dkt. 256 at 7. In other words, the denial of intervention was the procedural predicate that made the decree possible.

The States' answer—that this "stretches the meaning of 'based on'" (Dkt. 266 at 5)—ignores *Lowry*'s instruction to construe clause 2 liberally, and its test of necessity. *Lowry* confirms the applicability of clause 2. There, reversal of a predicate coverage ruling reopened claims that had fallen only because that predicate existed. 690 F.3d at 385–87. So too here: once the Fifth Circuit reversed the intervention denial and recognized SCDI's right to be heard, No. 24-40447 (5th Cir. May 15, 2025), the foundation for the agreed final judgment evaporated. The decree was "based on" the earlier order excluding the parties who would have opposed it. With that order reversed, Rule 60(b)(5) permits, and in equity, compels, vacatur.

Here, the Court's own reasoning ties entry of judgment to the absence of intervenors, and the sequence and the record show the denial of intervention was not incidental but determinative. Because the Fifth Circuit has undone that predicate, this Court should vacate the final judgment and permanent injunction under Rule 60(b)(5), clause 2. (Clause 3 independently supports relief, as discussed *infra*.)

### C. Even if not void, continued enforcement is inequitable

Rule 60(b)(5) also provides relief where a judgment has been satisfied or where prospective enforcement is no longer equitable. Dkt. 256 at 7–10. Both apply here.

#### *1. The decree's purpose has been satisfied: the "no-construction" premise is gone.*

SCDI identified multiple material changes. Dkt. 256 at 8–10. First, the new Administration has rescinded Proclamation 10142 and the related memoranda and has directed DHS and DoD to construct additional physical barriers—the opposite of the policy this case was brought to enjoin. *Id.* at 8; *see also* Dkt. 267 at 6 ("[T]here is no dispute about the Trump Administration's commitment to the construction of new barriers along the southwest border"). Second, the factual and legal landscape has shifted: FY20 has lapsed; FY21 is near cancellation (Ninth Enriquez Decl., Dkt. 267-1); and Congress has provided orders-of-magnitude new funding for barrier systems, with additional appropriations to reimburse states' immigration-related costs. *See* Dkt. 256 at 9; 139 Stat. 72; 139 Stat. 392–93.

Plaintiffs reply that these developments do not "satisfy" an order "prohibiting the use of funds for activities outside … new wall." Dkt. 266 at 10. That misstates the decree's function. This Court fashioned an injunction to remedy an alleged refusal to build, not to permanently supervise line-item spending. *See* Dkt. 208 at 2 n.2 (noting Plaintiffs challenged only "one aspect" of the DHS Plan and the decree left the remainder intact). With the policy premise reversed and construction proceeding, the decree's core purpose is satisfied, and continued enforcement is unwarranted. *See Horne v. Flores*, 557 U.S. 433, 450–51 (2009) (once "a durable remedy has been implemented," ongoing relief is "not only unnecessary, but improper").

### 2. Plaintiffs' attempt to reframe their claims fails.

Plaintiffs now contend they challenged both a refusal to build and expenditures "inconsistent with" the riders. Dkt. 266 at 9–10. But neither the Fifth Circuit nor this Court understood the case that way. The court of appeals described the controversy as DHS's "decision not to construct any new border wall," not as an aggregation of project-by-project spending disputes. *GLO v. Biden*, 71 F.4th 264, 274 (5th Cir. 2023). This Court expressly declined to "get into the weeds" or micromanage expenditures. See ROA.3766; Dkt. 207 at 6. Plaintiffs themselves told this Court that the case concerned "not specific projects, but the overarching policy that the administration unlawfully adopted." Dkt. 138 at 16. Current briefing is consistent with that framing. The Plaintiffs do not claim that they are injured by or ask this Court to adjudicate the specific settlement projects.

### 3. Today, the decree operates only to block rider-authorized mitigation; Plaintiffs show no injury and no need for such breadth.

