Case 7:21-cv-00272   Document 274   Filed on 09/15/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 15, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official Capacity as Commissioner of the Texas General Land Office, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 7:21-CV-00272 |
| DONALD J. TRUMP, in his official capacity as President of the United States of America; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, TROY A. MILLER, in his official capacity as Acting Commissioner of the United States Customs and Border Protection; UNITED STATES CUSTOMS AND BORDER PROTECTION, | § § § § § § § § § § § § § § | |
| Defendants, | § § | |
| v. | § § | |
| RANDY KINDER EXCAVATING, INCORPORATED, d/b/a RKE CONTRACTORS; POSILLICO CIVIL, INCORPORATED, COASTAL ENVIRONMENTAL GROUP, INCORPORATED; TEXAS STERLING CONSTRUCTION COMPANY; SIERRA CLUB; SOUTHERN BORDER COMMUNITIES COALITION, | § § § § § § § § § § § | |
| Defendants-Intervenors. | § § § | |

| | | |
|---|---|---|
| THE STATE OF MISSOURI; and<br>THE STATE OF TEXAS<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America; THE UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; RODNEY S. SCOTT, in his official capacity as Acting Commissioner of the United States Customs and Border Protection; UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>    Defendants,<br><br>v.<br><br>RANDY KINDER EXCAVATING, INCORPORATED, d/b/a RKE CONTRACTORS; POSILLICO CIVIL, INCORPORATED; COASTAL ENVIRONMENTAL GROUP, INCORPORATED; TEXAS STERLING CONSTRUCTION COMPANY; SIERRA CLUB; SOUTHERN BORDER COMMUNITIES COALITION,<br><br>    Defendants-Intervenors. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 7:21-CV-00420 |

2

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendants-Intervenors' Motion (1) to Vacate Final Judgment and Permanent Injunction, (Dkt. No. 256), and (2) to Dissolve the Preliminary Injunction, (*Id.*).

For the reasons discussed below, the Court **GRANTS** the Defendants-Intervenors' Motion to Vacate the Final Judgment and Permanent Injunction, and **DENIES** the Defendants-Intervenors' Motion to Dissolve the Preliminary Injunction.

## I. BACKGROUND

In 2019 and 2020, Congress appropriated a combined $2.75 billion to the Department of Homeland Security ("DHS") for the construction of a barrier system along the southwest border with funds to be obligated within five years. (Dkt. No. 260 at 3). This funding, provided through the Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209, 133 Stat. 2317, 2511 (2019), and the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57 (2020) [hereinafter the "CAAs"], supported the first Trump administration's border wall initiative. (*Id.*). After the 2021 change in administrations, President Biden issued an updated border wall policy through Proclamation 10142 on January 20, 2021, which declared "that no more American taxpayer dollars be diverted to construct a border wall." *See* Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to the Border Wall Construction, Proclamation No. 10142, 86 Fed. Reg. 7225–26 (Jan. 20, 2021); (Dkt. No. 1 at 21). On June 9, 2021, DHS implemented the revised priorities, which halted further wall construction, and redirected appropriated funds

3

toward environmental mitigation, remediating existing barriers, and assessing barrier effectiveness. (Dkt. No. 260 at 3).

In response, the General Land Office of Texas ("GLO") filed suit against Joseph Biden, Alejandro Mayorkas, and DHS on July 13, 2021, challenging the Biden administration's actions as both unconstitutional under the Separation of Powers, Spending, Take Care, and Presentment Clauses, and in violation of the Administrative Procedure Act ("APA"). (Dkt. No. 1). The States of Texas and Missouri (collectively with GLO, "State Plaintiffs") filed a similar action on October 21, 2021, against Biden, Mayorkas, DHS, Troy Miller, and the United States Customs and Border Protection ("CBP") (collectively, the "Federal Government Defendants"). (Dkt. No. 23 at 2-3). On November 29, 2021, another court within this District consolidated these two cases. (*Id.* at 3).

Three years of extensive litigation ensued, which included two appeals[1] to the Fifth Circuit. (Dkt. Nos. 44, 209). In 2023, the Fifth Circuit reversed the district court, which had dismissed some of the State Plaintiffs' claims for claim-splitting and others for lack of standing, and remanded the case for expedited consideration of the motion for preliminary injunction. *See General Land Office v. Biden*, 71 F.4th 264, 268 (5th Cir. 2023). The case was transferred to the undersigned on August 10, 2023. (Dkt. No. 92).

