UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>      Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,<br><br>      Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al*.,<br><br>      Defendants-Intervenors. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>      Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*<br><br>      Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al*.,<br><br>      Defendants-Intervenors. | Civil Action No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |

## DEFENDANTS' MOTION TO DISMISS

This litigation over the allowed purpose for spending DHS' Fiscal Year 2020 ("FY 20") and Fiscal Year 2021 ("FY 21") border barrier appropriations is rendered moot by the lapse of those appropriations. Plaintiffs no longer have any interest in whether the appropriations could be spent only on constructing new border barrier or on remediation and mitigation projects because the appropriations can no longer be obligated for either purpose. Plaintiffs identified their injuries as resulting from Defendants' failure to build new border barrier with the FY 20 and FY 21 funds and that those injuries would be remedied by requiring Defendants to spend the appropriations on building new border barrier. But, because Defendants can no longer spend any remaining expired FY 20 and FY 21 funds on building new border barrier, there is no remedy the Court can order that would redress Plaintiffs' alleged injuries. Thus, the Court lacks subject matter jurisdiction and must dismiss the case.

## BACKGROUND

### A. FY 20 AND FY 21 BORDER BARRIER APPROPRIATIONS

In December 2019, Congress appropriated $1.375 billion dollars for FY 20 "for the construction of [a] barrier system along the southwest border[.]" Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209(a)(1), 133 Stat. 2317, 2511 (2019). For FY 21, Congress again appropriated $1.375 billion for the same purpose. Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57 (2020). For both appropriations, Congress provided the Department of Homeland Security ("DHS") up to five years to obligate the funds. 133 Stat. at 2506; 134 Stat. at 1452. As a result, the FY 20 funds expired on September 30, 2024 and the FY 21 funds expired on September 30, 2025.

### B. PRESIDENT BIDEN'S PROCLOMATION ON BORDER WALL CONSTRUCTION

On January 20, 2021, then-President Biden issued a proclamation stating although the "United States has a right and a duty to secure its borders and protect its people against threats," constructing "a massive wall that spans the entire southern border is not a serious policy solution" for targeting and addressing "genuine threats to our homeland security." *See* Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to the Border Wall Construction, Proclamation No. 10142, 86 Fed. Reg. 7225, 7225 (Jan. 20, 2021). At the proclamation's directive, the Department of War ("DOW") and DHS each paused or canceled their pending border barrier projects and each issued a plan that provided the redirection of funds that had been used for barrier construction. *See* Administrative Record, Dkt. No. 66-3. DHS's plan prioritized spending its FY 20 and FY 21 funds on installing barrier-system attributes that will make existing barriers more effective and remediating barrier projects formerly undertaken by DOW including action to address life, safety, and operational concerns. *See id.*

### C. PLAINTIFFS CHALLENGE DHS'S SPENDING PLAN

In July 2021, the Texas General Land Office, challenged DHS's spending plan in federal district court and was later joined in that challenge by the states of Texas and Missouri. Plaintiffs alleged that Defendants were refusing to spend the FY 20 and FY 21 funds on the construction of additional physical border barrier and were instead spending the funds for purposes not authorized by the appropriating statute, including mitigation and remediation. *See* 7:21-CV-00420, Dkt. No. 19 at 22. Plaintiffs asserted that they were harmed by Defendants' failure to spend the FY 20 and FY 21 border barrier appropriations on new border barrier construction because additional physical barriers would result in fewer aliens illegally crossing the border which would diminish the burden born by Plaintiffs of aliens illegally crossing the border. Memorandum Opinion & Order, Dkt. No.

128 at 10-19. Plaintiffs asked this Court to issue an injunction preventing Defendants from spending the FY 20 and FY 21 funds on unauthorized purposes which would result in DHS using those funds to build new border barrier. *Id.*

### D. THE COURT'S INJUNCTION

On March 8, 2024, this Court issued an order and preliminary injunction directing the FY 20 and FY 21 barrier systems appropriations only be used for the "construction of physical barriers, such as walls, fencing, buoys, etc." *Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710, 745 (S.D. Tex. 2024). The injunction prohibited "the Government and all its executive officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them . . . from obligating funds under Subsection 209(a)(1) – and corresponding funds under Section 210 – toward mitigation and remediation efforts, report of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." *Id*. The Court's order was converted to a Final Judgment and Permanent Injunction, as clarified by the Courts' oral ruling of March 21, 2024, on May 29, 2024. *See* Dkt. No. 208.

On September 15, 2025, the Court vacated the final judgment and permanent injunction on motion by Intervenors but clarified that the preliminary injunction remained in effect. *See* Dkt. No. 274.

### E. DEFENDANTS' COMPLIANCE WITH THE ORDER

Immediately following entry of Court's preliminary injunction, Defendants began working diligently to comply with the injunction but also make maximum use of the FY 20 and FY 21 funds in a manner that is consistent with the injunction. *See* 10th Enriquez Declaration ¶ 8 (attached). In response to the Court's injunction, U.S. Customs and Border Protection ("CBP") took various actions to suspend, modify, or terminate, as appropriate, various contracts and

interagency agreements that relied on the FY 20 and FY 21 barrier system funds to pay for projects and activities prohibited by the Court's injunction, such as installation of barrier system attributes, environmental mitigation projects, and replacement of existing barriers. *Id.* ¶ 9.

