IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, *et al.,* <br><br> Plaintiffs, <br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants | No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, <br><br> Plaintiffs, <br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | No. 7:21-cv-00420 <br> (formerly No. 6:21-cv-00052) <br> Hon. Drew B. Tipton |

**TENTH DECLARATION OF PAUL ENRIQUEZ**

I, Paul Enriquez, declare as follows:

1. I am the Director, Infrastructure Portfolio, U.S. Border Patrol Program Management Office Directorate ("PMOD"), U.S. Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS"). I have held this position since January 2023 and support the planning and execution of border infrastructure projects from construction to

maintenance. From May 2021 to December 2022, I served as the Deputy Director for the Infrastructure Portfolio and from August 2018 to May 2021, I served as the Real Estate and Environmental Director for the Infrastructure Portfolio. From 2013 to August 2018, I was the Real Estate and Environmental Branch Chief for the Border Patrol and Air and Marine Program Management Office ("BPAM"), Facilities Management and Engineering, Office of Facilities and Asset Management. From 2011 to 2013, I was employed as an Environmental Protection Specialist in the BPAM office. In that role, I performed environmental analyses for various border infrastructure projects. From 2008 to 2011, I was a contractor assigned to the BPAM office and provided environmental support on various border infrastructure projects.

2. CBP is the DHS component with primary responsibility for border security. CBP constructs, operates, and maintains border infrastructure necessary to deter and prevent illegal entry on the southern border.

3. Within CBP, PMOD has expertise in managing and executing border infrastructure projects. PMOD is tasked with managing the schedule, finances, real estate acquisition, environmental planning, and construction of the border infrastructure system along the U.S. border.

4. Based upon my current and past job duties, I am familiar with the funding appropriated to CBP for barrier construction, the obligations and projects associated with such funding, and the process by which new barrier infrastructure is constructed.

5. I previously submitted declarations on December 8, 2021, July 12, 2022, August 18, 2023, September 27, 2023, October 17, 2023, March 14, 2024, March 21, 2024, November 22, 2024, and August 15, 2025, that outlined, among other things, how CBP was using the appropriated funds it received in fiscal years ("FY") 2020 and 2021 for barrier system and the steps CBP

is taking to comply with the Court's order of March 8, 2024, and the Permanent Injunction.

6. This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

## BACKGROUND

7. On March 8, 2024, the Court issued an order stating that CBP's FY20 and FY21 barrier system appropriations may only be used for the "construction of physical barriers, such as walls, fencing, buoys, etc." The Court's order prohibits "the Government and all its respective officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them" from obligating FY20 or FY21 barrier system funds "toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." The Court's order was converted to a Final Judgment and Permanent Injunction, as clarified by the Courts' oral ruling of March 21, 2024, on May 29, 2024. The Court issued a second order clarifying the permanent injunction on February 7, 2025.

8. CBP worked diligently to not only comply with the Court's injunction but also make maximum use of the FY20 and FY21 funds in a manner that is consistent with the injunction.

9. In response to the Court's injunction, CBP took various actions to suspend, modify, or terminate, as appropriate, various contracts and interagency agreements that relied on the FY20 and FY21 barrier system funds to pay for projects and activities prohibited by the Court's injunction, such as installation of barrier system attributes, environmental mitigation projects, and replacement of existing barriers.

10. Additionally, CBP initiated a planning process to identify new border barrier construction projects that could be funded with FY20 and FY21 barrier system funds consistent with the

Court's injunction. CBP focused its efforts on identifying areas along the southwest border without current pedestrian barrier in United States Border Patrol's ("USBP") highest priority areas, that would benefit from the construction of new physical barriers.

11. Based on this planning process, CBP used the FY20 and FY21 funds to award construction contracts for the construction of new border barrier in the USBP San Diego, Yuma, Tucson, El Paso, and Rio Grande Valley Sectors. Between entry of the Court's order in March 2024 and the expiration of the FY20 and FY21 funds, CBP obligated over $1.1B in FY20 and FY21 funding to contracts for the construction of new border barrier.

## STATUS OF THE FY20 AND FY21 FUNDS

12. The period of availability for the FY20 funds expired on September 30, 2024. The period of availability for the FY21 funds expired on September 30, 2025.

13. Because the period of availability for the FY20 and FY21 funds has expired, they may not be used for new obligations.

14. Any unobligated FY20 and FY21 funds may only be used for change management or upward in-scope adjustments on existing barrier contracts that are funded by the FY20 and FY21 barrier system appropriation. 31 U.S.C. § 1502(a); 31 U.S.C. § 1553(a). It is standard practice for agencies to hold back some funding to ensure they can cover potential upward adjustments on existing contracts.

15. Unobligated FY20 funds will remain available for upward adjustments or change management until September 30, 2029. Unobligated FY21 funds will remain available for upward adjustments or change management until September 30, 2030. Upon the expiration of those additional periods of availability for change management and upward adjustments, the remaining unobligated FY20 and FY21 funds will not be available for any purpose and must

be returned to the Treasury.  31 U.S.C. § 1552.

This declaration is made pursuant to 28 U.S.C. 1746.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of February 2026

_____
Paul Enriquez
Infrastructure Portfolio Director
Program Management Office Directorate
U.S. Border Patrol