**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*<br><br>Defendants.<br><br>*and*<br><br>SIERRA CLUB, *et al.*<br><br>Defendants-Intervenors | No. 7:21-cv-00420<br>(formerly No. 6:21-cv-00052) |
| THE GENERAL LAND OFFICE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,<br><br>Defendants.<br><br>*and*<br><br>SIERRA CLUB, *et al.*<br><br>Defendants-Intervenors | No. 7:21-cv-00272 |

1

## PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS TO DISMISS [287, 288, 289]

This case is not moot. Unspent FY 20 and FY 21 funds still exist and the Court's temporary injunction ensures those funds are not inappropriately spent—exactly what Plaintiffs asked for in their complaints and what the Court awarded in its injunctive relief.

### ARGUMENT

To advocate for mootness, the Federal Defendants and Intervenor Defendants (herein collectively "Defendants") erect various strawmen to divert the Court's attention from the fact that *all* FY 20 and FY 21 funds have not yet been *spent*.

### *Obligation Is Not The Sole Focus*

As a first matter, Defendants seize upon whether funds have been "obligated." But Plaintiffs' lawsuits and requests for relief never hinged exclusively on what was "obligated," but what is being spent. *Inter alia*, Plaintiffs requested that the Court:

f.    Enjoin[] DHS and Secretary Mayorkas from *reallocating* or otherwise *diverting* funds appropriated and/or obligated for border wall construction projects in Texas, including with respect to the RGV-09 Project and GLO Farm, and enjoining DHS from permitting border wall appropriations to expire or be used for non-appropriated purposes;

g.    Enjoin[] DHS and Secretary Mayorkas from *diverting* funds appropriated for the construction of border walls in Texas, including with respect to the RGV-09 Project and GLO Farm, to other projects, including DoD projects or Treasury Forfeiture Funds projects, and to other uses that do not involve the construction of border barriers;

. . .

c.    Compel Defendants to *spend* the funds appropriated for "construction of barrier system along the southwest border" for that very purpose;

2

e.       Issue preliminary and permanent injunctive relief requiring Defendants nationwide to *spend* the funds appropriated for "construction of barrier system along the southwest border" for that very purpose;

First Am. Compl. of the Texas Gen. Land Office and [Dawn Buckingham, M.D.], No. 7:21-cv-00272, Dkt. 34 at p. 49 (emphasis added); Compl. [of Mo. & Tex.], 7:21-cv-00420, Dkt. 1 at p. 36 (emphasis added).

It is the Federal Defendants' flexible view of the CAAs that led to the necessity of Plaintiffs' lawsuits and the Court's injunctive relief in the first place. As noted by the Court, the Federal Defendants "cancelled most projects that were directed toward building additional walls and transferred all the existing barrier infrastructure previously funded by the DoD to DHS's control." Mem. Op. & Order, Dkt. 128 at 5. "Among other goals, DHS contemplated using these funds from the CAAs to remediate projects that were 'in various stages of completion' to ensure that they were safe and stable." *Id*. But the Court found that "the bulk of the Government's obligations in the Plan do not comply with Subsection 209(a)(1), which requires that those appropriations be obligated for the construction of barriers at the Southwest border." *Id*. at 52.

While the Federal Defendants' ability to further obligate the FY 20 and FY 21 funds may have expired, absent the Court's injunction, their ability to otherwise *spend* those funds in a manner that does not comply with Subsection 209(a)(1) still exists. As confirmed by the Federal Defendants,

> Unobligated FY20 funds will remain available for upward adjustments or change management until September 30, 2029. Unobligated FY21 funds will remain available for upward adjustments or change management until September 30, 2030. Upon the expiration of those

3

additional periods of availability for change management and upward adjustments, the remaining unobligated FY20 and FY21 funds will not be available for any purpose and must be returned to the Treasury. 31 U.S.C. § 1552.

Tenth Decl. of Paul Enriquez ¶ 15, Dkt. 287-1. The language of subsection (a) of Section 1552 confirms Mr. Enriquez's understanding—that the unobligated FY 20 and FY 21 funds will be available for expenditure by the Defendants until September 30, 2029 and September 30, 2030.

On September 30th of the 5th fiscal year after the period of availability for obligation of a fixed appropriation account ends, the account shall be closed and any remaining balance (whether obligated or unobligated) in the account shall be canceled and thereafter shall not be available for obligation or expenditure for any purpose.

31 U.S.C. § 1552(a); *see Cty. of Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 778 F.3d 412, 417 n.8 (2d Cir. 2015) (explaining that after an appropriation expires, unallocated funds remain in an "'expired account,' where they will 'retain their fiscal year identity . . . for that appropriation for an additional five fiscal years'" (quoting 1 Gov't Accountability Office, Principles of Federal Appropriations Law (GAO Redbook) 5–67, 5–72 (3d ed. 2004) (ellipsis in original)).

