# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office, Plaintiffs, <br> *v.* <br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, Defendants <br><br> *and* <br><br> SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*, Defendants-Intervenors | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS, Plaintiffs, <br> *v.* <br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.,* Defendants. <br><br> *and* <br><br> SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*, Defendants Intervenors | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

## SCDI'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR MOOTNESS

## I.  Introduction

Standing must exist throughout the life of a litigation, including a current injury that is traceable to Defendants' conduct, redressable by a court's authority to issue relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs can demonstrate none of the three indispensable elements of standing.

Plaintiffs concede that the Proclamation they challenged no longer exists and has been replaced by both a policy and practice of barrier system construction. They concede that the appropriations they sought to compel toward border wall construction have been obligated accordingly, and that, independently of those commitments, these funds have lapsed and "may not be used for new obligations." Tenth Decl. of Paul Enriquez, ECF No. 287-1 at 4 ("10th Enriquez Decl."). Plaintiffs do not object to the only remaining lawful uses of these appropriations toward "change management or upward-in-scope adjustments on existing barrier contracts." 10th Enriquez Decl. at 4. Because the policies and practices have changed and these funds may no longer be obligated, the premise of this Court's current injunction, which restrains the obligation of these appropriations away from barrier system construction, Mem. Op. & Order, ECF 128 at 56, no longer obtains.

In response, Plaintiffs do not defend the standing theory upheld by this Court — that the alleged diversion of wall funds plausibly caused increased migration, thereby causing fiscal injuries to the States. Instead, they advance a series of new and increasingly speculative theories about how residual funds might yet be spent in ways they might object to. These theories fail on their own terms, but they also underscore the absence of any live controversy: Plaintiffs are no longer arguing that the conduct they challenged is injuring them. They are speculating about

conduct that has not occurred, by actors who are not before this Court, under legal theories that no court has adopted. That is not a case or controversy.

## II.  Argument

### A.  The Challenged Policy No Longer Exists.

Plaintiffs' challenges focused on an alleged policy of refusing to construct barrier systems. *See* SCDI's Mot., ECF 288 at 5 (citing Pls.' Opp. to Clarification, ECF 138 at 16 and *GLO v. Biden*, No. 22-20526 at 12 (5th Cir. June 16, 2023) ("[Plaintiffs] do not challenge DHS's decision to terminate particular construction contracts.")).

That policy, named in President Biden's Proclamation 10142 and subsequently implemented by DHS, ECF 128 at 52, was unwound by the prior administration following this Court's injunction. 10th Enriquez Decl. at 4-5. The challenged policy was then formally revoked by President Trump on January 20, 2025. Proclamation No. 10886 § 5, 90 Fed. Reg. 8327 (Jan. 20, 2025). In its stead, Proclamation 10886 commands the Secretaries of Defense and Homeland Security to "immediately take all appropriate action . . . to construct additional physical barriers along the southern border." *Id.* The current administration has not merely rescinded the offending policy; it has replaced it and proceeded in accordance with the new policy. No operative aspect of the challenged policy remains.

Plaintiffs do not grapple with this inversion. They argue that "DHS has not issued any form of general agency action . . . conforming to this Court's interpretation of the CAAs." Opp. at 8. But that misunderstands the Court's role. The question is not whether the current administration has issued a new memorandum incorporating this Court's prior order. The question is whether the *injury* Plaintiffs allegedly suffered — fiscal harm flowing from increased migration caused by the refusal to construct barrier systems — continues to exist. It does not. FY 20 and FY 21 funds have, in fact, been allocated toward barrier system construction. 10th Enriquez Decl. at 4-5. The record

demonstrates that nearly all these funds have been obligated. Even if they had not been, they cannot legally be obligated now.

Against these manifestly changed circumstances, Plaintiffs invoke the voluntary cessation doctrine, citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009), for the proposition that a defendant cannot moot a case by abandoning conduct only to resume it later. The doctrine has no application here.

Voluntary cessation concerns arise when a defendant in the litigation abandons the challenged conduct to defeat jurisdiction, while retaining the ability to resume it. The concern is the manipulation of the judicial process. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000). That is not what happened.

The relevant appropriations have expired by law. 10th Enriquez Decl. at 4-5. Even if they could be obligated, Proclamation 10142 was rescinded by President Trump, acting on his administration's independent policy judgment, for reasons unrelated to this litigation. The current administration has publicly, affirmatively, and enthusiastically pursued the construction of barrier systems. *Cf. U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023). Courts "adhere to the presumption that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* at 675. That presumption "applies with force where . . . the challenged policy was rescinded by a new administration acting on its own initiative, for reasons entirely unrelated to this litigation." *Spell v. Edwards*, 962 F.3d 175, 179–80 (5th Cir. 2020). Plaintiffs say nothing to dispel this presumption, or to indicate that, but for this litigation, the federal defendants would – or could – revert to the challenged, pre-injunction policy.

