**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

|  |  |
|---|---|
| THE GENERAL LAND OFFICE OF THE STATE OF TEXAS, and DAWN BUCKINGHAM, M.D., in her official capacity as Commissioner of the Texas General Land Office,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,<br><br>        Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*,<br><br>        Defendants-Intervenors. | Civil Action No. 7:21-cv-00272 |
| THE STATE OF MISSOURI; THE STATE OF TEXAS,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*<br><br>        Defendants<br><br>*and*<br><br>SIERRA CLUB, SOUTHERN BORDER COMMUNITIES COALITION, RANDY KINDER EXCAVATING, INC., *et al.*,<br><br>        Defendants-Intervenors. | Civil Action No. 7:21-cv-00420 (formerly No. 6:21-cv-00052) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

This case was about spending decisions. Namely, whether border barrier systems, barrier replacement, and mitigation and remediation projects, among others, were authorized purposes for the Fiscal Year 2020 ("FY 20") and Fiscal Year 2021 ("FY 21") border barrier appropriations or, as Plaintiffs argued, was the only authorized purpose for those appropriations constructing new border wall. Those questions are now moot. The expiration of the FY 20 and FY 21 funds means Defendants can no longer make spending decisions for that money. Defendants cannot, regardless of whether or not this Court's injunction remains in place, use FY 20 and FY 21 funds not already obligated to construct new border wall to construct new border wall – the *raison d'être* for Plaintiffs' suit.

Plaintiffs' standing was premised on the relationship between the harms Plaintiffs' incurred from aliens illegally crossing the border and the construction, or lack thereof, of new border wall using the FY 20 and FY 21 funds. Memorandum Opinion & Order, Dkt. No. 128 at 10-19. To redress their injuries, Plaintiffs sought an injunction that would result in the FY 20 and FY 21 funds being used to construct new border wall. But because the FY 20 and FY 21 funds can only be used for the purposes for which they were obligated as of the date of their expiration, September 30, 2024 and 2025, respectively, there can no longer be a relationship between the injuries Plaintiffs incurred by aliens illegally crossing the border and the uses of the FY 20 and FY 21 funds. Consequently, any ongoing injury Plaintiffs have identified, or now attempt to identify in their Opposition, cannot be traced to the uses of the FY 20 and FY 21 funds. Furthermore, because the funds cannot be used for any new purpose, the Court is incapable of providing Plaintiffs with any remedy that would result in the construction of more border wall with the challenged funds. *See City of Houston, Tex. v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1426-27 (D.C. Cir.

1994) (dismissing claim as moot because the Court was incapable of granting relief for the asserted grievance because the funds were unavailable due both to the expiration of the appropriations and their obligation to other purposes). Thus, this matter is now moot and the Court lacks jurisdiction to consider it. *See Env't Conservation org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) ("Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).").

## A. The Injunction's Only Impact is on the Funding Source to Pay Contractors

Because spending choices for the FY 20 and FY 21 funds are now locked in, the only impact the preliminary injunction has is to prevent Defendants from paying border wall contractors who performed work pre-injunction with the funds obligated for that purpose. The remaining FY 20 and FY 21 funds that were obligated on contracts before the injunction and could not be de-obligated can only be used to pay contractors who are parties to those contracts; the expired money cannot go to any other purpose. *See* 31 U.S.C § 1553. Plaintiffs have absolutely no interest in the source of funds used to compensate contractors when those funds cannot be used to construct additional border wall.

As previously recounted, prior to this Court's injunction, pursuant to the Border Wall Plan, Defendants obligated FY 20 and FY 21 funds and entered into contracts for various projects, including for border barrier systems and mitigation and remediation projects, that were ultimately inconsistent with the Court's preliminary injunction. *See* 2nd Enriquez Declaration, Dkt. No. 52-1; 3rd Enriquez Declaration, Dkt. No. 96-2. At the time the injunction was entered, some of the work on those projects had begun or even been completed, such as the work performed by Texas Sterling. Once the injunction went into effect, U.S. Customs and Border Protection ("CBP") took various actions to suspend, modify, or terminate, as appropriate, various contracts and interagency

agreements that relied on the FY 20 and FY 21 barrier system funds to pay for projects and activities prohibited by the Court's injunction. 10th Enriquez Declaration ¶ 9. For contracts that were inconsistent with the Court's injunction, CBP de-obligated all funds not committed to a debt so the money could be re-obligated to new border wall projects. But a debt had already been incurred on some of the contracts inconsistent with the injunction. In those instances, CBP de-obligated only funds beyond what was necessary to satisfy the total debt incurred because de-obligating any more would both create an unfunded obligation and put Defendants at risk of over-obligating the FY 20 and FY 21 appropriations, which would be contrary to the Anti-Deficiency Act, 31 U.S.C § 1341. Because the injunction prevents Defendants from satisfying these debts to the contractors using the FY 20 and FY 21 funds, these debts remain unpaid and the money obligated for that purpose remains in limbo because it cannot be de-obligated and cannot be used for any other purpose.