Nonetheless, the Plaintiffs claim an entitlement to block settlement agreement projects they have not specifically challenged. They claim this power through the decree, which "enjoined Government Defendants from spending … for mitigation and remediation efforts." Dkt. 266 at 10. That reveals a gulf between what Plaintiffs challenged, the cause of action through which they raised their claim, and the relief they have received. After *Trump v. CASA*, Inc., equitable relief "may extend no further than necessary to provide complete relief to each plaintiff." 145 S. Ct. 2540, 2558 (2025). The current injunction exceeds that limit. It bars mitigation everywhere, even though Plaintiffs neither object to nor are harmed by those measures.

Further, the Plaintiffs concede that the riders authorize "operationally effective adaptations … that help mitigate community or environmental impacts" as part of barrier-system construction.

Dkt. 266 at 5 (addressing CAA 2020 § 209(a)(1) and CAA 2021 § 210(a)(1)). That concession defeats any defense of the decree's categorical mitigation ban. The settlement's listed items fit the rider and are otherwise permissible necessary expenses. *See* Dkt. 128 at 42–43. Examples include: removal of construction debris (¶ 3); installation of small and large wildlife passages (¶¶ 4–7); erosion and drainage control (¶¶ 40, 42–44); culvert and trench remediation (¶¶ 45–46); restoration of impacted areas in NM and CA (¶¶ 20–29, 34–36); invasive-species management (¶ 33); decommissioning temporary roads/wells (¶¶ 38–39); livestock-fencing and trailhead remediation (¶¶ 41, 47); lighting studies and species monitoring (¶¶ 15–16, 53); and Phase-3 mitigation (¶¶54–55). Dkt. 167-1.

   4. *This case is moot and, if not, prospective enforcement is inequitable.*

Under the APA, a court may "hold unlawful and set aside agency action" that is contrary to law. 5 U.S.C. ¶ 706. The Plaintiffs challenged "not a regulation, but rather an agency memorandum which outlines how the agency intends to allocate appropriations." Dkt. 208 at 2 n.2; *see also* Dkt. 128 at 23 n.15 (describing the final agency action as "DHS's Plan"). Any formal agency action has been formally rescinded, and "there is no dispute about the Trump Administration's commitment to the construction of new barriers along the southwest border." Dkt. 267. "[T]his case is moot." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 102 (2013).

If Article III controversy remains, Rule 60(b)(5) still requires modification or dissolution. FY21 is nearly exhausted or allocated (Dkt. 267-1); Congress has since appropriated vastly more for barrier construction; and Plaintiffs identify no irreparable harm from allowing rider-authorized mitigation to proceed. *Winter* reminds that "an injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." 555 U.S. 7, 32 (2008). Whatever

justified a categorical, nationwide mitigation ban in 2024 does not justify it now. *See Horne*, 557 U.S. at 450–51.

The Court should vacate the judgment and permanent injunction under Rule 60(b)(5).

### D. The Court should modify or clarify the injunction

At a minimum, the decree should be corrected to remove the categorical bar on mitigation that Congress expressly authorized.

First, the decree conflicts with the riders' text. The injunction forbids obligating § 209(a)(1)/§ 210(a)(1) funds "toward mitigation and remediation efforts." Dkt. 208 at 2. But both FY 2020 and FY 2021 riders authorize barrier-system construction that "utilizes currently deployed steel bollard designs or operationally effective adaptations of such designs that help mitigate community or environmental impacts … including adaptations based on consultation with" affected jurisdictions. CAA 2020, Div. D, § 209(a)(1); CAA 2021, Div. F, § 210(a)(1). A decree cannot forbid what the statute permits.

Plaintiffs concede mitigation is authorized as part of construction. They acknowledge that the riders allow mitigation as part of barrier-system construction, arguing only that funds are not available for mitigation "in and of themselves." Dkt. 266 at 5. That concession eliminates any basis for a categorical ban and warrants conforming the decree to the statute.

SCDI has therefore proposed a narrow, simple solution. The Court can resolve this cleanly—without project-by-project supervision—by (a) striking the phrase "toward mitigation and remediation efforts" from ¶¶ 1–3, or (b) adding this clarification:

> "Nothing in this decree prohibits obligations or expenditures authorized by CAA 2020 § 209(a)(1) and CAA 2021 § 210(a)(1), including operationally effective

> adaptations that help mitigate community or environmental impacts of barrier-system construction, after consultation as those provisions require."