After extensive briefing, this Court issued a preliminary injunction on March 8, 2024. (Dkt. No. 128). The Preliminary Injunction barred the Federal Government

---

[1] *General Land Office v. Biden*, No. 22-40110, 2022 WL 3010699 (5th Cir. July 29, 2022) (per curiam); *General Land Office v. Biden*, 71 F.4th 264, 268 (5th Cir. 2023).

Defendants from using FY 2020 and FY 2021 CAA Subsection 209(a)(1) and Subsection 210 funds for "mitigation and remediation efforts, repair of existing barriers . . . or other similar purposes." (*Id.* at 51, 56). More specifically, the Preliminary Injunction limited Subsection 209(a)(1) expenditures to "new wall construction." (*Id.*). However, the Preliminary Injunction did not enjoin the Federal Government Defendants' use of Subsection 209(a)(2)–(a)(5) funds. (*See id.* at 56); *see also* §§ 209(a)(2)–(a)(5).

As the Court explained, Subsection 209(a) segregates funds into five distinct subsections or buckets. (*Id.* at 44–52). They are: (1) construction of a barrier system along the border, (2) acquisition and deployment of border security technology and trade and travel assets and infrastructure, (3) facility construction and improvement, (4) funding for integrated operations assets and infrastructure, and (5) mission support and infrastructure (a catch-all provision). (*Id.* at 128 at 44-52 (citing Subsection 209(a)(1–5), 133 Stat. at 2511)). The Preliminary Injunction only limited use of funds allocated to the first subsection—construction of a barrier system—strictly for "new wall construction." (Dkt. No. 128 at 51, 56).

On March 21, 2024, the Biden administration moved to clarify the scope of the Preliminary Injunction. (Dkt. No. 133). At a March 28 hearing, the Court emphasized that the Injunction prohibited the use of funds from Subsection 209(a)(1) for purposes other than constructing new physical barriers. (Dkt. No. 147 at 18, 23, 27–30) (transcript of motion hearing clarifying injunction). The funds allocated for the other subsections, Subsections 209(a)(2–5), were not at issue and were available to be used for the purposes provided in those subsections. (*Id.* at 5–6).

The Biden administration interpreted the Injunction "to preclude [federal agencies] from using DHS FY 2020/21 funds to pay" labor costs needed to administer many of the agencies' contractual obligations. (Dkt. No. 148 at 10–11); (Dkt. No. 260 at 5). Consequently, federal agencies issued suspension letters on March 28, 2024, informing the impacted parties of the Federal Government Defendants' interpretation of the Preliminary Injunction and the termination of their respective contracts. (*Id.*).

On April 8, 9, 15, and 19, 2024, several border wall contractors and environmental groups moved to intervene following receipt of the federal agencies' March 28 letters. (Dkt. Nos. 148, 149, 162, 167). Among these intervenors were three border wall contractors: Southern Border Constructors ("SBC"), Randy Kinder Excavating, Inc., ("RKE"), and Texas Sterling Construction, Co. ("TSC") (collectively, the "Border Wall Contractors" ("BWCs")). Despite its decision not to use Subsection 209(a)(1) funds for SBC's and RKE's barrier construction work, DHS had been using the FY 2021 appropriations to pay for its in-house labor costs to process and complete SBC's and RKE's contract termination claims following the Biden administration's decision to terminate their contracts under Proclamation 10142. (Dkt. No. 148 at 10–11); (Dkt. No. 149 at 11); (Dkt. No. 260 at 6). DHS, however, was using Subsection 209(a)(1) funds under its contract with TSC to remove old legacy fencing and to install gate-replacement projects that DHS suspended because of this Court's Preliminary Injunction. (*See* Dkt. No. 162 at 5–7).

Additionally, environmental groups—the Sierra Club and Southern Border Communities Coalition (collectively, the "Sierra Club Intervenors" or "SCIs")—moved to

intervene on April 19, 2024. (Dkt. No. 167); (Dkt. No. 260 at 6). The SCIs sought intervention to "seek clarification that the preliminary injunction, and any final judgment in this case, does not impact the government's ability to comply with the preexisting" settlement agreement with the Biden administration in previous litigation that conditioned DHS FY 2020 and FY 2021 funds for environmental and ecological mitigation projects. (*See* Dkt. No. 167 at 3); (Dkt. No. 260 at 6); (Dkt. No. 256 at 3–4).