Additionally, CBP initiated a planning process to identify new border barrier construction projects that could be funded with FY20 and FY21 barrier system funds consistent with the Court's injunction. *Id.* ¶ 10. CBP focused its efforts on identifying areas along the southwest border without current pedestrian barrier in United States Border Patrol's ("USBP") highest priority areas, that would benefit from the construction of new physical barriers. *Id.* Based on this planning process, CBP used the FY 20 and FY 21 funds to award construction contracts for the construction of new border barrier in the USBP San Diego, Yuma, Tucson, El Paso, and Rio Grande Valley Sectors. Between entry of the Court's order in March 2024 and the expiration of the FY20 and FY21 funds, CBP obligated over $1.1B in FY 20 and FY 21 funding to contracts for the construction of new border barrier. *Id.* ¶ 11.

### F. CURRENT STATUS OF FY 20 AND FY 21 FUNDS

The period of availability for the FY 20 and FY 21 funds has expired and these appropriations may not be used for new obligations. Any remaining unobligated funds may only be used for change management or upward in-scope adjustments on existing barrier contracts that are funded by the FY 20 and FY 21 barrier system appropriation. 31 U.S.C. § 1502(a); 31 U.S.C. § 1553(a). It is standard practice for agencies to hold back some funding to ensure they can cover potential upward adjustments on existing contracts. 10th Enriquez Declaration ¶ 14.

### ARGUMENT

Federal courts only possess jurisdiction to resolve "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review[.]"

*Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). Thus, a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385- 86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

"Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Env't Conservation org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (internal quotations and citation omitted). If some intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party," the matter becomes moot. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 655 (1895)).

The lapse in FY 20 and FY 21 appropriations has rendered this case moot because Plaintiffs have no legal interest in the use for funds that can no longer be obligated. *See Already*, 568 U.S. at 91 (citation omitted) (A case becomes moot when "the parties lack a legally cognizable interest in [its[ outcome."). Their injury is no longer traceable to Defendants' conduct and the Court cannot provide any remedy capable of providing them relief. Plaintiffs filed suit seeking a remedy that would result in Defendants building more border wall with the FY 20 and FY 21 funds. Memorandum Opinion & Order, Dkt. No. 128 at 10-19. That is now impossible. 10th Enriquez Declaration ¶ 13. The remaining expired FY 20 and FY 21 funds cannot be obligated for any purpose, including for contracts for building more border wall. *Id.* The imposition of time limits on appropriations is one of the primary ways Congress exercises control over its Appropriations Clause power. Congress generally limits the availability of appropriations to a one-year period for the fiscal year in which the funds are appropriated. *See* 31 U.S.C. § 1301(c). Here, Congress

6

authorized DHS to obligate its border wall construction funds over a five-year period, but that authorization window has now closed. The Court cannot re-write an act of Congress to supersede the express limits Congress placed on the use of DHS's appropriations. *See* 31 U.S.C. § 1502(a) (stating that "the balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of availability"). Where, as here, the Court is incapable of providing Plaintiffs with relief, the matter is moot and must be dismissed for lack of jurisdiction. *See Gulf of Me. Fishermen's All. V. Daley*, 292 F.3d 84, 88 (1st Cir. 2002) ("A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will address the alleged injury.").

Plaintiffs established standing in this case by characterizing their injury as resulting from the illegal entry of aliens and tracing it to Defendants' failure to build new border wall with the FY 20 and FY 21 funds. *See* Memorandum Opinion & Order, Dkt. No. 128 at 10-19. Thus, Plaintiffs stated their legally cognizable interest as their desire to have Defendants comply with Congress's instructions to construct additional border walls to remedy their injury of additional costs due to the alleged increase in the illegal entry of aliens absent the border walls. *Id*. But any residual expired funds cannot be obligated to new border wall contracts because the statutory obligation period has expired.[1] For the same reason, Defendants cannot obligate any remaining funds for any impermissible purpose. Because the alleged injury cannot be traced to Defendants' policy or action, or redressed by a Court order in this case, Plaintiffs cannot show any continued interest in the FY 20 and FY 21 funds and the case must be dismissed.

---

[1] Additionally, Defendants are no longer failing to build new border wall with the FY 20 and FY 21 funds because they have, consistent with the Court's injunction, obligated over $1 billion to contracts for the construction of new border barriers.

7

To the extent Plaintiffs characterize their continued interest in ensuring that the FY 20 and FY 21 funds are not used to pay border barrier contractors, some of whom are their own citizens, for work performed prior to the Court's order that was not for a permissible purpose under the injunction, the only interest they assert is making sure the law is followed. They have no personal stake in that – to the contrary, one would expect that they would want their citizens to be paid for work performed. That does not sustain the Court's jurisdiction. Plaintiffs would merely be asserting an "undifferentiated, generalized grievance about the conduct of government." *Lance v. Coffman*, 549 U.S. 437, 442 (2007). The Supreme Court has long held that federal jurisdiction cannot be sustained "based only on an 'asserted right to have the Government act in accordance with the law.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation omitted).

## CONCLUSION

For the reasons statement above, this case should be dismissed as moot.

Dated: March 2, 2026

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

/s/ *Samuel Bean*
SAMUEL BEAN (MD)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, DC 20005
Tel: 202-455-9619
Samuel.B.Bean2@usdoj.gov

*Counsel for Defendants*