According to the Federal Defendants, following the entry of this Court's preliminary injunction, they worked to address existing contracts entered with the FY 20 and FY 21 monies.

U.S. Customs and Border Protection ("CBP") took various actions to *suspend, modify, or terminate*, as appropriate, various contracts and interagency agreements that relied on the FY 20 and FY 21 barrier system funds to pay for projects and activities prohibited by the Court's injunction, such as installation of barrier system attributes, environmental mitigation projects, and replacement of existing barriers.

Fed. Defs.' Mot. to Dismiss, Dkt. 287 at 4–5 (citing Tenth Decl. of Paul Enriquez ¶ 9,

4

Dkt. 287-1) (emphasis added). But if the Court's injunction is lifted and the case dismissed, there is nothing that precludes the Federal Defendants from reinstating contracts that were "suspend[ed]" or "modify[ied]" or "terminate[d]" back to their original form and expending the remaining FY 20 and FY 21 monies in a manner presently precluded by the Court's injunction.

For *all* pre-injunction contracts, the monies were already obligated and, in the opinion of the Federal Defendants, properly obligated. If the injunction is lifted and this case is dismissed, all pre-injunction contracts may arguably be revived by the Federal Defendants under their original understanding and interpretation of the CAAs. *See* 1 Gov't Accountability Office, Principles of Federal Appropriations Law (GAO Redbook) 5–67, 5–72 (3d ed. 2004) (explaining that during the five-year period, the funds cannot be used to incur new obligations, but they may be used to pay obligations that are "properly chargeable to the account prior to its expiration."); 31 U.S.C. § 1502(a); 31 U.S.C. § 1553(a).

And absent this Court's injunction, and with no other existing presidential proclamations or agency actions to restrain the Federal Defendants' original interpretation of the CAAs, the use of the remaining funds to unsuspend or reinstate the contracts of the Intervenor Defendants, or other similarly situated contractors, is possible and perhaps even likely. Thus, contrary to the suggestion of the Sierra Club Defendants Intervenors ("SCID") (Dkt. 288 at 4), the voluntary cessation exception is applicable here. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009), aff'd sub nom. *Sossamon v. Texas*, 563 U.S. 277 (2011) ("the voluntary cessation

of a complained-of activity by a defendant ordinarily does not moot a case: If defendants could eject plaintiffs from court on the eve of judgment, then resume the complained-of activity without fear of flouting the mandate of a court, plaintiffs would face the hassle, expense, and injustice of constantly relitigating their claims without the possibility of obtaining lasting relief.").

Additionally, because the Intervenor Defendants instituted their lawsuits (interventions) before the September 30, 2024 obligation expiration date of the FY 20 funds and the September 30, 2025 obligation expiration date of the FY 21 funds, the Intervenor Defendants could maintain an argument that they are entitled to both FY 20 and FY 21 monies under "an equitable doctrine has been fashioned by the federal courts in recent years to permit funds to be awarded to a deserving plaintiff even after the statutory lapse date, as long as the lawsuit was instituted on or before that date." *W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler*, 734 F.2d 1570, 1576–77 (D.C. Cir. 1984) (citations omitted); *see City of Hous., Texas v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426–27 (D.C. Cir. 1994) (providing an overview of the doctrine).

While it does not appear that the Fifth Circuit has yet addressed this equitable doctrine, the Ninth Circuit has embraced it. *See Wash. v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1141 (9th Cir. 2025). As the Court is aware, the SCIDs are simultaneously pursuing legal relief in the Northern District of California. *See Sierra Club v. Trump*, No. 4:20-cv-01494 (N.D. Cal.). (The California litigation has been discussed at length before this Court.) Absent this Court's injunction, the California federal courts may grant SCIDs request for relief and once again divert FY 20 and FY 21 funds in a

6

manner inconsistent with this Court's opinion.

*Article III Standing*

As determined by the Court, Plaintiffs have standing and that standing is premised on "show[ing] that if the funds in question are not *spent* on additional border walls, Texas would incur unrecoverable costs[, . . .] that DHS's diversion of the FY 2020 and FY 2021 funds was a de facto cause of their injuries[, . . . and] that their injuries are likely to be redressed by a favorable judicial decision." Mem. Op. and Order at 10, 15, 18, Dkt. 128 (addressing injury-in-fact, traceability, and redressability questions of Article III standing).