Plaintiffs' speculation that "a new presidential administration will take office in January 2029 — in time to do something entirely different" with the funds, Pls.' Opp., ECF 290 at 8–9,

highlights the problem rather than cures it. Standing cannot be predicated on what an unknown future administration might do with funds it could not legally obligate in any event. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Courts do not retain jurisdiction to guard what an unknown actor might do years hence.

### B.  The Relief Plaintiffs Sought Is No Longer Available.

Plaintiffs claim that this case will not be moot until "*all* FY 20 and FY 21 funds have . . . been *spent*." Pls.' Opp., ECF 290 at 2 (emphasis in original). They make three arguments. First, that absent the Court's injunction, Defendants retain the ability to "otherwise *spend* those funds in a manner that does not comply with [this Court's interpretation of the CAA]." *Id.* at 3 (emphasis in original). Second, "if the Court's injunction is lifted and the case dismissed, there is nothing that precludes the Federal Defendants from reinstating contracts that were 'suspended' or 'modified' or 'terminated' back to their original form," such that "all pre-injunction contracts may arguably be revived" – an outcome which they claim is "possible and perhaps even likely." *Id.* at 5. Third, that "Intervenor Defendants could maintain an argument that they are entitled to [these] monies" under an equitable doctrine unrecognized in this Circuit. *Id.* at 6-7. None of these arguments supplies the redressability that Article III requires.

First, Plaintiffs cannot now import a specialized distinction between obligations – which may no longer be made – and expenditures pursuant to those obligations. Plaintiffs assert that their lawsuits "never hinged exclusively on what was 'obligated,' but what is being spent." This reframing cannot be squared with the record. As SCDI observed, and as Plaintiffs do not dispute, they have consistently framed their dispute around an allegedly illegal policy, rather than specific obligations, let alone particular expenditures. ECF 288 at 5. Both complaints challenged Proclamation 10142's directive to pause immediately the obligation of funds related to the

construction of the southern border wall, and the DHS Plan that followed. See GLO Am. Compl. ¶¶ 113–121, ECF 34 at 40–42; Missouri Compl. Prayer for Relief at 35-36. The substantive counts in the GLO complaint alleged violations of the Purpose Statute (31 U.S.C. § 1301(a)), the Transfer Statute (31 U.S.C. § 1532), and the Anti-Deficiency Act (31 U.S.C. § 1341), which are all obligation-stage constraints that govern the initial commitment of funds to a purpose, not the mechanics of downstream payment on lawfully incurred contracts. GLO Am. Compl. ¶ 119, ECF 34 at 41. Paragraph 149 of the GLO complaint confirms the frame, identifying the wrong as "pausing obligation of funds to border wall contracts" in a manner that "divert[ed] appropriated funds away from the construction of the border wall." ECF 34 at 47 (emphasis added).

The Court's own framing is dispositive. In granting the preliminary injunction, the Court stated: "The central question in this case, then, is this: Has the Government obligated FY 2020 and FY 2021 funds for the 'construction of [a] barrier system'? The answer is largely no." Mem. Op. & Order at 42, Dkt. 128 (emphasis added).

Indeed, the word "spend" appears throughout this litigation as a synonym for obligating funds in compliance with the CAAs. The operative injunction thus prohibits the government "from *obligating* funds under Subsection 209(a)(1) . . . toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." *Id.* at 56 (emphasis added). Plaintiffs point to prayer items from the operative complaints to suggest a "spending"-based claim has always existed, Opp. at 2–3, ECF 290, but GLO items (f) and (g) use the word "diverting," which is the act of committing funds to unauthorized purposes at the obligation stage. GLO Am. Compl. Prayer ¶¶ f–g, ECF 34 at 49. The States' Prayer item (c)'s request to "compel Defendants to spend the funds appropriated for

6

'construction of barrier system along the southwest border' for that very purpose," ECF 34 at 49, uses "spend" in precisely the sense this Court and this litigation have consistently understood it.

Second, Plaintiffs' "obligation revival" theory is deeply speculative and, in any event, identifies no cognizable injury. Under 31 U.S.C. § 1502(a) and § 1553(a), the unobligated FY20 and FY21 funds may be used only for change management or upward in-scope adjustments on existing barrier contracts. 10th Enriquez Decl. at 4-5. Although Plaintiffs do not provide color on the suspended, modified, or terminated contracts they object to, reinstating a terminated contract or otherwise reprogramming its material obligations would seemingly violate the terms of a statutory lapse. Plaintiffs bear the burden on standing, and their statement that "all pre-injunction contracts may arguably be revived" and such revival "is possible and perhaps even likely" finds no support in Plaintiffs' citations or the record. Plaintiffs offer no evidence of any intention to revive terminated contracts. And because nearly all the relevant funds have otherwise been obligated toward purposes consistent with this Court's injunction, 10th Enriquez Decl. at 4-5, the possibility is practically and legally attenuated.