The money to pay these debts will come from one of two places, the FY 20 and FY 21 funds that were initially obligated for that purpose which, if they are not used for that purpose, will return to the Treasury unused, or the Judgment Fund. If the preliminary injunction remains in effect, thus preventing payment with the previously obligated FY 20 and FY 21 funds, the contractors will have to file an appeal with the Civilian Board of Contract Appeals or a complaint in the Court of Federal Claims to be paid out of the Judgement Fund. That will, of course, entail additional costs and delay for the contractors and for the Government. Furthermore, if the contractors are paid out of the Judgment Fund, DHS could be required to reimburse the Judgment Fund for those payments out of current border barrier appropriations in the One Big Beautiful Bill Act ("OBBBA"). But in no event will any of these potential payments injure Plaintiffs or impact the ability of DHS to construct new border barriers with the FY 20 or FY 21 funds.

3

### B.  Plaintiffs' Hypotheticals are Irrelevant

"No matter how vehemently the parties continue to dispute the lawfulness that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *See Already LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and citations omitted). Plaintiffs fail to identify a particularized legally cognizable interest in the lapsed FY 20 and FY 21 appropriations anywhere in their Opposition. Instead, Plaintiffs offer various hypothetical scenarios that are irrelevant to the mootness issue because they extend no further than their generalized interest that the law be followed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.").

Plaintiffs' suggestion that if the injunction were lifted, Defendants could just restart the mitigation and remediation projects in the Border Wall Plan does not cure their mootness problem. Pls.' Opp. at 4-6. That argument requires a degree of speculation that does not satisfy Article III's case or controversy requirement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). And it is also not true that if the injunction is lifted, Defendants could just restart remediation and mitigation projects because all such contracts have been terminated and the FY 20 and FY 21 funds have expired.[1] Even if it were true, it has no bearing on the amount of FY 20 and FY 21 funds

---

[1] To the extent Plaintiffs' hypothetical suggests that Defendants could restart the small population of contracts barred by the injunction but that could not be de-obligated because a debt had been incurred, reality renders that prospect entirely infeasible. Even if Defendants wanted to restart projects that pre-date this Administration, those projects have sat dormant for approximately two years and were awarded in an entirely different context. Defendants and the contractors have proceeded during that time like those contracts are permanently terminated – resources have been devoted elsewhere and multi-year plans have been made on the assumption those projects are over.

4

used to build more border wall because no additional FY 20 or FY 21 funds can be used for new contracts for border wall construction. Nor have Plaintiffs ever identified an injury resulting from the mitigation and remediation projects themselves, only that those projects used resources that could otherwise be used to build new border wall. Thus, their core problems remain; there is no injury traceable to the spending decisions for the FY 20 and FY 21 funds and no remedy available for their alleged injury.

Plaintiffs also suggest that Intervenors Southern Border Coalitions Community and Sierra Club (together "SCDI") could maintain some argument, possibly in the Ninth Circuit, that they are entitled to the FY 20 and FY 21 funds if the injunction is lifted. Pls.' Opp. at 6. First, as Intervenors SCDI point out, the district court in the Northern District of California has already rejected an argument along these lines, made prior to the expiration of the appropriations, and declined to exercise equitable authority to suspend the lapse of appropriations. SCDI Rep. at 7-9. Second, Plaintiffs' offer no basis for why their hypothetical, if it were to occur, would result in building less border barrier with the FY 20 and FY 21 funds, which is their sole legal interest they have identified in this matter. Finally, hypothetical events in litigation in another jurisdiction cannot possibly sustain standing. *See Clapper*, 568 U.S. at 414 ("We decline to abandon or usual reluctance to endorse standing theories that rest on speculation about decisions of independent actors.").

For whatever reason, Plaintiffs continue to press litigation that cannot result in the building of more border wall with the FY 20 and 21 funds. In fact, all that can result from continuing this litigation are additional costs and delays to the contractors, many of whom are citizens of the Plaintiff states. And Plaintiffs' position could even result in diverting resources from unexpired

---

Furthermore, those projects may no longer fit CBP's border wall plan and their costs are likely to be significantly higher than the amounts obligated for them.

border wall appropriations if DHS is required to reimburse the Judgment Fund from its OBBBA appropriations.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons stated above and in Defendants' Motion, this case should be dismissed as moot.

Dated: April 27, 2026

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

/s/ *Samuel Bean*
SAMUEL BEAN (MD)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, DC 20005
Tel: 202-455-9619
Samuel.B.Bean2@usdoj.gov

*Counsel for Defendants*