That language tracks Congress's text and lets the court overseeing the settlement adjudicate implementation, while preserving this Court's construction focus.

The record supports modification and avoids micromanagement. The settlement's listed items not only serve SCDI's interests, but the public interest as well. The projects identified, e.g., removal of construction debris; installation of small and large wildlife passages; erosion/drainage control; culvert and trench remediation; restoration in impacted NM/CA areas; invasive-species management; decommissioning temporary roads/wells; livestock-fencing and trailhead remediation; lighting studies and species monitoring; Phase-3 mitigation (Dkt. 167-1), are either expressly authorized by the riders' mitigation clause or are necessary incidents of barrier-system construction under the Court's stated necessary-expense principles. See Dkt. 128 at 42–43. And the Court has already made clear it does not intend to "get into the weeds and start managing this project." ROA.3766; see also Dkt. 207 at 6 (declining to expand into fact-specific project issues). The proposed clarification honors that stance.

The Plaintiffs respond that "the public is served when the law is followed," Dkt. 266 at 9, but the law to be followed is Congress's statute, and the statute authorizes mitigation efforts. In any event, the Plaintiffs have chosen not to argue that the settlement agreement projects conflict with the appropriations bill.

Post-*CASA*, equitable relief "may extend no further than necessary to provide complete relief to each plaintiff." 145 S. Ct. 2540, 2558 (2025). A universal prohibition on rider-authorized

mitigation, untethered to any showing that a specific mitigation measure harms these Plaintiffs, cannot stand. Narrowing the decree to the riders' own limits cures the overbreadth.

Plaintiffs suggest relying on the preliminary injunction if the permanent injunction is vacated. But a preliminary injunction merges into the permanent decree. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 317 (1999). In all events, for the reasons above, Plaintiffs have not satisfied the factors for maintaining any forward-looking ban on rider-authorized mitigation.

This Court should strike the words "toward mitigation and remediation efforts" from ¶¶ 1–3, or add the quoted clarification above. Either path aligns the decree with Congress's text, avoids project-level supervision here, and allows the settlement court to manage implementation.

## II. CONCLUSION

SCDI respectfully requests that this Court:

1. **VACATE** the Final Judgment and Permanent Injunction under Rule 60(b)(4) and, in the alternative, Rule 60(b)(5);
2. **DISSOLVE** the Preliminary Injunction as merged, moot, and prospectively inequitable; and
3. **DISMISS** the original claims as moot and lift any restriction that prevents DHS from using FY 2020-21 barrier-system funds for mitigation projects required by the July 2023 *Sierra Club* Settlement Agreement.

This relief will return the parties to the posture Congress envisioned, permit DHS to obligate FY 2021 funds before they cancel on September 30, 2025, and remove a decree that now frustrates—rather than advances—the public interest.

Respectfully submitted,

By: /s/*David A. Donatti*
 David A. Donatti (Bar No. 24097612)
Adriana C. Piñon (Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
ddonatti@aclutx.org
apinon@aclutx.org

Cecillia D. Wang*
My Khanh Ngo*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104

Telephone: (415) 343-0775
cwang@aclu.org
mngo@aclu.org

Gloria D. Smith**
SIERRA CLUB ENVIRONMENTAL
LAW PROGRAM
2102 Webster Street, Suite 1300
Oakland, CA 94612
Telephone: (415) 977-5532
gloria.smith@sierraclub.org

Ricardo A. Garza***
Texas State Bar No. 24109912
SDTX Bar No. 3336127
Southern Border Communities Coalition
Alliance San Diego
P.O. Box 2436
McAllen, TX 78502
(956) 605-5917; ricky@alliancesd.org

*Counsel for Intervenors*

*Admitted *pro hac vice*
**Attorney for Proposed Defendant-Intervenor Sierra Club only
***Attorney for Proposed Defendant-Intervenor Southern Border Communities Coalition only

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, I electronically filed a copy of the foregoing document. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Adriana Pinon*
Adriana Pinon