On May 29, 2024, this Court denied the motions to intervene, (*see* Dkt. No. 207) (denying Dkt. Nos. 148, 149, 154, 167, 172), and entered a Final Judgment and Permanent Injunction, (Dkt. No. 208), consistent with the Court's March 8, 2024, Order, (Dkt. No. 208); (Dkt. No. 128). The BWCs and SCIs appealed the intervention denial. (Dkt. Nos. 209–12).

On May 15, 2025, the Fifth Circuit reversed and remanded, holding that both the BWCs and SCIs had timely sought intervention upon learning of the injunction's adverse effect on their interests and that the Federal Government Defendants no longer represented their interests. (Dkt. Nos. 259, 260). The Fifth Circuit mandate was issued July 7, 2025. (Dkt. No. 259 at 3). The Parties filed a Joint Status Report on July 21, 2025, outlining their post-remand positions. (Dkt. No. 254).

On July 25, 2025, the SCIs formally moved to vacate the Final Judgment and Permanent Injunction and to dissolve the Preliminary Injunction. (Dkt. No. 256). The Defendants-Intervenors' Motion raised multiple grounds under Federal Rule of Civil Procedure 60(b).

First, Defendant-Intervenors argue that the Permanent Injunction and Final Judgment are void because they were not permitted to intervene before they were entered. (*See* Dkt. No. 256 at 5–6). In their view, they were denied due process, which makes the injunction void under Rule 60(b)(4). (*See* Dkt. No. 256 at 5–6); Fed. R. Civ. P. 60(b)(4). They also contend that vacatur is required under Rule 60(b)(5) because the Final Judgment rests on the denial of intervention—an order the Fifth Circuit has since reversed. (*See* Dkt. No. 256 at 6–7); (Dkt. No. 260); Fed. R. Civ. P. 60(b)(5).

Second, the Defendant-Intervenors argue that continued enforcement of either the Permanent or Preliminary Injunction is inequitable because the injunctions' central mandate has already been satisfied and circumstances have changed. (Dkt. No. 256 at 7–10). They point to President Trump's revocation of Proclamation 10142, DHS's resumption of border-wall construction, new congressional appropriations for wall projects through FY 2029, and the imminent lapse of FY 2021 funds as changed circumstances that suggest applying the injunction prospectively is no longer equitable. (*See id.*) They further argue that the injunctions interfere with—in their view—congressionally authorized mitigation efforts, enforcement of a binding settlement agreement, and the Supreme Court's recent guidance narrowing injunctive relief. *See Trump v. CASA*, 606 U.S. \_\_\_\_, 145 S. Ct. 2540, 2558 (2025).

As an alternative to full vacatur, Defendants-Intervenors ask the Court to strike the broad bar on mitigation and remediation efforts from the injunction and emphasized that dissolution of the Preliminary Injunction must follow any vacatur of the Permanent Injunction as the two are functionally merged. (*Id.*). The Defendants-Intervenors contend

8

that the relief sought is necessary to correct constitutional defects, reflect the Fifth Circuit's reversal, and account for dramatic changes in the factual and legal landscape since the injunction issued. (*Id.*).

On August 15, 2025, the State Plaintiffs filed their opposition to Defendants-Intervenors' Motion, arguing that (1) the Final Judgment and Permanent Injunction are not void and should not be vacated, (2) the Court should not modify the Final Judgment and Permanent Injunction, and (3) the Court should not vacate the Preliminary Injunction even if the Court elects to vacate the Final Judgment and Permanent Injunction. (Dkt. No. 266). The same day, the Federal Government Defendants filed their response to the Defendants-Intervenors' Motion, where the Federal Government Defendants asserted that (1) they do not oppose permanent vacatur of the injunction based on changed circumstances and that (2) any interim relief would create uncertainty about the use of Subsection 209(a)(1). (Dkt. No. 267).

In a Reply in Support of Vacatur filed on August 22, 2025, Defendants-Intervenors reiterated (1) the Permanent Injunction must be vacated as void and that continued enforcement is inequitable, and (2) the Court should at least modify or clarify the Permanent Injunction. (Dkt. No. 268 at 4).