All three of these elements still exist. The Defendants have FY 20 and FY 21 monies and control over those monies. In the absence of the Court's injunction, the Defendants can spend those monies, contrary to the Court's interpretation of the 2020 and 2021 CAAs, on something other than physical barriers at the Southwest border.

Plaintiffs maintain Article III standing and an ongoing interest in seeing that all FY 20 and FY 21 monies are *spent* in accordance with the CAAs and this Court's ruling. That ongoing interest of Plaintiffs will continue until one of three conditions occurs:

(1)     September 30, 2030 arrives;

(2)     All FY 20 and FY 21 monies are fully spent/exhausted – not just obligated; or

(3)     All remaining FY 20 and FY 21 monies are returned to the Treasury.

This is especially so regarding the Defendant Intervenors. As acknowledged by Defendant Intervenor Texas Sterling, its contract was one of the many that was initially "suspend[ed]" and later "terminate[d]." Tex. Sterling's Mot. to Dismiss,

7

Dkt. 289 at 3. The SCIDs complain that monies from FY 20 and FY 21 are not being spent in furtherance of a settlement agreement that "requires the United States to allocate $45 million for projects to offset or mitigate the impacts of the unlawful border wall construction." Dkt. 167 at 2–3.

*Proclamation No. 10142*

The rescission of Proclamation No. 10142 by President Trump does not alter the above analysis. This is yet another strawman erected by the Defendants. While President Trump did rescind Proclamation No. 10142, he did not replace that Proclamation with a new executive order conforming to this Court's interpretation of the CAAs. Moreover, the Court did not enjoin Proclamation No. 10142, but the agency action by DHS that followed Proclamation No. 10142 and expended the FY 20 and FY 21 monies in a manner inconsistent with the CAAs.

Moreover, since Proclamation No. 10142 was rescinded by President Trump, DHS has not issued any form of general agency action, rule, memorandum, or otherwise that may stay the hands of its actors in conformity with this Court's interpretation of the CAAs the official policy of the Federal Defendants. In fact, other than acts of Congress, this Court's March 8, 2024 Memorandum Opinion and Order (Dkt. 128) is the only legal authority that binds the Defendants regarding the unspent FY 20 and FY 21 funds.

And in as much as this dispute is the product of agency action following multiple competing presidential proclamations, it is noteworthy that a new presidential administration will take office in January 2029—in time to do something

entirely different (and perhaps even inappropriate) with the unspent FY 20 and FY 21 monies, absent this Court's injunction.

## CONCLUSION

Defendants' myopic focus on the expiration of the obligation deadlines ignores the remaining unspent FY 20 and FY 21 monies and that those monies, absent the Court's injunction, can be spent by DHS on any or all pre-injunction contracts in accordance with its prior interpretation and understanding of the CAAs. Plaintiffs' standing is undisturbed and the Court's injunction continues to provide relief to Plaintiffs.

The motions to dismiss should be denied and Plaintiffs respectfully request the Court hold a scheduling conference and/or issue a scheduling order so that the case may proceed accordingly.

Date: April 9, 2026

ANDREW BAILEY
Attorney General of Missouri

/s/ *Louis J. Capozzi III*
LOUIS J. CAPOZZI III, #900187664DC*
Solicitor General
*Attorney-in-Charge*

SAMUEL FREEDLUND, #73707MO*
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-1800
Fax (573) 751-0774
louis.capozzi@ago.mo.gov
samuel.freedlund@ago.mo.gov

*Counsel for Plaintiff*
*State of Missouri*

*Admitted *pro hac vice*

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

/s/ *Zachary L. Rhines*
ZACHARY L. RHINES
Special Counsel
*Attorney-in-Charge*
Texas Bar No. 24116957
Southern Dist. of Texas Bar No. 3688738

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
Southern Dist. of Texas Bar No. 3379673

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Tel.: (512) 936-2567
Fax: (512) 936-0545
Zachary.Rhines@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov

*Counsel for Plaintiff State of Texas*

10

/s/ *Austin R. Nimocks*
AUSTIN R. NIMOCKS
*Attorney-in-Charge*

Texas Bar No. 24002695
S.D. Tex. Bar No. 2972032
austin@pntlawfirm.com

CHRISTOPHER L. PEELE
Of Counsel
Texas Bar No. 24013308
S.D. Tex. Bar No. 31519
chris@pntlawfirm.com

PNT LAW FIRM
206 Wild Basin Rd. S.
Bldg. A, Ste. 206
Austin, TX 78746
Phone: (512) 522-4893

*Counsel for Plaintiffs General Land Office*
*of Texas and Commissioner Dawn*
*Buckingham, M.D.*

11

## CERTIFICATE OF SERVICE

I certify that on April 9, 2026, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Austin R. Nimocks*
Austin R. Nimocks

12