Third, Plaintiffs' argument about equitable writs is doubly speculative. Plaintiffs argue that, absent this Court's injunction, either this Court or another (they point to the Northern District of California) might order diversion of these funds pursuant to their equitable authority. Opp. at 6-7. Plaintiffs claim that the intervenor defendants "could maintain an argument that they are entitled to both FY 20 and FY 21 monies" and that, "[a]bsent this Court's injunction, the California federal courts may grant SCID's request for relief and once again divert FY 20 and FY 21 funds in a manner inconsistent with this Court's opinion." Id. at 6-7. But to say that a party "could maintain" an argument and a court "may grant" relief is not a basis for standing. No such request is pending. And, on the contrary, the California court denied the Sierra Club plaintiffs' motion for emergency

7

preservation prior to lapse on September 26, 2025, finding that plaintiffs had not met their burden of establishing that preservation of those funds was warranted. *Sierra Club v. Trump*, No. 4:19-cv-00872-HSG, Dkt. 419 (N.D. Cal. Sept. 26, 2025). The scenario Plaintiffs fear has not merely failed to materialize; it was affirmatively rejected by the court that would have to order it.

Plaintiffs' citations indicate that courts may order that funds "be held available beyond their statutory lapse date if equity so requires," *see, e.g.*, *Washington v. United States Dep't of Educ.*, 161 F.4th 1136, 1141 (9th Cir. 2025). *See also* 31 U.S.C. § 1502(b). They do not, however, address a situation like this, where nearly all the funds have been obligated.

Moreover, and fundamentally, it would be a remarkable jurisdictional posture to hold that this Court's injunction must remain in force to constrain what a different federal court in a different circuit might order in a different case. Article III standing requires that the injury be "fairly traceable" to the defendant's conduct, not to the independent action of another district of the federal judiciary. *Lujan*, 504 U.S. at 560. The speculative possibility that a California court might issue an order that might divert funds that might then flow in ways that might harm Plaintiffs is not a chain of causation — it is a chain of hypotheticals, each link of which must independently occur for the injury to materialize. *Clapper* forecloses standing on such reasoning. 568 U.S. at 410 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

For prospective relief, a plaintiff must show injury that is "certainly impending" or poses a "substantial risk" of occurring. *Clapper*, 568 U.S. at 409, 414 n.5. Possibility and conjecture are insufficient. *Id.* Plaintiffs' opposition is replete with hedged language — "may arguably be revived," "possible and perhaps even likely," "may request" and "may grant" — that falls far short of this standard. The Court should not retain jurisdiction over a case whose live controversy has

dissolved, on the chance that a sequence of independent actors might, over the next several years, act in ways that might harm the Plaintiffs in ways they have not tried to quantify.

## III. Conclusion

This case has run its course. The policy Plaintiffs challenged no longer exists. The funds they sought to protect and redirect have been obligated toward the very purpose they sought to compel, and the authority to obligate them further has expired by law. Plaintiffs' attempts to identify a surviving controversy rest on speculation about independent actors, unrecognized legal theories, and hypothetical future administrations, none of which supplies the concrete, ongoing injury that Article III requires. The Court should dismiss.

Should the Court conclude that any claim survives, SCDI reserves all rights regarding the form and scope of any continuing relief. SCDI notes that any renewed adjudication on surviving claims would require development of a current record, as the Court's prior permanent injunction was vacated on remand and the case returned to its pre-judgment posture. ECF 274; *cf. Univ. of Texas v. Camenisch*, 451 U.S. 390, 394 (1981). SCDI takes no position at this time on what that record might show or what relief, if any, would be appropriate.

Respectfully submitted April 15, 2026,

By: /s/ *David A. Donatti*
David A. Donatti (Bar No. 24097612)
Adriana C. Piñon (Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
ddonatti@aclutx.org
apinon@aclutx.org

Cecillia D. Wang*
My Khanh Ngo*

Gloria D. Smith**
SIERRA CLUB ENVIRONMENTAL
LAW PROGRAM
2102 Webster Street, Suite 1300
Oakland, CA 94612
Telephone: (415) 977-5532
gloria.smith@sierraclub.org

Ricardo A. Garza***
Texas State Bar No. 24109912
SDTX Bar No. 3336127
Southern Border Communities Coalition

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 343-0775
cwang@aclu.org
mngo@aclu.org
*Counsel for Intervenors*

Alliance San Diego
P.O. Box 2436
McAllen, TX 78502
(956) 605-5917; ricky@alliancesd.org

*Admitted *pro hac vice*
**Attorney for Proposed Defendant-
Intervenor Sierra Club only
***Attorney for Proposed Defendant-
Intervenor Southern Border Communities
Coalition only