## II. DISCUSSION

### A. THE PERMANENT INJUNCTION AND FINAL JUDGMENT ARE VACATED

The Court grants the Defendants-Intervenors' Motion and vacates the May 29, 2024 Permanent Injunction and Final Judgment. *See* Fed. R. Civ. P 60(b)(4); (Dkt. No. 208); (Dkt. No. 256). A party seeking to intervene has standing to seek vacatur of a district

court order when an appellate court concludes that the district court erred in denying a motion to intervene. *See DeOtte v. State*, 20 F.4th 1055, 1067 (5th Cir. 2021) (citation modified). And an order is void "if the court that rendered it lacked jurisdiction . . . or it acted in a manner inconsistent with due process of law." *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015); *Callon Petrol. Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003); *Brumfield*, 806 F.3d at 301 ("The very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."); *Carter v. Fenner*, 136 F.3d 1000, 1003 (5th Cir. 1998) (vacating judgment where procedural safeguards were ignored). Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Jones v. Flowers*, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

Rule 60(b)(4) "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271–72, 130 S.Ct. 1367, 1377–79, 176 L.Ed.2d 158 (2010). In this case, Defendants-Intervenors were not permitted to participate in the proceedings prior to the entry of the Permanent Injunction and Final Judgment. Accordingly, the Permanent Injunction and Final Judgment are vacated under Rule 60(b)(4).

### B. THE PRELIMINARY INJUNCTION REMAINS IN EFFECT

Defendants-Intervenors' Motion to Dissolve the Preliminary Injunction, however, is denied. The Defendants-Intervenors moved to intervene *after* the Preliminary Injunction was issued. An intervenor "cannot change the issues framed between the original parties[] and must join subject to the proceedings that have occurred prior to his intervention; he cannot unring the bell." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1920 (3d. ed.); *see also id.* at n.8 ("Intervenor is bound by all prior orders and adjudications of fact and law as though he had been a party from the commencement of the suit.").

Defendants-Intervenors, now parties to this litigation, must take the litigation as they find it. Here, the BWCs and SCIs moved to intervene in this case *after* the March 8, 2024 Preliminary Injunction was entered and are therefore bound by it and cannot "unring the bell" through a Rule 60 motion. *Id.* All Parties and Intervenors now have an opportunity to present their arguments as to whether a Permanent Injunction should be entered and what its terms should be.

### C. JURISDICTION, STANDING, AND PROPOSED SCHEDULE AND TOPICS

The Supreme Court has emphasized that district courts do not have jurisdiction to decide certain claims for money damages brought against the federal government. *See, e.g., Dep't of Ed. v. California*, 604 U. S. ___, 145 S.Ct. 966, 221 L.Ed.2d 515 (2025); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669, at *2 (U.S. Aug. 21, 2025). And while Rule 24 of the Federal Rules of Civil Procedure governs intervention, it does not create jurisdiction where it otherwise does not exist. An intervenor must have Article

11

III standing to pursue relief that is broader than or different from that which is sought by a party with standing. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440, 137 S.Ct. 1645, 1651, 198 L.Ed 2d 64 (2017). Subject-matter jurisdiction is foundational and claims that require the unique jurisdiction of the Court of Federal Claims must be filed there regardless of intervention status.

Accordingly, the Court instructs the Parties to confer and submit a joint status report (1) identifying the Court's jurisdiction and the standing for all Parties, claims and relief, and (2) clarifying each Party's position as to how to proceed.

### III. CONCLUSION

Considering the foregoing, the Court **GRANTS** the Defendants-Intervenors' Motion to Vacate the Permanent Injunction and Final Judgment, **DENIES** the Defendants-Intervenors' Motion to Dissolve the Preliminary Injunction, and **ORDERS** the Parties to confer and submit a joint status report (1) identifying the Court's jurisdiction and the standing for all Parties, claims and relief, and (2) clarifying each Party's position as to how to proceed with a proposing a briefing schedule if appropriate.

It is SO ORDERED.

Signed on September 15, 2025.

                                               *Drew B. Tipton*
                                               **DREW B. TIPTON**
                                         **UNITED STATES DISTRICT JUDGE**